1

```
 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF COLORADO
 2

 3   UNITED STATES OF AMERICA,     .  Case No. 19-cr-00506-REB-1
                                   .
 4            Plaintiff,           .
                                   .  Alfred A. Arraj US Courthouse
 5   vs.                           .  901 19th Street
                                   .  Denver, CO  80294
 6   ROBERT LEWIS DEAR, JR.,       .
                                   .
 7            Defendant.           .  December 13, 2019
     . . . . . . . . . . . . . . . .  10:02 a.m.
 8

 9        TRANSCRIPT OF PROCEEDINGS HELD BEFORE THE HONORABLE
            KRISTEN L. MIX, UNITED STATES MAGISTRATE JUDGE
10

11   APPEARANCES:

12   For the Plaintiff:            United States Attorney's Office
                                   By:  Pegeen D. Rhyne
13                                 By:  Rajiv Mohan
                                   1801 California Street
14                                 Suite 1600
                                   Denver, CO  80202
15                                 (303) 454-0323

16   For the Defendant:            Federal Public Defender
                                   By:  Natalie G. Strickland
17                                 By:  Warren R. Williamson
                                   633 17th Street, Suite 1000
18                                 Denver, CO  80202
                                   (303) 294-7002
19
     Court Recorder:               Clerk's Office
20                                 U.S. District Court
                                   901 19th Street
21                                 Denver, CO  80294

22   Transcription Service:        AB Court Reporting & Video
                                   216 16th Street, Suite 600
23                                 Denver, CO  80202
                                   (303) 296-0017
24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

1                    (Time noted:  10:02 a.m.)

2               THE COURT CLERK:  All rise.  Court is in session.

3               THE COURT:  Thank you.  Please be seated.  Good

4    morning.  Case number 19-cr-00506, United States of America

5    versus Robert Lewis Dear, Jr.

6               Let's have counsel enter appearances, please.

7               MS. RHYNE:  Good morning, Your Honor.  Pegheen

8    Rhyne and --

9               MR. MOHAN:  Rajiv Mohan.

10              THE COURT:  Good morning.

11              MS. STRICKLAND:  Good morning, Your Honor.

12   Natalie Strickland and Rick Williamson on behalf of Mr. Dear.

13   He appears with us at counsel table.

14              THE COURT:  Good morning.

15              MR. WILLIAMSON:  Good morning, Your Honor.

16              THE COURT:  Good morning, Mr. Dear.

17              MS. STRICKLAND:  Thank you.

18              THE COURT:  We are here this morning for a variety

19   of matters.  I want to give counsel a head's up as to what

20   I'd like to do in terms of proceeding.

21              I have reviewed the transcript of the hearing that

22   was held earlier this week by Judge Wang.  And I noted that

23   although Mr. Dear had received a copy of the written charges

24   at that time, there was not a formal acknowledgment on the

25   record as to his understanding of those charges.

1          So I intend to complete that part of the initial

2    appearance today.

3          I also intend to address the Government's motion

4    for a competency evaluation, which I have reviewed, as well

5    as the Defendant's preliminary response to the prosecution's

6    motion to competency evaluation.

7          It is my conclusion that we will need to address

8    the competency evaluation request before we can proceed to

9    arraignment, discovery, detention hearing, et cetera.

10          I'll also note for the record that the Defendant

11    made a request at the initial appearance for his return to

12    the Colorado Mental Health Facility in Pueblo.  I don't know

13    whether the Defendant intends to renew that request today.

14          But to the extent that he does, I'll take that up,

15    as well.

16          So we'll start with the charges.  Mr. Dear, I need

17    to make sure that you understand the charges against you.

18          They are as follows:

19          You've been charged with 64 counts of -- excuse

20    me.  Let me start again.

21          You've been charged with sixty-four counts of

22    limiting freedom of access to clinic entrances, one count of

23    freedom of access to clinic entrances, and three counts of

24    use of a firearm during a crime of violence resulting in

25    death where the killing is a murder.

1          On the first three of the counts, the penalty, the

2   resulting in death counts, the penalty is not more than life

3   imprisonment, not more than a $250,000.00 fine, or both, not

4   more than five years of supervised release, and a $100.00

5   special assessment fee.

6          On counts four through eleven, the resulting in

7   bodily injury counts, the penalty is not more than ten years

8   imprisonment, not more than a $250,000.00 fine, or both a

9   fine and imprisonment, not more than three years of

10  supervised release, and a $100.00 special assessment fee.

11         On counts twelve through sixty-four, the penalty

12  is not more than one imprisonment, not more than a

13  $250,000.00 fine, or both, not more than one year of

14  supervised release, and a $100.00 special assessment fee.

15         On count sixty-five, the bodily injury count, the

16  penalty is not more than ten years imprisonment, not more

17  than a $250,000.00 fine, or both, not more than three years

18  of supervised release, and a $100.00 special assessment fee.

19         On counts sixty-six through sixty-eight, which are

20  use of a firearm during a crime of violence resulting in

21  death where the penalty is a murder, the penalty is not more

22  than death.  In the absence of the death penalty, not less

23  than ten years imprisonment, and not more than life

24  imprisonment, not more than a $250,000.00 fine, or both a

25  fine and imprisonment, not more than five years of supervised

1   release, and a $100.00 special assessment fee.

2            Sir, do you understand the general nature of the

3   charges against you?

4            DEFENDANT DEAR:  If I may respectfully address

5   Your Honor?

6            THE COURT:  You may.  Mr. Williamson?

7            MR. WILLIAMSON:  At this juncture, with the issue

8   of competence still unresolved, I cannot suggest that

9   anything that Mr. Dear might say about understanding or not

10  understanding has any legal meaning.

11           So I would respectfully ask that that issue be

12  passed until the competence question is --

13           DEFENDANT DEAR:  Denying me my rights.

14           THE COURT:  All right.

15           DEFENDANT DEAR:  Just keep trying to deny every

16  right.

17           THE COURT:  Mr. Dear, sir, would you like to

18  answer my question about whether you understand the general

19  nature of the charges against you?

20           DEFENDANT DEAR:  Yes, I understand totally.

21           THE COURT:  All right, thank you.

22           DEFENDANT DEAR:  And I want to get on the record

23  the Eighth Amendment cruel and inhumane punishment that is

24  going on in this Court, that Judge Wang on Monday she said

25  when I brought up about the -- that they drove and made me

1  sick and I threw up in the car, and she said they'll drive

2  better.

3          And so what happens today?  I got six witnesses in

4  the police van that they put us in a van, turned the lights

5  out, no windows, and they drove like maniacs.  And the other

6  guys that even normal were saying "I'm going to throw up."

7          And remember Freddy Gray in Baltimore that dies in

8  the back of the police van getting thrown all around.

9          This is a threat against what Judge Wang said.

10          And I want it on record, contempt of Court,

11  retaliation, or whatever.

12          And as far as these charges, we all know all of

13  these charges.  And I've got seven hours of videotapes I did

14  with the local cops the night I was arrested, and it all is

15  sealed because the FBI don't want people to know what's going

16  on.  They throw me in the nut house, they silence me, because

17  they know I am totally with it.  There's nothing incompetent

18  about me.  Nothing delusional.

19          And so this whole thing is a travesty of

20  injustice.  Take away people's rights.  And don't forget:

21  You victims are there. you're being denied your day in Court.

22  Justice delayed is justice denied.  It's all on record.

23          So --

24          THE COURT:  All right, thank you, Mr. Dear.  Let

25  me ask you one question, sir.  You mentioned that you were

 1   feeling ill as a result of the ride in the van.

 2              DEFENDANT DEAR:  Right.

 3              THE COURT:  Are you feeling ill right now?

 4              DEFENDANT DEAR:  Yes.

 5              THE COURT:  All right.

 6              DEFENDANT DEAR:  And I have six witnesses that are

 7   going to be in this Court.  Ask them about the ride.

 8              THE COURT:  All right.

 9              DEFENDANT DEAR:  Just get it on record.

10              THE COURT:  I understand what you're saying, sir.

11   Thank you.

12              Ms. Strickland?

13              MS. STRICKLAND:  Your Honor, I do think it's

14   important to note that Mr. Dear has expressed that he does

15   suffer from --

16              THE COURT:  Car sickness?

17              MS. STRICKLAND:  -- motion sickness.  I do believe

18   that to be extreme.  He was not well when we first met with

19   him this morning.

20              And I do think to be -- to the extent that the

21   Court can, I do think that it's imperative that the Marshals

22   understand, and transport him in a safe manner.

23              THE COURT:  I understand that.  Thank you, Ms.

24   Strickland.

25              I want to note for the record that the Court

1  ordinarily has no authority to tell the Marshal service how

2  to drive.

3          DEFENDANT DEAR:  It wasn't Marshal Service.  It

4  was somebody else.

5          THE COURT:  Or anybody transporting you, Mr. Dear.

6  I don't have the authority to do that.

7          I also want to say that, of course, occasionally

8  the methods chosen to transport prisoners to the Court are

9  chosen deliberately to protect the prisoners.  I know it

10  doesn't always seem that way to the prisoners, but

11  nevertheless occasionally that occurs, as well.

12          So let's proceed with respect to the issue of the

13  competency hearing.  As I indicated, I have read both the

14  motion and the preliminary response.

15          Mr. Williamson and Ms. Strickland, I'm going to

16  start with you because you suggested in your response that

17  you feel that you need some additional time in order to

18  properly address the issue of competency.

19          Ms. Strickland, would you like to speak to the

20  Court on that issue?

21      NOTE:  Ms. Strickland is not near a microphone.

22          MS. STRICKLAND:  Yes, Your Honor.  Your Honor,

23  that is the position that we took in our responsive pleading.

24  It is the position that we maintain with the Court today,

25  both as to the agreement to comments the Court agreed with,

1  but also as we're proceeding forward.

2         I will note for the Court that the position that

3  we are in, the unique nature of this case, considering that

4  there are contemporaneous State proceedings occurring, and a

5  number of findings competence have been in the State Court

6  proceeding, I'm not familiar with the reason for this filing,

7  as we've had the opportunity to review, sort of the thrust of

8  where we stand with the Court today.

9         It is our position that the most recent and

10  current information to proceed is to set a briefing schedule

11  so that we have the opportunity to review materials, number

12  one, and research, number two, the issues with this case

13  before the Court makes any rulings on the competency issue.

14         THE COURT:  All right, thank you.  Let me ask

15  counsel, Ms. Rhyne and Mr. Mohan for the Government.

16         Does the Government object to a briefing schedule

17  on the competency motion?

18         MS. RHYNE:  Yes.

19         THE COURT:  All right.  Ms. Rhyne?

20         MS. RHYNE:  Your Honor, a briefing schedule to

21  order a competency exam is not necessary.  There is a single

22  threshold issue:  Whether the Court has reasonable cause to

23  find that one is necessary.

24         And in this case, while an ordinary case -- in an

25  ordinary case there is a presumption of competency because

1   there is this history in the State Court whether Mr. Dear has

2   been found incompetent.

3          And, again, we think there are problems with those

4   findings.  But because that exists, that gives reasonable

5   cause for this Court to move forward and order the competency

6   proceedings.

7          When I asked defense counsel before the hearing

8   what were the briefings that it had in mind, or they had in

9   mind, that would be necessary before the Court ordered a

10  competency evaluation to occur at all, they were along the

11  nature of would the prior State findings have any bearing on

12  the Court's ultimate decision about competency.

13         And I think the Tenth Circuit law is clear that

14  the Court that finds competency, or decides the issue of

15  competency, can select whichever evaluation it finds most

16  persuasive.

17         So it's certainly not the case that the prior

18  State proceedings, even if relevant, are binding on the

19  Court.

20         Additionally, it's not as though there is a

21  current finding that Mr. Dear is incompetent as of today.

22  The last finding was in October.  Findings are time specific.

23  The Statute specifically says whether the Defendant is

24  presently competent to assist in his defense.  And there is

25  no such findings.

1        So in the absence of that, there is simply nothing
2   that the prior State findings could do to undermine the
3   reasonable cause that exists before the Court today.

4        And, more importantly, as to the time issue, I
5   know sometimes we say, or defense counsel has asked for this,
6   let's see what they have to say, just justice has been
7   delayed.  It's been delayed for four years, and there will
8   certainly be time that we take to go through this
9   methodically and in the pursuit of justice.  So this case
10  will go on for a great time to come, in all probability, but
11  there is no need for needless delay.  And that's what they
12  are asking for.

13       THE COURT:  Well, let me stick to another topic,
14  which is:  Assuming that the Court is inclined to set a
15  competency hearing today, how much time does the Government
16  reasonably expect will be needed for purposes of an
17  evaluation relating to competency?

18       MS. RHYNE:  So if you're asking about -- I'm not
19  -- are you asking about the exam itself, or before the exam
20  could happen?

21       THE COURT:  I'm asking about an exam itself.

22       MS. RHYNE:  Well, I guess that depends on who that
23  practitioner is.

24       THE COURT:  I understand.

25       DEFENDANT DEAR:  I'm not taking it.

1          THE COURT:  I understand that he made a request

2    for a particular individual.  Set that aside and just give me

3    an idea of what you would expect an ordinary competency

4    evaluation to take in terms of timing, based on your other

5    experiences.

6          MS. RHYNE:  The exam itself would take several

7    hours.  And obviously whether Mr. Dear cooperates, or not, is

8    a factor.  I hope he would view this as an opportunity for

9    him to prove the competency he assures the Court he has, that

10   this would be his opportunity to do that.

11         If he is cooperative, I think the exam would go

12   forth more efficiently and perhaps take several hours.

13         I know Doctor Dietz opined that if Mr. Dear were

14   cooperative, he might get useful information for a day or

15   perhaps two days.  Again, depending on the quality of the

16   conversation that's happening.  I don't know if the Court

17   wants the BOP examiner, how many hours they would take.

18         I know then that the examiner would take time to

19   prepare a report.  The advantage to that could be is because

20   he's had the chance to review the materials in this case, and

21   we can show to the defense and to the Court what those

22   materials are.  We've not made any attempt to hide that.  We

23   simply knew this would be the first issue in the case, and we

24   came to the case prepared to have a very experienced and

25   credible psychiatrist prepared to go forward as early as next

1   week.

2            DEFENDANT DEAR:  Are you going to videotape it?

3            MS. RHYNE:  Doctor Dietz does indicate that all

4   interviews will be video and audio recorded.

5            DEFENDANT DEAR:  They wouldn't --

6            THE COURT:  All right, let me ask you a couple of

7   questions.

8            Setting aside Doctor Dietz, and Doctor Dietz's

9   availability, what is your experience in terms of the

10  ordinary amount of time for the BOP to conduct an examination

11  and complete a report?

12           MS. RHYNE:  It is my understanding, Your Honor,

13  that the delay is getting the exam done in the first

14  instance, and that it takes several months.

15           THE COURT:  All right.  So, I mean, assuming that

16  I wanted to proceed to set a competency hearing in the case,

17  is it the Government's position that it would be useless to

18  try to pick a date for a competency hearing today, and that,

19  instead, we should simply order the evaluation and set a date

20  upon completion of the evaluation when the Court is notified

21  that the evaluation has been completed?

22           MS. RHYNE:  Yes, Your Honor.

23           THE COURT:  All right.  That answers my questions.

24           MS. STRICKLAND:  May I make a record, Your Honor?

25           THE COURT:  Certainly.

1          MS. RHYNE:  As I understand this, this is simply

2   to set the record straight, because I do think that the prior

3   defense counsel, it's probably not their intention, but at

4   least the justice that a person of impeccable credentials

5   intentionally lied in a court proceeding.

6          And I have provided both defense counsel and the

7   Court with the actual opinion by the Texas Appellate Court

8   referencing the Andrea Gates case, and that is *Gates v. Texas*

9   at 171 S.W. 3d 215, specifically page 222, and it made a

10  specific statement that the record does not show that Doctor

11  Dietz intentionally lied in his testimony.  Instead, it

12  reflects that he made a mistake, and the fact that he has

13  made a factual mistake over the course of a career that spans

14  four decades is unremarkable, and should have no bearing on

15  the court's decision.

16         THE COURT:  Thank you.  Let me ask Ms. Strickland.

17  Is the Defendant objecting to proceeding with a competency

18  evaluation at this time?

19         DEFENDANT DEAR:  Your Honor, --

20         THE COURT:  And if so, I'd like to know what it is

21  that you think you need to brief.

22         DEFENDANT DEAR:  Your Honor, --

23         THE COURT:  Just a minute.  Just a minute, Mr.

24  Dear.  Just a minute.  Let me hear from the lawyer first, and

25  then I'll let you talk.  I promise I will.

1          Go ahead, Ms. Strickland.

2          MS. STRICKLAND:  Your Honor, we are objecting to

3   proceeding with the competency evaluation at this time, and

4   we're asking that the Court set a briefing schedule to

5   highlight some of the issues that we believe need to be

6   addressed before the Court, and then address whether or not a

7   competency evaluation should be ordered.

8          For example, one is that in a habeas proceeding,

9   generally as a matter of law in the State finding of

10  competency, it's a presumption of correctness as a matter of

11  course.  At the habeas proceeding, don't know the extent to

12  which the same should apply here.

13      NOTE:  It is not possible to comprehend everything Ms.

14  Strickland is saying because she is not near a microphone.

15          The second is related to issues of comity.  For

16  example, what it should mean to the Federal case, what impact

17  does that have in the State case, and vice-versa.  Anything

18  that we do can [indecipherable] a status conference set in

19  2020, and anything irreparably interrupt the State

20  proceeding, and these are novel issues that have not

21  previously been addressed that need to be addressed before we

22  can move forward in such a hearing as that.

23          THE COURT:  It sounds like the briefing you're

24  talking about is strictly on legal issues.  In other words,

25  you're asserting that the Court needs to be informed as to

1  the extent to which the State findings are entitled to

2  comity, or not entitled to comity, in this Court.

3           And the extent to which the unique posture of this

4  case, because of the previous evaluations, somehow influences

5  whether there should also be a competency evaluation here.

6           Is that right?

7           MS. STRICKLAND:  That's correct.  And we don't

8  know the [indecipherable] research their interests before we

9  can [indecipherable] in this case.

10          THE COURT:  All right, I think I understand your

11 position.  Thank you.

12          Mr. Dear, I told you I would let you say

13 something.  Is there something you'd like to say, sir?

14          DEFENDANT DEAR:  Yeah.  You -- I just told you the

15 Eighth Amendment, and I told you the evidence is six guys in

16 that van, and then you just totally blew it off and say "oh,

17 we don't have anything to do with the transport," and you're

18 refusing to uphold the Constitution, Eighth Amendment.

19          And I just proved it was cruel and unusual

20 punishment.

21          Now, as far as these evaluations go, I've begged

22 them at the nut house for four years to have it videotaped,

23 have a tape recorder of these evaluations.  "Oh, we can't do

24 that.  That would be against your rights of privacy."

25          So in other words, we have nothing to stand on.

1  This evaluator comes in there, makes up a bunch of lies, we

2  have nothing that the patients can say anything, and we can't

3  back it up because this evaluator lies, and we don't have a

4  videotape to prove our side.

5        THE COURT:  It's your word against his, is what

6  you're saying.

7        DEFENDANT DEAR:  Right.

8        THE COURT:  Okay, I understand that.  Thank you.

9        MS. STRICKLAND:  Your Honor, may I just supplement

10 the record?

11       THE COURT:  You certainly may.

12       MS. STRICKLAND:  The Court had asked if the nature

13 of the briefing was solely on legal issues.  I will note,

14 however, that the Government did state in their opinion that

15 the State Court findings are flawed.

16       THE COURT:  I understand that.

17       MS. STRICKLAND:  Certainly in order to retract

18 that, we need to move new material not being produced even

19 more to brief this issue.

20       THE COURT:  All right.  Let me ask you a final

21 question with respect to the State Court proceedings and

22 evaluations.

23       Is there anything that the counsel believes that

24 the Court needs to do to provide access to these counsel to

25 those State findings?  Mr. Williamson, maybe you will want to

 1   weigh in on that?  I'll ask the Government attorney to answer

 2   the same question.

 3            MR. WILLIAMSON:  The short answer -- I don't know

 4   if we have any short answers, as you know.

 5            THE COURT:  I do know.

 6            MR. WILLIAMSON:  The short answer is at this

 7   juncture we are moving forward with efforts both through

 8   Government counsel and prosecution here, independently to try

 9   to gain full access to that information.

10            With Your Honor's permission, if that becomes an

11   issue, we would respectfully ask for the opportunity to be

12   able to come back and address the Court with, of course,

13   notice to Government counsel for its help.

14            THE COURT:  All right.  But hopefully it will not,

15   and I understand what you're saying.  Thank you.

16            Ms. Rhyne, did you want to address the issue of

17   access to the State findings for the defense counsel?

18            MS. RHYNE:  Yes, Your Honor.  We have provided

19   discovery just today that contains all of the materials in my

20   possession.  And the only thing I believe we don't have are

21   the most recent Court transcript where they come and say the

22   findings are the same, we adjourn for another 90 days.

23            But everything that's meaningful, they have on the

24   disc they received today.

25            THE COURT:  All right, thank you.  All right,

1   having considered the arguments of counsel, I am inclined to

2   order a briefing schedule, but it is not going to be an

3   extensive amount of time.

4           I want to get this matter as to whether the Court

5   should order a competency hearing, or not, in this Court

6   addressed sooner rather than later.

7           So as a result of that, I will order as follows:

8           The Defendant filed a preliminary response to the

9   motion for competency evaluation, which I have reviewed.  The

10  Defendant essentially made clear that the Defendant believes

11  that that's a preliminary response, and that a further more

12  detailed response is required.

13          I will allow the Defendant to file a further more

14  detailed response to the Government's motion for a competency

15  hearing, and the Defendant must do so on or before December

16  20th of 2019.

17          To the extent that the Government wishes to file

18  any reply to the response brief filed by the Defendant, the

19  Government may file its reply on or before December 27th of

20  2019.

21          The Court will then issue a written order in due

22  course as to whether or not there will be a competency

23  evaluation.  And, likely, the Court in conjunction with that

24  written order, will set some sort of a status conference so

25  that counsel may be present again in person, and we can

1   address further proceedings in the case after that written

2   ruling.

3          All right.  And I understand, Mr. Williamson, by

4   the motion on your face that you have a question or a remark

5   you'd like to make, and I'm going to let you do that, but

6   first let me ask the Government if the Government has any

7   questions or anything further you'd like me to address today.

8          MS. RHYNE:  On this issue, Your Honor?

9          THE COURT:  On this issue.

10         MS. RHYNE:  Then no.  Thank you, Your Honor.

11         THE COURT:  Thank you.  Mr. Williamson?

12         MR. WILLIAMSON:  Thank you, Your Honor.  Two

13  things that I would hope that we would be addressing as part

14  of this hearing on the issue of whether to order a competency

15  evaluation, are:

16         One:  Who should be doing the evaluation?

17         THE COURT:  I'll talk about that in a moment.

18         MR. WILLIAMSON:  Two:  Whether it can be done

19  locally versus in some distant location, for example,

20  Springfield, because of our need to have access to our

21  client, and also because of the continuing pendency of a

22  capital case in which he's the Defendant in the State of

23  Colorado.

24         THE COURT:  All right.  Let me talk a little bit

25  about the issue of who conducts the competency evaluation,

1    and whether it can be done locally.

2              I'm not going to pre-judge that issue until I've

3    seen your briefs.  I expect you to address that in your

4    briefs.

5              I want to make a respectful suggestion to counsel

6    about how to address the issue of who should conduct the

7    evaluation.

8              I understand, just from reading the initial brief

9    and the initial preliminary response, that the Defendant

10   objects to Doctor Dietz.

11             The Court isn't going to issue any opinion at this

12   stage as to whether I would be likely to appoint Doctor

13   Dietz, or not.  But I suggest that you may want to confer to

14   see whether there is, in fact, an appointment that you can

15   agree to in the alternative to Doctor Dietz.  There may not

16   be, but there may be.

17             And that may be a more reasonable approach in

18   terms of getting this matter handled expeditiously.

19             With respect to the location, again, I would

20   expect you to tell me about that.  I don't have any special

21   knowledge, as you well know, as to what facilities are

22   available for these sorts of evaluations, what facilities are

23   available locally, what facilities are available at the

24   Bureau of Prisons.  I have been involved in a situation where

25   an evaluation was done in Los Angeles.  I've been involved in

1   a situation where an evaluation was done in Springfield.

2          It is my recollection that in both of those cases

3   there was no decision by the Court as to the location of the

4   evaluation.  The evaluation was simply ordered, and the

5   Bureau of Prisons made the assignment of the suitable

6   facility for the evaluation.

7          To the extent that counsel want to weigh in on the

8   suitability of a location, then you should do that in your

9   briefs that you file with the Court.

10         All right, so I think we're squared away in terms

11  of what's going to happen on the briefing with respect to a

12  competency evaluation.

13         As I promised, Ms. Rhyne, I'll give you an

14  opportunity to address anything else you'd like to address

15  today.

16         MS. RHYNE:  Yes, Your Honor.  You said you were

17  going to take up the issue of the Defendant's -- at least

18  defense counsel's request, that he, Mr. Dear, be returned to

19  the mental health hospital.

20         THE COURT:  Well, let's see if he's renewing that

21  request first.  There's no sense going there if he's not

22  renewing that request.

23         MS. STRICKLAND:  We are not renewing.

24         THE COURT:  All right.  Then the Defendant would

25  be ordered remanded to the custody of the United States

1   Marshal.

2           Is there anything further from the Government

3   today?

4           MS. RHYNE:  I would only like to put on the record

5   that there has been a couple of references to the ongoing

6   State proceedings.  The Defendant has not been physically

7   present for any of those proceedings for the last two years.

8   And it's my understanding from the State prosecutor that the

9   standing order is that until he's returned to competency he

10  will not be physically present in Court.

11          So his presence here in the Federal system does

12  not deprive him of anything they were otherwise intending on

13  doing in the near future.

14          THE COURT:  I understand.  And you have made a

15  statement in that regard, and there's nothing for the Court

16  to rule on or not rule on with respect to that statement.

17  But I appreciate the statement for the record.

18          Anything further from the defense counsel today,

19  Ms. Strickland, Mr. Williamson?

20          MR. WILLIAMSON:  Speaking collectively, no.

21          THE COURT:  Thank you.  We're in recess.

22          THE COURT CLERK:  All rise.  Court is in recess.

23                  (Time noted:  10:28 a.m.)

24                      * * * * *

25

24

1                                CERTIFICATE

2          I, RANDEL RAISON, certify that the foregoing is a

3    correct transcript from the official electronic sound

4    recording of the proceedings in the above-entitled matter, to

5    the best of my ability.

6

7

8    _____          December 16, 2019

9    Randel Raison

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25