IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ROBERT LEWIS DEAR, JR., | ) |
| | ) |
| Defendant. | ) |

In the United States District Court
for the District of Colorado
The Honorable Robert E. Blackburn, U.S. District Court Judge
D.C. No. 1:19-CR-00506-REB-1

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION
FOR COMPETENCY EVALUATION PURSUANT TO 18 U.S.C. § 4241**

January 3, 2020

**TABLE OF CONTENTS**

DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION FOR COMPETENCY
EVALUATION PURSUANT TO 18 U.S.C. § 4241 ........................................................3

INTRODUCTION.............................................................................................................3

BACKGROUND ..............................................................................................................9

I.    The State of Colorado Has Been Prosecuting Mr. Dear In A Capital
Case Since November 2015. ....................................................................9

    A.    Mr. Dear Is Incompetent To Proceed On The State Charges. ........9

    B.    Mr. Dear Has Been Undergoing Restoration Efforts,
Psychiatric Treatment, And Periodic Competency Re-
evaluations Since May 2016. ......................................................10

II.    The Federal Government Waited Four Years To Indict Mr. Dear On
Charges Based On The Identical Conduct That Is The Subject Of
The Pending State Prosecution. ..............................................................11

ARGUMENT.................................................................................................................14

THE GOVERNMENT'S REQUEST UNDER 18 U.S.C. § 4241 IS
PREMATURE .................................................................................................14

I.    Applicable Law.........................................................................................14

    A.    The Heightened Standards In Death Penalty Cases Apply To
The Adjudication Of The 4241 Motion...........................................14

        1.    The capital nature of this case weighs heavily in favor
of this Court exercising caution when resolving every
issue presented, beginning with the 4241 Motion...............14

        2.    The capital nature of this case creates heightened
demands for the defense....................................................16

    B.    The Government Misstates The Law Applicable To The 4241
Motion. ..........................................................................................18

i

C.   There Must Be "Legitimate Reasons" To Order Further Inquiry Into The Competency Of A Defendant Originally Found Incompetent. ..................................................................... 20

II.   The Defense Cannot Yet Take A Position On Whether Further Competency Inquiry Is Necessary. .......................................................... 24

III.   This Court Does Not Yet Have A Legal Or Factual Basis To Exercise Its Discretion Under Section 4241............................................ 27

IV.   Acting On The Government's Section 4241 Motion At This Time Risks Interfering With The Defense Function In Capital Cases. .............. 29

V.   The Defense Must Have An Opportunity To Identify And Litigate Important Threshold Questions That Will Ensure The Integrity of The Ultimate Competency Determination And Protect Mr. Dear's Constitutional Rights. ................................................................................. 31

CONCLUSION ........................................................................................................ 34

CERTIFICATE OF SERVICE ....................................................................... 35

## ATTACHMENTS

Attachment A –   Declaration of Mark Fleming, Esq.

Attachment B –   December 13, 2019 Transcript

Attachment C –   ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases

Attachment D –   15CR5795 Complaint

Attachment E –   December 9, 2019 Transcript

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 19-cr-00506-REB

UNITED STATES OF AMERICA,

       Plaintiff,

v.

ROBERT LEWIS DEAR, JR.,

       Defendant.

---

## DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION
## FOR COMPETENCY EVALUATION PURSUANT TO 18 U.S.C. § 4241

---

The defendant, Robert Lewis Dear, Jr., through undersigned counsel, respectfully responds to the Government's Motion for Competency Evaluation Pursuant to 18 U.S.C. § 4241(a) (ECF No. 13) ("4241 Motion"). The defense cannot yet take a position on whether this Court should order competency proceedings under 18 U.S.C. § 4241. The defense asks this Court to vacate the current deadline of January 3 for the defendant's response and the January 10 deadline for the government's reply, and grant the defense an additional 60 days to file an informed response to the 4241 Motion. In support, counsel submit:

### INTRODUCTION

The State of Colorado has been prosecuting Mr. Dear since 2015 in a capital case for the same conduct that is now the subject of this federal prosecution. Mr. Dear is incompetent to stand trial in the state case. Unlike in many federal cases, where the state prosecution is dismissed in favor of federal prosecution, the federal and state

cases against Mr. Dear are now proceeding simultaneously. "The founding generation foresaw very limited potential for overlapping criminal prosecutions by the States and the Federal Government." *Gamble v. United States*, 139 S. Ct. 1960, 1980 (2019) (Thomas, J., concurring). The government's decision to prosecute Mr. Dear while the state capital case against him remains pending will cause additional burdens and inefficiencies for the parties and the courts. This is already apparent, just from the questions raised by the 4241 Motion.

It is unclear why the Department of Justice waited four years to pursue these capital charges.  But in less than two weeks, the government

- indicted Mr. Dear on charges that carry the death penalty, fully aware that he is incompetent to proceed in the capital prosecution pending against him in the State of Colorado stemming from the same alleged incident;

- removed Mr. Dear from a state hospital and interrupted his psychiatric treatment designed to restore him to competency;

- brought Mr. Dear into federal court on a *writ of habeas corpus ad prosequendum*, which is used to secure temporary custody, but which the government seems to be using to continue Mr. Dear's indefinite federal detention;

- demanded an immediate competency evaluation under 18 U.S.C. § 4241; and

- produced nearly 10,000 pages of state competency records that the defense has yet to completely review.

The government insists a new competency evaluation is required immediately. But Section 4241 does not "make an automaton of the court, requiring that a motion be granted merely because it has been filed." *United States v. McEachern*, 465 F.2d 833, 837 (5th Cir. 1972).[1] The government's request for another evaluation is highly unusual.

---

[1] M*cEachern* discusses 18 U.S.C. § 4244, before it was recodified at 18 U.S.C. § 4241.

It was filed less than a week after the indictment—before the capital defense team had even been assembled.  It is also not immediately obvious why any additional competency proceedings would be necessary, since there are already numerous evaluations in the state case finding Mr. Dear incompetent.  The first competency report in the state case diagnosed Mr. Dear with Delusional Disorder. That diagnosis has persisted after a total of 15 evaluations conducted by five different examiners. The government agrees these state materials are relevant to the resolution of the 4241 Motion, but the defense team has had no meaningful opportunity to comprehensively review and analyze these records.

The prosecution seems to think that, if it is dissatisfied with the state incompetency finding and since Mr. Dear is now being prosecuted in federal court, the government is entitled to a new evaluation under 18 U.S.C. § 4241, to be performed by its own hand-picked examiner.  Not so.  The Tenth Circuit does not endorse so-called competency "shopping," where, as here, the government wants to re-evaluate a defendant already found incompetent. *United States v. Martinez-Haro*, 645 F.3d 1228, 1232 (10th Cir. 2011).

***

The defense recognizes this Court's interest in resolving the "matter as to whether the Court should order a competency hearing, or not…sooner rather than later."[2] (Dec. 13 Tr. at 19:4-6).  The defense, too, does not seek any needless delay in these proceedings.  However, "[d]eath penalty litigation is not a sprint, but a

---

[2] See Transcript of Proceedings Before The Honorable Kristen L. Mix, United States Magistrate Judge, 12/13/2019, ECF No. 21 ("Dec. 13 Tr.") (Attachment B).

marathon[.]"[3]  A defendant's competence to stand trial, and the manner in which the competency determination is secured, goes to the fundamental integrity of these proceedings.  This Court should not accept the government's invitation to rush the adjudication of any issue in this capital prosecution, let alone one of such critical and threshold importance. The 4241 Motion is premature, and the defense respectfully asks this Court to take no action on it yet.  This is so, for several reasons.

*First, the defense has not yet had an adequate opportunity to consider whether a 4241 competency evaluation might be necessary.*  Until just a few weeks ago, the defense knew nothing about Mr. Dear or his state competency proceedings. Judge Blackburn just appointed learned counsel to represent Mr. Dear on December 18. (Ordering Assigning Learned Counsel, ECF No. 29).  Learned counsel have not had an opportunity to meet with Mr. Dear. (*See* Declaration of Attorney Mark Fleming) ("Fleming Decl.") (Attachment A). The defense has not had adequate time to review the state records.  For example, each competency evaluation lists collateral materials reviewed by the state evaluators and used to assist in the findings of incompetency. The defense has not yet investigated these sources of information. Moreover, the defense has not yet hired a mental health expert to review the medical records or assist counsel in assessing whether any competency issues are present.

By contrast, the government and its mental-health expert have had access to the state competency materials, presumably for some time.  The government rarely, if ever, has such unfettered access to the defendant's mental health information. (*See* Fleming

---

[3] Mark W. Bennett, *Sudden Death: A Federal Trial Judge's Reflections on the ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases*, 42 Hofstra L. Rev. 391, 415 (2013) (Bennett Article).

Decl., at P. 4).  Here, the government has reviewed years of Mr. Dear's mental health records, without any limitation on how those materials may be used and to whom they may be disclosed.

*Second, this Court does not yet have enough information to exercise its discretion under the statute.*  The government claims the state evaluations suffer from "notable problems." (4241 Motion at 2-3.) The government has made no offer of proof on the issue.  (*See id.*).   The government should immediately disclose precisely what problems it claims to have uncovered with the state competency evaluations.  The defense must be given an adequate opportunity to respond *before* the Court rules on the 4241 Motion.

*Third, acting hastily on the 4241 Motion risks interfering with the defense function in capital cases.*  Caution must be the first principle when resolving every issue in this prosecution because the government may seek the death penalty.  The defense has heightened obligations in a capital case. *See* American Bar Association ("ABA"), *American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases*, 31 Hofstra L. Rev. 913 (2003) (the "ABA Guidelines") (Attachment C). These amplified duties apply "at every step in the proceedings" and are crucial to ensuring a reliable determination of guilt and the imposition of an appropriate sentence. *Id.* at 922-23.

One of the most essential duties of a capital defense attorney is to develop a trusting relationship with the client.  Ordering a competency evaluation at the outset of these proceedings would disrupt the development of that relationship, potentially irreparably.  This is of crucial importance here, since the issue of whether a competency

hearing is even necessary relies heavily on the observations and evaluations of defense counsel.  *See Dusky v. United States*, 362 U.S. 402, 402 (1960) (to be competent to stand trial, defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," and also a "rational as well as factual understanding of the proceedings against him.").

As Chief Judge Brimmer has explained: "Defense counsel have the closest association with their clients and therefore courts pay particular attention to information they provide regarding competency." *United States v. Maxton*, 2013 WL 6800695, No. 13-cr-00411-PAB, at *2 (D. Colo. Dec. 24, 2013); *accord Drope v. Missouri*, 420 U.S. 162, 177 n. 13 (1975) (counsel is the "one with the closest contact with the defendant," so his "expressed doubt" in the competence of his client "is unquestionably a factor which should be considered"). Here, learned counsel has yet to meet with Mr. Dear.

***Finally, the defense needs an opportunity to identify and litigate important threshold questions***, ***before any proceedings under section 4241 should be ordered.*** Because the government filed the 4241 Motion at the very outset of this prosecution, the defense has had no opportunity to identify the unique legal and factual issues this Court may need to resolve before ordering any further inquiry into Mr. Dear's competency.

Accordingly, the defense cannot yet take a position on whether this Court should order competency proceedings under 18 U.S.C. § 4241.  For the reasons set forth here and in Attachment A, Mr. Dear respectfully asks this Court to vacate the current deadline of January 3 for Mr. Dear's response and the January 10 deadline for the

government's reply, and grant the defense an additional sixty days to prepare an informed response to the 4241 Motion.

## BACKGROUND

I.      **The State of Colorado Has Been Prosecuting Mr. Dear In A Capital Case Since November 2015.**

On November 27, 2015, Mr. Dear was arrested and later charged by the State of Colorado, through the El Paso County District Attorney's Office, with 176 offenses and three crime of violence sentencing enhancers.  (*See* Complaint and Information, pages 1-12) (Attachment D). This state prosecution is a capital case.

### A.      **Mr. Dear Is Incompetent To Proceed On The State Charges.**

On November 30, 2015, Mr. Dear appeared for his initial advisement on the state capital case alleging the same incident as charged in the federal indictment.  The case was continued to December 9, 2015, for filing of charges.  On December 19, 2015, the case was continued to December 23, 2015, for potential competency issues.  On December 23, 2015, the court ordered a competency evaluation at the Colorado Mental Health Institute at Pueblo ("CMHIP" or "state hospital") and continued the case until the report was ready.

On March 7, 2016, Mr. Dear was evaluated by two doctors: Dr. B. Thomas Gray, Ph.D, ABPP and Dr. Jackie Grimmett, Psy.D. The doctors consulted with Deputy District Attorney Donna Billek, Deputy State Public Defender Daniel King, CMHIP ward psychologist Dr. Scott Young, and attending psychiatrist Dr. Julie Meeker, and reviewed the court referral and order dated December 23, 2015, video and audio recordings, records from the El Paso County jail, and the medical records from CMHIP before

conducting their evaluation.  Drs. Gray and Grimmett agreed that Mr. Dear is

incompetent to proceed to adjudication.[4]

On March 24, 2016, the state court held a status conference.  The court held a

competency hearing on April 28, 2016 and on May 11, 2015.  The court conducted a

thorough two-day hearing, which included the testimony of mental health experts, and

found Mr. Dear incompetent to proceed.  Mr. Dear was then committed to the state

hospital for in-patient restoration.  Restoration efforts proved unsuccessful, and Mr.

Dear has remained incompetent for the past four years.

**B.     Mr. Dear Has Been Undergoing Restoration Efforts, Psychiatric Treatment, And Periodic Competency Re-evaluations Since May 2016.**

Until this federal prosecution was filed, Mr. Dear resided at the state hospital

undergoing restoration efforts, psychiatric treatment, and periodic re-evaluations of his

competency.  Mr. Dear has been re-evaluated by doctors at CMHIP every 90 days, as

required by law.  *See* Colo. Rev. Stat. § 16-8.5-116(2).   From the defense team's

preliminary review of the state proceedings, it appears there have been 15 competency

evaluations of Mr. Dear to date. Because the state case remains pending, the re-

evaluation process is ongoing.

In each of the 15 competency reports, authored by five evaluators working in

tandem, the conclusion is the same: Mr. Dear is found incompetent to proceed. At each

status conference held to address the continued finding of incompetency, neither the

government nor the defense objected to the finding.  As recently as the status

---

[4] This conclusion was reported in the Competency Examination of Robert Lewis Dear, Jr., El Paso County Case No. 2015 CR 5795, March 7, 2016, as submitted to the Honorable Judge Gilbert A. Martinez, 4th Judicial District.

conference held on November 4, 2019, the state court reaffirmed the finding of

incompetency.  The next status conference is set for January 9, 2020.

**II.      The Federal Government Waited Four Years To Indict Mr. Dear On Charges Based On The Identical Conduct That Is The Subject Of The Pending State Prosecution.**

On December 5, 2019, the government indicted Mr. Dear on 68 counts, including

death-penalty eligible offenses. (Indictment, ECD No. 1).  On December 9, 2019, Mr.

Dear appeared for the first time in federal court, with counsel, before Magistrate Judge

Nina Y. Wang.[5] The government secured Mr. Dear's presence through a *writ of habeas*

*corpus ad prosequendum*. That writ orders Mr. Dear to be brought before a federal

magistrate judge sitting in Denver, Colorado, to appear for proceedings and, further, to

be held in the custody of the United States Marshals for the District of Colorado, until

the conclusion of the federal case.  (Writ, ECF No. 4).  The impact on the state

prosecution and the ongoing restorative treatment of Mr. Dear appears not to have been

carefully considered by the government.  Mr. Dear's initial appearance was continued

until December 13, 2019.

On December 11, 2019, the government filed the 4241 Motion, asking "that the

court order that a psychiatric or psychological exam of Mr. Dear be conducted and order

that Dr. [Park] Dietz be permitted to perform that evaluation." (4241 Motion, at 3).   The

defense submitted a preliminary response. (ECF No. 17). That filing alerted the Court

that the 4241 Motion "presents various factual and legal issues that will likely require

briefing and hearings, but the defense has not been afforded an adequate opportunity to

---

[5] *See* Transcript of Proceedings Held Before The Honorable Nina Y. Wang, United States Magistrate Judge, 12/9/2019, ECF No. 11 (Attachment E).

prepare for and engage in such litigation." (*Id.* at 1). The FPD's preliminary response also asserted Mr. Dear's objection to the government's selected evaluator Park Dietz. (*See id.* at 2).

On December 13, 2019, this Court conducted the continued initial appearance, where Mr. Dear again appeared with counsel from the FPD. (*See* Dec. 13 Tr.). Mr. Dear was advised of the federal charges and possible penalties, but he was not arraigned. The Court also took up the government's request for a competency evaluation. The defense explained it needed more time to properly address the issue of competency. The prosecution objected, contending the defense was asking for "needless delay." (*Id.* at 11:11). The government urged this Court to order an evaluation immediately and hoped Mr. Dear "would view this as an opportunity … to prove the competency he assures the Court he has[.]" (*Id.* at 12:8-10).

The government agreed that Mr. Dear's state competency proceedings were relevant to the 4241 Motion.  To that end, the government produced an encrypted flash drive containing state competency materials.  Over the government's objection, this Court set a briefing schedule on the 4241 Motion (allowing the defense one week to respond) and encouraged the parties to confer about potential evaluators. (*Id.* at 21-22).

On December 18, 2019, Judge Blackburn appointed Mark Fleming and Andrea Luem, to represent Mr. Dear as learned counsel, under 18 U.S.C. § 3005. (Order Appointing Learned Counsel, ECF No. 29; *see* Fleming Decl. at P. 2). In section 3005, Congress codified a federal capital defendant's right to representation by two attorneys, one of whom must be "learned in the law applicable to capital cases." 18 U.S.C. § 3005. This statutory safeguard exists because the quality of the defense in capital cases has

such unique consequences. Judge Blackburn assigned Mr. Fleming and Ms. Luem to join the defense team because each has extensive death penalty experience. (Fleming Decl. at P. 1-2).

On December 19, 2019, the defense filed an unopposed motion for an extension of time (two weeks), expressly for the purpose of allowing the FPD to confer with newly-appointed learned counsel about the 4241 Motion. (ECF No. 30).  The extension request stated that a defense team meeting with learned counsel hopefully would take place before the end of December.  (*Id.* at P. 17).  This Court granted the extension, ordering a response from the defense by January 3 and a reply from the government by January 10.

Learned counsel has conferred with the FPD about the 4241 Motion but have not yet had a chance to meet with Mr. Dear.  (Fleming Decl., at P. 3).  Mr. Fleming and Ms. Luem are currently in a complex, multi-defendant RICO murder trial in Las Vegas, which is expected to conclude in early February 2020. (*Id.* at P. 1).  Learned counsel has carefully reviewed the 4241 Motion. (*Id.* at P. 3).  Given their great deal of technical expertise specific to capital cases, *see id.* at P. 2, learned counsel has identified serious issues raised by the government's request for a competency evaluation that cannot be immediately addressed but that will require further research and investigation.  Learned counsel also has confirmed that the heightened obligations imposed on the defense in a capital case apply from the outset of the proceedings, including to the defense response to the 4241 Motion. According to learned counsel: "the government's insistence on an immediate competency evaluation is premature, ill-advised, and may irreversibly taint the prosecution in its infancy."  (Fleming Decl., at P. 4).

**ARGUMENT**

**THE GOVERNMENT'S REQUEST UNDER 18 U.S.C. § 4241 IS PREMATURE**

**I.      Applicable Law**

     **A.      The Heightened Standards In Death Penalty Cases Apply To The Adjudication Of The 4241 Motion.**

Mr. Dear is a federal capital defendant because the government may seek the death penalty in this prosecution. (*See* Indictment, Counts 66-68, ECF No. 1) (charging 18 U.S.C. § 924(c)(1)(A) and § 924(j)(1)).  "Virtually all aspects of the defense of a federal death penalty case, beginning with decisions made at the earliest stages of the litigation, are affected by the complexities of the penalty phase."[6] Spencer Report 2010 Update, at 93. The heightened reliability standard in a capital case (discussed next) applies to the issue of whether to order a defendant to undergo a competency evaluation without his consent.

     **1.      The capital nature of this case weighs heavily in favor of this Court exercising caution when resolving every issue presented, beginning with the 4241 Motion.**

The Constitution "demand[s]" "heightened reliability" in capital cases. *Sumner v. Shuman*, 483 U.S. 66, 72 (1987); *accord Ford v. Wainwright*, 477 U.S. 399, 411 (1986) ("In capital proceedings generally, this Court has demanded that fact-finding procedures

---

[6] *See Federal Death Penalty Cases, Recommendations Concerning the Cost and Quality of Defense Representation*, *Subcommittee on Federal Death Penalty Cases, Committee on Defender Services' Judicial Conference of the United States*, Honorable James R. Spencer, Chair, Honorable Robin J. Cauthron, Honorable Nancy G. Edmonds, May, 1998  (the "Spencer Report"); and *Report to the Committee on Defender Services, Judicial Conference of the United States Update on the Cost and Quality of Defense Representation in Federal Death Penalty Cases*, Jon B. Gould, Lisa Greenman, September, 2010 (the "Spencer Report 2010 Update"), available here: https://files.deathpenaltyinfo.org/legacy/documents/FederalDPCost2010.pdf

aspire to a heightened standard of reliability.") This heightened standard "is a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different." *Id.*

In recognition of the heightened need for reliability, the Supreme Court has concomitantly demanded heightened scrutiny in capital cases—that courts afford "special importance [to] fair procedure" in cases involving the death penalty, *Lankford v. Idaho*, 500 U.S. 110, 125 (1991), apply "special care and deliberation in decisions that may lead to imposition of that sanction," *Thompson v. Oklahoma*, 487 U.S. 815, 856 (1988) (O'Connor, J., concurring), and exercise "painstaking care" to avoid error, *Kyles v. Whitley*, 514 U.S. 419, 422 (1995). Given these heightened standards, courts presiding over capital cases should be especially cautious in assessing and resolving every issue presented. *See generally* Bennett Article at 400 ("It is critically important for those judges who do not have experience in death penalty cases to fully appreciate the magnitude of the "death is different" phenomenon[.]").

This Court should not be rushed by the prosecution into resolving any issue in a capital proceeding. Particularly here, where the issue is whether to order an invasive competency evaluation against the will of a capital defendant. The need for due consideration and adequate time to respond is evident. Mr. Dear has not had the opportunity to meet with his just-appointed learned counsel, nor has his defense team had sufficient time to conduct a comprehensive review of the relevant medical records or retain mental health experts.

**2.    The capital nature of this case creates heightened demands for the defense.**

The Tenth Circuit has recognized that the "heightened attention" required of courts where the death penalty is a possibility "parallels the heightened demands on counsel in a capital case." *Smith v. Mullin*, 379 F.3d 919, 939 (10th Cir. 2004) (citing Standards for Criminal Justice 4–1.2(c) (3d ed. 1993)).  The most recent version of the ABA Criminal Justice Standards continues to acknowledge the unique obligations of defense counsel in a capital case:

> Because the death penalty differs from other criminal penalties, defense counsel in a capital case should make extraordinary efforts on behalf of the accused, and more specifically, review and comply with the ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases.

ABA, Criminal Justice Standards for The Defense Function, 4-1.2(g) (4ed. 2017).

The ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases stand as the most authoritative summary of the prevailing professional norms in the realm of capital defense practice.  (*See* Attachment C). "Hundreds of court opinions have cited the [ABA] Guidelines." Russell Stetler & W. Bradley Wendel, *The ABA Guidelines and the Norms of Capital Defense Representation*, 41 Hofstra L. Rev. 635 (2013). The Supreme Court has long looked to the ABA Guidelines in determining the reasonableness of counsel's performance. *See, e.g., Wiggins v. Smith*, 539 U.S. 510, 524 (2003) (citing ABA Guidelines); *see also Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) ("We long have recognized that prevailing norms of practice as reflected in American Bar Association standards and the like ... are guides to determining what is reasonable.") (citation and internal quotation marks omitted); *Harmon v. Sharp*, 936 F.3d 1044, 1058 (10th Cir. 2019) ("We judge counsel's

16

performance by reference to 'prevailing professional norms,' which in capital cases include the ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases.").

The ABA Guidelines instruct that "[o]nce a client is detained under circumstances in which the death penalty is legally possible, counsel should proceed as if it will be sought." ABA Guidelines, *supra*, at 994. Defense counsel in capital cases have duties and functions at all stages of the case that are "definably different from those of counsel in ordinary criminal cases." *Id.* at 922. "*Every task* ordinarily performed in the representation of a criminal defendant is more difficult and time-consuming when the defendant is facing execution." *Id.* at 923 (emphasis added).

For example, the ABA Guidelines set forth the forceful directive that death penalty counsel "at every stage have an obligation to conduct thorough and independent investigations relating to the issues of both guilt and penalty." *Id.* at 1015; *see also Powell v. State of Ala.,* 287 U.S. 45, 57 (1932) (describing "thorough-going investigation" as "vitally important"). In addition, "[c]ounsel at all stages of the case should make every appropriate effort to establish a relationship of trust with the client, and should maintain close contact with the client." ABA Guidelines, *supra*, at 1005 (Guideline 10.5—Relationship With The Client); *accord see id.* at 1010 (emphasizing that "[t]he obligations imposed on counsel [to establish a relationship with the client] *apply to all stages* of the case") (emphasis added).

"Effective capital representation requires a team of many players." Spencer Report 2010 Update, *supra*, at 103. The ABA Guidelines contemplate a team approach "that combines the different skills, experience, and perspectives of several disciplines."

ABA Guidelines, at 1002; *see id. at* 953 (Guideline 4.1—The Defense Team and

Supporting Services).  For example, "[t]he defense team should contain at least one

member qualified by training and experience to screen individuals for the presence of

mental or psychological disorders or impairments." *Id.* at 952.  "[M]ental health experts

are essential to defending capital cases[.]"  *Id.* at 956. Also, the early appointment of

learned counsel is authorized by statute, thus furthering the goal of high quality

representation contemplated by the ABA Guidelines. *See* 18 U.S.C. § 3005; *see*

*generally McFarland v. Scott*, 512 U.S. 849, 855 (1994) (recognizing the uniqueness

and complexity of death penalty jurisprudence).

   This team approach is essential because of the resources the prosecution

spends on a capital case. ABA Guidelines, *supra*, at 1002.  "The prosecution commits

vast resources to its effort to prove the defendant guilty of capital murder. The defense

must both subject the prosecution's evidence to searching scrutiny and build an

affirmative case of its own." *Id.* at 955.

   ### B.    The Government Misstates The Law Applicable To The 4241 Motion.

   The government contends this Court must make a competency determination "if

Mr. Dear persists in his request to represent himself on the December 13, 2019

hearing." (4241 Motion, at 1).  But Mr. Dear did not seek to represent himself on

December 13.  In fact, he appeared with counsel without objection.  Thus, the issue of

self-representation, which is not presently before the Court, does not trigger inquiry into

Mr. Dear's competency to waive counsel.[7]

---

[7] Notably, the government asserts that competency to stand trial and competency to
waive counsel are coextensive. The Supreme Court disagrees.  *Indiana v. Edwards*,

The only issue presented is whether this Court should order further inquiry into Mr. Dear's competence to stand trial under 18 U.S.C. § 4241. The short answer is: we don't know yet. The government's request for a new psychiatric examination arises in a highly unusual context.  Mr. Dear has been found incompetent to proceed in the state case. The government has reviewed voluminous state mental health records that it claims bear directly on the issue of competency.  Yet the defense has had no opportunity to review the same materials.  This Court should not act under section 4241 until the defense has had a meaningful chance to investigate the facts and carefully review the state competency records.

At the outset, however, it is important to be clear about the operative legal principles.  The government's bare-bones motion does not accurately describe how section 4241 operates, even as a general matter.[8]  For example, the government suggests that if a competency hearing is required under section 4241(a), then a new evaluation is necessarily required under section 4241(b).  That is incorrect.  While the request for a competency hearing and a competency examination are related, they maintain an independent identity under the plain language of section 4241.  The government also failed to identify any factors that guide the exercise of this Court's discretion to order a 4241 evaluation absent Mr. Dear's consent.

---

128 S. Ct. 2379 (2008) established a heightened level of competence for self-representation.

[8] This is not surprising. While the 4241 Motion is 98 pages long, only three pages contain legal argument. The remaining 90-some pages is the resume of the government's purported mental health expert, Dr. Park Dietz.

Here are some of the critical takeaways from the applicable law:

- A competency hearing under section 4241(a) is mandatory, but only if the government satisfies the "reasonable cause" standard; if there is reason to think the reasonable cause standard is not satisfied, then the Court may deny the motion or hold a threshold hearing just to determine whether a competency hearing should be held.

- An evaluation under section 4241(b) is *not* mandatory, even if a competency hearing is required; instead, the Court must decide whether the facts of the individual case warrant an examination.

- While this Court has discretion to order another evaluation, the Tenth Circuit has instructed there must be "legitimate reasons" for doing so. Whether there is a legitimate reason for a new evaluation cannot be determined without reference to the original evaluation.

- Where, as here, the government requests a new evaluation of an incompetent defendant, this Court must find that the government is not simply looking for an evaluator who will opine that the defendant is competent—what the Tenth Circuit, with disapproval, has called competency "shopping."

In short, additional time is needed for the defense to conduct its own investigation, interact with Mr. Dear, research the complex legal issues, review thousands of pages of medical history, and hire mental health experts before we can provide guidance to the Court on the need for a competency evaluation.

### C.    There Must Be "Legitimate Reasons" To Order Further Inquiry Into The Competency Of A Defendant Originally Found Incompetent.

There is no statutory provision expressly addressing whether, or when, a court should order multiple examinations.  As a general matter, "[t]he decision on whether to order a second competency exam is a matter wholly within the sound discretion of the trial court."  *United States v. Prince*, 938 F.2d 1092, 1095 (10th Cir. 1991) ("We will not reverse a trial court's refusal to order a second competency exam unless we conclude

20

the trial court's decision was an abuse of its discretion."). But, a "decision calling for the exercise of judicial discretion hardly means that it is unfettered by meaningful standards." *United States v. Taylor*, 487 U.S. 326, 336 (1988) (internal citation omitted). "[D]iscretionary choices are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Id.*

"Few courts have squarely addressed whether section 4241(b) authorizes multiple competency examinations, particularly when the result of the first competency examination is the conclusion that the defendant is incompetent to stand trial." *Martinez-Haro*, 645 F.3d at 1228 n. 2.  However, the Tenth Circuit seems to have articulated a guiding principle: there must be "*legitimate reasons* for the district court to order a second competency examination."  *Id.* at 1233 (emphasis added).

There appears to be no singular definition of what is a "legitimate" reason to order a new evaluation under section 4241(b).  What is certain, however, is that the government's conclusory assertion that the original competency evaluation was inadequate, without more, would not be a legitimate reason. The Tenth Circuit has expressed particular concern about a situation where "a defendant was found incompetent and the district court then allowed the Government to conduct more competency examinations only for the purpose of 'shopping' for a psychologist or psychiatrist who would conclude that the defendant was competent." *Martinez–Haro*, 645 F.3d at 1233. Put simply, "the United States does not get to keep seeking a [competency] report from government doctors until it gets one it likes." *United States v. Martin*, No. CR 08-1012-JB, 2011 WL 5220310, at * 16 (D.N.M. Sept. 27, 2011) (denying government's request for additional psychiatric evaluation under 18 U.S.C. §

4246, in light of the Tenth Circuit's concern about competency "shopping" in *Martinez-Haro*).

The case law teaches that a court should first consider the original competency proceedings before it can decide whether there is legitimate reason for a new evaluation.  This makes sense, because it is up to the court, on a case-by-case basis, to determine what information will help it make a competency determination.  For example, "certain federal appellate decisions have suggested that an adjudication of the competency of an accused in one prosecution may be so recent as to preclude the need for an adjudication of the same accused's competency in another prosecution." *Rose v. United States*, 513 F.2d 1251, 1256 (8th Cir. 1975).

Likewise, there is no legitimate reason to order a new examination under section 4241(b) if the original examination already provides the Court with sufficient information to evaluate the defendant's competency.  *See, e.g., Martin*, 2011 WL 5220310, at *15 (no re-evaluation necessary "[g]iven the thoroughness of the evaluation [previously] conducted and the Tenth Circuit's concern of the United States shopping around for another evaluation"); *Prince*, 938 F.2d at 1095 (no re-evaluation necessary where there was "no evidence in [the] record of any irrational behavior by [d]efendant that was not adequately explained in the single competency report"); *United States v. Hess*, 279 F. Appx. 652, 654 (10th Cir. 2008) (no re-evaluation necessary "absent an explanation as to how an additional psychological evaluation would assist the court in its competency determination); *United States v. Andrews*, 469 F.3d 1113, 1121 (7th Cir. 2006) (no re-evaluation necessary where "nothing legally useful would be obtained" from it); *United*

*States v. Davis*, 93 F.3d 1286, 1290 (6th Cir. 1996) (no re-evaluation necessary "[a]bsent a reasonable ground to question the treating psychiatrist's conclusion").

By contrast, a problem with the original examination could be a legitimate reason for a new evaluation. *See Martinez-Haro*, 645 F.3d at 1233 (holding it was not an abuse of discretion for a district court to order a second mental-health evaluation when the original evaluation was hampered by a language barrier and there was no evidence that the government was "shopping" for an evaluator who would opine that the defendant was competent). If the original evaluation was equivocal or identifies a need for further testing, that might make additional examination necessary. *Id.* If the original evaluation is inconclusive, that also could be a legitimate reason for a new evaluation. *United States v. Edwards*, No. 2:18-cr-44-FtM-00MRM, 2019 WL 337128, at *2 (M.D. Fla. Jan. 28, 2019) (additional evaluation necessary where original report failed to make a competency determination, was ambiguous and did not provide court with sufficient information).

Finally, if the Court's own observations of the defendant, or the statements of defense counsel, suggest there has been a change in the defendant's mental condition since he was found incompetent, presumably that could serve as a legitimate reason for a new evaluation. *See, e.g., United States v. Boigegrain*, 155 F.3d 1181, 1189 (10th Cir. 1998) (district court may rely on its own observations of a defendant's conduct when determining competency); *see also McGregor v. Gibson*, 248 F.3d 946, 960 (10th Cir. 2001) ("[d]efense counsel is often in the best position to determine whether a defendant's competency is questionable").

As discussed next, the defense cannot—at this time—provide to the Court any meaningful analysis on whether an evaluation is necessary under section 4241(b).  And there is no compelling reason to rush forward.

## II.     The Defense Cannot Yet Take A Position On Whether Further Competency Inquiry Is Necessary.

The ABA Guidelines instruct, that "[a]t every stage of the proceedings, counsel has a duty to investigate the case thoroughly." ABA Guidelines, at 1016.  "Every stage" includes all aspects of the litigation, including the 4241 Motion.  The defense is simply not familiar enough with the facts or Mr. Dear's mental condition to make a reasoned decision about any aspect of the competency inquiry or otherwise take a position on the government's request that Mr. Dear must be re-examined.

First, the defense team has not yet had adequate opportunity to review the state competency records.  The law is clear: the state competency proceedings are legally relevant to the exercise of this Court's discretion under section 4241.  The government does not disagree, having produced the state records to the defense in connection with its 4241 Motion.

There is a threshold question about whether this production was complete. On December 13, 2019, shortly after the indictment was filed and about a week before Mr. Dear's defense team had even assembled, the government produced an encrypted flash drive of materials to the defense.  According to the prosecutor, the flash drive contained "all of the materials in my possession," which the government characterized as "everything that's meaningful" in the state competency proceedings.  (Dec. 13 Tr. at 18:18-24). The government's selection criteria raises concerns that the defense may not yet have all the state competency records.

The defense has only started reviewing and investigating the production.  Upon receipt of the encrypted flash drive, the defense immediately began processing it, but it took several days to extract close to 10,000 pages of documents. On December 18, the government disclosed notes about an additional competency evaluation not included in the initial production.

To date, the defense has read the 15 CMHIP evaluators' competency reports. But this preliminary review is just the point of departure for the defense's review of the state proceedings. Each report contains a section called "Sources of Information" where the evaluator identifies collateral materials reviewed and used to assist in the findings of incompetency.  The sources of information consulted by the examiners vary from report to report, but include CMHIP medical records, behavioral observations, consultation with state hospital personnel, consultation with attorneys for the prosecution and the defense, and court orders and discovery materials. It is clear from even a cursory review of the 15 reports that behavioral observations either documented in the medical record or discussed during consultation with CMHIP staff influenced the opinions of incompetency.  The material the government has provided so far, and likely additional records, relate to Mr. Dear's position on whether further inquiry into Mr. Dear's competency is required.   There must be sufficient time for the defense to review this material comprehensively before taking a position on the 4241 Motion.

Second, the defense team has not yet had enough contact with Mr. Dear. The ABA Guidelines make clear that, particularly in a capital prosecution, time with the client is essential at every stage of the case.  Client contact must be ongoing and include sufficient time to develop a rapport between attorney and client. ABA Guidelines, at

1008.  There also must be a continuing interactive dialogue with the client about all matters that might reasonably be expected to have a material impact on the case. *Id.* at 1005.  The ABA Guidelines instruct that "[e]ffective representation requires ongoing interactive contact with the client--in person, by mail, on the telephone, and in other ways--both by counsel and, as discussed in the remainder of this commentary, by the other members of the defense team." *Id.* at 1090, n. 98.  Counsel's interactions with the client include an obligation to observe behavioral, physical, and psychological symptoms.

Here, the early stage of this case has not allowed defense counsel to spend enough time with Mr. Dear and fully undertake this interactive, investigative work. Learned counsel was appointed to the defense team only two weeks ago, and has not yet had the opportunity to meet with Mr. Dear.  Likewise, the FPD has only started the process of developing a rapport with Mr. Dear and certainly has not yet had enough interactions with him to reach any conclusions about his mental condition.  It would be inappropriate, particularly under the ABA Guidelines, for the defense to take an uninformed position about Mr. Dear's competency for purposes of responding to the 4241 Motion.

Allowing the defense an adequate opportunity to meet with Mr. Dear has legal significance under section 4241. The Tenth Circuit has "recogniz[ed] the importance of the district court's vantage point in a competency inquiry[.]" *United States v. Cornejo-Sandoval*, 564 F.3d 1225, 1234 (10th Cir. 2009) (explaining the importance of the district court's "observations and conclusions" regarding defendant's "behavior and demeanor" under section 4241).  Likewise, "an attorney's representation about his

client's competency is another factor that may be considered" in deciding whether there is a "need for further inquiry to determine fitness to proceed." *Id.* at 1235. Competence to stand trial determinations sometimes rest on the assessment of what a defendant must be able to do with counsel.  In the state case, it appears the evaluating doctors consulted with Mr. Dear's state defense lawyers, presumably to gather evidence on the second prong of the *Dusky* inquiry. Here, defense counsel could not yet give substantive input to the court or any evaluator on whether Mr. Dear can assist in his defense.

**III.     This Court Does Not Yet Have A Legal or Factual Basis To Exercise Its Discretion Under Section 4241.**

The government has given this Court reason to question whether the "reasonable cause" standard in section 4241(a) is actually satisfied.  Given the early stage of this capital case, neither the Court nor the defense has had sufficient opportunity to assess Mr. Dear's understanding of the proceedings and ability to assist in his defense.  The government believes that Mr. Dear is competent, so that is not evidence supporting reasonable cause. (4241 Motion, at 2) ("At his December 9, 2019 hearing, Mr. Dear told Judge Wang that he is competent, and the government does not believe that Mr. Dear's behavior in federal court suggests otherwise."). Thus, the only evidence before the court to support reasonable cause are the state findings that Mr. Dear is incompetent to stand trial.

The Tenth Circuit has said that "prior medical opinions" are "perhaps most important" in determining whether further competency inquiry is required. *Clayton v. Gibson*, 199 F.3d 1162, 1171 (10th Cir. 1999). Medical opinions are "usually persuasive evidence on the question of whether a sufficient doubt exists" as to the defendant's

competence. *Griffin v. Lockhart*, 935 F.2d 926, 930 (8th Cir. 1991). But here, "the government believes there are notable problems with the evaluations of Mr. Dear that were performed in the State proceedings." 4241 Motion, at 2; *see also* Dec. 13 Tr. at 10:3-4 (prosecutor asserted, "[W]e think there are problems with those [state] findings.").

      This is a strange position to take.  The government is challenging the reliability of the only evidence that could satisfy the reasonable cause standard under section 4241(a) and trigger a competency hearing. The government is essentially asking this Court to order a competency evaluation while suggesting that Mr. Dear is competent. At present, the record contains no evidence from either party that satisfies the reasonable cause standard to justify a section 4241 hearing.  Mr. Dear has made no offer of proof, and the government's position seems to be that Mr. Dear is competent. At this time, it is impossible for this Court to know whether reasonable cause exists under section 4241(a).

      The prosecution's unusual position, taken with the Tenth Circuit's admonition against competency shopping, also raises questions about the government's motives in seeking a new evaluation.  The evidence before this Court suggests that the government's 4241 Motion might be animated, not by a good faith doubt about the defendant's competence, but by a litigation strategy to secure an opinion, rendered by its hand-picked mental health evaluator, that Mr. Dear is competent. *See generally United States v. Hill*, 526 F.2d 1019, 1023 (10th Cir.1975) (trial judge acts within his range of discretion when he denies request for psychiatric examination on the ground of lack of good faith in making the motion).

Under the circumstances, even when the Court is sufficiently well informed to act on the 4241 Motion, it would be most appropriate to set a threshold hearing to make the "reasonable cause" determination required by section 4241(a). *See United States v. Patterson*, 713 F.3d 1237, 1244 (10th Cir. 2013) (district court can provide "a gate keeping determination of whether to grant a competency hearing" under section 4241(a)); *see also McEachern*, 465 F.2d at 837 (court may set a hearing to determine whether "reasonable cause" exists); *United States v. Weed*, 184 F. Supp. 2d 1166, 1168 (N.D. Okla. 2002) (conducting a preliminary hearing for the "sole purpose of determining…whether to grant the government's request for a hearing on Mr. Weed's present mental competence (i.e., to make the "reasonable cause" determination required by § 4241(a))").

## IV.   Acting On The Government's Section 4241 Motion At This Time Risks Interfering With The Defense Function In Capital Cases.

The critical nature of the attorney-client relationship is perhaps nowhere more important than in a capital case. The ABA Guidelines instruct that effective legal representation in capital cases means that "[c]ounsel at all stages of the case should make every appropriate effort to establish a relationship of trust with the client, and should maintain close contact with the client." ABA Guidelines, *supra*, at 1005. "Establishing a relationship of trust with the client is essential both to overcome the client's natural resistance to disclosing the often personal and painful facts necessary to present an effective penalty phase defense, and to ensure that the client will listen to counsel's advice on important matters such as whether to testify and the advisability of a plea." *Id.* at 1008. The defense function in a capital case depends upon counsel developing a special "rapport" with client:

> Overcoming barriers to communication and establishing a rapport with the client are critical to effective representation. Even apart from the need to obtain vital information, the lawyer must understand the client and his life history. To communicate effectively on the client's behalf in negotiating a plea, addressing a jury, arguing to a post-conviction court, or urging clemency, counsel must be able to humanize the defendant. That cannot be done unless the lawyer knows the inmate well enough to be able to convey a sense of truly caring what happens to him.

*Id.* at 1009. Failure to establish this relationship of trust between lawyer and client from the outset has significance for all stages of the capital prosecution.

If this Court orders an evaluation of Mr. Dear now, it risks interfering with the development of trust and rapport that is essential to the attorney-client relationship and damaging the quality of the defense function at all future stages in this capital prosecution.  Competency proceedings transform a criminal case.  The focus of counsel's interactions with Mr. Dear must shift immediately to the competency litigation, before a relationship of trust has been established.  This shift in focus will ultimately affect any examiner's conclusions, because the competency evaluation will be based on less information than would otherwise be available, if the Court allowed adequate time for the defense to interact with Mr. Dear.  If the defense has restricted access to Mr. Dear while he is being re-evaluated, the risk of undermining the defense function is even greater.  Impeding attorney-client contact "jeopardize[s] the provision of high quality legal representation in accordance with the ABA Guidelines." ABA Guidelines, at 1090 n. 98.

**V.      The Defense Must Have An Opportunity To Identify And Litigate Important Threshold Questions That Will Ensure The Integrity of The Ultimate Competency Determination And Protect Mr. Dear's Constitutional Rights.**

The death-eligible nature of this case, the fact that Mr. Dear has been found incompetent after 15 evaluations, and the additional complexities created by the dual prosecution counsel in favor of measured action.  Under these unusual circumstances, before this Court takes any action under section 4241, the defense should have an opportunity to identify and litigate important threshold questions. This must be done with due regard for the ongoing competency proceedings in the pending state case, where Mr. Dear is also actively being prosecuted. *See, e.g., United States v. Nixon*, 919 F.3d 1265, 1270–71 (10th Cir. 2019) (approving government's decision "to wait on the state-court proceedings" in order "[t]o avoid ping-ponging [defendant] between state and federal custody") (citing *United States v. Watford*, 468 F.3d 891, 896, 903 (6th Cir. 2006) ("principles of comity . . . dictate[] that respect be accorded to a custodial sovereign's prerogative to resolve its criminal proceedings before relinquishing custody to another jurisdiction.")

For example, here are just some of the open issues the defense has identified already:

- Has the government produced all the state competency records? Are there more materials that the defense needs to review and investigate?

- Should the Court order limitations on the government's use and disclosure of the state materials (because presently none exist)?

- Should this Court hold a threshold "reasonable cause" hearing under section 4241(a)? If so, what is the evidence that will be used at that hearing?  Which party has the burden of proof?

- Should this Court hold a competency hearing under section 4241(a)? If so, what is the evidence that will be used at that hearing?  Which party has the burden of proof?

- Should this Court appoint "firewalled" government counsel to represent the government at a competency hearing?

- Should the competency hearing be closed to the public?

- Should some portion of the competency hearing be conducted ex parte to avoid violations of attorney-client privilege?

- What criteria will this Court use to determine whether another examination is necessary, given the discretion allowed in section 4241(b) and the guiding principles for its appropriate exercise?

- If a new examination is ordered, what is the appropriate scope of the new evaluation, in light of the 15 state evaluations already conducted?

- Which tests will be administered?

- Will the defense be allowed to attend?

- Where will the new examination take place?

- Who will be the Court-appointed examiner?  Assuming a new evaluation is necessary, the defense will confer with the government on the issue but will be asking for an evaluator designated by this Court and not hand picked by the government.

- What procedures should be employed to protect Mr. Dear's Fifth, Sixth, and Eighth Amendment rights in any future examination?

- Will this Court agree to order a specific procedure limiting the disclosure of any new competency report and preventing unnecessary disclosure to the government of otherwise protected material?

- Will this Court agree to order that no information gathered from the competency evaluation can be used by the government, either directly or indirectly, in proving Mr. Dear's guilt or in determining his sentence?

- How will the state capital prosecution be impacted by any proceedings and determinations under section 4241?

## CONCLUSION

The defense respectfully asks this Court to vacate the current deadline of January 3 for the defense's response and the January 10 deadline for the government's reply, and grant the defense an additional sixty days to prepare an informed response, fully addressing whether this Court should order competency proceedings under 18 U.S.C. § 4241.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


s/ Virginia L. Grady
VIRGINIA L. GRADY
Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:   (303) 294-7002
FAX:           (303) 294-1192
Email: Virginia_Grady@fd.org
Attorney for Defendant



s/ Natalie G. Stricklin                        s/ Veronica S. Rossman
NATALIE G. STRICKLIN                     VERONICA S. ROSSMAN
Assistant Federal Public Defender     Assistant Federal Public Defender
633 17th Street, Suite 1000              633 17th Street, Suite 1000
Denver, CO  80202                          Denver, CO 80202
Telephone:   (303) 294-7002           Telephone:   (303) 294-7002
FAX:           (303) 294-1192           FAX:           (303) 294-1192
Email: Natalie_Stricklin@fd.org        Email: Veronica_Rossman@fd.org
Attorney for Defendant                     Attorney for Defendant

APPOINTED LEARNED COUNSEL:


s/ Mark F. Fleming
MARK F. FLEMING, ESQ.
Law Office of Mark Fleming
1470 Encinitas Blvd., Suite 133
Encinitas, CA 92024
Telephone:   (619) 300-6202
Email: mark@markfleminglaw.com
Attorney for Defendant

s/ Andrea L. Luem
ANDREA L. LUEM, ESQ.
400 South Fourth Street, Suite 500
Las Vegas, NV 89101
Telephone:   (702) 600-8403
FAX:           (702) 550-7712
Email: Andrea@luemlaw.com
Attorney for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 3, 2020, I filed the foregoing **DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION FOR COMPETENCY EVALUATION PURSUANT TO 18 U.S.C. 4241** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail address:

Pegeen Rhyne, Assistant United States Attorney
E-mail:  pegeen.rhyne@usdoj.gov

Rajiv Mohan, Assistant United States Attorney
E-mail:  rajiv.mohan@usdoj.gov

Mary J. Hahn, Assistant United States Attorney
E-mail:  mary.hahn@usdoj.gov

I certify that I have mailed or served the document or paper to the following participant in the manner (mail, hand-delivery, etc.) indicated next to the participant's name:

Robert Lewis Dear, Jr. (via U.S. mail)
Reg. No. 45591-013
c/o FDC – Englewood

s/ Natalie G. Stricklin
NATALIE G. STRICKLIN
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:   (303) 294-7002
FAX:           (303) 294-1192
Email: Natalie_Stricklin@fd.org
Attorney for Defendant