## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 19-cr-00506-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ROBERT LEWIS DEAR, JR.,

      Defendant.

---

## UNITED STATES' REPLY IN SUPPORT OF MOTION FOR COMPETENCY EVALUATION

---

The United States of America submits this reply in support of its motion for a competency evaluation.  This Court should grant that motion and order both a competency hearing and examination.  The government has satisfied all applicable requirements under Section 4241.  There is no reason for further delay and ample reason for prompt determination of the defendant's competency.

## ARGUMENT

### I.    The Court should order a competency hearing.

Section 4241(a) requires the Court to order a competency hearing where reasonable cause exists to believe the defendant may be incompetent.  Here, reasonable cause exists on account of the prior state determination of incompetence. The capital-eligible nature of this case does not change that.

**A.      Section 4241(a) requires the Court to order a competency hearing where reasonable cause exists.**

The defendant suggests that the government's motion for a competency evaluation was brought in bad faith.  Doc. # 35 at 28.  But given the history of the state case against the defendant, the government had no choice but to seek a competency hearing at the outset of this case.  *See United States v. Varner*, 467 F.2d 659, 662 (5th Cir. 1972) ("When the United States Attorney has information causing him to have reasonable doubt as to the competency of a criminal defendant he is duty-bound to report it to the court and to request a mental examination."); *Drope v. Missouri*, 420 U.S. 162, 177 n.13 (1975) ("[R]esolution of the issue of competence to stand trial at an early date best serves both the interests of fairness … and of sound judicial administration.") (citation omitted).

"[I]f there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceeding against him or to assist properly in his defense," the Court "shall grant a motion" for a hearing to determine competency.  18 U.S.C. § 4241(a).  In considering a motion for a competency hearing, the Court is not to determine whether the defendant is incompetent.  *United States v. Metcalfe*, 698 F.2d 877, 881 (7th Cir. 1983); *Rose v. United* States, 513 F.2d 1251, 1255 (8th Cir. 1975) ("The court is not to make an initial inquiry into whether the accused is in fact competent before it orders the [ ] examination.").  The Court is only to determine whether there is reasonable cause to believe that the defendant may be.  *Metcalfe*, 698 F.2d at 881; *Rose*, 513 F.2d at 1255.

2

If reasonable cause exists, the Court must order a competency hearing.  *United States v. Ramirez*, 304 F.3d 1033, 1035 (10th Cir. 2002) ("Absent findings of an insufficient factual basis for a § 4241(a) motion, or a lack of good faith in making the motion, a competency evaluation is required."); *United States v. Hill*, 526 F.2d 1019, 1023 (10th Cir. 1975).

> **B.     The state's prior determination of incompetence supplies the necessary reasonable cause here.**

On May 11, 2016, the defendant was found incompetent to proceed in the state case.  *See* Ex. A (state order).  From May 11, 2016, until he was taken into federal custody on December 9, 2019, he was committed to the Colorado Mental Health Institute at Pueblo (CMHIP) to restore him to competency.  During that time, re-evaluations were attempted every 90 days.  The defendant was largely uncooperative.  *See* Ex. B at 2-4 (Oct. 23, 2019 evaluation).  Each time, relying heavily on the initial evaluation, evaluators opined that the defendant remained incompetent.  *See* Ex. B.

The state court's prior order and these evaluators' opinions finding the defendant incompetent provide this Court with the requisite reasonable cause to believe that the defendant may be incompetent.  As the defendant concedes, prior medical opinions regarding competency are an important factor in determining whether reasonable cause to order a competency hearing exists.[1] *Clayton v. Gibson*, 199 F.3d 1162, 1171 (10th

---

[1] The defendant cites a number of cases for the proposition that defense counsel ordinarily have the closest association with a defendant and, therefore, ordinarily have important information to provide the Court regarding a defendant's competency. Doc. # 35 at 8.  But none of those cases suggest that, when another source of

Cir. 1999); *see also* Doc. # 35 at 27.  Indeed, the defendant essentially argues that these prior findings demonstrate he is incompetent.[2]  Doc. # 35 at 5, 9-10, 21.

The defendant responds that, because the government believes there were problems with the competency evaluations performed at CMHIP, those evaluations cannot supply the Court with reasonable cause to order a competency hearing. Doc. # 35 at 29.  That position conflicts with his suggestion that the prior evaluations demonstrate his incompetence.  More than that, the defendant conflates the threshold question of reasonable cause with an actual determination of competency.  The state evaluations can suffer from problems, as the government believes they do, while still supplying reasonable cause to order a competency evaluation as a threshold matter. There is no tension in the government's position.

###   C.   The existence of capital-eligible charges does not alter the reasonable cause standard under Section 4241.

Because the defendant is charged with capital-eligible crimes, he argues that "heightened standards" apply to this Court's consideration of the government's Section

---

information provides reasonable cause that a defendant may be incompetent, a court should defer ruling on the issue until defense counsel has had sufficient time to render an independent opinion on the matter.  *See Dusky v. United States*, 362 U.S. 402, 402-03 (1960); *Drope*, 420 U.S. at 177 n.13; *United States v. Maxton*, No. 13-cr-00411, 2013 WL 6800695, at *1-4 (D. Colo. Dec. 24, 2013).

[2] Despite apparently taking the position that the defendant is incompetent, the defense asks the Court to "take no action" on the government's motion for a competency hearing.  Doc. # 35 at 7.  That is not an option.  If the Court finds reasonable cause, it must order a competency hearing.  *Ramirez*, 304 F.3d at 1035.  If the Court determines that the defendant is incompetent, the Court "shall commit the defendant to the custody of the Attorney General" for hospitalization to restore the defendant to competency.  18 U.S.C. § 4241(d).

4241 motion and that he is entitled to a 60-day continuance to file his position regarding the preliminary question of whether "reasonable cause" under Section 4241(a) exists. Doc. # 35 at 14-18.  The defendant cites no authority in support of this argument.  The mandatory language of Section 4241(a) provides no exception for capital cases, and this Court should reject the defendant's request to delay these proceedings.  *United States v. Thompson*, 462 F. App'x 561, 563 (6th Cir. 2012) (acknowledging that delaying a competency hearing for a capital defendant might provide "some strategic value" to him, but rejecting such request as being "without merit").

Courts have found that the "heightened reliability" required in capital cases does not require that courts provide capital defendants additional, across-the-board benefits during all aspects of a capital case.[3]  Rather, the Supreme Court has emphasized that the Eighth Amendment requires "heightened reliability" that the jury's sentencing decision is "appropriate in a particular case."  *Sumner v. Shuman*, 483 U.S. 66, 72 (1987).  The cases cited by the defendant establish three basic requirements:  (1) that a jury's sentencing determination must be cabined by guided discretion; (2) that the sentencing jury be provided sufficient information about the defendant and the offense to ensure that the jury's decision is individualized to the particular defendant; and (3)

---

[3] *See*, *e.g.*, *United States v. Fernandez*, 231 F.3d 1240, 1245-46 (9th Cir. 2000) (rejecting defendant's claim that effective representation in capital cases requires the government to produce otherwise privileged documents); *United States v. Tsarnaev*, 13-cr-10200, 2013 WL 6196279, at *2-5 (D. Mass. Nov. 27, 2013) (holding in a capital case that the government's disclosure obligations do not extend beyond the requirements of the Constitution and Federal Rules of Criminal Procedure).

that the defendant be given fair notice and opportunity to participate in the adversarial

process.[4]  None of these cases address reasonable cause under Section 4241, and

therefore, they have no bearing on this Court's decision on the pending motion.

The defendant relies primarily on American Bar Association Guidelines, which

establish the general proposition that counsel in capital cases must provide a robust

defense and develop a trusting relationship with their client.  Doc. # 35-3.  These

guidelines do not trump the mandatory provisions of Section 4241.  Additionally, the

defense is free to conduct an independent review of the state records, interview

witnesses, hire independent mental health experts, and communicate with their client

during the pendency of the evaluation process.

Defense counsel suggests that ordering a competency hearing at this stage

would disrupt the development of rapport with the defendant because they will have to

address the issue of competency with him.  Doc. # 35 at 16-18, 29-30.   Yet counsel has

pointed to nothing in the ABA Guidelines that advises capital counsel to seek delays of

---

[4] *See*, *e.g.*, *Sumner*, 483 U.S. at 77-78 (striking down a mandatory death penalty statute because it failed to provide individualized capital sentencing decisions); *Ford v. Wainwright*, 477 U.S. 399 (1986) (holding that insanity hearing procedures failed to provide sufficient safeguards to ensure fairness where the state (not the court) decided whether the defendant was insane; the state governor selected the mental health examiners; and the defendant was precluded from submitting evidence or cross-examining the psychiatrists); *Lankford v. Idaho*, 500 U.S. 110 (1991) (holding that the defendant must be provided notice that the court was considering imposing a death sentence so that counsel could adequately prepare a defense); *Smith v. Mullin*, 379 F.3d 919, 939-40 (10th Cir. 2004) (holding that defense counsel was "woefully incompetent" in failing to present mental health mitigation evidence to the sentencing jury).  In *Kyles v. Whitley*, 514 U.S. 419 (1995), the Supreme Court granted certiorari to review whether a constitutional error occurred but did not establish any heightened constitutional requirements at the trial level.

competency hearings to avoid discussing competency issues with their client.  To the contrary, the ABA Guidelines specifically require that counsel "engage in a continuing interactive dialogue with the client concerning *all matters* that might reasonably have a material impact on the case, such as … current or potential legal issues."  Doc. # 35-3 at 39 (ABA Guideline 10.5—Relationship with the Client) (emphasis added).

At its core, the defendant's request would effectively allow every capital defendant whose competency is at issue to unilaterally delay competency hearings, and, ultimately, resolution of the case.  Nothing in the text of Section 4241(a), the Supreme Court's decisions, or the ABA Guidelines justifies such delays.

## II.   The Court should order a psychiatric or psychological examination and report.

To evaluate the defendant's competency, the Court should order that a psychiatric or psychological examination be conducted and a report filed pursuant to Section 4247(b) and (c).  This is the government's first request for such an examination. And given that reasonable cause exists to believe the defendant may be incompetent, an examination under Section 4247(b) and (c) is warranted.

The defendant contends that the Court needs "legitimate reasons" for ordering a competency examination.  Doc. # 35 at 21.  But he relies on cases involving *multiple* competency examinations within a single prosecution.  *See*, *e.g.*, *United States v. Martinez-Haro,* 645 F.3d 1228, 1233 (10th Cir. 2011).  Those cases are inapposite to this one, where this is the government's *first* request, and the prior determination was made in a separate prosecution by a separate sovereign.  For that reason, the defendant's concerns regarding multiple examinations and "shopping" for a favorable

examination are meritless.  *See* Doc. # 35 at 20-23.

Indeed, the prior state determination is not binding in this federal case.  *See Rose*, 513 F.2d at 1256 ("The court was of the belief that the Illinois adjudication automatically barred any consideration of petitioner's competency in the federal prosecution.  This was error.").  *Rose* went on to explain that "the prior adjudication can only serve as evidence, to be weighed with other evidence on the question of competency."  *Id.* at 1256 n.5.

Moreover, Section 4247(b) and (c) set forth specific requirements for psychiatric or psychological examinations and reports, including that the examiner be designated by the Court.  Given that this is a separate federal prosecution, subject to those federal statutory provisions, the Court should order an examination and report in accordance with those sections, rather than relying on a state evaluation that was not.

Even if legitimate reasons were required, there are many to choose from here.[5] The state determination suffers from notable problems, addressed as follows:

*First*, none of the evaluations were video or audio recorded because of an internal CMHIP policy intended to protect patients' confidentiality.  *See* Ex. D at 85 (transcript of May 10, 2016 state competency hearing).  CMHIP's refusal to record the evaluators' interviews of the defendant deepened his mistrust of the process.  The defendant himself stated during the December 13, 2019 hearing in this Court:  "I've

---

[5] Even if the Court viewed the requested examination as a "second competency exam," ordering one is within the sound discretion of the Court.  *Martinez-Haro*, 645 F.3d at 1233; *United States v. Prince*, 938 F.2d 1092, 1095 (10th Cir. 1991).

begged them at the nut house for four years to have it videotaped, have a tape recorder of these evaluations. 'Oh, we can't do that. That would be against your rights of privacy' … We have nothing to stand on. This evaluator comes in there, makes up a bunch of lies … and we don't have a videotape to prove our side."  Doc. # 35-2 at 16-17.  Both Dr. Park Dietz and representatives of the Bureau of Prisons have stated that any meetings with the defendant during the federal exam can be video recorded.

*Second*, during the initial evaluation, the evaluators' first interview with the defendant on January 20, 2016, was abruptly halted 90 minutes in as a result of a defense motion.  *See* Ex. C at 168, 195 (transcript of Apr. 28, 2016 state competency hearing); Ex. D at 9.  That filing required the evaluators to postpone the remainder of the interview until a second meeting.  One of the evaluators, Dr. Gray, admitted during his testimony in the state proceedings that the defendant appeared more suspicious of the evaluators during their second meeting with him and that the interruption of the first meeting may have contributed to that suspicion.  *See* Ex. C at 249.  This procedural irregularity appears to have improperly impacted the evaluation process.

*Third*, the evaluators did not adequately examine whether the defendant's unwillingness to work with his state defense counsel was prompted by a rational distrust and dislike caused by the defendant's disagreement with counsel over case strategy and the fact that counsel was not listening to the defendant.  *See* Ex. C at 199-201, 212, 227-228, 250-52.  Dr. Gray admitted that the defendant "was quite offended that the issue of competency had been raised; and he considered that disrespectful."  *See id.* at 252.  This fundamental disagreement over strategy warranted substantial exploration as

to whether it was the cause of the defendant's decision not to trust, or work with, his state defense counsel.  Instead, without sufficient exploration, the evaluators appear to have lumped the defendant's attitude toward his state defense counsel as broadly fitting into a "delusional suspiciousness of other people."  *Id.*

Quite apart from any problems with the prior state evaluations, a new examination is warranted simply because those prior evaluations are outdated.  The initial evaluation by Drs. Gray and Grimmett was dated March 7, 2016, and they testified about their findings on April 28 and May 10, 2016.  Although the defendant was re-evaluated every 90 days while he was at CMHIP, he largely refused to participate in those re-evaluations.  Ex. B at 2-4.  During those re-evaluations, in the absence of evidence to suggest that the defendant's "clinical presentation has improved or that his delusional belief system has abated or softened to any degree," the evaluators found it "more likely than not" that he continued to be incompetent.  *See* Ex. B at 6.  The ongoing presumption of incompetence during these re-evaluations essentially ensured that the defendant's failure to participate resulted in continued findings of incompetence.

Section 4241(d) asks whether the defendant "may *presently* be suffering from a mental disease or defect rendering him mentally incompetent[.]"  (Emphasis added.)  The defendant himself recognizes that a prior determination must at least be "recent" to preclude further inquiry.  Doc. # 35 at 23; *see also Rose*, 513 F.2d at 1256 n.5 ("[T]he competency of an accused cannot be rendered an immutable historical fact, for the mental condition of an accused may change drastically in a matter of months.").  And both state evaluators mentioned above recognized that competency findings are time

specific.  Dr. Gray stated:  "Competency has to do with the individual's current functions.

And people change over time.  Even people with serious mental illness will—the

symptoms they experience will wax and wane over time."  *See* Ex. C at 221-22.  Dr.

Grimmett stated:  "It's very hard to measure how long a competency opinion is good

for."  *Id.* at 167.

### III.   The examination should be performed by Dr. Park Dietz or alternatively the Bureau of Prisons.

Section 4247(b) requires that a psychiatric or psychological exam be performed

by a licensed or certified psychiatrist or psychologist designated by the Court.  As the

government stated in its initial motion, Dr. Park Dietz is an extremely experienced,

licensed psychiatrist.  *See* Doc. # 13 & 13-1.  Dr. Dietz has reviewed materials in this

case, which is entirely proper, and is prepared to evaluate the defendant in the near

future.  Dr. Dietz would travel to Colorado and evaluate the defendant where he is

currently being held.  Dr. Dietz also intends to video record his interview(s) with the

defendant.  While learned counsel has opined that Dr. Dietz has "apparently already

concluded that Mr. Dear is competent," Doc. # 35-1 ¶ 4, that is not true.  Dr. Dietz has

not reached any conclusions regarding the defendant's competency.  He is simply

prepared to conduct an examination of the defendant.  An examination by Dr. Dietz

would allow the defendant to remain in Colorado and offers the Court an expedient path

toward receiving an examination report to aid the Court in its determination of

competency.

In the alternative, the Court should designate a licensed or certified psychiatrist

or psychologist with the Bureau of Prisons (BOP) to perform the psychiatric or

psychological exam.  As the defense has already recognized, "[t]he BOP has experience and expertise in the evaluation of competency, and it performs such evaluations on a regular basis."  *United States v. Sampson*, 12 F. Supp. 3d 214, 217 (D. Mass. 2014); *see* Doc. # 17 at 3.

A BOP representative has informed the government that any interview or meeting with the defendant for the evaluation can be video recorded.  A BOP examination would be conducted at one of its medical centers, none of which is located in Colorado.  Bed space is limited and currently backlogged.  A BOP representative has estimated that, after a competency examination is ordered by the Court, it will take 8-12 weeks for bed space to become available so that the defendant can be designated to one of the medical centers.  Once that happens, BOP will direct the Marshals to transport the defendant to the designated facility.  When the defendant arrives there, his examination would be performed within 30 days as required by statute.  *See* 18 U.S.C. § 4247(b).  The evaluator would then need approximately two weeks after the examination to prepare the report.  An examination by the BOP will necessarily mean that the competency hearing in this case will be delayed by several months.  But that would allow the Court to accommodate the defense's request for more time to review the state competency records, Doc. # 35 at 25-26, while still moving toward a prompt resolution of competency.

IV.     **Further delay is unwarranted.**

This Court should order a competency hearing and examination now.  The

defendant has requested to represent himself and can only do so if he is competent.  To

preserve that constitutional right, competency must be resolved expeditiously.  None of

the other reasons the defense offers for delay should stop this Court from granting the

government's motion now.

A.      **The defendant's request to represent himself requires prompt resolution of competency.**

Prompt resolution of competency is warranted in view of the defendant's

statement during his initial appearance that "I'd rather represent myself."  Doc. # 35-5

at 6.  That unequivocal statement warrants a *Faretta* hearing to determine whether the

defendant can knowingly and voluntarily waive his right to counsel.  That hearing should

be held as soon as possible to safeguard the defendant's constitutional right to self-

representation.  And since competency to stand trial is a prerequisite to a valid waiver,

that issue too must be resolved as soon as possible.

A defendant has a constitutional right to represent himself.  *Faretta v. California*,

422 U.S. 806, 834-36 (1975).  When a defendant "'clearly and unequivocally' inform[s]

the district court of his intention to represent himself[,]" the Court "must conduct a

comprehensive formal inquiry to ensure that the defendant's waiver of the right to

counsel is 'knowingly and intelligently' made."  *United States v. Tucker*, 451 F.3d 1176,

1180 (10th Cir. 2006) (citation omitted).  The "tried-and-true method for establishing that

a waiver was knowing and intelligent is to 'conduct a thorough and comprehensive

formal inquiry of the defendant on the record to demonstrate that [he] is aware of the

nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding pro se.'" *United States v. Vann*, 776 F.3d 746, 763 (10th Cir. 2015) (citation omitted).

Here, during the defendant's initial appearance, Magistrate Judge Wang advised him of his right to counsel.  The following exchange ensued:

> **Dear:**  I have a right to represent myself too.
>
> **The Court:**  You do have a right to represent yourself, but do you understand your right to an attorney?
>
> **Dear:**  Yes.
>
> **The Court:**  And would you like counsel appointed for you?
>
> **Dear:**  I'd rather represent myself.
>
> **The Court:**  All right.  So, Mr. Dear and Mr. Kraut, to the extent that Mr. Dear would like to proceed in representing himself, then we normally would have a separate advisement and hearing once you've had an opportunity to speak with him with respect to the consequences and repercussions of representing himself. So are you ready to proceed with that today, or would you like some time to have an opportunity to talk to Mr. Dear?
>
> **Mr. Kraut:**  No, Your Honor, we are not ready to proceed with that today.

Doc. # 35-5 at 6.  At which point, defense counsel requested and the Court granted a halt in the advisement.  *Id.* at 7.

The defendant's request was clear and unequivocal and thus mandates a *Faretta* hearing.  Magistrate Judge Wang seemed to think as much.  The defendant did not, for example, "ad[d] a qualification that confuses what [he] wants."  *United States v. Simpson*, 845 F.3d 1039, 1048 (10th Cir. 2017); *see also United States v. Callwood*, 66 F.3d 1110, 1114 (10th Cir. 1995).  Nor was he unclear about whether he wanted to

represent himself "or simply wanted new counsel."  *United States v. Burton*, 698

F. App'x 959, 961 (10th Cir. 2017); *see also United States v. Reddeck*, 22 F.3d 1504,

1511 (10th Cir. 1994).

 A *Faretta* hearing should therefore follow—and as soon as possible.  The Tenth

Circuit has explained that "the timing of the *Faretta* hearing is certainly important" and a

"contemporaneous and comprehensive hearing is generally a sufficient condition to a

knowing waiver[.]"  *Vann*, 776 F.3d at 763.  "[O]nce a defendant affirmatively states his

desire to proceed pro se, a court should cease other business and make the required

inquiry."  *Raulerson v. Wainwright*, 469 U.S. 966, 970 (1984) (Marshall, J., dissenting

from denial of cert.); *see also Brown v. Wainright*, 665 F.2d 607, 612 (5th Cir. 1982) (en

banc) (courts "should not unduly defer a ruling on a firm request by a defendant to

represent himself in the hopes the defendant may change his mind"); *United States v.

Rice*, 776 F.3d 1021, 1025 (9th Cir. 2015) ("[T]he district court should have taken up the

self-representation request more expeditiously.").  Indeed, "[d]elay in holding a hearing

after the right is unequivocally asserted undermines that right by forcing the accused to

proceed with counsel in whom he has no confidence and whom he may distrust."

*Raulerson*, 469 U.S. at 970 (Marshall, J., dissenting from denial of cert.).

 As a consequence, competency too must be determined as soon as possible.

For a waiver of the right to counsel to be valid, "[t]he court must first ensure that the

defendant is competent to waive counsel" before it can "determine that the waiver is

knowing and voluntary."  *United States v. DeShazer*, 554 F.3d 1281, 1288 (10th Cir.

2009).  Competency to waive counsel is equivalent to competency to stand trial.

*Godinez v. Moran*, 509 U.S. 389, 398 (1993) ("[W]e reject the notion that competence … to waive the right to counsel must be measured by a standard that is higher[.]"); *see also id.* at 400-01 (court must also find waiver is knowing and voluntary, but that "is not a heightened standard of *competence*").  That is to say, competency to stand trial is a necessary prerequisite to a knowing and voluntary waiver of the right to counsel.[6]

Defense counsel responds that the defendant "appeared with counsel without objection" at his second appearance on December 13, 2019, and so any issue of self-representation "is not presently before the Court[.]"  Doc. # 35 at 18.  A defendant's "other statements or actions may render" a request "unclear or ambiguous."  *Simpson*, 845 F.3d at 1048.  But the issue of self-representation did not arise at the second hearing, and none of the defendant's statements during that hearing cast doubt on his earlier request.  Based on the December 13 hearing alone, the defendant did not "invit[e] or agre[e] to *substantial* participation by counsel" such that his appearance with counsel "must be presumed to be with the defendant's acquiescence[.]"  *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) (emphasis added).  At a minimum, the prudent

---

[6] The defendant contends that *Indiana v. Edwards*, 554 U.S. 164 (2008), established a "heightened level of competence for self-representation."  Doc. # 35 at 18-19 n.7.  But *Edwards* merely held that "the Constitution *permits* States to insist upon representation by counsel for those competent enough to stand trial … but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves."  *Edwards*, 554 U.S. at 718 (emphasis added).  *Edwards* did not require a court to do so.  In fact, as the Tenth Circuit has put it, "*Edwards* itself reaffirmed that a court may constitutionally permit a defendant to represent himself so long as he is competent to stand trial."  *DeShazer*, 554 F.3d at 1290.  In any case, competence to stand trial is a necessary prerequisite in all cases.

course to preserve the defendant's right to self-representation would be for the Court to ask him on the record how he wants to proceed.

### B.  Any issues related to the procedures applicable to a competency hearing do not warrant further delay.

The defendant contends that a litany of issues must be resolved before this Court can order a competency hearing.  Doc. # 35 at 31-33.  However, the vast majority of the issues listed address procedures that might apply to a future competency hearing.  And although the defendant's list of issues does not go to the merits of the government's Section 4241 motion, the government notes that courts have rejected requests by other defendants that similar unique and onerous procedures govern their competency hearings.  Indeed, one of the defendant's learned counsel raised similar issues in the capital case of *United States v. Loughner*, and the court summarily rejected those requests.  770 F. Supp. 2d 1026, 1028 (D. Az. 2011) (rejecting defense requests "concerning the manner and protocol for conducting the competency examination"); *see also* 782 F. Supp. 2d 829, 830, 833-34 (D. Az. 2011) (rejecting the defendant's motion claiming that the Fifth, Sixth, Eighth, and Fourteenth Amendments prohibited disclosures of BOP records to the government).  Chief Judge Brimmer has also declined to impose additional procedures in a competency hearing, finding they would "frustrate the straightforward process set forth in § 4241(a)."  *Maxton*, 2013 WL 6800695, at *3-4.

The government provides the following brief response to the specific procedural issues identified by the defendant:

- *Firewall counsel*:  The defendant's suggestion that this Court appoint firewall counsel for the competency hearing has been repeatedly rejected by courts in capital cases.  *See*, *e.g.*, *Thompson*, 462 F. App'x at 564-65.  The language of Section 4247, the statute governing competency hearing procedures, is clear: The report of the court-appointed examiner "*shall be* … provided to counsel for the person examined *and to the attorney for the Government*."  (Emphasis added.)  Nothing in the language of the statute provides for the appointment of firewall counsel over the objection of the government.

- *Fifth Amendment*:  The Fifth Amendment right against self-incrimination is not implicated where the use of statements made by a defendant during a court-ordered evaluation is limited to the court's determination of the defendant's competency.  *See Estelle v. Smith*, 451 U.S. 454, 465 (1981)*; Thompson*, 462 F. App'x at 564.  Assuming that the defendant does not raise, either at the guilt or penalty phase, any defenses based on his mental health, the government agrees that it will not use his statements made to the examiner during the competency evaluation.[7]

- *Sixth Amendment*:  The Supreme Court has squarely held that a defendant's Sixth Amendment right to counsel is not violated as long as the defendant has the opportunity to consult with counsel who has been informed of the "nature and scope" of the evaluation and has been put "on notice" that the government may use that competency exam if he raises a "mental status defense."  *Buchanan v. Kentucky*, 483 U.S. 402, 424-25 (1987); *Estelle*, 451 U.S. at 472; *Thompson*, 562 F. App'x at 564.

---

[7] But if the defendant raises a mental health defense, the government is entitled to use such evidence in rebuttal.  *Kansas v. Cheever*, 571 U.S. 87, 94 (2013); *Tally v. Ortiz*, 252 F. App'x 248, 256 (10th Cir. 2007); *Savino v. Murray*, 82 F.3d 593, 604 (4th Cir. 1996).  As the Supreme Court has explained, "[a]ny other rule would undermine the adversarial process, allowing a defendant to provide the jury, through an expert operating as proxy, with a one-sided and potentially inaccurate view of his mental state at the time of the alleged crime."  *Cheever*, 571 U.S. at 94.  At this stage of the litigation, however, any briefing on the use of such evidence at trial is premature because the defendant has not indicated whether he plans to introduce mental health evidence as a defense.  *See Thompson*, 462 F. App'x at 564 ("If [a defendant in a capital case] is concerned that the government will attempt to introduce any incriminating statements [made during the competency evaluation] at the guilt or penalty phase of his trial, his remedy would be a motion in limine at that time.").

- *Attorney-client privilege/ex parte hearing*:  The defendant appears to suggest that a portion of the competency hearing should be held ex parte because counsel may provide their views on the defendant's competency.  However, as Chief Judge Brimmer explained in *Maxton*, defense counsel in a competency proceeding is implicitly authorized "to reveal basic facts and observations underlying his belief that [the defendant] is not competent to stand trial" without "the wholesale waiver of attorney-client privileges or disclosure of attorney-client communications."  2013 WL 6800695, at *3; *see also*, *e.g.*, *Darrow v. Gunn*, 594 F.2d 767, 774 (9th Cir. 1979) (holding that "attorney's observation and impression of the mental condition of his client are not privileged.").

- *Attendance by defense counsel*:  The Supreme Court has recognized that a defendant does not have the right to have counsel present.  *Estelle v. Smith*, 451 U.S. 454, 471 n.14 (1981); *see also United States v. Byers*, 740 F.2d 1104, 1116-20 (D.C. Cir. 1984).  Indeed, "an attorney present during the psychiatric interview could contribute little and might seriously disrupt the examination." *Estelle*, 451 U.S. at 471 n.14 (internal quotation marks omitted).

## CONCLUSION

The Court should grant the government's motion for a competency evaluation.

Dated:  January 10, 2020

Respectfully submitted,

JASON R. DUNN
United States Attorney

By:  s/ *Pegeen D. Rhyne*
Pegeen D. Rhyne
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax:  303-454-0406
E-mail:  Pegeen.Rhyne@usdoj.gov

By:  s/ *Rajiv Mohan*
Rajiv Mohan
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax:  303-454-0406
E-mail:  Rajiv.Mohan@usdoj.gov

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division
U.S. Department of Justice

By:  s/ *Mary J. Hahn*
Mary J. Hahn
Trial Attorney
Civil Rights Division, Criminal Section
4 Constitution Square
150 M Street, N.W./7.1108
Washington, D.C. 20002
Telephone: 202-305-0921
Fax:  202-514-6588
E-mail:  Mary.Hahn@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case:

Natalie Stricklin Natalie_Stricklin@fd.org
Rick Williamson Rick_Williamson@fd.org
Veronica Rossman Veronica_Rossman@fd.org
Mark F. Fleming mark@markfleminglaw.com
Andrea L. Luem Andrea@luemlaw.com


By:  s/ *Rajiv Mohan*
Rajiv Mohan
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax:  303-454-0406
E-mail:  Rajiv.Mohan@usdoj.gov