IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 19-cr-00506-REB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROBERT LEWIS DEAR, JR.,

    Defendant.

---

**UNITED STATES' REPLY IN SUPPORT OF MOTION FOR COMPETENCY EVALUATION**

    The defense asks this Court to declare defendant Robert Lewis Dear, Jr. incompetent without a psychological or psychiatric examination in this case, and to rely instead exclusively on prior state competency evaluations. But this Court should not rest a determination of such consequence—to the victims in this case, to Dear himself—on an abridged record, especially when the prior state evaluations are both outdated and flawed. The defense has not shown how this Court could abuse its discretion merely by ensuring it has complete and current evidence on which to address competency in the first instance in this case. The Court should accordingly order a competency examination.

**ARGUMENT**

    The defense's response has narrowed the issues in dispute. The defense concedes that there is reasonable cause to believe that Dear is incompetent and that a

1

competency hearing is therefore required under 18 U.S.C. § 4241(a).  Yet the defense says that the Court should hold that hearing and declare Dear incompetent without a psychiatric or psychological examination under § 4241(b), and rely instead on state competency evaluations.  This Court should reject that request.

I.     **This Court should exercise its discretion to order a competency examination.**

Section 4241(b) says the Court "may order" a competency examination.  Although discretionary, Congress "contemplate[d] that a psychiatric examination will be routine in virtually all cases in which the court is required to hold a hearing, and although discretion to hold the hearing without a psychiatric examination is provided, the court may not abuse this discretion and refuse to order an examination where the facts warrant an examination."  *United States v. Nichols*, 661 F. Supp. 507, 511 (W.D. Mich. 1987) (quoting S. Rep. No. 225, 98th Cong., 2d Sess. 235) (emphasis omitted).

This Court should exercise its discretion to order an examination here for numerous reasons:  (1) there has not been a competency examination yet in this case and the prior state evaluations are not binding; (2) the prior state evaluations are outdated and suffer from a number of problems; and (3) both the victims in this case and Dear himself have important interests and rights at stake that warrant consideration of competency on a comprehensive record.

A.     **There has not been an examination in this case.**

As the government has explained, there has not yet been an examination in this case, which is reason enough to order one now.  This is a distinct federal prosecution and a contemporaneous examination should be conducted and a report prepared under

the applicable federal statutes.  *See* 18 U.S.C. § 4247(b)-(c).  Such an examination and report would aid the Court in determining whether Dear is "*presently* suffering from a mental disease or defect rendering him mentally incompetent."  *Id.* § 4241(d) (emphasis added).

The prior state determination does not change matters.  The defense concedes that this determination is not binding here.  [Doc. # 64 at 24 (Def. Resp.)].[1]  Rather, as the Eighth Circuit has explained, that prior determination "can only serve as evidence, to be weighed with other evidence on the question of competency."  *Rose v. United States*, 513 F.2d 1251, 1256-57 n.5 (8th Cir. 1975).  The defense seeks to use the prior determination not only as evidence here, but also as a barrier to other evidence in the form of a contemporaneous examination.  Nothing in § 4241 or the cases interpreting it suggests that a prior state determination is to play so consequential a role.

The defense's concerns about competency "shopping" are misplaced.  [Doc. # 64 at 23].  In *United States v. Martinez-Haro*, 645 F.3d 1228, 1233 (10th Cir. 2011), the Tenth Circuit affirmed a second examination within a single prosecution and observed in passing that it "would be concerned *if a defendant was found incompetent* and the district court *then* allowed the Government to conduct more competency examinations only for the purpose of 'shopping' for a psychologist or psychiatrist who would conclude that the defendant was competent."  (Emphases added.)

That concern is absent here, where Dear has not been found incompetent in this

---

[1] The page citations to the defense's response are to the internal page numbers assigned in the document.

case and the government seeks only to ensure that the Court has sufficient information to address competency in the *first* instance.  Indeed, it is possible that an examination under § 4241(b) will find that Dear is incompetent.  That is to say, the government is not shopping for a particular result.  It is seeking to ensure that the Court's determination rests on a complete record in the first place.  To that end, *Martinez-Haro* endorsed the district court's discretion to "ensur[e] that it has sufficient information" to determine competency.  645 F.3d at 1233.  An examination under § 4241(b) serves that end.

Indeed, the cases the defense cites involved at least one competency examination in the federal case.  *See United States v. Hess*, 279 F. App'x 652, 653 (10th Cir. 2008) ("[A] forensic psychologist with the Federal Bureau of Prisons conducted a psychological evaluation[.]"); *United States v. Prince*, 938 F.2d 1092, 1094 (10th Cir. 1991) ("The judge then ordered a psychological examination[.]").  The defense cites no case where a federal court addressed competency entirely on the basis of evidence imported from some other proceeding.

Also misplaced are the defense's concerns about comity.  [Doc. # 64 at 25]. This is a separate prosecution brought in the court of a separate sovereign.  This Court has an obligation to address competency independently.  Comity certainly allows for consideration of the state determination as evidence.  But the defense's approach to comity is to avoid the possibility of conflict at all costs—and at this point, conflict remains just a possibility—which is to effectively treat the state determination as

4

binding. That is not the law. *Rose*, 513 F.2d at 1256-57 n.5.[2]

In this vein, the defense contends that ordering a federal examination "would undermine the integrity of the ultimate competency determination in this federal death penalty case[.]" [Doc. # 64 at 54]. It is difficult to see how an examination by a court-designated neutral that results in more information—even if it turns out just to confirm the state evaluations—could undermine the integrity of the competency determination in this case. In fact, the opposite is true.

### B. The prior state evaluations are outdated and flawed.

This Court should also order an examination because the prior state evaluations are stale and suffer from numerous problems. Thus, even if this Court views the government's request as one for a "second" examination that requires "legitimate reasons," these problems with the state evaluations more than suffice.

In this respect, the defense reprises its argument that under *Martinez-Haro* "there must be a legitimate reason to order further inquiry into the competency of a defendant already found incompetent." [Doc. # 64 at 23]. Again, however, Dear has not already been found incompetent in this case, which distinguishes *Martinez-Haro*. In any event, the standard from that case is not nearly as restrictive as the defense suggests.

In *Martinez-Haro*, the Tenth Circuit merely affirmed the district court's exercise of discretion to order a second examination because "there were legitimate reasons" to do so—which is simply another way of saying the district court did not abuse its discretion.

---

[2] Given that this Court must make its own determination of competency, the defense's reliance on standards from the federal habeas context—where a petitioner collaterally attacks a state conviction itself—is not "useful by analogy." [Doc. # 64 at 40 n.26].

5

645 F.3d at 1233 (addressing "whether the district court abused its discretion by ordering a second competency examination").

In so holding, the Tenth Circuit did not limit the district court's discretion to order a second examination in the way the defense suggests. In fact, the court made clear that it was "*not* saying that there must be a problem with the first examination to find that a second examination is warranted[.]" 645 F.3d at 1233-34 n.2 (emphasis added). In *Martinez-Haro*, it sufficed that the first examination was conducted through an interpreter rather than a Spanish-speaking psychologist, and that the latter "may give the Court more complete information to base its opinion regarding competency on." *Id.* at 1233 (citation omitted). The psychologist there also "questioned her own opinion and expressed a willingness to revise her conclusion based on further testing." *Id.* Similarly, the Sixth Circuit has found a second examination appropriate when, "[d]uring the first evaluation … [the defendant] was uncooperative" and one psychological test "produced invalid results" as a result of that uncooperativeness. *United States v. Pina*, 724 F. App'x 413, 419 (6th Cir. 2018); *see also id.* at 416.

These cases illustrate that, even if legitimate reasons are required, the possibility that another examination may yield more complete information is a legitimate reason. There do not even need to be any problems with the prior examination. That means most of the defense's response—which generally seeks to defend the prior state determination—is beside the point as to the question before the Court and would properly be raised in an actual competency hearing, where the weight of the prior state determination as evidence would be at issue. *See Rose*, 513 F.2d at 1256-57 n.5.

The problems the government has identified with the state evaluations are legitimate reasons to order an examination under § 4241(b).

To begin with, the prior evaluations are outdated. As the government has explained, the initial evaluation took place on March 7, 2016. Although Dear was re-evaluated every 90 days while he was at CMHIP, he largely refused to participate in the re-evaluations. Since the initial evaluation, he has met with evaluators only five times.[3] In contrast, he refused to meet with them nine times (sometimes after brief conversation).[4] Even when he did meet with evaluators, Dear often did not fully participate. [*See* Def. Resp. Ex. C-2 at INV_55456 ("Dear was very vocal in stating he would not participate in an evaluation of his competency.")]. The last time Dear met with any evaluator was January 2019, more than a year-and-a-half ago. He refused every attempt thereafter. [Def. Resp. Ex. C-15 at INV_60951 & 60953].

The passage of time from when Dear last met with any evaluator is sufficient by itself to warrant a contemporaneous examination. There is no dispute that competency

---

[3] *See* Def. Resp. Exs. C-2 at INV_55456 (July 2016); C-5 at INV_55635 (April 2017); C-8 at INV_56504 (January 2018); C-10 at INV_56868 (June 2018); C-12 at INV_59291 (January 2019).

The page citations to the defense's conventionally submitted exhibits are to the "INV" bates number, where possible. The number itself—*e.g.*, "55456"—can be searched for in the PDF to reach the relevant page.

[4] *See* Def. Resp. Exs. C-3 at INV_55450 (October 2016); C-4 at INV_55959 (January 2017); C-6 at INV_56070 (July 2017); C-7 at INV_56511 (October 2017); C-9 at INV_56781 (March 2018); C-11 at INV_58310 (September 2018); C-13 at INV_59298 (April 2019); C-14 at INV_59305 (July 2019); C-15 at INV_60591 (October 2019).

"cannot be rendered an immutable historical fact, for the mental condition of an accused may change drastically in a matter of months."  *Rose*, 513 F.2d at 1256 n.5.  And there is all the more reason to order an examination here given Dear's lack of participation in the re-evaluations overall, which dilutes their applicability to the present.  *See Pina*, 724 F. App'x at 419 (that defendant was "uncooperative" justified new examination).[5]

The defense offers little response.  It contends that the periodic state review hearings and orders are valid under a habeas standard that is neither applicable nor instructive given the broad discretion this Court has to order an examination even when any prior examination is perfectly valid.  *See Martinez-Haro*, 645 F.3d at 1233-34 n.2 ("[W]e are not saying that there must be a problem with the first examination for a court

---

[5] Just as Dear largely refused to participate in the re-evaluations, so too he largely refused to participate in restorative treatment, which rebuts the defense's assertion that the indictment in this case interrupted that treatment.  [*See* Doc. # 64 at 8, 20, 53, 58]. Dear's December 9, 2019, discharge documentation from CMHIP noted that he had "been unengaged in treatment and, not surprisingly, no progress has been made towards restoration."  [Def. Resp. Ex. K at INV_61367-38].  In addition, many of the competency evaluations discuss Dear's refusal to participate in treatment groups and educational programming intended to improve his adjudicative competency.  [*See* Def. Resp. Ex. C-3 at INV_55452 (Oct. 31, 2016) ("Although he has been enrolled in standard psychosocial educational programming, including activities intended to improve his adjudicative competency, he has refused to attend almost all groups and classes."); *see also* Def. Resp. Exs. C-4 at INV_55951; C-5 at INV_55637; C-6 at INV_56068; C-7 at INV_56513; C-8 at INV_56507; C-9 at INV_56783-84; C-10 at INV_56871; C-11 at INV_58313; C-12 at INV_59293; C-13 at INV_59301; C-14 at INV_59307].  The final CMHIP evaluation, dated October 23, 2019, noted that Dear "largely declined to participate in unit-based activities or routinely meet with treatment team members."  [Def. Resp. Ex. C-15 at INV_60954].  Thus, the federal indictment did not interrupt Dear's restorative treatment, since he largely refused to participate in that treatment in the first place.  The issue does not bear on whether this Court should order an examination.

to find that a second examination is warranted."). The defense also contends that there is an "absence of evidence showing any change in Mr. Dear's mental condition." [Doc. # 64 at 48]. But given the importance of competency, this Court can and should do better. If the Court is to find Dear incompetent, it should do so not based on an absence of evidence showing any change from the dated state evaluations, but on affirmative evidence showing no change. Dear's lack of participation since the initial evaluation makes that all the more important.

Apart from staleness, the government has identified three other problems with the state evaluations, each of which warrants an examination under § 4241(b). As an initial matter, the defense contends that these problems are "unsupported by expert advice or fact investigation[.]" [Doc. # 64 at 32]. As shown above, however, even under *Martinez-Haro*, a request for a second examination need not be supported by expert evidence or anything of the sort. If expert evidence were required to order a second examination, then a district court would not have the broad discretion the Tenth Circuit affirmed in *Martinez-Haro*. Rather, it is more than enough to explain why a second examination may result in more complete information on which to determine competency. As the Tenth Circuit put it in *Martinez-Haro*, it was "prudent" for the district court to "ensur[e] that it had sufficient information" to address competency. 645 F.3d at 1233-34; *see also Pina*, 724 F. App'x at 419.

That means this Court need not take up the defense's premature invitation to resolve whether the problems the government has identified are in fact problems. As noted earlier, those are matters for an actual competency hearing, where the Court

9

would have occasion to weigh the prior state evaluations as evidence.  *See Rose*, 513 F.2d at 1256-57 n.5.  For present purposes, it suffices that the government has explained why a federal examination may result in more complete information given the multiple issues with the prior evaluations.

*First*, none of the evaluations were video or audio recorded and Dear himself said before this Court:  "I've begged them at the nut house for four years to have it videotaped, have a tape recorder of these evaluations.  'Oh, we can't do that.  That would be against your rights of privacy.'  … We have nothing to stand on.  This evaluator comes in there, makes up a bunch of lies … and we don't have a videotape to prove our side."  [Doc. # 35-2 at 16-17].  In view of these statements, it is possible that a recorded examination—and both Dr. Park Dietz and the BOP have confirmed that any examination could be recorded—may yield greater cooperation from Dear and thus more complete information for the Court to make its determination.

The defense responds that the government has not shown that "the lack of a recording compromised the state incompetency determination."  [Doc. # 64 at 33].  Again, that is not the standard even under *Martinez-Haro*.  The defense also contends that Dear's statements are a product of his delusions and he "is clearly not qualified to opine on the validity of a process he believes is rigged."  [*Id.*].  But the government is not relying on Dear's statements to attack the validity of the state process.  Rather, the point is that Dear's statements demonstrate that he may be more cooperative in a recorded examination.  That is enough to warrant one.  And the government requests that the Court include in any order for a competency examination a requirement that all

10

clinical interviews be video recorded.

*Second*, the initial interview was halted 90 minutes in as a result of a defense filing, which resulted in a second meeting to complete the evaluation.  Dr. Gray admitted that Dear appeared more suspicious during the second meeting, which may have been due to the interruption of the first.  [Doc. # 36-3 at 249 (also located at Def. Resp. Ex. F-3 at 249)].[6]  Indeed, as the defense points out, Drs. Gray and Grimmett reported that Dear perceived the interruption as "a 'sign' that he said too much, although he ultimately engaged sufficiently to allow for completion of the assessment."  [Doc. # 64 at 36 (quoting Def. Resp. Ex. C-1 at INV_54624)].  The defense maintains that this belief was again the result of Dear's delusions.  But that again misses the point, which is that if Dear thought he said "too much" during the first meeting, he may have held back during the second.  There is thus reason to believe that Dear may be more forthcoming during a federal examination.

*Third*, the state evaluators did not adequately examine whether Dear may have been unwilling to work with defense counsel based on a rational distrust and dislike on account of disagreement over case strategy.  The defense says that the competency standard addresses a defendant's ability to communicate with counsel and that "Dear's 'willingness' is legally irrelevant."  [Doc. # 64 at 38].  But the two are related.  That is to say, if a defendant is merely unwilling to work with counsel, it shows that he is able to do so but chooses not to.  That is the issue which should have been more fully explored

---

[6] Page citations to transcripts conventionally submitted by the defense refer to the internal page number of the transcript itself.

given that, as Dr. Gray noted, Dear "was quite offended that the issue of competency had been raised; and he considered that disrespectful." [Doc. # 36-3 at 252 (also located at Def. Resp. Ex. F-3 at 252)].  The defense cites general testimony and findings from the state proceedings concerning Dear's relationship with counsel. [Doc. # 64 at 38-39].  But the government is not saying that the state evaluators failed to examine the issue entirely, but that they failed to adequately examine this particular aspect.

Notably, during her testimony, Dr. Grimmett stated:  "I don't know how much detail we went into [regarding] what he wants to do vs. what his attorney wants him to do." [Doc. # 36-3 at 199 (also located at Def. Resp. Ex. F-3 at 199)].  Likewise, Dr. Gray testified that Dear did not believe that his attorneys were representing his interests, but Dr. Gray did not explore with Dear "explicitly" what Dear felt was in his interest. [Doc. # 36-3 at 251 (also located at Def. Resp. Ex. F-3 at 251)].  From day one, Dear vehemently disagreed with the case strategy pursued by his state attorneys. [*See* Doc. # 36-3 at 212 (also located at Def. Resp. Ex. F-3 at 212) ("Because in the newspaper Mr. King said I was incompetent the day after our first hearing.  So when you say somebody's incompetent, is that helping my case?  I don't think so.")].  This undeniable conflict regarding case strategy warranted a close examination before a determination was made as to whether Dear was unable, as opposed to simply unwilling, to assist his counsel.

In response to all of these problems, the defense relies on the opinion of Dr. George W. Woods to bolster the state evaluations. [Doc. # 64 at 26-30].  He opines that

12

the evaluations are "unquestionably reliable." [*Id.* at 29]. But Dr. Woods's endorsement of the state evaluations provides no basis to deny a federal competency examination. As explained above, even if the evaluations are reliable, this Court has discretion and reason to order an examination.

Moreover, Dr. Woods's body of work as a neuropsychiatrist demonstrates a strong defense bias in criminal cases generally and capital cases specifically over 30 years. Dr. Woods says that he has been retained as a medical expert regarding competency in over 200 federal criminal cases. [Doc. # 64-2, Ex. A-1 at 2].[7] As he testified in April 2019, however, with just one exception early in his practice he has worked exclusively for the defense. [Ex. 1 at 7 (relevant excerpt of Dr. Woods's testimony in *Florida v. Nelson,* No. 48-2017-CF-15684-A-O)]. As for capital cases, there are no exceptions. *See United States v. Montgomery*, 2014 WL 1516147, at *16 (W.D. Tenn. Jan. 28, 2014) (finding that Dr. Woods's "testimony and conclusions lack credibility in several respects" and noting that "in capital cases Dr. Woods works 'exclusively for the defense'"); *see also id.* (faulting Dr. Woods for relying on another doctor's analysis that the court found to be incomplete.).

Indeed, many courts have found Dr. Woods's testimony and conclusions regarding competency to be unpersuasive. Hence his opinion—which is appropriately considered in an actual competency hearing anyway—provides no basis on which to deny an examination here. *See, e.g., United States v. Fields,* 761 F.3d 443, 468 (5th

---

[7] Page citations to Dr. Woods's expert opinion refer to the pagination designated within his expert opinion.

Cir. 2014) ("Dr. Woods's declaration, executed in 2010, six years after Fields's trial, is not sufficient to establish that the district court's careful and reasoned decision that Fields was competent to waive counsel is debatable."); *Boyde v. Brown*, 404 F.3d 1159, 1166-67 (9th Cir. 2005) (finding Dr. Woods's retrospective opinion about competence to stand trial unpersuasive); *Jones v. Cate*, 2020 WL 353588, at *14 (S.D. Cal. Jan. 21, 2020) (finding Dr. Woods's opinion regarding competence unpersuasive and noting that he "cherry-picks a small segment from Petitioner's trial testimony"); *Johnson v. United States*, 860 F. Supp. 2d 663, 808 (N.D. Iowa 2012) ("Johnson has not presented any persuasive evidence that her increased Zoloft dosage made her incompetent to stand trial, notwithstanding Dr. Woods's post hoc opinions that Johnson was not competent."); *United States v. Battle*, 264 F. Supp. 2d 1088, 1108 (N.D. Ga. 2003) ("[T]he Court remains of the opinion that the reasoning presented by Drs. Johnson and Hazelrigg is more persuasive than that of Dr. Woods, Dr. Davis, and Dr. O'Hagan on the issue of Defendant's competency to stand trial.").

### C. The importance of competency to the victims in this case and Dear himself justifies a federal examination.

The competency determination implicates important interests and rights of the victims in this case, to say nothing of Dear himself—all of which warrants thorough consideration of competency on a complete record with a federal examination.

The victims in this case have the "right to be treated with fairness[.]" 18 U.S.C. § 3771(a)(8). After years of waiting, they have an obvious interest in seeing Dear prosecuted for his crimes. That interest is at stake in the competency determination and they deserve nothing less than an exhaustive process backed by a full record.

14

As for Dear, he has maintained in this prosecution that he is competent, and he has declared that he would like to represent himself. [*See* Doc. # 35-5 at 6]. That is his constitutional right under the Sixth Amendment. *See Faretta v. California*, 422 U.S. 806, 834-36 (1975). A finding that Dear is incompetent to stand trial would preclude him from exercising that right. *United States v. DeShazer*, 554 F.3d 1281, 1288 (10th Cir. 2009). Thus, his Sixth Amendment right too is at stake in the competency determination. This Court should not deny him the opportunity to exercise that right through the abbreviated competency process urged by counsel with whom Dear appears to disagree. *See Raulerson v. Wainwright*, 469 U.S. 966, 970 (1984) (Marshall, J., dissenting from denial of cert.) (Sixth Amendment right is undermined by "forcing the accused to proceed with counsel in whom he has no confidence and whom he may distrust").

\*   \*   \*

There are numerous reasons why this Court should order a federal competency examination. While the defense goes to great lengths to defend the prior state evaluations, it does not explain how this Court could abuse its discretion in ordering a federal examination. It does not show why it would be wrong to have more information or what actual harm would result. Even if a federal examination only confirms the state evaluations, this Court's competency determination would be none the worse for it and all the better. Given the importance of competency, the time that has passed since the state evaluations, and the problems with them, this Court should order a federal competency examination.

## II.     The examination should be conducted by Dr. Park Dietz or the BOP.

If this Court orders a federal competency examination, it can be conducted by Dr. Park Dietz, or given the defense's objection to him, the Bureau of Prisons (BOP).

The defense contends that Dr. Dietz has a conflict of interest that precludes his appointment as the examiner.  In particular, the defense says Dear's state defense counsel retained the services of Dr. Patricia Zapf, who the defense says is an associate of Dr. Dietz.  [*See* Doc. # 64 at 17.][8]

In reality, no conflict exists.  Park Dietz & Associates (PD&A) maintains a list of independent contractors that it may engage to conduct evaluations for specific cases. These independent contractors are not employees of PD&A, and many, including Dr. Zapf, maintain separate practices in which they are free to consult with their own roster of clients.  Other than the cases in which PD&A hires an independent contractor specifically for one of PD&A's cases, PD&A has no financial relationship with the independent contractors, has no knowledge about the clients that have retained any of the independent contractors, and has no access to case files related to clients of the independent contractor.

Here, Dr. Dietz has no financial agreement with Dr. Zapf for either the state or federal case against Dear; had no knowledge that Dr. Zapf had been retained by Dear's

---

[8] The defense also reprises its misleading attack on Dr. Dietz for supposedly providing "false" testimony in *Yates v. Texas*, 171 S.W.3d 215, 222 (Tex. App. 2005). [*See* Doc. # 64 at 17].  As the government previously clarified at the December 13, 2019, hearing in this case [Doc. # 35-2 at 14], the court in *Yates* specifically stated, "the record does not show that Dr. Dietz intentionally lied in his testimony[.]"  171 S.W.3d at 222. Instead, the court noted that Dr. Dietz made a mistake of fact during his testimony.  *Id.* at 221-22.

16

state counsel; and has not discussed Dear with Dr. Zapf.  Indeed, state defense counsel never identified to the state prosecution Dr. Zapf as a potential defense witness or consulting expert, and neither Dr. Dietz nor the federal government were aware, until the latest defense filing, that Dr. Zapf had been retained by state defense counsel.

In any event, given the defense's objection, this Court can appoint a licensed or certified psychiatrist or psychologist with the BOP to conduct the examination.  "The BOP has experience and expertise in the evaluation of competency, and it performs such evaluations on a regular basis."  *United States v. Sampson*, 12 F. Supp. 3d 214, 217 (D. Mass. 2014).

If the Court determines that the examination should by conducted by the BOP, the Court's order should not include any reference to removing, transporting, or committing Dear to a BOP federal medical center for the examination in order to avoid any unintended speedy-trial consequences by triggering the ten-day clock for transportation under 18 U.S.C. § 3161(h)(1)(F).  *See United States v. Turner*, 602 F.3d 778, 784-85 (6th Cir. 2010) (to avoid triggering ten-day transportation clock, government is free to suggest the court not issue an order directing transportation where time is needed for BOP to designate placement); *United States v. McGhee*, 532 F.3d 733, 738 (8th Cir. 2008) (order directing transport starts ten-day transportation clock).

The ten-day transportation rule was "aimed at marshals and the actual process of transportation."  *United States v. Gross*, 2011 WL 5348237, at *3 (E.D. Cal. Sept. 15, 2011).  It was not meant to limit the time needed by the BOP to designate an appropriate facility, with available bed space, to conduct a competency examination.

17

See *Turner*, 602 F.3d at 785.  Once the BOP designates an appropriate federal medical center with available bed space, a BOP official will send an internal order directing that the Marshals transport Dear to the facility.  In the absence of a court order directing transport, this internal order will start the ten-day clock under 18 U.S.C. § 3161(h)(1)(F).  See *United States v. Garrett*, 45 F.3d 1135, 1140 (7th Cir. 1995). [9]

## CONCLUSION

The Court should order a competency examination.

Dated:  August 20, 2020

Respectfully submitted,

JASON R. DUNN
United States Attorney

By:  s/ *Pegeen D. Rhyne*
Pegeen D. Rhyne
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax:  303-454-0406
E-mail:  Pegeen.Rhyne@usdoj.gov

By: s/ *Rajiv Mohan*
Rajiv Mohan
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax:  303-454-0406
E-mail:  Rajiv.Mohan@usdoj.gov

---

[9] *Garrett* refers to 18 U.S.C. § 3161(h)(1)(H), which is where the speedy-trial provisions regarding transportation and the ten-day rule used to be located.

        ERIC S. DREIBAND
        Assistant Attorney General
        Civil Rights Division
        U.S. Department of Justice

        By:  s/ *Mary J. Hahn*
        Mary J. Hahn
        Trial Attorney
        Civil Rights Division, Criminal Section
        4 Constitution Square
        150 M Street, N.W./7.1108
        Washington, D.C. 20002
        Telephone: 202-305-0921
        Fax:  202-514-6588
        E-mail:  Mary.Hahn@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on August 20, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case:

| | |
|---|---|
| Natalie Stricklin | Natalie_Stricklin@fd.org |
| Rick Williamson | Rick_Williamson@fd.org |
| Veronica Rossman | Veronica_Rossman@fd.org |
| Mark F. Fleming | mark@markfleminglaw.com |
| Andrea L. Luem | Andrea@luemlaw.com |

                                                    By:  s/ *Rajiv Mohan*
                                                    Rajiv Mohan
                                                    Assistant U.S. Attorney
                                                     U.S. Attorney's Office
                                                     1801 California Street, Suite 1600
                                                     Denver, CO 80202
                                                     Telephone: 303-454-0100
                                                     Fax:  303-454-0406
                                                     E-mail:  Rajiv.Mohan@usdoj.gov