1

```
 1                    UNITED STATES DISTRICT COURT
                         DISTRICT OF COLORADO
 2

 3   UNITED STATES OF AMERICA,    .   Case No. 19-cr-00506-REB-1
                                  .
 4            Plaintiff,          .
                                  .   Alfred A. Arraj US Courthouse
 5   vs.                          .   901 19th Street
                                  .   Denver, CO  80294
 6   ROBERT LEWIS DEAR, JR.,      .
                                  .
 7            Defendant.          .   November 20, 2020
     . . . . . . . . . . . . . .  .   1:34 p.m.
 8

 9      TRANSCRIPT OF PROCEEDINGS HELD BEFORE THE HONORABLE
          KRISTEN L. MIX, UNITED STATES MAGISTRATE JUDGE
10

11   APPEARANCES:

12   For the Plaintiff:         United States Attorney's Office
                                By:  Pegeen D. Rhyne
13                              1801 California Street
                                Suite 1600
14                              Denver, CO  80202
                                (303) 454-0323
15
                                U.S. Department of Justice
16                              Civil Rights Division
                                By:  Mary J. Hahn
17                              150 M Street N.E.
                                Washington, DC  20002
18                              (202) 305-0921

19   For the Defendant:         Federal Public Defender
                                By:  Natalie G. Strickland
20                              By:  Veronica S. Rossman
                                633 17th Street, Suite 1000
21                              Denver, CO  80202
                                (303) 294-7002
22

23

24

25
```

```
 1   Appearances continued:

 2   For the Defendant:          Law Office of Andrea L. Luem
                                 By:  Andrea L. Luem
 3                               400 South Fourth Street
                                 Suite 500
 4                               Las Vegas, NV  89101
                                 (702) 575-0481
 5
                                 Law Offices of Mark F. Fleming
 6                               By:  Mark F. Fleming
                                 1470 Encinitas Boulevard
 7                               Suite 133
                                 Encinitas, CA  92024
 8                               (619) 300-6202

 9   Court Recorder:             Clerk's Office
                                 U.S. District Court
10                               901 19th Street
                                 Denver, CO  80294
11
     Transcription Service:      AB Court Reporting & Video
12                               216 16th Street, Suite 600
                                 Denver, CO  80202
13                               (303) 296-0017

14   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.
15

16

17

18

19

20

21

22

23

24

25
```

1                    (Time noted:  1:34 p.m.)

2           THE COURT:  Good afternoon.  Court is in session.

3           Case number 19-cr-00506, United States of America

4    versus Robert Lewis Dear, Junior.

5           Let's have counsel enter appearances, please,

6    starting with counsel for the Government.

7           MS. RHYNE:  Good afternoon, Your Honor.  Pegeen

8    Rhyne and Mary Hahn for the Government.

9           THE COURT:  Good afternoon.  And counsel for the

10   Defendant, go ahead.

11          MR. FLEMING:  Yes, Your Honor.  Good afternoon.

12   Mark Fleming on behalf of Mr. Robert Dear.  And Mr. Dear is

13   appearing via video with co-counsel Andrea Luem.  And in the

14   room with me, Your Honor, are two other counsel:  Veronica

15   Rossman and Natalie Strickland.

16          And we have Rick Knight, Ray Knapp, a mitigation

17   expert, and Mr. Ted Langley who is going to help us with any

18   technical problems we might encounter.

19          THE COURT:  All right.  Good afternoon, counsel.

20          I want to make one statement prior to proceeding

21   with the substance of this hearing on the Government's motion

22   for a competency evaluation.

23          And this relates to any individuals who may be

24   listening on the public line for this hearing.  I want to

25   make members of the public aware that the Local Rules of this

1   Court, and in particular Local Criminal Rule 57.3, prohibit

2   the use of any recorders to attempt to record any portion of

3   this hearing.

4           The Local Rule also specifies that violation of

5   this Rule by recording any portion of the hearing may

6   constitute contempt of Court, punishable by incarceration and

7   by the imposition of fines, costs, and attorneys' fees.

8           Therefore, I am reminding members of the public

9   that no portion of this hearing may be recorded.  Thank you.

10           All right, having made that admonishment, I'd like

11   to proceed to the merits of the hearing according to my order

12   at docket 67.  This is a hearing on the Government's motion

13   for a competency evaluation at docket number 13.

14           Counsel, I know that you are reading each other's

15   pleadings very carefully, as the Court has done, and I also

16   know that it is clear from the pleadings filed by the

17   Defendant so far that the Defendant stipulates that there's

18   reasonable cause to believe that the Defendant is mentally

19   incompetent.

20           Thus, that 18 U.S.C. section 4241(a) requires that

21   the Court hold a competency hearing.

22           I don't see any need to further address section

23   4241(a), therefore, with respect to the Defendant's

24   stipulation in that regard.

25           The purpose of this hearing is really to help the

1    Court determine, under section 4241(b), whether a subsequent

2    competency evaluation is necessary.

3         I have thoroughly reviewed the pleadings and

4    understand the arguments of counsel with respect to whether a

5    further competency evaluation should be required.

6         Nevertheless, I want to give counsel an

7    opportunity to argue that matter to the extent that they wish

8    to do so today.

9         So we will start with the Government, who has

10   requested the competency evaluation, and whenever you are

11   ready, Ms. Rhyne.

12        MS. RHYNE:   Thank you, Your Honor.   As the Court

13   noted, the question before the Court today is whether you get

14   discretion in ordering a current competency examination for

15   use in making this competency determination in the case.

16        In November before this Court, the Court could not

17   abuse its discretion in ordering that examination.

18        But the Defendant argues that the Court should

19   immediately proceed to a competency hearing without the

20   benefit of a current competency examination, and instead find

21   Mr. Dear incompetent based entirely on the now very outdated

22   State examination.

23        The last time Mr. Dear met with any State

24   evaluator was January of 2019, nearly two years ago.   And Mr.

25   Dear has been in Federal custody for almost an entire year.

1  In two weeks, it will have been an entire year.

2          So all of the State Hospital records about Mr.

3  Dear are extremely outdated, as well.

4          And the law is clear that competency is not an

5  amenable historical fact.  We see in the *Rose* case that "the

6  mental condition of an accused may change dramatically in a

7  matter of months."

8          And Doctors Gray and Grimmett admitted the same

9  thing during their testimony at the original competency

10  determination -- the original competency hearing.

11          So based on this, the outdated State examination

12  cannot adequately inform this Court about Mr. Dear's present

13  condition.

14          THE COURT:  Ms. Rhyne, I don't mean to interrupt

15  you, but let me ask you a question with respect to your

16  statement about a couple of the State doctors admitting that

17  Mr. Dear's mental health could change rapidly.

18          I have read, as I said, the pleadings.  And as I

19  understand the affidavits submitted by the Defendant from the

20  doctors who conducted the State competency evaluations, each

21  one of them states something along the lines that spontaneous

22  remission of the condition with which they have diagnosed Mr.

23  Dear is extremely unlikely, and that Mr. Dear has not

24  received any treatment subsequent to his coming in to Federal

25  custody.

1          So in light of that, would not it be appropriate

2    for the Court to presume that Mr. Dear's mental health

3    remains the same as it did at the time of the State

4    competency evaluation?

5          MS. RHYNE:  It would not, Your Honor.  Doctors

6    Gray and Grimmett said the same thing in their very first

7    evaluation dated March 7, 2016.  They said that based on what

8    they perceived to be a long-standing condition that they

9    determined him to have, his condition was not likely to

10   spontaneously remit.

11         Despite having offered that opinion in their very

12   first evaluation, two months later at the competency hearing

13   they both testified that they couldn't tell the Court how

14   long their competency evaluation would be good for.

15         And this is at docket 36-3, page 221-222.  Doctor

16   Gray testified:  "Competency has to do with an individual's

17   current functioning.  And people change over time.  Even

18   people with serious mental illness will -- the symptoms that

19   they experience will wax and wane over time."  He said that

20   even after he opined that Mr. Dear was unlikely to

21   spontaneously remit.

22         That remains true today.  And the fact that they

23   are using this unlikely to spontaneously remit is a

24   substitute for current evidence is not enough for this Court

25   to find what Mr. Dear's present condition is.

1          Doctor Grimmett testified the same at page 167 of

2    docket 36-3.  She stated:  "It's very hard to measure how

3    long a competency opinion is good for."

4          That is their expert opinion, as testified to

5    under oath, and that is the law as I see it in the *Rose* case.

6          Have I answered your question, Your Honor?

7          THE COURT:  Yes, you have.  Thank you.

8          MS. RHYNE:  Thank you.  So given that the question

9    before the Court that a competency hearing be, whether there

10   is a preponderance of the evidence to show that Mr. Dear's

11   condition presently shows that he suffers from a mental

12   disease or defect that renders him incompetent, the Court

13   should make that determination on a current and complete

14   record that includes a current competency examination.

15          It is frankly absurd that the defense is urging

16   the Court to go forward on such an outdated record.

17          Towards the end of their brief, the defense

18   appears to acknowledge this and attempts to cure the

19   staleness problem of their evidence, so they base it entirely

20   on their own personal observations.  These sorts of

21   observations of Mr. Dear between December 2019 and July 2020.

22          But the personal observations of defense counsel

23   have not been assessed by a neutral court evaluator.  And

24   while the cases say that defense counsel's opinions about

25   whether their client is incompetent should be considered as a

1   factor in evaluating competency, none of the cases suggest

2   that defense counsel's opinion alone should be determinative

3   or, as they are attempting for you to hear, that it should

4   serve as a basis to block current evidence in the form of a

5   current competency examination.

6          In fact, their attempt to do so is extraordinary.

7          THE COURT:  Ms. Rhyne, I'm sorry to interrupt you

8   again.  I have a question about that statement, as well.

9          I understand the Government's argument with

10  respect to defense counsel's personal observations.

11         Are there cases that essentially say that defense

12  counsel's personal observations of the Defendant, and their

13  personal conclusions, if any, with respect to the Defendant's

14  mental condition, must be validated somehow through expert

15  testimony in order for the Court to consider those

16  conclusions?

17         MS. RHYNE:  Your Honor, I don't think it's ever

18  presented in quite that manner.  I think when the cases

19  discuss defense counsel's observations, it's in the context

20  of whether that should trigger a competency hearing in the

21  first instance.  And when a defense attorney says, "I believe

22  my client has mental competency issues," the Court should err

23  on believing those opinions and holding the hearing.

24         But no where does it say the hearing itself should

25  be based on the defense counsel's observations, as opposed to

1    substantive evidence in the form of a competency examination.

2              I haven't seen any case that says defense

3    counsel's opinion that a defendant has mental competency

4    issues should be used instead of an examination.

5              THE COURT:  I understand.  And what I understood

6    you to be saying previously was that essentially the Court

7    can disregard Defendant's counsel's observations of

8    Defendant's behavior because those observations have not been

9    essentially validated by an expert, a psychologist or

10   psychiatrist who is qualified to render an expert opinion

11   with respect to the Defendant's competence.

12             Is that your argument, or not?

13             MS. RHYNE:  I don't believe the Court should

14   disregard it.  What the Court should not do is use it as a

15   basis to block the current competency examination, and that's

16   what they're attempting to do.

17             So at the competency hearing itself, the Court can

18   consider those personal observations and a neutral Court-

19   appointed evaluator can consider those observations, but they

20   should not serve as a roadblock to obtaining professional

21   evidence regarding Mr. Dear's current competency.

22             And that's the Government's point of view, that in

23   the adversarial system the defense counsel's personal

24   opinions shouldn't be something that blocks current evidence.

25   They are not professionals.  They are psychiatrists.  And

1   they are not -- excuse me.  When I say "professionals" I

2   didn't mean they weren't lawyers, but they're not

3   professional psychiatrists or psychologists.  And they

4   certainly are not Court-appointed neutrals, so they shouldn't

5   have a determinative role in whether the Court orders an exam

6   at this point in time.

7            THE COURT:  Thank you.

8            MS. RHYNE:  Thank you.  The defense concedes that

9   the State Court's prior determination that Mr. Dear was

10  incompetent is not binding on this Court, and that this Court

11  has an independent obligation to make a competency

12  determination.

13           The case law says that a prior State determination

14  is simply evidence that should be weighed at that competency

15  hearing, and it should be weighed against the results of a

16  current competency examination.

17           Now, while the Statute says that ordering that

18  examination is discretionary, the Statute clearly

19  contemplates that that is what should happen in a case like

20  this where it is disputed.

21           If the current exam were to find Mr. Dear

22  competent, then what we would have is a robust competency

23  hearing where the merits of both the State and Federal exams

24  were scrutinized, compared, dissected, and put to the Court

25  for its determination about which it finds to be more

1  persuasive and probative.

2          If a current exam concurs with the State

3  examination, then the competency hearing will likely be very

4  short.

5          But none of the cases cited by the defense support

6  their argument that the Court should base its entire

7  competency determination based on the now very outdated State

8  examinations.  To the contrary, --

9          THE COURT:  Ms. Rhyne, excuse me again for

10  interrupting.

11          In reviewing the State competency evaluations, I

12  noted, as the Government did, a number of occurrences when

13  Mr. Dear refused to participate, essentially, in an update of

14  the evaluation being conducted at the Colorado Mental Health

15  Institute.

16          Is the Government aware of any cases that address

17  the refusal or failure of a defendant to participate in a

18  competency evaluation in terms of how that impacts the

19  Court's decision about a second competency evaluation?

20          MS. RHYNE:  Yes, Your Honor.

21          MR. DEAR:  I still refuse.  I still refuse.

22          MS. RHYNE:  Your Honor, we did cite that case in

23  our brief where the Court found that the lack of cooperation

24  in the first examination warranted a second examination so

25  that it would yield more complete information.

1          And while Mr. Dear is indicating that he still

2  refuses, perhaps he will see the value of cooperating to

3  prove the competence that he says he has.  This is his

4  opportunity to do so.  And we will not know until we know,

5  but this is his one chance to cooperate and prove that he is

6  competent.

7          And so I am looking for --

8          MR. DEAR:  Five years.  Justice delayed is justice

9  denied.

10          THE COURT:  Thank you, Mr. Dear.

11          MR. DEAR:  Five years.

12          THE COURT:  Ms. Rhyne, are you referring to your

13  reply brief or your original motion?

14          MS. RHYNE:  I apologize, Your Honor.  I am

15  referring to docket 56, which is our second reply brief filed

16  on August 20th of 2020.

17          THE COURT:  Thank you.  You don't need to spend

18  the time today to find the citation.  I'll look for it.  I

19  appreciate it.

20          MS. RHYNE:  Thank you, Your Honor.  So yes, that

21  is where they determined that the lack of cooperation did

22  indicate that a subsequent examination would yield more

23  complete information for the Court to consider.

24          So based on the cases that defense counsel

25  themselves cite, it is the norm that in a Federal prosecution

1  he would get at least one examination conducted before a

2  competency determination was made.

3          And we see from the *Maples* case, which is at 66 F.

4  Supp. 507, page 511, the Legislative history cited there

5  states that a District Court can abuse its discretion by

6  refusing to order a competency examination where the facts

7  warrant one.

8          But there is no similar case -- pardon me, go

9  ahead, Your Honor.

10          THE COURT:  I have a question for you with respect

11  to the issue we were just discussing.

12          Is the case that you were referring to in your

13  reply brief *United States v. Pena,* the Sixth Circuit case

14  from 2018, referenced on page 6 of docket 66?  This is, I

15  believe, the case you cite with respect to the Defendant's

16  failure to cooperate.

17          MS. RHYNE:  That is correct, Your Honor.

18          THE COURT:  All right, thank you.  Please go

19  ahead.

20          MS. RHYNE:  Thank you, Your Honor.  So the

21  Legislative history in the *Nichols* case indicates that a

22  court can abuse its discretion in refusing to order the

23  examination where one is warranted, but there isn't a case

24  going the other way saying that a court abuses its discretion

25  by ordering the exam where the court believes it would be

1    helpful in making a competency determination.

2              So caution and prudence weighs heavily in favor of

3    this Court ordering an examination.

4              The competency determination in this case is of

5    critical importance to both victims and to Mr. Dear himself.

6    The victims deserve to see this case move forward.  Many of

7    them have attended every single hearing, and many of them are

8    attending via the public access line today.  And just because

9    we can't see them in Court, we absolutely cannot lose sight

10   of them and how important it is to them that this case move

11   forward.

12             And Mr. Dear has the right to be sure that he's a

13   competent adult under the law unless a complete and current

14   record shows that he is not competent of the law.

15             Mr. Dear has also asserted his right to represent

16   himself, which is his Constitutional right under the Sixth

17   Amendment.  Again, unless a complete and current record shows

18   that he is not competent to assert that right.

19             Given the rights at stake here today, that the

20   victims and Mr. Dear both deserve to ensure that the Court

21   has a complete record, including a current competency

22   examination upon which to make its competency determination.

23             And I believe it is important to emphasize that

24   this is the first request by the Government in this Federal

25   prosecution for an examination.  I know the defense insists

1   that this is a subsequent exam, that there's a whole history

2   of exams, but that history exists in a separate prosecution

3   by a separate sovereign.  This is the Government's first

4   request.

5           But even if the Court were to entertain the

6   defense theory, the *Martinez-Haro* case on which they rely so

7   heavily, only requires that this Court find that a current

8   exam would provide more complete information for the Court to

9   make its determination.  The Government is absolutely not

10  required to prove that the prior State evaluations were

11  invalid or incompetently done.

12          At footnote 2, the *Martinez-Haro* case specifically

13  stated:  "We are not saying that there must be a problem with

14  the first exam in order for the Court to find that a second

15  is warranted."

16          THE COURT:  Nevertheless, Ms. Rhyne, I've read

17  *Martinez-Haro* many times, and understand it, I believe.  You

18  must concede that the specific reasons relied on by the Tenth

19  Circuit in *Martinez-Haro* for endorsing the District Court's

20  decision to allow a second evaluation were that the doctor

21  who performed the initial evaluation there specifically

22  recommended further testing of the defendant, and questioned

23  her own opinion, according to the Tenth Circuit.

24          Those reasons for justification of a second exam,

25  or a subsequent exam, or a first exam, whatever you want to

1    call it for purposes of this case as a Federal sovereign, do

2    not exist in this case.  Isn't that right?

3              MS. RHYNE:  You are right, Your Honor.  The fact

4    pattern here is different, but the illustrative part of

5    *Martinez-Haro* is to underscore the Court's discretion in the

6    findings it must make.  It doesn't have to find that there is

7    a problem.  It need only find that a current examination

8    would be helpful.

9              And the reason it would be helpful, particularly

10   in this case:

11             One, the prior exams are so outdated; and

12             Two, the three problems that the Government

13   articulated in its reply brief.

14             And again, we don't have to prove, as the defense

15   suggests, that these problems render those opinions to be

16   invalid.  We just have to show how a Federal exam, conducted

17   differently, would improve the situation and provide more

18   complete information.

19             THE COURT:  Ms. Rhyne, just so that you understand

20   where I'm coming from, I thoroughly understand the issue with

21   respect to the currency of the State examinations.  I intend

22   to ask defense counsel more questions about the series of

23   events that occurred with respect to the State evaluation.

24             I understand the Government's position that the

25   initial evaluation of Mr. Dear occurred in March of 2016, and

1    the last time that he met with the evaluators was January of

2    2019, that he has refused every attempt by the State

3    evaluators to meet with him since that time, and that,

4    therefore, the competency evaluations conducted by the State

5    are not current.

6           I understand that argument, and I don't believe

7    it's necessary for you to dwell any further on that.  Thank

8    you.

9           MS. RHYNE:  Thank you, Your Honor.  I'll move then

10   to the three issues that we cite in our brief.

11          The first is that the exams that the State were

12   not video recorded.  This is an easy one to fix.  Mr. Dear

13   told the Court how he begged for these exams to be video

14   recorded, and how much it upset him that they were not.

15          And the clinical interviews in the current

16   examination can and should be video recorded.  We ask the

17   Court to include that in its order.  And if that can make Mr.

18   Dear more comfortable and cooperative, it should absolutely

19   be done.

20          THE COURT:  Ms. Rhyne, I'm sorry to interrupt you.

21          MR. DEAR:  Do you know that I did seven hours of

22   videotapes with the cops the night I was arrested?  I got

23   that on tape.  I admitted to everything to the Feds, and they

24   are trying to silence this case, ,through me back in the nut

25   house, so they don't want the truth to come out about the

1  Feds, the FBI, and their crimes.

2          THE COURT:  Thank you, Mr. Dear.  Ms. Rhyne, let

3  me ask you what the Government's position is about, you know,

4  a potential event in this case.  And to the extent that the

5  Government is not in a position to answer my question now, I

6  understand that.

7          But because I have you here, I want to ask the

8  question nevertheless.

9          There is, I think, a rather well documented record

10  from the State evaluations about Mr. Dear's refusal to

11  participate in certain of the examinations and meetings that

12  occurred in accordance with that evaluation.  Of course,

13  there is no guarantee that should the Court order another

14  evaluation that Mr. Dear will cooperate.

15          What will the Government's position be if a

16  subsequent evaluation is ordered and the Defendant continues

17  to refuse to cooperate?

18          MS. RHYNE:  Your Honor, that point I think -- I

19  believe that the evaluators will go ahead and conduct an

20  examination to the best of their ability based on collateral

21  information.

22          And when we see that opinion, we'll understand

23  what the merits are and how that might stack against the

24  State case -- State examination.

25          So I guess if the Court is asking absent his

1   cooperation can there still be a valid examination?  The

2   answer, I believe, is yes.  And I think that's what

3   clinicians would say.

4          Would it be more useful if he cooperated and would

5   he have a better chance of proving his own competency if he

6   cooperated?  I think the answer there is yes.

7          THE COURT:  All right, thank you.

8          MS. RHYNE:  Thank you.  The second problem that

9   the Government articulated in its brief is at that initial

10  clinical interview, which happened all the way back in

11  January of 2016, was abruptly halted after 90 minutes as a

12  result of a defense motion.

13         And Doctor Gray admitted during his testimony that

14  Mr. Dear was more suspicious during the second interview, and

15  the defense concedes in their response that Mr. Dear viewed

16  that interrupt as a sign that he had said too much.

17         Clearly that interruption, which was a procedural

18  irregularity, it shouldn't have happened, it impacted the

19  evaluation.

20         A current Federal exam would not have a similar

21  interruption, and has a greater success of having a more fair

22  and complete evaluation.

23         Finally, and importantly, the State evaluators

24  failed to adequately consider whether Mr. Dear was simply

25  unwilling, as opposed to unable, to talk to his defense

1  counsel based on a rational distrust and dislike of them,

2  resulting from their strategic disagreement over what should

3  happen with his case.

4          In the State case, Mr. Dear disagreed vehemently

5  with how the State counsel thought his case should proceed.

6  In fact, Doctor Gray admitted during his testimony that Mr.

7  Dear found it quite offensive that the issue of his

8  competency was raised, and that he believed that to be very

9  disrespectful.

10          But Doctors Gray and Grimmett admitted that they

11 didn't really delve into that disagreement over case

12 strategy.  Doctor Gray testified -- excuse me, Doctor

13 Grimmett testified:  "I don't know how much detail we went

14 into regarding what he wanted to do versus what his attorney

15 wants him to do."

16          And Doctor Gray testified that Mr. Dear did not

17 believe his attorneys were working in his best interests, but

18 that he didn't ask Mr. Dear explicitly what Mr. Dear believed

19 was in his best interests.

20          MR. DEAR:  Yes.  Do you know that I want to get

21 this on record?  Do you know those State lawyers met with

22 Doctor Gray in the hallway, and they did a "high five" out in

23 the hall.  And the prosecutor in the State said "why are you

24 doing a high five with his attorneys and the doctor there?"

25 Because it was all collusion and a conspiracy to put me in

1   the nut house, forcibly drug me.  And that's what's going on.

2          THE COURT:  Thank you, Mr. Dear.  Go ahead, Ms.

3   Rhyne.

4          MS. RHYNE:  So based on this strategy disagreement

5   that happened from day one, couldn't resolve Mr. Dear's

6   fears, that if the attorney who is assigned to you tells you

7   that you're incompetent and then refuses to listen to your

8   ideas about case strategy, would you trust that attorney?

9   Would you believe that that attorney was working in your best

10  interests?  And, if not, would you choose to work with that

11  attorney?

12         Given this undeniable and profound conflict based

13  on case strategy, it should have been examined more carefully

14  before the State evaluators determined that Mr. Dear was

15  unable, as opposed to simply unwilling, to assist his

16  counsel.

17         Finally, for purposes of determining whether a

18  current exam should be ordered, this Court should disregard

19  entirely the opinions offered by Doctor Woods.  They are not

20  relevant to the question before the Court today, because,

21  again, all he did was endorse the validity of the State

22  examination, and the Government does not have to prove that

23  those examinations were invalid in order for this Court to

24  find that a current exam would be useful.

25         Moreover, Doctor Woods' body of work as a

1    neuropsychiatrist demonstrates a strong defense bias in

2    criminal cases, and capital eligible cases in particular.

3         Based on that defense bias, his opinions should

4    not be serving to block current evidence in the form of a

5    current examination.

6         Clearly, the defense, including Doctor Woods, are

7    concerned that a current exam will find Mr. Dear competent.

8    That is why they are arguing so strongly against it, when the

9    facts clearly warrant an updated examination.

10        And I can't tell the Court what the results of a

11   current exam will yield.  But I can tell the Court that it

12   will give this Court a more complete and current record upon

13   which to make its competency determination.

14        The victims deserve that, and Mr. Dear deserves at

15   least a chance to show that he is competent.  And a Federal

16   examination under improved conditions gives him a chance to

17   cooperate and prove his competence.

18        MR. DEAR:  If I get found competent, so then can I

19   fire my lawyers and represent myself?

20        THE COURT:  Mr. Dear, I understand that there are

21   things that you want to say.  I have to tell you that it's

22   not helpful for you to be saying those things during this

23   hearing.  In fact, it might be --

24        MR. DEAR:  Well, what am I here for?  Why am I

25   here?  Just to sit here?

1           THE COURT:  You're here so that you can listen to

2    the arguments.  You're certainly welcome to communicate with

3    your attorney, who is sitting there next to you, and to ask

4    your attorney to make statements on the record for you.

5           But your statements, sir, themselves, are not

6    particularly helpful.

7           All right, Ms. Rhyne, please continue.

8           MS. RHYNE:  Thank you, Your Honor.  The next

9    question is:  Who should perform that exam?

10          Now, first, there is no merit to the defense

11   argument that Doctor Dietz has a conflict in this case.  We

12   have described in our brief his relationship with Doctor

13   Zapp, and while she is an independent contractor who he may

14   engage on a particular case, he has no relationship with her

15   as it relates to the Dear case.  She has her own separate

16   practice, and through that individual practice apparently she

17   was hired for the Dear case.

18          But there is no financial arrangement between the

19   two on this case, and the two doctors have not communicated

20   on this case.

21          And notably the defense did not say that Doctor

22   Zapp offered an opinion, that there was a conflict.  That was

23   strangely asked from their assertion.  There is no conflict,

24   and Doctor Dietz has guaranteed that.

25          THE COURT:  Ms. Rhyne, let me ask you a very

1    fundamental question with respect to Doctor Dietz.  If the

2    Court were so inclined to order another competency

3    evaluation, why on earth would the Court endorse the choice

4    of the Federal Government?  Why wouldn't the Court instead

5    commit the Defendant to a Bureau of Prisons institution where

6    such an evaluation can be performed by a doctor not hand

7    selected by the Government?

8            MS. RHYNE:  Your Honor, I agree that that is

9    actually the more prudent thing for the Court to do, and that

10   is what we are urging the Court to do today.

11           Our attempts to have Doctor Dietz prepared and

12   ready to go over almost a year ago was an attempt to address

13   this issue quickly.  That has not happened.

14           And given the defense's argument or objection to

15   Doctor Dietz, I think the Court should order that the Bureau

16   of Prisons conduct this examination.  They are clearly very

17   experienced, and undeniably neutral.

18           And as we set forth in our reply brief, we ask

19   that the Court order -- simply order an examination, and not

20   make any reference to removing, committing, or transferring,

21   Mr. Dear to a BOP Federal Medical Center, as that language

22   has unintended speedy trial consequences.

23           THE COURT:  Thank you.

24           MS. RHYNE:  Thank you.  The Court -- excuse me.

25   At this point, in conclusion, the Government simply asks that

1    the Court use its discretion to order a current examination.

2              THE COURT:  Thank you.  Mr. Fleming, I believe

3    you're arguing for the Defendant?

4              MR. FLEMING:  I will.  Thank you, Your Honor.

5              First, Your Honor, are you able to hear me

6    clearly?

7              THE COURT:  I can hear you, and I can also see

8    you.

9              MR. FLEMING:  Okay, excellent.  Your Honor, first

10   by stating the burden with respect to the need for a

11   subsequent evaluation, that's on the Government now.

12             The failure to recognize the 15 prior evaluations

13   completed by undeniably qualified unbiased professionals who

14   have in total conducted over five thousand competency

15   evaluations for the State of Colorado, which incidentally is

16   indistinguishable in terms of how those evaluations are

17   conducted with the Federal standards.  They are both

18   controlled, and they are virtually identical in every way in

19   terms of how those evaluations are conducted.

20             And so that means that now the Government comes

21   before the Court with the burden of establishing under Tenth

22   Circuit case law that a legitimate reason exists for the

23   Court to order yet another competency evaluation.

24             And as we set forth in our papers, there is no

25   legitimate reason that exists for --

1          THE COURT:  Well, Mr. Fleming, let me ask you --

2    and I apologize for interrupting.  But these are questions,

3    of course, that are weighing heavily on my mind.

4          Do you agree with the Government's assessment of

5    the record of the State Court evaluations to the extent that

6    the last time that Mr. Dear actually met with the State Court

7    evaluators was in January of 2019, and since that time he has

8    refused to meet with them?

9          MR. FLEMING:  Yes, Your Honor.  In terms of the

10   date.

11         THE COURT:  Oh.

12         MR. FLEMING:  His refusal with them, I think, is

13   an open question.

14         I do also want to point out that it's our belief

15   that during its argument, the prosecution did cherry pick

16   certain facts that don't paint the complete picture for the

17   Court in terms of the value of the underlying State

18   competency evaluations.

19         With respect to Your Honor's task here, which is

20   to determine, by a preponderance of evidence, whether or not

21   it's more likely than not that Mr. Dear, as of today, remains

22   incompetent.

23         And the overwhelming evidence that we've brought

24   forth answers that question with a resounding "yes, he is

25   incompetent."  And there is clearly by that standard, a

 1   preponderance standard, sufficient information to deem Mr.

 2   Dear incompetent, as the State Courts have done consistently

 3   for five years.

 4           THE COURT:  Mr. Fleming, the Government counsel

 5   essentially asserts that the Defendant is fighting the idea

 6   of another competency evaluation so hard because defense

 7   counsel is concerned that a subsequent evaluation will result

 8   in a finding of competency.

 9           Obviously, nobody knows what would happen with a

10   subsequent evaluation unless one is conducted.

11           But the question that keeps coming up in my mind

12   is:  What is the harm of a subsequent evaluation, to the

13   extent that the Statute requires the Court to ensure that the

14   Court has the best information possible about the Defendant's

15   mental condition prior to making decisions of this nature?

16           And, you know, I understand that you are

17   vehemently opposed.  I understand that the Defendant's

18   position is that the record of the State competency

19   evaluations is more than sufficient.

20           But what I don't understand is what the harm would

21   be, given especially the gap in time between January of 2019

22   and the present date, of having an updated evaluation

23   conducted.

24           MR. FLEMING:  The short answer, Your Honor, is

25   that the Tenth Circuit requires more than what some are -- it

1   requires a legitimate reason.  And none exists.

2           And I want to point out, Your Honor, the

3   prosecutor did make it a point to say that none of us, the

4   attorneys here, are mental health professionals.  That is

5   precisely why the defense sought out the advice of mental

6   health professionals in order to bolster, validate, the

7   arguments that we've presented to the Court in terms of the

8   need for another evaluation.

9           And it has been raminous in terms of the passage

10  of time.  The prior evaluators, two of first independent

11  evaluators, all said the same, that the odds of Mr. Dear

12  spontaneously remitting to some form of competency is

13  vanishingly small.

14          I believe it was Doctor Gray, when we met with

15  him, said that he would fall out of his chair if he were to

16  hear such a thing.  And that's consistent across the board.

17          That negates the Government's -- what seems to be

18  their bedrock argument, or their go-to argument, that the

19  passage of time alone is sufficient to warrant another

20  evaluation, and that somehow mutes the Tenth Circuit's

21  requirement that they bring forth a legitimate reason for a

22  subsequent evaluation.

23          And, Your Honor, according to *Martinez*, in that

24  situation they also had a Spanish speaking client.  It was a

25  non-Spanish speaking evaluator.  And that was something else

1   that the Court found presented a legitimate reason for a

2   subsequent evaluation.

3           The law does not allow for there to be another

4   evaluation absent a showing of a legitimate reason.

5           And I find notable, and I think -- I hope that the

6   Court would take this into consideration, that all of the

7   arguments about notable problems in terms of all of these

8   evaluations, about the passage of time constituting the need

9   for another evaluation, are not based on a single expert.

10  Not one expert.  Not Doctor Dietz himself apparently has ever

11  put that in a declaration, or is attributed to having agreed

12  to that assessment.

13          Those are simply opinions offered by attorneys in

14  the case, not by professionals.

15          And the converse, we addressed that extensively in

16  our briefs, and it's in the declarations, where to a person

17  given the 30 year history of Mr. Dear's severe form of mental

18  illness, specifically delusional disorder, prosecutorial

19  type, the evidence is overwhelming that he is not going to

20  spontaneously remit.  And that's what Doctor Woods

21  acknowledged, and that's what each of the experts

22  acknowledged.

23          The Court has heard nothing from the Government to

24  counter that fact, and so the passage of time doesn't provide

25  the Government with the legal basis needed for there to be a

1    subsequent evaluation.

2          THE COURT:  Mr. Fleming, let me ask you one

3    question in light of the fact that you've just mentioned

4    Doctor Woods' evaluation.

5          Did Doctor Woods' evaluation of essentially the

6    process of the State evaluation take into account, or in any

7    way evaluate the impact of Mr. Dear's repeated refusals to

8    cooperate on that evaluation?

9          MR. FLEMING:  I just want to make sure I

10   understood the Court's question completely.  I missed just

11   the very end, so if you wouldn't mind, Your Honor, just so I

12   can be accurate?

13         THE COURT:  Certainly.  My question is:  Did

14   Doctor Woods, in his assessment of the validity of the State

15   process and State evaluations, consider the impact of Mr.

16   Dear's repeated refusal to cooperate, especially after

17   January of 2019?

18         MR. FLEMING:  He did, Your Honor.  He did so by

19   summarizing -- if you'll recall that 10-page affidavit that

20   Doctor Woods submitted, he summarized each of the five

21   experts' position on that case.  Each of the experts were in

22   agreement that they have sufficient evidence to go forward

23   with their evaluations with what they described as a high

24   degree of competence.

25         So that was specifically addressed, as was each of

1    the alleged notable problems that the Government has brought

2    to the Court's attention, absent any type of expert

3    testimony.

4           Each and every one of those problems that the

5    Government labels as problems was, in fact, not a problem.

6    Was, in fact, addressed at length by each of the evaluators,

7    and signed a declaration under penalty of perjury that they

8    were able to reach their conclusions despite whatever problem

9    the Government believes exists.

10          THE COURT:  And I think my question was just

11   slightly different, and let me try to ask it differently.

12          Doctor Woods did not make any independent

13   assessment in his expert opinion of the impact of Mr. Dear's

14   repeated refusal to cooperate.  In other words, he said the

15   State doctors found that they had sufficient information, and

16   they found that Mr. Dear's refusal to cooperate was

17   inconsequential to their determination.

18          But Doctor Woods himself didn't offer an opinion

19   as to the impact of the refusal to cooperate, did he?

20          MR. FLEMING:  I don't believe he did.  What he did

21   was he validated what they had done, and I believe -- and I

22   don't have it verbatim in front of me, but what he did was he

23   said that that makes perfect sense to him.

24          THE COURT:  Right.

25          MR. FLEMING:  That that is in keeping with the

1  professional norms of an evaluation, in his experience.

2          And had any of these experts had concerns about,

3  you know, the lack of a video tape, or the -- that Mr. Dear's

4  relationship with his attorney under the first prong of

5  *Duskey,* all of that is addressed in both their evaluations,

6  as well as their declarations, that we considered these

7  issues, we found that they did not impede our ability in any

8  way to offer what they all described as basically this is

9  somebody who is clearly suffering from this prosecutorial

10  type delusional belief system that is fixed, and is not going

11  to disappear miraculously.

12          If I could just back up a little bit to the issue

13  of the harm, or the lack of harm, in having another

14  evaluation done.

15          The *Martinez* case addresses this, I believe, when

16  it states that what the Court is to be vigilant about when a

17  request comes for a subsequent evaluation, is the danger of

18  one of the party's competency shopping.  Looking for what

19  might come out with a different result.

20          And that is precisely, Your Honor, what we believe

21  is happening here.

22          And on another logical level of looking at this,

23  if that ever were to have, in light of all of the mountain of

24  evidence we have that demonstrates incompetency presently,

25  and keep in mind, the State Court as of today finds Mr. Dear

1    incompetent.  We are setting up a bizarre and potentially

2    dangerous appellate record where we have an individual

3    charged for the same offense at the same time in two

4    different jurisdictions, where one track he's competent and

5    the other is incompetent.

6            This is not going to accelerate the rate of this

7    case.  It's only going to slow it down.  And so if the

8    Government's stated objective is to move the case along more

9    quickly, I believe that this is going to have the exact

10   opposite effect.

11           THE COURT:  Of course you would agree with me that

12   the speed with which the case proceeds is not anywhere near a

13   primary consideration for the Court in making this

14   determination, right?

15           MR. FLEMING:  I absolutely agree with that.  And I

16   disagree with the Government's position on that, that somehow

17   that should be a factor in the Court ordering a competency

18   evaluation.  That that would somehow speed the process along.

19           THE COURT:  All right, I understand.

20           MR. FLEMING:  And, you know, just to sort of

21   circle back to Doctor Woods' assessment, he made it quite

22   plain in his declaration that he found no problems with any

23   of the work done by those five independent experts.

24           MR. DEAR:  Fifteen evaluations and you want more,

25   Judge Mix?  You're mixed up, Judge Mix.

1          THE COURT:  Thank you, Mr. Dear.

2          MR. FLEMING:  Your Honor, I apologize on behalf of

3    Mr. Dear for that comment, and I hope this Court wouldn't

4    take offense to it under the circumstances.

5          THE COURT:  Of course not.

6          MR. FLEMING:  And would Your Honor like for me to

7    address each of the notable problems that the Government

8    claims exist in the case?

9          THE COURT:  Well, Mr. Fleming, I welcome you to

10   address whatever you think is important.  Please be assured

11   that I've carefully read your brief.  I understand your

12   response to the issues raised by the Government about the so-

13   called notable problems.

14         But to the extent you'd like to illuminate any

15   further orally, I invite you to do that.

16         MR. FLEMING:  Well, I appreciate that, Your Honor.

17         And, in part, I'd like this addressed because the

18   defense team did have not just the opportunity to Zoom

19   conference with the five individuals who -- we met with them

20   personally.

21         And what the Government has alleged is, in their

22   view, a personal assault on their integrity and on the work

23   that they've spent many, many years perfecting, and they're

24   proud of the work they did, and they were called out without

25   any type of evidence to support these scurrilous allegations

1    that they somehow dropped the ball with respect to Mr. Dear.

2             And I think it's important, Your Honor, that if a

3    party is going to make that kind of an assertion against a

4    professional, and these are people working for the State of

5    Colorado, they should come with more than just their own

6    opinions about these alleged flaws in the evaluations,

7    because none exist.

8             And the other issue of the passage of time

9    argument that was raised, there is the -- it's very common in

10   a competency case involving an incompetent client for the

11   medical experts to rely upon collateral source information if

12   they don't get the level of cooperation they think they need

13   from an individual.

14            And I don't think it's a stretch for us all to

15   understand that when you're dealing with somebody with a

16   severe mental illness, you may not get the level of

17   cooperation you'd otherwise have.  That's part and parcel to

18   suffering from a mental disease or defect.

19            And here, there's a plethora of external

20   information for the Court to rely upon.  We provided it in

21   the form of a thumb drive for the Court to review, and all of

22   the medical records that we have since 2015 into 2016.  So

23   the record is well established.  There's absolutely no

24   changed circumstance that would be required for this Court to

25   find that the Government has met the legitimate reason

1   standard and order yet another competency evaluation.

2            And there's also, as Doctor Woods commented on and

3   drew from the experts' interview with Doctor Woods, and in

4   the work that he reviewed, Doctor Woods reviewed that they

5   had done, there is a extraordinary consistency in the type of

6   behavior that Mr. Dear has exhibited, not just from the time

7   of his arrest, but given the investigation done for the past

8   20-25 years.  It hasn't changed.  It's fixed.

9            And so there is no evidence before the Court that

10  there's been any improvement at all that would change the

11  current state of things, which is that Mr. Dear is, by all

12  experts' account, incompetent.  And that's a unanimous

13  conclusion reached by five independent evaluators.

14            MR. DEAR:  You're fired, Fleming.

15       (Pause)

16            MR. FLEMING:  So, Your Honor, what our position

17  is, and I know Your Honor has spent a lot of time reviewing

18  the documents, reviewing our written materials, I won't go

19  through all of that chapter and verse.

20            But the Government has just not presented Your

21  Honor with anything to warrant a new competency evaluation.

22  And had there been anything to support their arguments, we

23  would have, I assume, seen that in the declaration of a

24  actual mental health expert, which is notably absent.

25            MR. DEAR:  I'm the only sane person here.

1          MR. FLEMING:  Your Honor, the other point that the

2    Government raised is that somehow Mr. Dear is owed another

3    competency evaluation, that he somehow -- it is his desire to

4    undergo a competency evaluation, apparently in the hope that

5    he would be found competent, is irrelevant.  That is not

6    obviously something that the Statute provides for, nor the

7    case law.

8          THE COURT:  Well, I understand that argument to be

9    more that Mr. Dear is entitled to a further opportunity to

10   cooperate in a competency evaluation, in light of his

11   repeated assertions that he is competent.

12         MR. FLEMING:  And had there been some concern

13   voiced by any of the experts that that was an impediment to

14   their ultimate conclusion, the Government may well have a

15   point on that, that that would somehow help the expert in

16   reaching these conclusions.

17         But that was contrary to the state of the record

18   where the experts unequivocally stand by the evaluations and

19   findings that they've done, and, again, have no real

20   reasonable chance that this has suddenly dissipated and Mr.

21   Dear is now competent.

22         And I can also speak to -- and this is something,

23   of course, that the Statute provides for, as does the case

24   law, our own observations of Mr. Dear in the time that we've

25   represented him.  And it's been a continuation of the same

1    issues presented by him, where Mr. Dear would incorporate his

2    attorneys into his fixed delusional belief that the FBI is

3    running everything and members are actually working with or

4    actually are FBI agents.

5              And this is something experienced by both the

6    State team and by us, and it's been persistent.  Any attempt

7    to speak with Mr. Dear about facts of the case or any legal

8    strategies or anything of the like, is met with that type of

9    a diversion from what would be a helpful conversation with a

10   client.

11             And it's consistent.  He is persistent on these

12   issues, as Your Honor as probably gleaned from all of the

13   submissions.  And there's been a remarkable consistency with

14   respect to the first prong of *Duskey*, as well as the second

15   prong of *Duskey*.

16             MR. DEAR:  Can I say something?  What I did was a

17   complete success.  I sat down all of the --

18             THE COURT:  Mr. Garrett -- excuse me, Mr. Garrett,

19   it would be much more helpful --

20             MR. DEAR:  -- and I saved babies lives.

21             THE COURT:  Mr. Dear, --

22             MR. DEAR:  I saved babies lives.

23             THE COURT:  Thank you.

24             MR. DEAR:  I saved babies lives, and I would do it

25   again.

1              THE COURT:  Thank you, sir.

2              MR. FLEMING:  Mr. Dear, if you wouldn't mind, I

3    would prefer that we get through this part of the hearing

4    before you make any further statements.

5              Your Honor, this might be a good opportunity for

6    me to also point out that the Court itself is able to observe

7    the demeanor of a Defendant in a Court hearing, and use that

8    as well in determining whether there's a competency issue.

9    Clearly, I think the record not just from this hearing, but

10   from the previous hearings, the State hearings, as well,

11   establish the same pattern of consistency that I'm referring

12   to, which undercuts the Government's position that the

13   passage of time somehow would necessitate yet another

14   competency evaluation.

15             It will plunge us into further litigation, given

16   the arguments on our side, and would require quite a bit of

17   further litigation.  It's unnecessary, Your Honor.  Mr. Dear

18   is incompetent.  The Court doesn't need to make that kind of

19   a finding.  The Court simply needs to make a finding that the

20   preponderance of evidence currently before Your Honor, based

21   on the record, establishes that Mr. Dear is incompetent.

22   It's more likely than not.

23             And, again, that is a standard that we believe we

24   have satisfied, and the Government has failed to counter with

25   any legitimate reason, back up, any type of expert testimony.

1        MR. DEAR:  Well, I've been proven right that

2  babies now they're killing them up to the day they are born.

3        THE COURT:  Thank you.

4        MR. DEAR:  So fantazise.  Don't you know the laws

5  and news worth in any other state?

6        THE COURT:  Thank you, Mr. Dear.

7        MR. FLEMING:  Thank you, Mr. Dear.  And, Your

8  Honor, without divulging too much in whether a client is

9  competence, what Your Honor is hearing right now is

10  consistent with the types of conversations that we have

11  routinely.  This is what we're dealing with, and I think that

12  also should be taken into consideration in the Court's

13  determination for the need for yet another evaluation.

14        THE COURT:  Thank you.

15        MR. FLEMING:  Does the Court have any questions

16  for me at this time?

17        THE COURT:  I do not, Mr. Fleming.  Thank you.

18        MR. FLEMING:  Thank you.

19        THE COURT:  Ms. Rhyne, I will give the Government

20  the final word, to the extent there is anything the

21  Government wishes to respond to.

22        MS. RHYNE:  Thank you, Your Honor.  Most

23  importantly, the legal standard in *Martinez* is not what the

24  defense represents.

25        The Government does not have the burden of proving

1    a legitimate reason.  That is set forth no where in that

2    opinion.

3              It sets forth -- it says specifically at page

4    1233, "We read the Statute to authorize a District Court to

5    order a second competency hearing when appropriate."

6              And the Court has broad discretion to do that.

7    That is the burden.  I don't actually believe it puts the

8    burden of proof on either party, but it is the discretion of

9    the Court to determine what would be most helpful.

10             So as far as him quoting the law requiring a

11   legitimate reason just doesn't exist.

12             Second, to the extent that any habeas standards

13   were referenced, that is not helpful today because this is an

14   independent Federal investigation.  You are not determining

15   the correctness of some prior State conviction, so it's not

16   helpful by analogy.

17             And then this is not the crux of the point, but to

18   the extent that he keeps emphasizing that all prior experts

19   all agree on delusional disorder, and somehow this uniformly

20   is supposed to bolster the correctness of their opinion,

21   Doctor Cuergo (ph) was the treating psychiatrist of Mr. Dear

22   at CMHIP, the hospital.

23             And as of October of 2018, he disagreed with that

24   diagnosis of delusional disorder, and he changed his

25   diagnosis to schizophrenia unspecified.

1          Now, I'm not saying that it's not a mental

2    illness, but it is a different diagnosis.  And even the

3    subsequent State evaluations kept bootstrapping the original

4    delusional disorder diagnosis and didn't discuss or examine

5    this Doctor Cuergo's difference of opinion.

6          So, again, that just goes to the fact that there

7    was conflict, and an updated examination might elucidate that

8    difference of opinion, and it would certainly give this Court

9    more complete and current information.

10          Thank you.

11          THE COURT:  Thank you.

12          MR. DEAR:  I'm always in love -- I love babies.  I

13   haven't stopped loving babies.

14          THE COURT:  Mr. Fleming, would you like to say

15   something further?

16          MR. FLEMING:  I would, Your Honor.  Just to

17   address the Government's points.

18          First, we spoke with Doctor Woods, and this is at

19   page 8 of Doctor Woods' declaration, where he addresses

20   specifically what Doctor Cuergo told him.  And he told him

21   the following, at the top of page 8:  "Doctor Cuergo

22   estimated that he saw Mr. Dear between 75 and 100 times.  He

23   never saw a decrease in Mr. Dear's entire symptomology.  Over

24   the past four years of examining and attempting restorative

25   treatment at CMHIP, Doctor Cuergo observed consistent

1  delusional precepts which did not change."

2          That's what Doctor Cuergo told Doctor Woods, and

3  the rest of us who were listening in on the Zoom call.

4          And the Government, Your Honor, in terms of the

5  appellate standard, to raise the abuse of discretion

6  standard, which, of course, doesn't apply here, Your Honor is

7  looking at this case not under an abuse of discretion

8  standard, but whether or not reason exists, and ultimately

9  whether the Court believes that the preponderance of

10  evidence, as established, that Mr. Dear suffers from a mental

11  defect or disease, or rendering him incompetent at this

12  moment, and to require that he then be sent to the -- in the

13  custody of the Attorney General for restorative treatment.

14          Your Honor, I know the Government had earlier

15  discussed, should the Court deem it necessary, the parameters

16  of who might be doing that evaluation.  My response to that

17  is I just think that's an issue for another day.  I think we

18  should move forward with deciding on whether that's even

19  something that is an appropriate ruling.

20          But I can tell the Court this:  We absolutely

21  object to Doctor Dietz being involved.  I think it sounds

22  like that ship has sailed, and the Government is in agreement

23  that he probably should not be the person selected.

24          Again, we see no reason for a further examination,

25  whether there's a legally valid one as offered by the

1    Government.

2              THE COURT:   Thank you.

3         (Pause)

4              THE COURT:   The parties are in agreement that the

5    law which applies to the Court's determination today is set

6    forth in 18 U.S.C. section 4241(b), which gives the Court

7    discretion to decide whether a competency evaluation is

8    necessary.

9              This case is unusual to the extent that there has

10   already been a competency evaluation of the Defendant.

11             The *United States v. Martinez Haro* case that both

12   counsel have referred to, is helpful in illuminating for the

13   Court how the Tenth Circuit Court of Appeals understands the

14   Court's responsibility at this juncture under 18 U.S.C.

15   section 4241(b).

16             In the *Martinez-Haro* case, Judge Ebel of the Tenth

17   Circuit Court of Appeals wrote that the statute authorizes

18   District Courts to order competency hearings, as need be.

19   The statute does not contain any language restricting a

20   District Court from ordering multiple hearings.  The statute

21   does not state that the Court may order only one psychiatric

22   or psychological examination.  And the statute does not state

23   that the Court may order just a single psychiatric or

24   psychological examination.

25             The statute does state that if the Court finds it

1  appropriate, then the Court can order an examination by more

2  than one such examiner.

3          Nothing in this language limits the second

4  examiner to the initial examination of the Defendant, nor

5  does the language restrict the ability of the Court to order

6  a second examination after the initial examination.

7          The unusual circumstances presented in this case

8  that influenced the Court's thinking with respect to the

9  Government's motion for a further competency evaluation, are

10 there:

11         It is undisputed that Mr. Dear has repeatedly

12 maintained that he is competent to proceed in this matter.

13         It is also clear that Mr. Dear has suggested that

14 certain circumstances that occurred in the course of the

15 State evaluations, including the lack of video and audio

16 recording, and the interruption of the first interview,

17 affected his level of cooperation with the State evaluations.

18         It is also undisputed, as far as the Court can

19 determine, that the last interview in-person conducted by the

20 State evaluators occurred in January of 2019, and that the

21 Defendant refused and failed to cooperate with the State

22 evaluators from that time forward.

23         I fully understand the Defendant's position that

24 the State evaluations are essentially unimpeachable, that

25 they have been robust and thorough, and, according to the

1    Defendant, there is no further reason to require additional

2    competency evaluations.

3            My interest in this matter is in getting the most

4    complete record possible to make this important determination

5    with respect to Mr. Dear's competency.

6            Defense suggested, in response to my question,

7    that there should be an expert opinion that Mr. Dear's

8    refusal to cooperate since January of 2019 with the State

9    evaluations somehow tainted those evaluations, or undermined

10   their validity.

11           Under the circumstances present in this case, the

12   Court respectfully disagrees.

13           The case is filled with assertions by the

14   Defendant of his competency.  The case is also notable for

15   the Defendant's statements about certain circumstances in the

16   State Court evaluations, which appear to have influenced the

17   Defendant's cooperation with the State Court evaluation.

18           And I do not believe that the law requires that

19   there should be an expert opinion that the Defendant's

20   refusal to cooperate somehow tainted the evaluation, or

21   undermines its validity.

22           The test, as set forth in the statute, is simply

23   that the Court must exercise its discretion to do what it

24   feels is necessary under the circumstances present in the

25   case before the Court.

1          And given Mr. Dear's repeated protestations of his

2     competency, given the amount of time that has accrued since

3     the evaluation by the State with an in-person interview in

4     January of 2019, given the undisputed fact that Mr. Dear

5     refused to cooperate with the State evaluators from that time

6     forward, the Court will order that the Government's motion

7     for a competency evaluation is granted.

8          The Defendant will be committed to a suitable

9     Bureau of Prisons facility for purposes of a competency

10    evaluation.

11         And the Court will set a hearing with respect to

12    the competency evaluation at a future date after completion

13    of the evaluation.

14         Is there anything further from the Government with

15    respect to this matter today, Ms. Rhyne?

16         MS. RHYNE:  Yes, Your Honor, only to the degree

17    that using the word committing him to a suitable facility

18    does trigger those unintended speedy trial consequences.

19         If the Court could amend its order simply to say

20    that the exam be conducted by the Bureau of Prisons, they

21    will understand its import.

22         THE COURT:  I think that's appropriate.  The Court

23    does not intend to trigger the 10-day deadline, because the

24    Court is well aware that it may be impossible for that

25    deadline to be met.

1            Therefore, the Court amends its order to require

2    that the Defendant be evaluated in a suitable Bureau of

3    Prisons facility for purposes of determining his competency.

4            Thank you.

5            Anything further from the defense counsel today,

6    Mr. Fleming?

7            MR. FLEMING:  Thank you, Your Honor.  I was

8    consulting briefly with counsel.  May I inquire?

9            Your Honor, in terms of the evaluation itself, and

10   this is -- is the Attorney General going to have custody of

11   Mr. Dear to -- would it please -- I know the evaluation can

12   be done locally.

13           What I'm suggesting we do, Your Honor, is perhaps

14   meet and confer with the Government and then have a brief

15   hearing on the location.

16           And I'll tell you why we're generally concerned.

17   Mr. Dear is in a group that is highly at risk in terms of

18   COVID.  And if there's travel involved, if it's going to be

19   he's transported by the Bureau of Prisons, he has underlying

20   health conditions that may make him susceptible.

21           And I did check with the legal counsel for the

22   Bureau of Prisons, and they are able to do the evaluations

23   right at the facility where Mr. Dear is currently housed.

24           And so I would like the opportunity to reach out a

25   little bit further, discuss that with the Government, and try

1  to make this both -- in terms of Mr. Dear's personal safety,

2  as well as our ability to meet and communicate with him.

3          THE COURT:  Let me put it this way, Mr. Fleming:

4  The Court is not inclined to make a determination as to which

5  facility or where the evaluation is conducted, because I

6  simply have a lack of information in that regard.

7          I would invite your communication with counsel for

8  the Government with respect to those issues.  I would invite

9  further contacting of the Court through briefing or otherwise

10 with respect to those issues.

11         But at this stage, on this date, the Court is not

12 going to enter any orders with respect to more specific

13 information about the evaluation.

14         I would welcome, as I said, your input on that

15 issue.  And I would welcome it particularly after you've had

16 a conversation with the Government to the extent that you as

17 counsel for the Government and the Defendant agree that it

18 would be appropriate to submit some sort of a joint filing

19 about your views on that subject.  I'd be happy to consider

20 it.

21         MR. FLEMING:  I appreciate that, Your Honor.  And,

22 Your Honor, would Your Honor issue just a stay of any actions

23 by the Bureau of Prisons so we have an opportunity actually

24 to do just that, instead of having them move Mr. Dear as

25 early as tomorrow morning?

1      THE COURT:  How much of a stay would you like, Mr.

2  Fleming?

3      MR. FLEMING:  I think two weeks would allow us the

4  opportunity to consult with both the Government, and also to

5  answer some questions about a suitable facility.

6      THE COURT:  Your voice went out for just a moment.

7  Did you say two weeks?

8      MR. FLEMING:  Yes.

9      THE COURT:  All right.  Let me ask Ms. Rhyne what

10  the Government's position is with respect to a stay for those

11  purposes.

12      MS. RHYNE:  Your Honor, I view it as a delay

13  tactic.  The Government -- the Court invited the parties to

14  confer almost a year ago, and Mr. Fleming didn't so much as

15  pick up a phone to talk to me about this.

16      And I have been doing research with the Bureau of

17  Prisons, and I have been in communication with Mr. Sandoval.

18  And the last I was told, they need him to be at a medical

19  facility in order to do the evaluation.

20      I believe you can go ahead and make the order.

21  They are not transporting anybody tomorrow.  The Court is

22  well aware of that.

23      And in the interim, if Mr. Sandoval assures me

24  that adequate examination can be done locally, I'm sure he

25  will facilitate that.  It does not require the Court's

1  intervention at this point.  The Bureau of Prisons can work

2  with us independent of the Court's intervention to pick a

3  suitable facility, to the best of their ability.

4  　　　　　　　　MR. FLEMING:  Your Honor, we --

5  　　　　　　　　THE COURT:  Mr. Fleming, I don't need to hear more

6  on this.

7  　　　　　　　　The Court will impose a stay of the Court's order

8  until November 30th of 2020 for the purpose of allowing

9  counsel to confer further and attempt to reach some agreement

10  with respect to the Court's order as to the specifics of the

11  location of the evaluation.

12  　　　　　　　　The Court has no intention of staying this matter

13  any further beyond November 30th.  That's it.  That's your

14  window of opportunity to have whatever conversations you

15  have, and also to raise with the Court, in writing, if either

16  side feels it's necessary, any further information on that

17  issue.

18  　　　　　　　　And to the extent that any further pleading is

19  filed about that issue, let me make clear it's due on or

20  before November 30th.  It will not be considered if it is

21  filed late.  No extensions of time will be permitted.

22  　　　　　　　　And the Court will enter an order as quickly as

23  possible if any further pleading is filed with respect to

24  this particular issue of the location of the evaluation.

25  　　　　　　　　The reason why the Court is willing to enter this

1   brief stay of 10 days over the Thanksgiving holiday for this

2   issue to be addressed further between counsel, and, if

3   necessary, with the Court, is because of the pandemic and the

4   fact that transportation of prisoners during the pandemic

5   can, in fact, give rise to concerns about further health

6   issues.

7          And for that reason, the Defendant's motion for a

8   stay is granted to allow a very small but hopefully

9   meaningful window of opportunity for counsel to discuss the

10  matter further and bring any further issues to the attention

11  of the Court.

12          All right, thank you.  We're in recess.

13          MS. RHYNE:  Thank you, Your Honor.

14          MR. DEAR:  So recess?  Is it still going on?

15          MS. STRICKLIN:  No, that's all.

16              (Time noted:  2:52 p.m.)

17                  * * * * *

18

19

20

21

22

23

24

25

54

CERTIFICATE

    I, RANDEL RAISON, certify that the foregoing is a

correct transcript from the official electronic sound

recording of the proceedings in the above-entitled matter, to

the best of my ability.

_____          November 24, 2020

Randel Raison