IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 19-cr-00506-REB

UNITED STATES OF AMERICA,

       Plaintiff,

v.

ROBERT LEWIS DEAR, JR.,

       Defendant.

---

**DEFENDANT'S MOTION FOR ORDER
REGARDING COMPETENCY EXAMINATION
UNDER 18 U.S.C. §§ 4241(b) and 4247(b)**

---

The defendant, Robert Lewis Dear, Jr., through undersigned counsel, respectfully asks this Court, in accordance with 18 U.S.C. § 4247(b), to order that his pretrial competency examination under 18 U.S.C. § 4241(b): (i) shall be conducted by a licensed or certified psychiatrist or psychologist affiliated with the Bureau of Prisons ("BOP"), and (ii) shall take place at the Federal Detention Center (FDC) Englewood.[1] The parties have conferred. (*See* Attachment A). The government agrees that a BOP-affiliated examiner should conduct the evaluation but will not stipulate to a local evaluation at FDC Englewood. Mr. Dear requests an opportunity to reply to the government's response and asks this Court to continue the stay of its Order imposed on

---

[1] FDC Englewood is part of the Federal Correctional Institution (FCI) Englewood, located in Littleton, Colorado, approximately 15 miles southwest of Denver. *See* https://www.bop.gov/locations/institutions/eng/ (describing the FCI Englewood complex as "[a] low security federal correctional institution with an adjacent minimum security satellite camp and a detention center.").

November 20, 2020 (ECF No. 70), until the issue presented here is fully adjudicated. In support, counsel states:

## Introduction

This Court has ordered that a neutral and qualified BOP examiner—not one selected by the prosecution—will conduct the competency evaluation. That issue is settled. Mr. Dear now respectfully asks this Court to order that the location of the evaluation shall be FDC Englewood, where he is already detained (a "local evaluation"). Undersigned counsel has confirmed that competency evaluations ordered under section 4241(b) are routinely performed at the Englewood facility, including in death-penalty eligible cases.[2]  As discussed below, a local evaluation comports with applicable law, tracks the government's litigation position, mitigates the risks attendant to transporting Mr. Dear during the COVID-19 pandemic, and safeguards the critical right of a capital defendant to have meaningful access to his defense team.  Conducting the evaluation locally increases the likelihood that it will take place without undue delay and without compromising Mr. Dear's constitutional rights.

---

[2] *See, e.g., United States v. Lucas Morton, et al.*, United States District Court, District of New Mexico, 1:18-CR-02945-WJ (competency evaluation conducted at FDC Englewood in death penalty case); *see also United States v. Griffin*, 2020 WL 3272269 (E.D. Kentucky, Southern Division, June 9, 2020) (competency evaluation conducted at FCI Englewood); *United States v. Martinez*, 2019 WL 4580043 (N.D. Oklahoma, September 20, 2019) (same);*United States v. Demerovic*, 2018 WL 3653304 (E.D. Kentucky, Southern Division,  July 11, 2018) (same); *United States v. Hicks*, 2016 WL 755635 (E.D. Tennessee, Knoxville, February 25, 2016) (same); *United States v. Olivares*, 2014 WL 2451049 (D. South Dakota, Western Division May 30, 2014) (same); *United States v. Douglas*, 2012 WL 780806 (N.D. Iowa, Central Division, March 7, 2012) (same); *United States v. Gallegos*, 2009 WL 1028273 (W.D. Missouri, Western Division, April 16, 2009) (same).

## Background

On November 20, 2020, after a hearing, the Court granted the government's motion for a competency evaluation under 18 U.S.C. § 4241(b). (*See* ECF No. 70). The Court refused, however, to endorse the government's hand-picked examiner Dr. Park Dietz. (*See* Attachment B) (Transcript of Proceedings Held Before The Honorable Kristen L. Mix, United States Magistrate Judge, 11/20/20) ("Hearing Tr."), at 25). At the hearing, the government abandoned its request that Dr. Dietz evaluate Mr. Dear, confirming: "[T]he Court should order that the Bureau of Prisons conduct this examination." (*Id.*). The Court ordered Mr. Dear "committed to a suitable Bureau of Prisons facility for purposes of a competency evaluation" and said it would "set a hearing with respect to the competency evaluation at a future date after completion of the evaluation." (*Id.* at 48).

Before the hearing concluded, however, two things happened. First, at the government's request, the Court amended its order. The prosecution asked the Court to "amend its order simply to say that the exam be conducted by the Bureau of Prisons[.]" (*Id.*). The government explained, "using the word committing him to a suitable facility does trigger those unintended speedy trial consequences." (*Id.*). The Court agreed and removed the reference to commitment, stating it "amends its order to require that the Defendant be evaluated in a suitable Bureau of Prisons facility for purposes of determining his competency." (Hearing Tr., at 49).

Second, at defense counsel's request, the Court stayed its order, until November 30, "for the purpose of allowing counsel to confer further and attempt to reach some

agreement with respect to the Court's order as to the specifics of the location of the evaluation." (*Id.* at 52). The Court made clear it was "not inclined to make a determination as to which facility or where the evaluation is conducted, because I simply have a lack of information in that regard. I would invite your communication with counsel for the Government with respect to those issues." (*Id. at* 50; *see also* ECF No. 70) ("Counsel are ordered to confer and attempt to reach an agreement as to the specific location of the evaluation.").

On November 23, the defense contacted the government via email to discuss the location of the evaluation and invited the preparation of a joint filing.  The defense said,

> We ask that the government join the defense in a stipulation that Mr. Dear's evaluation should take place at FDC Englewood by a qualified examiner selected by the BOP.  That will expediate [sic] the examination and not expose Mr. Dear to unnecessary risk [attendant to out-of-state transport during the pandemic].  If this is acceptable, we will prepare a draft stipulation and send to you tomorrow. We will object to Mr. Dear being transported elsewhere for the examination.

(*See* Attachment A). Defense counsel also observed that conducting the examination at FDC Englewood, where Mr. Dear has been detained since December 2019, is consistent with the directive in section 4247(b) that, "unless impracticable…the examination shall be conducted in the suitable facility closest to the court." (*See id.*) (discussing 18 U.S.C. § 4247(b)). The government refused to stipulate. This Motion for Order follows.

*Discussion*

This Court should order a local evaluation at FDC Englewood. This is so, for at least three reasons:

1.  *First, under applicable law, this Court has the power to order a local evaluation and doing so protects Mr. Dear's constitutional rights.*

Mr. Dear's court-ordered competency examination will "be conducted…pursuant to the provisions of section 4247(b)[.]" 18 U.S.C. § 4241(b).  Section 4247(b) provides, in relevant part:

> A psychiatric or psychological examination ordered pursuant to this chapter shall be conducted by a licensed or certified psychiatrist or psychologist, or, if the court finds it appropriate, by more than one such examiner.  Each examiner [for the section 4241(b) evaluation] shall be designated by the court[.] For purposes of an examination pursuant to an order under section 4241…, the court may commit the person to be examined for a reasonable period, but not to exceed thirty days…to the custody of the Attorney General for placement in a suitable facility. Unless impracticable, the psychiatric or psychological examination shall be conducted in the suitable facility closest to the court….[.]

18 U.S.C. § 4247(b). By designating that a licensed or certified BOP psychiatrist or psychologist shall perform Mr. Dear's competency examination, the Court has satisfied its mandatory duty under section 4247(b).

Reading further, the statute gives the court discretion to order the location of the initial competency examination. This is obvious by comparing the plain language of section 4247(b) with that of section 4241(d). Under section 4241(d), once a defendant is found incompetent to stand trial, a district judge has no discretion and must commit him. *See* 18 U.S.C. § 4241(d) ("the court *shall* commit the defendant to the custody of the Attorney General").  By contrast, under section 4247(b), a court's power to temporarily

commit a defendant for a competency evaluation is discretionary. *See* 18 U.S.C. § 4247(b) ("the court *may* commit the person to be examined…to the custody of the Attorney General").[3]

The permissive language of section 4247(b) means that, at the initial competency evaluation stage, Congress assigned *to the court* the power to decide where the examination will be conducted. *See, e.g., Newchurch*, 807 F.2d at 410 ("the statutory language [of section 4247(b)] commands the district court to order an examination but permits it either to commit the defendant to the custody of the Attorney General for that purpose or to order that the examination be made in some other manner."); *Shawar*, 865 F.2d at 860–61 ("[t]his division of authority permits the district judge to carry out traditional federal judicial functions" in ordering a competency evaluation).

The court's exercise of discretion under section 4247(b) is subject to due process requirements. The Tenth Circuit has recognized the need to perform the competency examination in the least restrictive manner, given the fundamental liberty interest at stake. *See United States v. Deters*, 143 F.3d 577, 583 (10th Cir. 1998) (holding commitment order under section 4247(b) must comport with procedural and substantive

---

[3] Courts have recognized the discretion built into the competency evaluation process by comparing how the two statutes distinctly treat a district court's power to commit the defendant to the custody of the Attorney General. *See, e.g., United States v. Shawar*, 865 F.2d 856, 860–61 (7th Cir. 1989) (comparing the discretion provided by 18 U.S.C. § 4247(b) when finding a defendant incompetent with the lack of discretion after a defendant has been found incompetent in 18 U.S.C. § 4241(d)); *In re Newchurch*, 807 F.2d 404, 410 (5th Cir.1986) (provision in § 4247(b) providing that district judge may make temporary commitment for examination purposes makes power discretionary, not mandatory, because word "may," not "shall," was used).

components of due process);[4] *accord Newchurch*, 807 F.2d at 409 (interpreting 18 U.S.C. §§ 4241 through 4247 and indicating the statutory "provisions must be read against the background of the constitutional protection for individual liberty"); *United States v. Neal*, 679 F.3d 737, 741 (8th Cir. 2012) ("The statute's use of the word "may" does not negate due process limitations[.]").

This follows the legislative history to section 4247(b), which "specifically contemplates examinations on an outpatient basis absent some need for a commitment to a psychiatric facility." *United States v. Weed*, 184 F. Supp. 2d 1166, 1171 (N.D. Okla. 2002) (discussing legislative history to section 4247(b)). If the court believes "that the defendant's examination can be conducted on an outpatient basis, there need not be a commitment under [section 4247(b)]." *Newchurch*, 807 F.2d at 410 (quoting legislative history to section 4247(b));[5] *see also Weed*, 184 F.Supp.2d at 1172-73 (ordering competency evaluation at local jail where the government did not show why commitment to psychiatric facility was necessary).

---

[4] Given the important constitutional interests at stake, the Tenth Circuit requires a district court to "make findings of fact concerning the need for commitment[.]" *Deters*, 143 F.3d at 584; *see also id.* at 584 (holding "a commitment order issued for the purpose of obtaining an evaluation of the defendant's competency to stand trial as described in 18 U.S.C. § 4241(b) may be immediately appealed").

[5] *See id.* at n. 22 (S.Rep. No. 225, 98th Cong., 2d Sess. 235, *reprinted in* 1984 U.S.C.C.A.N. 3417) ("For purpose of the examination, the court is empowered to commit the defendant ... to the custody of the Attorney General.... If, however, the court believes that the defendant's examination can be conducted on an outpatient basis, there need not be a commitment under this provision").

7

Here, Mr. Dear is already confined at FDC Englewood and can easily be evaluated there by a BOP examiner.[6] Competency evaluations are routinely conducted at the Englewood facility. *See supra* n. 2. There is a Psychology Services Department at that location.[7] According to the BOP, "[c]ourt-ordered forensic evaluations" are considered among the "vital" functions of the Psychology Services Department.[8] FDC Englewood is the closest suitable facility to this district court; transferring Mr. Dear to a distant facility under the circumstances would be unreasonable.

No facts support the need to commit Mr. Dear for a section 4241(b) examination.[9] Indeed, the government has consistently argued *against* a commitment

---

[6] The due process protections attendant to involuntary commitment for psychiatric examination under section 4247(b) apply to Mr. Dear, even though he is already in BOP custody. The Supreme Court has long recognized that "[t]he loss of liberty produced by an involuntary commitment is more than a loss of freedom from confinement." *Vitek v. Jones*, 445 U.S. 480, 492 (1980) (holding that "the transfer of a prisoner from a prison to a mental hospital [to] be accompanied by appropriate procedural protections"). The Tenth Circuit likewise acknowledges this distinction between commitment and confinement. *See United States v. Visinaiz*, 96 F. App'x 594, 597 (10th Cir. 2004) (unpublished) ("Although the government argues [defendant] suffers no loss of liberty by being committed to the mental hospital because he is already being detained pending trial, a significant difference exists between the two types of detainment.").

[7] *See* BOP, Admission and Orientation Handbook, FCI Englewood, at 12, available at https://www.bop.gov/locations/institutions/eng/ENG_aohandbook.pdf

[8] *See* BOP, Program Statement P5310.17, Psychology Services Manual, at 5, available at https://www.bop.gov/policy/progstat/5310_017.pdf

[9] The Department of Justice's own Criminal Resource Manual promotes a preference for local examinations, noting that the due process concerns raised by inpatient competency evaluations require courts to impose the least restrictive method of evaluation. *See* U.S. Attorneys' Criminal Resource Manual 64, available at https://www.justice.gov/usam/criminal-resource-manual-64-procedures-examination

order. (*See* United States' Reply in Support of Motion for Competency Evaluation, 8/2020, ECF No. 66, at 17) ("If the Court determines that the examination should be conducted by the BOP, the Court's order should not include any reference to removing, transporting, or committing Dear to a BOP federal medical center for the examination in order to avoid any unintended speedy-trial consequences by triggering the ten-day clock for transportation under 18 U.S.C. § 3161(h)(1)(F)."); *see also* Hearing Tr. at 25 ("And as we set forth in our reply brief, we ask that the Court order -- simply order an examination, and not make any reference to removing, committing, or transferring, Mr. Dear to a BOP Federal Medical Center, as that language has unintended speedy trial consequences.").

The government is correct—a commitment to the custody of the Attorney General under section 4247(b) does impact Mr. Dear's speedy trial rights and will impose significant hardships that could easily be avoided by a local examination. But the government's litigation strategy is remarkable: it seeks to circumvent the requirements of speedy trial and to deny Mr. Dear the procedural protections contemplated by a commitment order under section 4241(b). This manipulation of constitutional safeguards should not be countenanced. The government has waived any argument that Mr. Dear should be committed to a psychiatric facility under section 4247(b).

Accordingly, the Court should order FDC Englewood, the closest suitable facility to the court, as the location for Mr. Dear's competency examination under sections

4241(b) and 4247(b), so he may be examined in a timely and constitutionally permissible manner.

  2. *Second, ordering the competency evaluation at FDC Englewood mitigates the risks associated with transporting Mr. Dear to an out-of-state BOP facility during the pandemic.*

  The United States remains the nation with the greatest number of confirmed COVID-19 cases, at just over 13 million.[10] More than a million cases in the United States were reported in just the last 7 days. The true number of COVID-19 infections and deaths is likely even higher, due in part to asymptomatic cases and lack of access to testing.

  The Court is well aware of the serious health risks that COVID-19 presents for all of us.[11] Avoiding unnecessary exposure to COVID-19 is especially critical for individuals like Mr. Dear, who is at heightened risk for severe illness or death from coronavirus infection due to his advanced age—he's 62—and documented history of health problems, including hypertension. According to the CDC, "The risk for severe illness with COVID-19 increases with age, with older adults at highest risk….Severe

---

[10] CDC COVID Data Tracker, United States COVID-19 Cases and Deaths by State, https://covid.cdc.gov/covid-data-tracker/#cases_casesinlast7days (last visited Nov. 30, 2020).

[11] Assessing Risk Factors, Centers for Disease Control and Prevention (updated Aug. 10, 2020), https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/assessing-risk-factors.html

illness means that a person with COVID-19 may require: hospitalization, intensive care, or a ventilator to help them breathe, or they may even die."[12]

The great threat posed by COVID-19 is acute within BOP. Incarcerated people are highly susceptible to rapid transmission of the virus through contact with other people, including asymptomatic carriers. COVID-19 is ripping through the BOP, infecting incarcerated individuals at a rate four times the general population,[13] and causing deaths at nearly twice the national rate.[14]

The BOP reports, as of November 27, that 145 federal inmates and two BOP staff members have died from COVID-19 infection.[15] Currently, 4,523 federal inmates and 1,381 BOP staff nationwide have confirmed positive test results for COVID-19.[16] This does not include the nearly 20,000 "recovered" positive cases among inmates and

---

[12] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html
The CDC also instructs that people with hypertension need to take extra precautions to avoid COVID-19.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

[13] Saloner, Parish, and Ward, "COVID-19 Cases and Deaths in Federal and State Prisons" JAMA (July 8, 2020) (finding the "crude COVID-19 death rate in prisons was 39 deaths per 100,000 prisoners, which was higher than the US population rate of 29 deaths per 100,000."), available at
https://jamanetwork.com/journals/jama/fullarticle/2768249

[14] *See* Schnepel, Kevin T. COVID-19 in U.S. State and Federal Prisons. Washington, D.C.: Council on Criminal Justice, September 2020, at Key Findings, available at https://cdn.ymaws.com/counciloncj.org/resource/resmgr/covid_commission/FINAL_Schnepel_Design.pdf

[15] *See* BOP, COVID-19 Cases (as of Nov. 27, 2020), available at
https://www.bop.gov/coronavirus/ (last visited Nov. 30, 2020)

[16] *See id.*

staff.[17]  There is good reason to believe these numbers under-represent the true COVID-19 crisis within BOP.[18] As one district court summarized: "Although the BOP is doing its best to keep the disease in check, the forced closeness of inmates and staff and the inability to enforce social distancing standards has proven no match for the virus." *United States v. Armstrong*, 2020 WL 4366015, at *3 (S.D. Cal. July 30, 2020).

Transfers within BOP have caused surges in the spread of virus.  It is estimated that the United States Marshals Service ("USMS") conducts over 1,000 prisoner movements per day in any year.[19] As of early August, nearly 3,500 people in USMS custody had tested positive for COVID-19, and 13 had died.[20]  Recently, "reports suggest that USMS has not instituted the necessary protocols to contain the virus, including failing to implement widespread diagnostic testing of detained individuals in its

---

[17] *See id.*

[18] For example, according to recent findings released by the American Civil Liberties Union, based on its review of FOIA-requested documents from BOP, "The newly disclosed data from the Bureau of Prisons shows the total inadequacy of its efforts to uncover COVID-19 infections among staff and prisoners – and why the true number of infections is likely much higher than the alarming number of cases reported on its website." ACLU, FOIA Data Reveal Inadequate Testing and Precautions, Followed by COVID-19 Outbreak and Deaths, Sept. 21, 2020, available at https://www.aclu.org/press-releases/bop-data-show-federal-executions-likely-caused-covid-19-spike (detailing lack of COVID-19 testing and contact tracing, among other problems).

[19]  See, United States Marshals Services, "Fact Sheet – U.S. Marshals Service – 2020," https://www.usmarshals.gov/duties/factsheets/overview.pdf

[20] Keegan Hamilton and Keri Blakinger, 'Con-Air' is Spreading COVID-19 All Over the Federal Prison System, THE MARSHALL PROJECT (Aug. 13, 2020), https://www.themarshallproject.org/2020/08/13/con-air-is-spreading-covid-19-all-over-thefederal-prison-system

custody….As a result, USMS is failing to prevent the further spread of COVID-19 in prisons and communities all across the U.S., and in fact is actively making matters worse."[21]  As this Court observed at the hearing on November 20, "transportation of prisoners during the pandemic can, in fact, give rise to concerns about further health issues." (Hearing Tr., at 53).

The COVID-19 pandemic thus counsels strongly in favor of avoiding any unnecessary prisoner transport by USMS into BOP; it is particularly unsafe to transport Mr. Dear.  For these reasons—and especially absent any argument or evidence that commitment is necessary under section 4247(b)—Mr. Dear respectfully asks that he be permitted to remain where he is and be evaluated locally at FDC Englewood by a BOP-affiliated examiner.

3.   *Third, ordering the competency evaluation at FDC Englewood comports with Mr. Dear's right to have meaningful access to his state and federal capital defense teams.*

The Supreme Court has demanded heightened scrutiny in capital cases. The "heightened attention" required of courts where the death penalty is a possibility "parallels the heightened demands on counsel in a capital case." *Smith v. Mullin*, 379 F.3d 919, 939 (10th Cir. 2004) (citing Standards for Criminal Justice 4–1.2(c) (3d ed. 1993)).

---

[21] *See* Attachment C (Letter from Senators Warren, Booker, and Deutch to Donald W. Washington, Director U.S. Marshals Service, 9/19/20) (requesting information including about what steps USMS is taking to ensure the safety of detained individuals in its custody and USMS staff from COVID).

One of the most essential duties of a capital defense team is to develop a trusting relationship with the client. The ABA Guidelines state that capital defense counsel "should make every appropriate effort to establish a relationship of trust with the client and should maintain close contact with the client."[22] At all stages counsel should engage in a "continuing interactive dialogue with the client concerning all matters that might reasonably be expected to have a material impact on the case." ABA Guideline 10.5.

Despite the many logistical challenges and restrictions created by the pandemic, defense counsel has met in person with Mr. Dear at FDC Englewood whenever possible. This has much to do with the location of that facility. Mr. Dear's federal capital defense team resides in and around Denver, or is just one short, direct flight away from Colorado. Unless a local evaluation is ordered, Mr. Dear will be separated from his capital defense teams for an extended period, undermining his access to counsel and the defense team's ability to adhere to legal, ethical, and professional standards.[23] It is widely acknowledged that we are now entering the third wave of the pandemic. No reason exists to conduct Mr. Dear's evaluation outside Colorado—when there is a

---

[22] American Bar Association (2003), ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, at § 10.5, Relationship with the Client, available at https://www.americanbar.org/content/dam/aba/administrative/death_penalty_representation/2003guidelines.pdf

[23] This Court's decision about where to locate the section 4241(b) evaluation also affects Mr. Dear's ability to communicate with his state capital defense team. This should be a critical consideration in the Court's analysis, because the state prosecution is still pending. Recall, Mr. Dear is in primary state custody, appearing in federal court on a writ of habeas corpus ad prosequendum. (*See* ECF No. 6).

suitable local facility—precisely when travel is becoming even more difficult and dangerous.

Moreover, impeding defense counsel's regular and direct communication with Mr. Dear is especially problematic at this stage, because the ultimate determination of competency relies heavily on the defense team's personal observations. *See Dusky v. United States*, 362 U.S. 402, 402 (1960) (to be competent to stand trial, defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," and also a "rational as well as factual understanding of the proceedings against him."); *accord Drope v. Missouri*, 420 U.S. 162, 177 n. 13 (1975) (counsel is the "one with the closest contact with the defendant," so his "expressed doubt" in the competence of his client "is unquestionably a factor which should be considered").

## CONCLUSION

For all these reasons, and in accordance with 18 U.S.C. § 4247(b), this Court should order that Mr. Dear's pretrial competency evaluation under 18 U.S.C. § 4241(b) shall be conducted by a licensed or certified psychiatrist or psychologist affiliated with the BOP, and that the examination shall take place at FDC Englewood.  Mr. Dear also requests an opportunity to reply to the government's response and asks this Court to continue the stay of its Order imposed on November 20, 2020 (ECF No. 70), until the issue presented here is fully adjudicated.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


s/ Virginia L. Grady
VIRGINIA L. GRADY
Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:   (303) 294-7002
FAX:             (303) 294-1192
Email: Virginia_Grady@fd.org
Attorney for Defendant


*s/ Natalie G. Stricklin*
NATALIE G. STRICKLIN
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:   (303) 294-7002
FAX:             (303) 294-1192
Email: Natalie_Stricklin@fd.org
Attorney for Defendant

*s/ Veronica S. Rossman*
VERONICA S. ROSSMAN
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO 80202
Telephone:   (303) 294-7002
FAX:             (303) 294-1192
Email: Veronica_Rossman@fd.org
Attorney for Defendant

APPOINTED LEARNED COUNSEL:

s/ Mark F. Fleming
MARK F. FLEMING, ESQ.
Law Office of Mark Fleming
1470 Encinitas Blvd., Suite 133
Encinitas, CA 92024
Telephone:   (619) 300-6202
Email: mark@markfleminglaw.com
Attorney for Defendant

s/ Andrea L. Luem
ANDREA L. LUEM, ESQ.
400 South Fourth Street, Suite 500
Las Vegas, NV 89101
Telephone:   (702) 600-8403
FAX:            (702) 550-7712
Email: Andrea@luemlaw.com
Attorney for Defendant

CERTIFICATE OF SERVICE

I certify that on November 30, 2020, I filed the foregoing **DEFENDANT'S MOTION FOR ORDER REGARDING COMPETENCY EXAMINATION UNDER 18 U.S.C. §§ 4241(b) and 4247(b)** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Pegeen Rhyne, Assistant United States Attorney
E-mail:  pegeen.rhyne@usdoj.gov

Rajiv Mohan, Assistant United States Attorney
E-mail:  rajiv.mohan@usdoj.gov

Mary J. Hahn, Assistant United States Attorney
E-mail:  mary.hahn@usdoj.gov

I certify that I have mailed or served the document or paper to the following participant in the manner (mail, hand-delivery, etc.) indicated next to the participant's name:

Robert Lewis Dear, Jr. (via U.S. mail)
Reg. No. 45591-013

*s/ Veronica S. Rossman*
VERONICA S. ROSSMAN
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:   (303) 294-7002
FAX:            (303) 294-1192
Email: Veronica_Rossman@fd.org
Attorney for Defendant

17