# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Case No. 19-cr-00506-REB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROBERT LEWIS DEAR, JR.,

    Defendant.

---

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR AN ORDER REGARDING COMPETENCY EXAMINATION [DOC. # 72]

The United States of America submits this response in opposition to defendant Robert Lewis Dear Jr.'s Motion for an Order Regarding Competency Examination. [Doc. # 72].  On November 24, 2020, the Bureau of Prisons (BOP) informed the parties that it had determined that Mr. Dear's court-ordered competency examination should take place at the U.S. Medical Center for Federal Prisoners (USMCFP) in Springfield, Missouri.  In its motion, the defense asks the Court to disregard the BOP's determination of which of its facilities is "suitable" for Mr. Dear's competency examination and instead order that the examination be conducted at FCI-Englewood. [*Id.* at 5].  The Court should deny that request.

**I.   The examination should take place at USMCFP-Springfield.**

Competency examinations ordered under § 4241 are to be conducted according to 18 U.S.C. § 4247.  Section 4247, in turn, requires that the examination take place at

1

"the suitable facility closest to the court[,]" and defines a "suitable facility" as one "that is suitable to provide care or treatment given the nature of the offense and characteristics of the defendant."  18 U.S.C. § 4247(a)(2)-(b).  Thus, the statute requires that the BOP consider the unique facts and circumstances of each case, including the nature of the offense and the characteristics of the defendant.

The relevant facts and circumstances here are as follows:  The defense asserts that Mr. Dear has suffered from delusional disorder for decades, and Mr. Dear's treating psychiatrist at CMHIP diagnosed him with schizophrenia (unspecified).  Mr. Dear is charged with sixty-eight counts relating to his five-hour attack at a Planned Parenthood clinic on November 27, 2015, during which he intentionally shot and killed three people, wounded eight, and terrorized numerous others.  During court hearings, Mr. Dear has repeatedly said that he knew what he was doing and that he "would do it again."  [*See*, *e.g.*, Doc. # 72-2 at 40].  Additionally, based on Mr. Dear's assertions during the November 20, 2020 hearing, it is possible that he will not cooperate during the competency examination.  Which is all to say that this case presents a level of complexity that is not present in every case.

Despite that, the defense urges the Court to ignore the statutory requirement that a "suitable facility" account for the nature of the offense and the characteristics of the defendant and instead treat this case as any other.  [Doc. # 72 at 2].   In particular, the defense suggests that Mr. Dear's competency examination could "easily" be conducted in the traditional prison setting at FCI-Englewood simply because other competency examinations have been conducted there.   [*Id.* at 8].   This, however, brings a one-size-

fits-all approach to what, by statute, must be tailored to a specific case.  Not every defendant requires the same level of examination.

Here, the level of examination that Mr. Dear requires warrants an examination at USMCFP-Springfield.  Based on facts specific to Mr. Dear, including his prior diagnoses and the nature of his offenses, the BOP's Forensic Evaluations Coordinator has determined that USMCFP-Springfield is the "suitable facility" closest to the Court[1] where Mr. Dear's competency examination should occur.  The Forensic Evaluations Coordinator does not believe that FCI-Englewood is a "suitable facility" given the severity of Mr. Dear's alleged mental-health diagnoses.

The Forensic Evaluations Coordinator gave several reasons for this determination.  USMCFP-Springfield is one of the BOP's psychiatric-referral hospitals and has full-time psychiatrists, forensic staff, and other medical professionals on staff, all of whom have extensive experience in conducting competency examinations, including more complex examinations and ones in high-profile cases.  By contrast, FCI-Englewood is a traditional prison which lacks the type of psychiatrists and other medical professionals that USMCFP-Springfield has on staff.  Although FCI-Englewood has forensic psychologists on staff, they have less experience conducting competency examinations in high-profile and complex cases than the staff at USMCFP-Springfield.

In addition, while a psychologist would be able to meet with Mr. Dear at FCI-Englewood for a clinical interview, that facility cannot accommodate the type of around-

---

[1] USMCFP-Springfield is the closest Federal Medical Center to Colorado.

the-clock observation that will likely be important in conducting Mr. Dear's competency examination.  Although an interview alone might be enough in certain cases to evaluate competency, the best way to provide a thorough and reliable examination for defendants like Mr. Dear is to have staff at a Federal Medical Center—who are trained and experienced in interpreting the behavior of individuals—observe a defendant over time and in different contexts.  This is particularly important where, as here, a defendant may not cooperate with the interview process.

USMCFP-Springfield can also provide comprehensive psychiatric services and housing options that can be tailored to Mr. Dear's needs.  The only housing options at FCI-Englewood are with the general population and in the special housing unit.

Finally, USMCFP-Springfield has experience video recording competency examinations; FCI-Englewood does not.  Based on the Court's comments during the November 20, 2020 hearing, the government understands that the Court agrees that the clinical interviews conducted during the examination should be video recorded.

In sum, the BOP has offered numerous, specific reasons why USMCFP-Springfield is the suitable facility closest to this Court.  And the Court has no basis to set aside the BOP's expert determination.

## II. The defense's arguments against USMCFP-Springfield are meritless.

The defense offers a number of responses, none of which convince.

### A. Due process

The defense first says that Mr. Dear has a constitutional right to remain at FCI-Englewood.  Not so.  None of the cases cited by the defense suggests that the

Constitution requires this Court to disregard the BOP's determination about which of its facilities is "suitable" for Mr. Dear's competency examination.[2]

Most of the cases cited by the defense are inapposite because they involve the liberty interest of someone on pretrial release to be free from confinement for purposes of an examination. *See*, *e.g.*, *United States v. Neal*, 679 F.3d 737, 741 (8th Cir. 2012); *In re Newchurch*, 807 F.2d 404, 408-09 (5th Cir. 1986); *United States v. Deters*, 143 F.3d 577, 578 (10th Cir. 1998). Here, Mr. Dear has been in state, and now federal, custody for five years. And the defense does not dispute that this custody is entirely lawful. Thus, the liberty interest that was at stake in these cases cited by the defense is simply not at stake here. What is at stake here is where Mr. Dear should be temporarily held for purposes of his examination. On that question, the Tenth Circuit has explained

---

[2] In footnote 2 of its motion, the defense cites a number of cases in which evaluations were conducted at FCI-Englewood. [Doc. # 72 at n.2]. However, in those cases, the BOP determined that it was a suitable facility for evaluating those particular defendants; the courts did not impose this designation contrary to the BOP's determination. None of the cited cases suggests that the BOP's decision regarding which facility is suitable should be limited to whichever facility is closest to the courthouse. To the contrary, the defendant in each of the cited cases was transferred from out of state to Colorado for examination. *United States v. Morton,* 1:18-CR-02945-WJ, Doc. # 243 (D.N.M. Aug. 5, 2020) (stating that the court "referred" the defendant to the BOP); *United States v. Griffin*, No. 6:19-CR-68, Doc. # 67 (E.D. Ky. Jan. 23, 2020) (commitment order simply stated that the BOP should "determine and designate . . . the appropriate institution"); *United States v. Martinez*, 15-CR-0168, Doc. # 23 (N.D. Okla. Dec. 3, 2015) (commitment order); *United States v. Demerovic*, 2018 WL 3653304, Doc. # 824 (E.D. Ky. Feb. 14. 2018) (commitment order deferring to the BOP to designate the appropriate facility); *United States v. Hicks*, 3:14-cr-85, Doc. # 149 (E.D. Tenn. Aug. 26, 2014) (commitment order stating that the defendant shall remain in custody until the designation to a suitable facility); *United States v. Olivares*, 10–cr-50118, Doc. # 624 (D.S.D. Jan. 23, 2012); *United States v. Gallegos*, 4:06-cr-00421, Doc. # 56 (W.D. Mo. May 10, 2007) (same).

that "there is no federal constitutional right to incarceration in any particular prison or portion of a prison." *Montez v. McKinna*, 208 F.3d 862, 866 (10th Cir. 2000); *see also United States v. Gagan*, 95 F. App'x 941, 946 (10th Cir. 2004) (holding that defendant's rights were not violated by transfer to another facility for competency evaluation where decision was reasonable).

Besides, the inapposite cases cited by the defense do not even hold that due process requires the least-restrictive examination possible bar none. Rather, they merely hold that the government must justify the confinement of a defendant otherwise on pretrial release. For example, in *Deters*, the Tenth Circuit *rejected* the defendant's assertion that due process required an outpatient examination, reasoning that one sufficient basis for confinement was "a legitimate concern that an outpatient exam presented the risk that the defendant would not appear for trial." 143 F.3d at 583-84. The BOP has offered more than sufficient justification here even if these cases applied.

The Supreme Court's decision in *Vitek v. Jones*, 445 U.S. 480 (1980), is not to the contrary. There, the Supreme Court held that indefinite commitment of a prisoner to a mental hospital for mandatory behavior modification programs implicated a liberty interest that required minimum procedural protections. *Id.* at 491-92. *Vitek* is about procedural due process and imposed no substantive constraints on the transfer there. *See*, *e.g.*, *id.* at 494. That is, even if *Vitek* applied, it would offer no substantive grounds to disregard the BOP's determination here.

Moreover, courts have held *Vitek* inapplicable to the situation here—temporary commitment for a mental examination. In that circumstance, as the Eighth Circuit has

explained, the stigma associated with indefinite commitment and mandatory behavior modifications is absent, and "a temporary transfer for a psychological evaluation places no more of an imposition on a prisoner than does a transfer for administrative reasons[,]" which does not implicate due process.  *United States v. Jones*, 811 F.2d 444, 448 (8th Cir. 1987).  Similarly, the Ninth Circuit distinguished *Vitek* where a defendant was "transferred temporarily … for the purpose of evaluation" because he "lacked a liberty interest in his transfer[.]"  *Hill v. Reinke*, 721 F. App'x 707, 707-08 (9th Cir. 2018).[3]  The same is true here.

The defense cites *United States v. Visinaiz,* 96 F. App'x 594 (10th Cir. 2004), to suggest that the Tenth Circuit has applied *Vitek* in the context of a temporary commitment for a psychological examination.  [Doc. # 72 at n.6].  In *Visinaiz*, the Tenth Circuit did explain that the difference between involuntary commitment and confinement was "important" enough to establish appellate jurisdiction under the collateral-order doctrine.  *Id.* at 597.  But the Tenth Circuit disclaimed any designs to address whether the defendant's commitment "violate[d] his rights to substantive and procedural due process" and expressly chose to "avoid deciding the constitutional issues raised[.]"  *Id.* at 598.  As a substantive matter, the Tenth Circuit simply held (under Federal Rule of

---

[3]  *United States v. Weed*, 184 F. Supp. 2d 1166, 1172 (N.D. Okla. 2002), is likewise inapposite because on the facts there an outpatient examination was "adequate."  *Weed* simply stands for the uncontroversial proposition that the "suitable facility" determination must be supported by facts, which the BOP has supplied here.  Moreover, *Weed* recognized that, for a defendant on pretrial release, "commitment implicated liberty concerns which may not be present" for a detained defendant.  *Id.* at 1173.

Criminal Procedure 12.2) that "a district court should make findings of fact concerning the need for commitment." *Id.* at 600.  The district court in *Visinaiz* erred because "nothing in the record" supported its order.  *Id.*  That is clearly not the case here.  Out of an abundance of caution, however, the Court should make factual findings concerning the appropriateness of the BOP's determination that USMCFP-Springfield is the suitable facility closest to the Court.

At bottom, the BOP is uniquely positioned to determine which of its facilities is suitable and will produce the most thorough and reliable competency examination of Mr. Dear.  The BOP has provided a sound basis for its determination that USMCFP-Springfield is the "suitable facility" closest to the Court.  And no conception of due process requires the Court to set aside that determination.

**B.    The impact of COVID-19**

The defense further asserts that Mr. Dear is at a "heightened risk for severe illness or death" from COVID-19 because he is 62 with hypertension,[4] and that he should not be transported.  [Doc. # 72 at 10].  During the parties' meet-and-confer process, the defense declined to provide information about Mr. Dear's current health conditions, claiming that such medical information is confidential.  However, CMHIP records from September 2019[5] reflect that, "[d]uring the past year, Mr. Dear has had no significant medical problems," and that a medical examination resulted in "no significant

---

[4] The defense also makes a general reference to a "documented history of health problems" but fails to identify any condition other than hypertension.  [Doc. # 72 at 10].

[5] The BOP has Mr. Dear's current medical records and will take every necessary precaution in transferring Mr. Dear to a Federal Medical Center.

8

findings." [Doc. # 64, Ex. K at INV_00061029.]. The September 2019 report refers to Mr. Dear refusing treatment for "possible hypertension." [*Id.*]. Additionally, the September 2019 report states that Mr. Dear's most recent lab results from November 2018 were "unremarkable," and that he was not taking any medications. [*Id.*; *see also id.* at INV_00060946-49].

With respect to age, the CDC has identified seven age brackets that represent a gradually increasing risk for severe illness or death due to COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. At 62, Mr. Dear falls into the fourth age bracket of 50-64. Thus, he is more at risk than younger adults, but less at risk than those in the three higher brackets.

With respect to his "possible hypertension," the CDC currently lists hypertension as a condition that "might" cause a person to be at increased risk for severe illness. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. That condition is not on the list of those that are known to cause a person to be at increased risk for severe illness. *Id.*

Hence neither Mr. Dear's age nor his "possible hypertension" put him in a category of persons who are so vulnerable to COVID-19 that the need to avoid any risk of exposure outweighs the need to have a comprehensive and reliable competency examination completed at the "suitable facility" determined by the BOP.

In addition, by now, the Court is well aware of the BOP's robust efforts to mitigate the spread of COVID-19. *See* www.bop.gov/coronavirus/. Currently, all new intakes to a BOP institution, including BOP-to-BOP transfers, "are screened by medical staff for

9

COVID-19, including a symptom screen, a temperature check, and an approved PCR test."  *See* https://www.bop.gov/coronavirus/covid19_status.jsp.  "Inmates who arrive symptomatic AND/OR test positive will be placed in MEDICAL ISOLATION.  Inmates who arrive asymptomatic AND test negative will be placed in QUARANTINE."  *Id.* (emphases in original).  Regarding the transport itself, any inmate who has tested positive or is symptomatic will not be transported.  *Id.*  In preparation for a transport between BOP facilities, an inmate is tested and, if negative, is placed in quarantine for 14 days.  *Id.*  On day 14, the inmate is tested again prior to the transport.  *Id.*  The BOP's robust screening and testing protocols for the transfer of inmates between its facilities is appropriate.  That these safety protocols are implemented by the BOP rather than the United States Marshals Service is irrelevant.

  **C.** **The defense's remaining arguments**

  The defense offers a few remaining arguments.  Contrary to its assertions, the location of USMCFP-Springfield does not make it unsuitable.  The BOP will allow for attorney-client meetings, and Mr. Dear will be able to receive legal mail and calls, and have other contact with counsel.  Any logistical issues with conducting in-person visits, for the limited duration of the evaluation process, are outweighed by the significant benefits of evaluating Mr. Dear at USMCFP-Springfield.

  The defense also argues that the heightened requirements of a capital case require the Court to place greater priority on keeping Mr. Dear in Colorado so that his counsel have access to him.  But on December 2, 2020, the government filed its Notice of Intent Not to Seek the Death Penalty.  [Doc. # 74].  The defense's arguments

regarding capital cases are therefore now moot.

Finally, the defense has misconstrued the government's guidance to the Court regarding wording its order so as not to create unintended speedy-trial consequences by triggering the ten-day clock for transportation under 18 U.S.C. § 3161(h)(1)(F). [Doc. # 72 at 8-9].  See *United States v. Turner*, 602 F.3d 778, 784-85 (6th Cir. 2010) (to avoid triggering ten-day transportation clock, government is free to suggest the court not issue an order directing transportation where time is needed for BOP to designate placement); *United States v. McGhee*, 532 F.3d 733, 738 (8th Cir. 2008) (order directing transport starts ten-day transportation clock).  In alerting the Court to this technical speedy-trial issue, the government has not manipulated constitutional safeguards or waived its position that the Court should respect the BOP's determination that Mr. Dear's competency exam should be conducted at USMCFP-Springfield.

\*     \*     \*

In conclusion, the government requests that this Court make findings that USMCFP-Springfield is the suitable facility closest to the Court for Mr. Dear's competency examination given the reasons offered by the BOP based on its expertise, and the nature of the offense and the characteristics of Mr. Dear.

11

Dated:  December 11, 2020

Respectfully submitted,

JASON R. DUNN
United States Attorney

By:  s/ *Pegeen D. Rhyne*
Pegeen D. Rhyne
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax:  303-454-0406
E-mail:  Pegeen.Rhyne@usdoj.gov

By:  s/ *Rajiv Mohan*
Rajiv Mohan
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax:  303-454-0406
E-mail:  Rajiv.Mohan@usdoj.gov

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division
U.S. Department of Justice

By:  s/ *Mary J. Hahn*
Mary J. Hahn
Trial Attorney
Civil Rights Division, Criminal Section
4 Constitution Square
150 M Street, N.W./7.1108
Washington, D.C. 20002
Telephone: 202-305-0921
Fax:  202-514-6588
E-mail:  Mary.Hahn@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case:

| | |
|---|---|
| Natalie Stricklin | Natalie_Stricklin@fd.org |
| Rick Williamson | Rick_Williamson@fd.org |
| Veronica Rossman | Veronica_Rossman@fd.org |
| Mark F. Fleming | mark@markfleminglaw.com |
| Andrea L. Luem | Andrea@luemlaw.com |

By: s/ *Rajiv Mohan*
Rajiv Mohan
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax: 303-454-0406
E-mail: Rajiv.Mohan@usdoj.gov