IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 19-cr-00506-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ROBERT LEWIS DEAR, JR.,

      Defendant.

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR ORDER
REGARDING COMPETENCY EXAMINATION
UNDER 18 U.S.C. §§ 4241(b) and 4247(b), ECF No. 72**

      The defendant, Robert Lewis Dear, Jr., through undersigned counsel, herein replies to the United States' Response In Opposition to Defendant's Motion for Order Regarding Competency Evaluation (ECF No. 76, 12/11/20) ("Response"). Mr. Dear respectfully asks that this Court issue the relief requested in his Motion for Order (ECF No. 72, 11/30/20) ("Motion") and order a local competency evaluation at FDC-Englewood,[1] under sections 4241(b) and 4247(b). In support, counsel states:

*Reply Argument*

*I.  Introduction*

      Mr. Dear's court-ordered competency examination should be performed by a BOP examiner at the Englewood facility, where he has been detained without incident

---

[1] FDC-Englewood is part of the Federal Correctional Institution (FCI) Englewood. (*See* Motion at 1 n.1). Throughout this Reply, Mr. Dear also refers to the FCI-Englewood complex as the "Englewood facility" or "Englewood."

for over a year.  As the Response confirms, pretrial competency evaluations are routinely conducted at Englewood.  And Mr. Dear's competency evaluation also can be conducted at that facility. The government has not contended otherwise. In December 2019, when the prosecution first filed its section 4241 motion, the government believed the Englewood facility was suitable for Mr. Dear's competency examination.[2] In August 2020, when the parties were litigating the section 4241 issue, and again in November 2020, when the evaluation was ordered, the government specifically asked this Court not to commit Mr. Dear under section 4247(b), meaning he would be examined locally at Englewood. (*See* Motion at 9) (citing ECF No. 66 at 17; *see also* 11/20/20 Hearing Tr. at 25).[3]

Now, without basis, the government claims Mr. Dear should not be evaluated at the Englewood facility. The Response says, "On November 24, 2020, the BOP informed the parties that it had determined that Mr. Dear's court-ordered competency examination should take place at the U.S. Medical Center for Federal Prisoners at Springfield, Missouri." (Response at 1).[4]  According to the government, BOP's determination cannot be challenged, and this Court must defer to it.

---

[2] Mr. Dear arrived at FDC-Englewood on December 9, 2019.  (ECF No. 7). The government filed its section 4241 motion on December 11, 2019, ECF No. 13, and contended Mr. Dear's competency evaluation could be performed "as soon as December 17, 2019." *Id.* at 3.

[3] The 11/20/20 hearing transcript was filed with the Motion, ECF No. 72, at Attachment B (ECF No. 72-2).

[4] Although the Response does not so specify, the government must be referring to the November 24 email from Zachary Huffman, Senior Attorney Advisory.  (Attachment A). Mr. Huffman incorrectly assumed Mr. Dear had been committed and never said the Englewood facility was unsuitable for Mr. Dear's competency evaluation.

The government's position is incorrect. It is based on speculative assertions, unsupported by evidence, and invites this Court to disregard the facts, the plain language of section 4247(b), Mr. Dear's constitutional rights, and the most serious public health emergency in our lifetime.  This Court should reject it.  The Englewood facility is a suitable location for Mr. Dear's competency evaluation, and the Court should order that the examination take place there to avoid delay, unwarranted impediments to Mr. Dear's access to counsel, and the unnecessary risk of exposing Mr. Dear, the U.S. Marshal Service ("USMS") transport team, and other BOP inmates and staff to COVID infection.

II.   *Discussion*

   1.   *The government misunderstands how section 4247(b) applies where, as here, there is no commitment order.*

Under section 4247(b), this Court has the authority to order the examination to be conducted locally, without committing Mr. Dear to the custody of the Attorney General. *See* 18 U.S.C. § 4247(b) ("the court *may* commit the person to be examined…to the custody of the Attorney General") (emphasis added).  Mr. Dear made this point in his Motion (at 5-10), but the government has ignored both the argument and the relevant statutory language.

The flaw in the government's argument is that Mr. Dear has not been committed under section 4247(b).  The government repeatedly asked this Court not to commit Mr. Dear for the competency examination. (*See* Motion at 8-9). In its filings, the government made clear "the Court's order should not include any reference to removing, transporting, or committing Dear to a BOP federal medical center for the examination."

3

(ECF No. 20 at 17). And at the hearing, the government again requested, and this Court agreed, not to commit Mr. Dear for the competency evaluation. (Hearing Tr., 11/20/20, at 48). It seems the government decided not to seek commitment for strategic reasons. (*See* ECF No. 20 at 17-18; *see* Response at 11). The government has intentionally relinquished its opportunity to seek a commitment order. The Court should enforce the waiver.

Rather than contend with the law and the consequences of its own litigation position, the government reads words—and the district court's discretion—out of section 4247(b). The text of section 4247(b) makes plain this Court retains discretion over where the competency evaluation shall take place. The permissive statutory language means that, at the initial competency evaluation stage, the discretion to commit a defendant for an inpatient psychiatric evaluation rests with the Court. (*See* Motion at 5-6). To properly exercise its discretion under section 4247(b), this Court must consider all available evidence and not simply endorse the government's preferences.

  2. *The government ignores the constitutional implications of commitment under section 4247(b).*

The government contends Mr. Dear has no constitutional right to be confined in any particular prison. (Response at 5-6). This principle is not relevant here. Mr. Dear has never argued he has a "constitutional right to remain at FCI-Englewood." (*Id.* at 6). Rather, the defense simply contends that section 4247(b) must be read against the backdrop of the constitutional protection for individual liberty, and this Court's discretion under section 4247(b) must be exercised in a manner that comports with due process. (*See* Motion at 6-8).

The government claims—incorrectly—that any liberty infringement resulting from an around-the-clock, inpatient psychiatric evaluation is less serious because Mr. Dear is already in federal detention.  As Mr. Dear has explained, the due process protections attendant to involuntary commitment for a pretrial psychiatric examination under section 4247(b) apply to him, even though he is in pretrial custody and not on pretrial release. (*See* Motion at 8 n. 6) (citing *Vitek v. Jones*, 445 U.S. 480, 492 (1980) and *United States v. Visinaiz*, 96 F. App'x 594, 597 (10th Cir. 2004) (unpublished)).[5]

The government also unsuccessfully relies on unpersuasive out-of-circuit authority to avoid *Vitek*'s application here.[6]  But as the government admits, the Tenth Circuit, relying on *Vitek*, has found that a pretrial detainee "will suffer a loss of liberty by his involuntary commitment [for a competency examination]."  96 F.Appx. at 597; *see generally Jones v. United States*, 463 U.S. 354, 361 (1983) ("[C]ommitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.")).  Importantly, the *Visinaiz* panel considered and rejected the very

---

[5] Notably, the constitutional protections available to pretrial detainees like Mr. Dear are even greater than those afforded to convicted inmates. *See, e.g., United States v. Loughner*, 11-10339, 2011 WL 2694294, at *1 (9th Cir. July 12, 2011) ("Because Loughner has not been convicted of a crime, he is presumptively innocent and is therefore entitled to greater constitutional protections than a convicted inmate.").

[6] The government's reliance on cases like *United States v. Jones*, 811 F.2d 444 (8th Cir. 1987) is misplaced. *Jones* held that a convicted inmate is not entitled to a pretransfer hearing under 18 U.S.C. § 4245 when federal prison officials decide the prisoner needs a psychiatric evaluation. *Jones* reasoned that, for a convicted prisoner, a section 4245 transfer was just like any "involuntary transfer from one federal prison to another." *Id.* at 448.  Even assuming *Jones* was correctly decided, it has no application here, where the issue concerns this Court's discretion under section 4247(b) to decide the location of Mr. Dear's pretrial competency evaluation.

argument the government advances here: "Although the government argues Mr. Visinaiz suffers no loss of liberty by being committed to the mental hospital because he is already being detained pending trial, a significant difference exists between the two types of detainment." 96 F.Appx. at 597.

   3.   *The government has not established that Englewood is unsuitable.*

The government concedes the suitable facility determination must be supported by facts and agrees this Court must make factual findings about the need for commitment. (*See* Response at 7 n.3; *see id.* at 8). On this record, there is no basis to conclude that Englewood is an unsuitable place for Mr. Dear's evaluation.

First, the government's argument that Mr. Dear should be examined at Springfield is uncorroborated. Throughout the Response, the government refers to an "expert determination" made by an unidentified "Forensic Evaluations Coordinator" who decided that Springfield is the suitable facility for Mr. Dear's competency examination. (Response at 3-4). The government describes the "numerous, specific reasons" that expert apparently provided the government to support its opinion. (*Id.* at 4). The Response advances conclusory allegations about the quality of the forensic staff at Englewood, calling into question their ability to "provide a thorough and reliable examination" because they supposedly lack "experience conducting competency examinations in high-profile and complex cases" and are not "trained and experienced in interpreting the behavior of individuals." (*Id.* at 3-4).

The threshold problem here is obvious: there is no proof to support the government's position. The government does not introduce evidence but relies only on the representations of counsel. It is well established that "statements of counsel are not

evidence." *United States v. Fetlow*, 21 F.3d 243, 248 (10th Cir. 1994); *accord Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 853 (7th Cir. 2002) ("[I]t is universally known that statements of attorneys are not evidence."); *Mora v. United States*, 955 F.2d 156, 158 (2d Cir. 1992) ("Research has revealed no authority for the proposition that a district court must rely on a representation, made by the government or any other litigant for that matter. Instead, in making a determination, a trial court must rely on the evidence before it."). This Court must make findings based on evidence, but here, the government failed to offer any, leaving the factual record obviously insufficient to support its position.

By contrast, Mr. Dear respectfully submits the declaration of Dr. Susan Bograd, a board-certified psychologist specializing in forensic and adult general psychiatry. (*See* Attachment B). Dr. Bograd has conducted dozens of competency evaluations of criminal defendants housed in various BOP facilities, including "21 competency evaluations at FCI/FDC Englewood from 2008 to the present." (*Id.* at ¶ 3). In her professional opinion, "FCI/FDC Englewood is a suitable facility for conducting competency evaluations in general" and "it is a suitable facility for conducting a competency evaluation on Mr. Dear in particular." (*Id.*). Under the circumstances, the only evidence before the Court supports Mr. Dear's position: he should be evaluated locally.[7]

Second, leaving aside its failure of proof, the government has provided no reason to conclude Englewood is, in fact, unsuitable for Mr. Dear's competency examination.

---

[7] If the Court construes the assertions in the Response as the government's offer of proof, Mr. Dear requests an evidentiary hearing to resolve the factual disputes presented.

For example, the government contends Mr. Dear cannot be evaluated at Englewood because his case "presents a level of complexity that is not present in every case." (Response at 2).  This is a reversal from the government's litigation position in December 2019, when it was seeking an "ordinary competency evaluation" and believed "[t]he exam itself would take several hours" and should "go forward as early as next week" at the Englewood facility. (*See* 12/13/19 Hearing Tr. at 11-13).[8]

Likewise, the government does not explain how the "severity of Mr. Dear's alleged mental-health diagnoses" would render the Englewood location unsuitable. (Response at 3).  The initial competency evaluation is not about treatment or restoration; the undertaking here is evaluative, and thus, narrow and straightforward. Mr. Dear does not contend the Englewood facility would be suitable for restoration, but it is suitable to perform his section 4241(b) evaluation.

None of the other reasons advanced by the government undermine Englewood's suitability. The government's assumption that Mr. Dear will not cooperate with an evaluation is speculative and, in any event, has nothing to do with where the evaluation is performed. Mr. Dear also need not be committed to Springfield for its special housing options, as the government suggests. Mr. Dear has been housed with the general population at Englewood, without incident, since last December. And the notion that only Springfield, but not Englewood, could video record the examination is absurd.

---

[8] The 12/13/19 hearing transcript was filed as Attachment B to Defendant's Response to Government's Motion for Competency Evaluation Pursuant to 18 U.S.C. § 4241 (*See* ECF Doc. 35-2).

> 4.  *The government minimizes the significant COVID risks of transporting Mr. Dear, particularly when his competency evaluation can be performed locally.*

The Response does not meaningfully acknowledge the existence of the pandemic.  "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States of America v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020). Mr. Dear argued that ordering the competency evaluation at FDC-Englewood mitigates the serious risks associated with transporting him during the pandemic. (*See* Motion at 10-13). The government responds that Mr. Dear is not really at risk and the COVID-19 situation within the BOP is not really that bad.  The government is wrong on both fronts.

First, Mr. Dear is medically vulnerable.  The government does not dispute that his advanced age alone is associated with increased COVID-19-related risks and severe negative outcomes. Mr. Dear also has a history of serious health issues, as the government is well aware.  During the meet-and-confer process, the defense provided the prosecution with a court order from Mr. Dear's state case describing his long-standing medical conditions, including a heart condition and hypertension. (*See* Pueblo County District Court Case no. 17MH140, Order Denying Involuntary Medication Order, 2/21/19) (finding Mr. Dear suffers from multiple chronic health conditions including "hypertension, premature ventricular contractions evidencing a possible heart problem,

9

urological issues, etc." and "current and apparently serious" cardiac issues).[9]  Mr. Dear's medical records also show he has serious health issues. *See also* CMHIP Discharge Summary, 12/9/19 (identifying diagnoses of hypertension and dyslipidemia).[10]

Second, the government's contention that "BOP's robust efforts" are controlling the spread of the virus is not reassuring given the recent, rapid acceleration of the pandemic among the public at large. When Mr. Dear filed his Motion on November 30, the United States reported 13 million cases of COVID-19. (*See* Motion at 10 n. 10). Now, about three weeks later, that number has increased to over 17.7 million cases.[11]

Nine months into the pandemic, the failure to control COVID-19 in federal detention remains "both a public health catastrophe and a moral one."[12] The USMS doesn't publicly post data on infections, but in statements to the media, it has reported that as of mid-November, 6,676 individuals in its custody had tested positive for COVID-19 and 20 had died.[13] The Department of Justice Office of Inspector General (OIG)

---

[9] This state court order is found at Exhibit K (*see* INV_00059524-INV_00059546), included with the conventionally filed materials at ECF No. 65, 8/11/20.

[10] This discharge summary is found at Exhibit K (*see* INV_00061367-INV_00061369), included with the conventionally filed maters at ECF No. 65, 8/11/20.

[11] CDC COVID Data Tracker, United States COVID-19 Cases and Deaths by State, https://covid.cdc.gov/covid-data-tracker/#cases_casesinlast7days (last visited Dec. 21, 2020).

[12] New York Times, Opinion, America Is Letting the Coronavirus Rage Through Prisons, Nov. 20, 2020, https://www.nytimes.com/2020/11/21/opinion/sunday/coronavirus-prisons-jails.html

[13] Aaron Miguel Cantú, Federal Prosecutors Hold Protestors For Months Pretrial, Type Investigations, Nov. 17, 2020, (reporting that "the consequences of pretrial detention

recently found that "[m]aintaining a safe, secure, and humane prison system remains a challenge for DOJ and the BOP."[14] The OIG reported that, during the pandemic, "Of particular concern is the USMS's decentralized system, which creates potential safety issues as detainees are transferred between facilities and to and from federal courthouses and U.S. Attorney's Offices."[15] This Court has already found that "transportation of prisoners during the pandemic can, in fact, give rise to concerns about further health issues." (11/20/20 Hearing Tr., at 53).

There can be no serious question that the risk of COVID infection to Mr. Dear and potentially dozens of others, including BOP inmates and staff and individuals charged with his transport, is far greater if he is moved to Springfield. Absent any justification for commitment under section 4247(b), and given the clear risks presented by COVID-19 for Mr. Dear and all others he encounters during the transport process, Mr. Dear respectfully asks that he be permitted to remain where he is and be evaluated locally at the Englewood facility by a BOP-affiliated examiner.

---

have been greatly heightened by the pandemic"), available at https://www.typeinvestigations.org/investigation/2020/11/17/federal-prosecutors-hold-protesters-for-months-pretrial/

[14] Department of Justice, Office of the Inspector General, Top Management and Performance Challenges Facing the Department of Justice–2020, Oct. 16, 2020, at 16 (concluding, "During 2020, the unexpected and unprecedented challenges presented by the COVID-19 pandemic exacerbated the strain on BOP."), available at https://oig.justice.gov/sites/default/files/reports/2020.pdf

[15] *Id.* at 12.

11

> *5.    The issue of whether transfer to Springfield would impair Mr. Dear's access to counsel is not obviated by the government's decision against the death penalty.*

Mr. Dear's right to have meaningful access to his state and federal defense teams is paramount.[16] The government suggests that "the significant benefits of evaluating Mr. Dear at USMCFP-Springfield" outweigh "[a]ny logistical issues" concerning his access to counsel. (Response at 10). A defendant's constitutional rights are not subject to the government's cost/benefit analysis.

Mr. Dear's Sixth Amendment right to counsel depends on having lawyers with whom he can communicate. The Sixth Amendment protects the integrity of the adversarial system of criminal justice by ensuring that all persons accused of crimes have access to effective assistance of counsel for their defense. That right to counsel would be meaningless without the protection of free and open communication between client and counsel. Denial of meaningful consultation between a defendant and his lawyer violates the Sixth Amendment.

Here, an order removing Mr. Dear from Colorado for an inpatient competency evaluation will inevitably disrupt his ability to communicate with counsel, risks impairing the defense function, and could adversely affect later stages of the proceeding. Moreover, as Mr. Dear explained in his Motion (at 15), the defense team's personal observations of Mr. Dear are directly relevant to the *Dusky* analysis—which is the ultimate question at stake.

---

[16] The state case pending against Mr. Dear remains a capital prosecution.  Mr. Dear faces life imprisonment without the possibility of release in this federal case.

## CONCLUSION

For the reasons stated here, and in Mr. Dear's Motion (ECF No. 72), and in accordance with 18 U.S.C. § 4247(b), this Court should order that Mr. Dear's pretrial competency evaluation under 18 U.S.C. § 4241(b) shall be conducted by a licensed or certified psychiatrist or psychologist affiliated with the BOP, and that the examination shall take place at the Englewood facility.  If this Court is inclined not to order a local evaluation under section 4247(b), Mr. Dear respectfully requests an evidentiary hearing.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


s/ Virginia L. Grady
VIRGINIA L. GRADY
Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:   (303) 294-7002
FAX:             (303) 294-1192
Email: Virginia_Grady@fd.org
Attorney for Defendant


*s/ Natalie G. Stricklin*
NATALIE G. STRICKLIN
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:   (303) 294-7002
FAX:             (303) 294-1192
Email: Natalie_Stricklin@fd.org
Attorney for Defendant

s/ Veronica S. Rossman
VERONICA S. ROSSMAN
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO 80202
Telephone:   (303) 294-7002
FAX:             (303) 294-1192
Email: Veronica_Rossman@fd.org
Attorney for Defendant

APPOINTED LEARNED COUNSEL:

s/ Mark F. Fleming
MARK F. FLEMING, ESQ.
Law Office of Mark Fleming
1470 Encinitas Blvd., Suite 133
Encinitas, CA 92024
Telephone:   (619) 300-6202
Email: mark@markfleminglaw.com
Attorney for Defendant

s/ Andrea L. Luem
ANDREA L. LUEM, ESQ.
400 South Fourth Street, Suite 500
Las Vegas, NV 89101
Telephone:   (702) 600-8403
FAX:            (702) 550-7712
Email: Andrea@luemlaw.com
Attorney for Defendant

## CERTIFICATE OF SERVICE

I certify that on December 22, 2020, I filed the foregoing ***Defendant's Reply in Support of Motion for Order Regarding Competency Examination Under 18 U.S.C. §§ 4241(b) and 4247(b), ECF No. 72*** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Pegeen Rhyne, Assistant U.S. Attorney, email:  pegeen.rhyne@usdoj.gov

Rajiv Mohan, Assistant U.S. Attorney, email:  rajiv.mohan@usdoj.gov

Mary J. Hahn, Assistant U.S. Attorney, email:  mary.hahn@usdoj.gov

I certify that I have mailed or served the document or paper to the following participant in the manner (mail, hand-delivery, etc.) indicated next to the participant's name:

Robert Lewis Dear, Jr. (via U.S. mail)
Reg. No. 45591-013
c/o FDC – Englewood

*s/ Veronica S. Rossman*
VERONICA S. ROSSMAN
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:   (303) 294-7002
FAX:            (303) 294-1192
Email: Veronica_Rossman@fd.org
Attorney for Defendant