IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 19-cr-00506-REB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROBERT LEWIS DEAR, JR.,

    Defendant.

---

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S OBJECTIONS [#92] TO MAGISTRATE JUDGE'S ORDER [#82]**

---

The United States submits this response to defendant Robert Lewis Dear Jr.'s Rule 59(a) Objections Supporting Appeal [#92] of Magistrate Judge's Order [#82]. The defense argues that the magistrate judge (1) failed to recognize her discretion not to transfer Mr. Dear to the United States Medical Center for Prisoners (USMCFP) in Springfield, Missouri, and (2) failed to justify that decision. But as the order demonstrates, Magistrate Judge Mix carefully weighed this question and explained the reasoning behind her ruling. Because that decision was neither clearly erroneous nor contrary to law, the United States respectfully asks the Court to overrule the defendant's objections.

## Background

On November 27, 2015, Robert Dear drove to the Planned Parenthood Clinic in

1

Colorado Springs with six rifles, five handguns, and more than 500 rounds of ammunition.  [#1].  In the five-hour attack that followed, he shot and killed three people, wounded eight, and terrorized numerous others.  [*Id.* at 1-2].

The United States indicted Mr. Dear on sixty-eight criminal charges.  [#1].  But at his initial appearance, the defendant announced that he wished to represent himself.  [*See* #8].  The Court stopped the proceedings, and the government moved for a competency exam and hearing under 18 U.S.C. § 4241(a) and (b).  [#13].

The Court referred the motion to Magistrate Judge Mix.  The defense conceded that there was reasonable cause to believe Mr. Dear was incompetent and that a competency hearing was therefore required.  [#66 at 1-2].  Still, defense counsel insisted that an exam was unnecessary because the Court could rely on past evaluations by the state of Colorado.  [*Id.*].  The United States argued that a new exam was needed.  [#66].  The magistrate judge agreed with the government and ordered Mr. Dear, who is already in BOP custody, to "be evaluated in a suitable Bureau of Prisons facility for purposes of determining his competency."  [#72-2 at 49].

The defense proceeded to ask the magistrate judge about the exam's location.  [*Id.*].  Magistrate Judge Mix instructed the parties to confer and attempt to "reach some agreement with respect to . . . *the specifics of the location of the evaluation*."  [*Id.* at 52 (emphasis added)].

Both sides agreed that the evaluation should be performed by a licensed BOP professional at a BOP facility.  [#72 at 1].  Nevertheless, the defense took issue with the BOP's chosen location, USMCFP-Springfield.  When the parties reached a stalemate,

2

the defense moved the magistrate judge "to order that [Mr. Dear's] pretrial competency examination . . . shall take place at the Federal Detention Center [in] Englewood," where he is currently detained. [*Id.* at 1, 16]. The motion asserted that FCI-Englewood had performed such evaluations in the past and could do so again. It also argued against the BOP's chosen facility on the grounds that (1) a transfer could be dangerous due to COVID-19; and (2) it would be more difficult for counsel to meet with Mr. Dear. [#72].

In response, the United States explained that the BOP's Forensic Evaluations Coordinator had determined that Mr. Dear needed to be evaluated at a federal medical center, and not at a traditional prison like Englewood. The closest suitable facility was therefore USMCFP-Springfield. [#76]. The BOP gave several reasons for that conclusion, including:

- Mr. Dear's prior diagnoses of delusional order and schizophrenia;
- Mr. Dear's history of refusing to cooperate during competency exams;
- The qualifications and experience of the doctors at USMCFP-Springfield;
- USMCFP-Springfield's ability to observe Mr. Dear around-the-clock; and
- USMCFP-Springfield's experience with video-recording competency exams.

[*Id.* at 3-4].

Magistrate Judge Mix agreed with the BOP's reasoning and ordered that the exam take place at USMCFP-Springfield. [#82]. In her order, she recognized that 18 U.S.C. § 4247(b) gave her discretion to decide if an in-patient exam was required. [*See id.* at 3]. But where, as here, the defendant was already in BOP custody — and both sides agreed that the BOP should conduct the exam — she concluded that the agency was in the best position to determine where the exam should occur. [*Id.*].

3

## Standard of Review

The issue before the magistrate judge — the location of the competency evaluation — falls under Rule 59(a) because it was a non-dispositive matter.  *See* Fed. R. Crim. P. 59(a).  Unlike matters referred under Rule 59(b), Rule 59(a) provides for a "deferential standard of review."  *Matters Before a Magistrate Judge*, 3B Fed. Prac. & Proc. Crim. § 922 (4th ed.).  The district court may modify or set aside parts of the order if they are "clearly erroneous or contrary to law."  *Id.*  A decision is "not clearly erroneous unless it is without factual support in the record."  *F.D.I.C. v. Oldenburg*, 38 F.3d 1119, 1122 (10th Cir. 1994).  A decision is "contrary to law" when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.  *See, e.g.*, *Catskill Dev. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002).

In short, the Court should "affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been made."  *Allen v. Sybase,* 468 F.3d 642, 658 (10th Cir. 2006).

## Discussion

**I.    Magistrate Judge Mix's Conclusion That USMCFP-Springfield Should Perform the Exam Was Not Clearly Erroneous or Contrary to Law.**

The Court should overrule the objections.  Despite the defense's claims, the magistrate judge did not err in deferring to the BOP's conclusion that the complexity of Mr. Dear's exam required that it be performed at USMCFP-Springfield.

**A.    The Issue Before the Magistrate Judge Was Where to Hold Mr. Dear's Competency Exam — Not Whether He Should Be Committed for the Exam.**

As an initial matter, it is important to recognize that the question before

4

Magistrate Judge Mix was not — as the defense now contends — whether Mr. Dear should be temporarily committed for purposes of his competency evaluation. Instead, the only issue below was the location of the exam.

This is confirmed by the history of the dispute. The defense specifically raised the issue of *location*. [#72-2 at 49]. In response, the magistrate judge explicitly instructed the parties to reach an agreement regarding the "specifics of the location of the evaluation." [*Id.* at 52]. When they could not, the defendant moved the Court "to order that his pretrial competency examination . . . take place at the Federal Detention Center (FDC) Englewood." [#72 at 1; *accord id.* at 16 (requesting same)]. The defense's motion did not seek any other relief. To that end, its arguments focused almost exclusively on the reasons the exam should be performed at FCI-Englewood.

The government's motion did not center on commitment, either. [#76]. Indeed, the United States has never requested that the Court commit Mr. Dear for the purposes of a § 4241 exam. Rather, the government simply asked Magistrate Judge Mix to deny the defense's request that the exam take place at Englewood and defer to the BOP's choice of USMCFP-Springfield instead. [*Id.* at 1].

Nevertheless, the defendant now seeks to recharacterize this dispute as one involving his involuntary commitment and concomitant rights to due process. It was not. The sole question posed by the magistrate judge — and the sole issue debated in the parties' pleadings — was the respective merits of the two BOP facilities. [*See* #82 at 1 ("The dispute addressed in the above pleadings is about where the Defendant's competency evaluation should take place.")].

Perhaps most importantly, the defense has never explained why it believes that commitment was implicated in this scenario. After all, Mr. Dear is already in the custody of the Bureau of Prisons. Both parties agreed that the exam should be performed by the BOP at a BOP facility. The only issue that remained was the exam's location.

Despite three opportunities to do so — and more than 30 pages of briefing — the defense has still failed to articulate how, exactly, the issue of commitment fits into this analysis. The defendant has never argued that his transfer from one BOP facility to another represents an involuntary commitment, or that such a transfer is barred absent a commitment order. And the defense has never explained why it believes this part of § 4247(b) applies to defendants like Mr. Dear who are already in BOP custody. [*See* #6 (writ ad prosequendum committing defendant to custody of federal law enforcement)]; *cf.* 18 U.S.C. § 3142(i) (individuals detained before trial are "committed to the custody of the Attorney General for confinement").[1] The Court should therefore reject the defense's attempt to reframe the dispute.

**B.      Magistrate Judge Mix's Analysis Was Not Contrary to Law.**

The defense is correct that § 4247(b) gives a court discretion to commit a defendant for an in-patient examination. But where, as here, the defendant is already in federal prison — and the parties agree that the BOP will perform the exam — § 4247(b)

---

[1] Nor has the defense ever made any cogent argument against commitment on the merits. The defense has never attempted to explain why an in-patient exam would not be fully justified by the incredibly complex competency inquiry in this case. As discussed more below, Mr. Dear has been diagnosed with delusional disorder and schizophrenia, spent the last four years in a mental hospital, has repeatedly refused to cooperate during evaluations, yet continues to insist he is competent to stand trial. If this defendant does not warrant an in-patient exam, it is difficult to imagine who would.

strongly suggests that the defendant's placement should be left to the Attorney General. *See* § 4247(b) (authorizing court to "commit the person … *to* the custody of the Attorney General *for* placement in a suitable facility.") (emphasis added).

Given this, the magistrate judge did not abuse her discretion in giving deference to the BOP's expertise.  The BOP "is indisputably more knowledgeable than the Court about the advantages and disadvantages of its various facilities for conducting competency evaluations in any given case."  [#82 at 4].  In addition, "allowing the Bureau of Prisons to exercise its statutory discretion without routine court interference promotes efficiency and avoids delay in prosecution of the case, thus providing irrefutable benefits to both the Government and the defendant."  *Id*.

Nor was that deference contrary to law.  Though the defense cites a handful of cases, none are on-point.  That is because none of these decisions involved defendants who were already in BOP custody.  *See, e.g.*, *United States v. Deters*, 143 F.3d 577 (10th Cir. 1988) (defendant released pending trial); *United States v. Neal*, 679 F.3d 737, 738 (8th Cir. 2012) (same); *In re Newchurch*, 807 F.2d 404 (5th Cir. 1986) (same).

The courts in those cases were faced with the difficult task of deciding whether to institutionalize a defendant who would otherwise be free in order to obtain a reliable psychological evaluation.  Consequently, those decisions involved concerns that are simply not present here.  *See, e.g.*, *Newchurch*, 807 F.2d at 411 (confinement would entail loss of employment); *Neal*, 679 F.3d at 739 (defendant was his elderly wife's caretaker and posed no flight risk or danger to community).

By contrast, Mr. Dear is already in federal prison.  Both sides agree that the BOP

should conduct the exam at a BOP facility.  Thus, the magistrate judge's only task was to resolve a dispute about the location.  Because the BOP understands its facilities and their capabilities better than anyone, it was not an abuse of discretion to defer to the agency's expertise in this matter.  *See United States v. Martin*, 2011 WL 5220310, at *14 (D.N.M. 2011) ("Given . . . the discretion that Congress normally gives to the Bureau of Prisons on where to house a particular inmate, a court should construe the language in this statute consistently with the Bureau of Prisons' typical discretion . . . Thus, the Bureau of Prisons makes the ultimate decision where the examination under 18 U.S.C. § 4247(b) takes place.") (Browning, J.); *see generally* 18 U.S.C. § 3621 ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment."); *United States v. Williams*, 65 F. 3d 301, 307 (2d Cir. 1995) ("A sentencing court has no authority to order that a convicted defendant be confined in a particular facility. . . .  [T]hose decisions are within the sole discretion of the Bureau of Prisons.").

**C.    The Magistrate Judge's Reasoning Was Not Clearly Erroneous.**

The substance of Magistrate Judge Mix's order confirms that the final decision was hers, and that she did not merely "rubberstamp" the BOP's conclusion.  To the contrary, her decision was justified on multiple grounds.

First, as the magistrate judge recognized, the issue of Mr. Dear's competency is unusually complex.  [#72-2 at 46-48; #82 at 2].  Five years ago, a Colorado state court found him incompetent to stand trial and sent him to a mental hospital for restoration.  But the original exam was performed in 2016, and he has largely refused to participate in re-evaluations since.  Mr. Dear's recent statements indicate that his refusal to

cooperate will continue. [#72-2 at 12 ("I still refuse. I still refuse.")]. Nevertheless, Mr. Dear has repeatedly insisted he is competent to stand trial. [#72-2 at 46-48]. *Cf. United States v. Davis*, 93 F.3d 1286, 1293 (6th Cir. 1996) (finding greater examination warranted when the claimed mental condition is complex).

Second, the professionals at federal medical centers are uniquely qualified to conduct such exams. [#82 at 2]. As one of the BOP's psychiatric-referral hospitals, USMCFP-Springfield has full-time psychiatrists, forensic psychologists, and other medical professionals on staff. While FCI-Englewood does have forensic psychologists, it lacks the psychiatrists and other medical professionals Springfield employs. In addition, FCI-Englewood's staff has less experience conducting competency examinations in complex, high-profile cases like this one. *See United States v. Jones*, 811 F.2d 444, 448-49 (8th Cir. 1987) ("Since only five of the forty-six federal prisons have hospital facilities in which extensive psychiatric or psychological examinations may be performed, if prison officials decide that a psychiatric or psychological evaluation is warranted, it makes sense that the prisoner be sent to one of those five institutions.").

Third, the facilities at USMCFP-Springfield are better suited for this exam. [#82 at 2]. In some cases, an interview alone may be enough to evaluate competency. But the best way to ensure an accurate exam for defendants like Mr. Dear is to have a team observe him over time and in different contexts. Around-the-clock observation is particularly important where, as here, the defendant may not cooperate in an interview. Though a psychologist could interview Mr. Dear at FCI-Englewood, Englewood cannot accommodate around-the-clock observation. USMCFP-Springfield can.

9

Finally, USMCFP-Springfield has experience video-recording competency exams, while FCI-Englewood does not. [#82 at 2-3]. Because Mr. Dear has complained that his prior exams were not filmed, it is likely he will be more comfortable and more cooperative if this competency exam is recorded. [*See* #72-2 at 18-19, 46]. Thus, Springfield's experience with video-recording exams also weighs in its favor.

At bottom, the decision to order an in-patient exam asks the court to balance the restrictions on a defendant's freedoms with the importance of an accurate and reliable psychological exam. *Cf. United States v. Quintero*, 2019 WL 3973706, at *4 (D. Ariz. 2019) (holding that § 4247 "does not require that a suitable facility is outpatient or the least restrictive," as long as the government "provide[s] individualized reasons why in this case outpatient restoration is not appropriate"). Any additional limits on Mr. Dear's liberty would be minimal here, as he is currently in federal prison and would simply be sent to another facility (for 45 days at most).

Accordingly, it cannot be said that the magistrate judge's decision was clearly erroneous. *Compare Newchurch*, 807 F.2d at 410 (reversing order where government provided "no evidence" that in-patient exam was necessary), *Neal*, 679 F.3d at 741 (same), *United States v. Visinaiz*, 96 F. App'x 594, 598 & n.3, 599 (10th. Cir. 2004) (reversing order for in-patient exam where defendant showed no signs of incompetency and did not intend to raise an insanity defense), *with United States v. Gagan*, 95 F. App'x 941, 946 (10th Cir. 2004) (holding defendant's rights were not violated by transfer to another facility for competency evaluation where the court's decision was not unreasonable or in bad faith); *Deters*, 143 F.3d at 584 (approving § 4241 commitment

10

order based on concerns defendant would not appear for trial).

**D.     Mr. Dear Was Afforded Sufficient Process.**

Finally, to the extent the defendant seeks to challenge the level of process he has received, the Court should reject that claim.

In his objections, Mr. Dear suggests that the United States was required to submit admissible evidence to justify its position.  He also argues that the magistrate judge should have held an evidentiary hearing and made express findings of fact.  But there is nothing in the statutes at issue or the Constitution that supports these claims.

The defense does not and cannot point to anything in 18 U.S.C. § 4241 or § 4247 that requires a mini-trial before the court sets an exam's location.  Nor do these provisions require a hearing before the court may temporarily commit a defendant.  *See United States v. Jones*, 811 F.2d 444, 446-48 (8th Cir. 1987) (finding no pre-transfer hearing required by the plain language of § 4247(b)).  Consequently, if Mr. Dear was entitled to an evidentiary hearing as the defense claims, the Constitution's Due Process Clause must be the source of that right.

To determine whether an individual "has been deprived of procedural due process, courts ask two questions: (1) Did the [individual] possess a protected property or liberty interest to which due process protections apply? And if so, (2) was [he or she] afforded an appropriate level of process?"  *Martin Marietta Materials, Inc. v. Kansas Dep't of Transp.*, 810 F.3d 1161, 1172 (10th Cir. 2016).

First, Mr. Dear has not established that he possessed a protected liberty interest.  Each of the cases cited by the defense involves the decision to confine an

11

otherwise-free individual.  *See, e.g.*, *Deters,* 143 F.3d 577; *Newchurch,* 807 F.2d 404; *Neal*, 679 F.3d at 738.  But those are not the facts here.  While the facts of *United States v. Weed*, 184 F. Supp. 2d 1166 (N.D. Okla. 2002), may be closer, the court in that case expressly recognized that certain liberty interests were not implicated because the defendant was already detained.  *See id.* at 1173.

To prevail, Mr. Dear must prove that he has a liberty interest in avoiding a temporary transfer from one federal prison to another.  The general rule is that even permanent transfers between prisons do not implicate a liberty interest, regardless of whether the conditions are more severe.  *See, e.g., Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Thomas v. Gunja*, 110 F. App'x 74, 76 (10th Cir. 2004).

True, there is an exception when placement in another prison "imposes atypical and significant hardship on the inmate in relation to ordinary incidents of prison life." *Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005).  But the defense has not even attempted to argue that a brief stay at USMCFP-Springfield would rise to that level.

The Supreme Court's decision in *Vitek v. Jones*, 445 U.S. 480 (1980), does not require a different result.  *Vitek* is distinguishable on at least four grounds.  First and most importantly, the source of the liberty interest in *Vitek* was a state statute that required specific findings before a prisoner could be transferred to a mental hospital indefinitely.  *See id.* at 489-91.  There is no analogous statute here.  Second and third, Mr. Dear's transfer will be temporary and within the prison system.  *See, e.g.*, *Rezaq v. Nalley*, 677 F.3d 1001, 1011 (10th Cir. 2012) (no liberty interest in ordinary inter-prison transfers).

Fourth, *Vitek* relies on the idea that there is a stigma associated with indefinite commitment.  But that stigma is absent in this context:  "[T]here is little or no danger of mandatory behavioral modifications in a transfer for evaluation and the stigma attached to such a transfer could be no greater than if the evaluation were done at the prisoner's original place of confinement." *Jones*, 811 F.2d at 448.  As a result, "a temporary transfer for a psychological evaluation places no more of an imposition on a prisoner than does a transfer for administrative reasons." *Id*.; *see also Hill v. Reinke*, 721 F. App'x 707, 708 (9th Cir. 2018) (distinguishing *Vitek* on the grounds that Hill's transfer was temporary and for the purpose of evaluation).

But even assuming there is a liberty interest here, Mr. Dear still cannot succeed.  To evaluate the sufficiency of particular procedures, the Court follows the framework established in *Mathews v. Eldridge,* 424 U.S. 319 (1976).  *Wilkinson*, 545 U.S. at 224.  That framework looks to three factors: (1) the weight of the liberty interest affected; (2) the risk of erroneous deprivation of that interest, and the probable value, if any, of additional or substitute procedural safeguards, and (3) "the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *See id.*

First, any liberty interest here is minimal.  At issue is Mr. Dear's right to avoid 30 days — 45 at most — in a federal prison with a medical specialty, as opposed to spending those days in an ordinary federal prison.  Even if this amounts to a liberty interest, it carries significantly less weight than the interests of the defendants in *Deters, Newchurch*, or *Neal*.  *See Wilkinson*, 545 U.S. at 224 ("Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to

13

which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all.").

As for the second factor, the risk of erroneous deprivation was low. Mr. Dear received both notice and an opportunity to be heard. *See LaChance v. Erickson,* 522 U.S. 262, 266 (1998) ("The core of due process is the right to notice and a meaningful opportunity to be heard."). The United States gave its reasons for needing to examine him at USMCFP-Springfield. Mr. Dear had a chance to rebut them and was even able to present evidence in his reply. The magistrate judge reviewed nearly 50 pages of briefing before she issued her written order.

Furthermore, there would be little value in the additional procedures urged by the defendant. If Magistrate Judge Mix were required to hold an evidentiary hearing, the United States and the defense would simply present the evidence from their briefs in a different form. Similarly, requiring express factual findings would likely result in the magistrate judge repeating the reasons provided in her original order.

Moreover, the magistrate judge has already been presented with evidence that justifies an in-patient exam. The parties have submitted thousands of pages of medical records, which demonstrate the unusual complexity of the competency inquiry here. These records also document Mr. Dear's past refusals to cooperate. Magistrate Judge Mix made factual findings as to both at the last hearing. [#72-2 at 46-48].

Third, the fiscal and administrative burdens are not insignificant. There has already been one evidentiary hearing (to determine whether a new competency exam was required), and Mr. Dear will soon receive another (to determine if he is competent

to stand trial). Requiring yet a third to decide the specific location of Mr. Dear's exam would be inefficient and unnecessary, and would further impede the Court's attempts to determine the defendant's competence and the government's efforts to bring him to trial in a speedy fashion. *See Deters*, 143 F.3d at 584 ("The interest in a speedy trial is held not only by the defendant, however, but also by the government. Society has a particular interest in bringing swift prosecutions.").

The balance of these factors thus weighs against the defendant.[2]

Finally, the "requirements of due process are flexible and call for such procedural protections as the particular situation demands." *Wilkinson*, 545 U.S. at 224-25. On the one hand, ordinary prison transfers do not require any process. *See, e.g., Rezaq*, 677 F.3d at 1011. On the other, a decision to commit an otherwise-free defendant under § 4247(b) requires — at most — factual findings and a hearing. *See Newchurch*, 807 F.2d at 412. Even if this case falls somewhere between the two, Mr. Dear received notice and a meaningful opportunity to be heard. Given the minimal weight of any liberty interest here, the Constitution requires no more.

---

[2] Dear also cites the Tenth Circuit's unpublished order in *United States v. Visinaiz*, 96 F. App'x 594 (10th Cir. 2004). But the focus of *Visinaiz* is the collateral-order doctrine and its application to the unusual set of facts in that case. To the extent *Visinaiz* says anything about procedural due process, its analysis is questionable given that it pre-dates the Supreme Court's *Wilkinson* decision and does not even purport to apply the *Mathews v. Eldridge* framework.

Dated:  February 24, 2021

Respectfully submitted,

JASON R. DUNN
United States Attorney

By:  s/ *Pegeen D. Rhyne*
Pegeen D. Rhyne
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax:  303-454-0406
E-mail:  Pegeen.Rhyne@usdoj.gov

By:  s/ *Rajiv Mohan*
Rajiv Mohan
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax:  303-454-0406
E-mail:  Rajiv.Mohan@usdoj.gov


PAMELA S. KARLAN
Principal Deputy Assistant Attorney General
Civil Rights Division
U.S. Department of Justice

By:  s/ *Mary J. Hahn*
Mary J. Hahn
Trial Attorney
Civil Rights Division, Criminal Section
4 Constitution Square
150 M Street, N.W./7.1108
Washington, D.C. 20002
Telephone: 202-305-0921
Fax:  202-514-6588
E-mail:  Mary.Hahn@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case:

| | |
|---|---|
| Natalie Stricklin | Natalie_Stricklin@fd.org |
| Veronica Rossman | Veronica_Rossman@fd.org |
| Mark F. Fleming | mark@markfleminglaw.com |
| Andrea L. Luem | Andrea@luemlaw.com |

By:  s/ *Rajiv Mohan*
Rajiv Mohan
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax:  303-454-0406
E-mail:  Rajiv.Mohan@usdoj.gov