IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 19-cr-00506-REB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROBERT LEWIS DEAR, JR.,

    Defendant.

---

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR ORDER REGARDING COMPETENCY EVALUATION PROCEDURES [DOC. # 102]**

---

    The United States of America submits this response in opposition to defendant Robert Lewis Dear, Jr.'s Motion for Order Regarding Competency Evaluation Procedures. [Doc. # 102]. The Court has ordered Mr. Dear to be committed to the custody of the Attorney General for a competency evaluation to be administered at the United States Medical Center for Federal Prisoners at Springfield ("USMCFP-Springfield"). [Doc. # 82 at 5 & Doc. # 100 at 7]. The defense requests that the Court order a number of procedures for that evaluation. Because those procedures are unnecessary, unsupported by law, and/or affirmatively harmful to the evaluation process, the government opposes the vast majority of the requests.

    **1.**    **Videotaping the Clinical Interviews of the Evaluation**

    The defense requests that the "competency evaluation" be videotaped and that the videotape be disclosed to defense counsel immediately after the evaluation is

completed. To the extent that the defense requests that the *clinical interviews* during the evaluation be videotaped, the Bureau of Prisons ("BOP") has already indicated that those interviews will be videorecorded, and the government has itself repeatedly requested as much. Thus, a court order is not necessary; however, the government does not object to an order that the clinical interviews be videorecorded.

Defense counsel stated in a meet and confer that their request for videorecording was limited to the clinical interviews. Yet its motion is unclear about whether the defense also requests the recording of any tests administered to Mr. Dear. The government opposes any such request. The government has consulted with the BOP's Forensic Evaluations Coordinator, who stated that BOP opposes any such recording on the ground that it introduces a variable that could affect the validity of the tests. That should suffice to deny the defense's request.[1]

The government also opposes the defense's request that the recording be produced to the defense immediately after the evaluation is completed and before production to the government. The defense provides no legal authority or other justification for this Court to depart from the ordinary procedure of allowing the BOP to complete the evaluation and then file its report with the court and with counsel for both the defense and the government. 18 U.S.C. § 4247(c). The recordings of the clinical interviews are relevant to the competency hearing, and, consequently, both parties are

---

[1] In addition, the Forensic Evaluations Coordinator stated that the BOP opposes recording the administration of the tests because the tests are proprietary, are subject to copyright, and should not be distributed to non-psychologists.

entitled to equal access to this evidence.  There is no legal basis, and the defense cites none, in support of its request for access before the government.

### 2. Live Feed of the Evaluation

The defense requests that it be permitted to observe the competency evaluation by live video feed.  [Doc. # 102 at 3].  The defense says the evaluation is a critical stage at which the defendant has a Sixth Amendment right to counsel and that a "live video feed will not disrupt the evaluation but will ensure that Mr. Dear's constitutional rights are protected."  [*Id.*].

But a defendant does not have a Sixth Amendment right to have counsel present during the evaluation.  *Estelle v. Smith*, 451 U.S. 454, 471 n.14 (1981); *see also United States v. Byers*, 740 F.2d 1104, 1116-20 (D.C. Cir. 1984) (en banc) (Scalia, J.).  Indeed, "an attorney present during the psychiatric interview could contribute little and might seriously disrupt the examination."  *Estelle*, 451 U.S. at 471 n.14 (quotation marks omitted).  What the Sixth Amendment requires is that the defendant have the opportunity to consult with counsel informed of the "scope and nature" of the evaluation and aware "of the possible uses to which [the] statements in the proceeding could be put."  *Buchanan v. Kentucky*, 483 U.S. 402, 424-25 (1987); *Estelle*, 451 U.S. at 472; *United States v. Thompson*, 462 F. App'x 561, 564 (6th Cir. 2012).

Indeed, a live feed to defense counsel of Mr. Dear's competency examination would disrupt the examination in multiple respects.  First, the presence of an audience, even in the form of a live feed, would take some or all of Mr. Dear's focus away from the evaluators and hence would undermine the examination.  Courts have recognized the

3

potential for serious harm to the evaluation if counsel is allowed to be present. As the D.C. Circuit observed:

> Even if counsel were uncharacteristically to sit silent and interpose no procedural objections or suggestions, one can scarcely imagine a successful psychiatric examination in which the subject's eyes move back and forth between the doctor and his attorney. Nor would it help if the attorney were listening from outside the room, for the subject's attention would still wander where his eyes could not. And the attorney's presence in such a purely observational capacity, without the ability to advise, suggest, or object, would have no relationship to the Sixth Amendment's Assistance of Counsel.

*Byers*, 740 F.2d at 1120 (emphasis omitted). As that quotation indicates, the risk is present even if counsel is not physically present. *See also United States v. Cohen*, 530 F.2d 43, 48 (5th Cir. 1976) (noting that the presence of counsel "might defeat the purpose of the examination"); *Ragge v. MCA/Universal Studios,* 165 F.R.D. 605, 609-10 (C.D. Cal. 1995) ("Third party observers may, regardless of their good intentions, contaminate a mental examination.").

Second, if the defense intends to act in "a purely observational capacity[,]" then there is no need for a live feed and "no relationship" to the Sixth Amendment right to counsel the defense says justifies its request. *Byers*, 740 F.3d at 1120. After all, the defense can watch the recordings of the clinical interviews later. The only reason for the defense to request a live feed is to have the opportunity to seek to interrupt proceedings in its sole discretion. That only illustrates how the request risks disrupting the evaluation and why it should be denied.

Indeed, the government has already provided evidence that the (state) defense's

4

interruption of the original examination negatively impacted that process. [*See* Doc. # 66 at 11 ("Drs. Gray and Grimmett reported that Dear perceived the interruption as "a 'sign' that he said too much, although he ultimately engaged sufficiently to allow for completion of the assessment."); Doc. # 64 at 36 (quoting Def. Resp. Ex. C-1 at INV_54624)]. BOP evaluators at USMCFP-Springfield are extremely experienced in conducting competency evaluations. There is no need or value in having the defense monitor the examination, let alone anything that justifies the risk that such monitoring will undermine the integrity of the exam.

Finally, if a live feed were required, the BOP evaluators would be forced to plan clinical interviews and potentially other testing procedures around defense counsel's schedule. This would likely result in delays and interruptions because presumably counsel would not be continuously available in the 30-day period during which the BOP is to conduct the examination. Indeed, being forced to work around defense counsel's availability could make meeting the statutorily imposed time limits for completing the exam difficult.

### 3. Protection of Statements

The defense next seeks an order that any statements made by Mr. Dear during the evaluation may be used by the government only in connection with his competency proceedings. [Doc. # 102 at 4]. But no order is necessary because the government has already stated: "Assuming that the defendant does not raise … at the guilt ... phase, any defenses based on his mental health, the government agrees that it will not use his statements made to the examiner during the competency evaluation." [Doc. # 36 at 18].

To the extent that this is what the defense seeks, the government's agreement should resolve the issue.

If the defense seeks to prohibit the government's legitimate use of this evidence to rebut a mental-health defense, however, that request is contrary to law.  *See Kansas v. Cheever*, 571 U.S. 87, 94 (2013); *Tally v. Ortiz*, 252 F. App'x 248, 256 (10th Cir. 2007); *Savino v. Murray*, 82 F.3d 593, 604 (4th Cir. 1996).  As the Supreme Court has explained, "[a]ny other rule would undermine the adversarial process, allowing a defendant to provide the jury, through an expert operating as proxy, with a one-sided and potentially inaccurate view of his mental state at the time of the alleged crime." *Cheever*, 571 U.S. at 94.

In any event, an order on the use of such evidence at trial is premature because Mr. Dear has not indicated whether he plans to introduce mental-health evidence as a defense.  *See Thompson*, 462 F. App'x at 564 ("If [a defendant] is concerned that the government will attempt to introduce any incriminating statements [made during the competency evaluation] at the guilt … phase of his trial, his remedy would be a motion *in limine* at that time.").

4.      **Early Access to the Evaluation Report**

The defense requests access to the evaluation report before the government, so that the defense may propose redactions to protect from "inadvertent disclosure of matters of attorney work product and attorney-client privilege."  [Doc. # 102 at 4].  The defense cites nothing in support of this request.

Section 4247(c) directs that the report "shall be filed with the court with copies

6

provided to the counsel for the person examined and the attorney for the Government." 18 U.S.C. § 4247(c).  There is nothing in the applicable statutes that supports the defense's request to deviate from this straightforward procedure.

Moreover, the defense has not shown any legitimate concerns about privilege.  Defense counsel in a competency proceeding is implicitly authorized "to reveal basic facts and observations underlying his belief that [the defendant] is not competent to stand trial" without "the wholesale waiver of attorney-client privileges or disclosure of attorney-client communications."  *United States v. Maxton*, No. 13-cr-00411, 2013 WL 6800695, at *3 (D. Colo. Dec. 24, 2013); *see also*, *e.g.*, *Darrow v. Gunn*, 594 F.2d 767, 774 (9th Cir. 1979) (holding that "attorney's observation and impression of the mental condition of his client are not privileged.").

If the defense is concerned that Mr. Dear will discuss his opposition to counsel's strategy of asking the Court to find Mr. Dear incompetent, Mr. Dear has already publicly and repeatedly stated this.  [*See*, *e.g.*, Doc. # 36-3 at 212 ("Because in the newspaper Mr. King said I was incompetent the day after our first hearing.  So when you say somebody's incompetent, is that helping my case?  I don't think so.")].

Any discussion of this disagreement in the report is therefore not privileged.  "[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney client privilege."  *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (10th Cir. 1995).  A critical component of the privilege is whether the communication was made in confidence and under circumstances from which it may reasonably be assumed that the communication will

remain in confidence between the client and the attorney.  *In re Qwest Communications Int'l. Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006); *United States v. Lopez*, 777 F.2d 543, 552 (10th Cir. 1985).  Indeed, the government anticipates this disagreement over strategy will play a central role in the competency hearing.  But that does not mean any privilege is implicated.  Mr. Dear's public announcements that he disagrees with counsel's strategy of asking the Court to find him incompetent demonstrate that he does not expect, or even want, those communications to remain confidential.  Hence they are not privileged.

    **5.**       **Scope of Evaluation and Notice of Testing Instruments**

The Court has ordered that Mr. Dear be committed to the custody of the Attorney General "for a competency evaluation."  [Doc. # 100 at 7].  Despite the clear scope of that order, the defense asks the Court to issue another order that "the evaluators are prohibited from expanding the scope of the competency evaluation to include other subjects, such as diminished capacity or sanity."  [Doc. # 102 at 5].  There is no reason to believe that the BOP evaluators—who routinely conduct competency evaluations—will exceed the scope of what the Court has ordered.  Thus, no further order is needed.

The defense also requests that the Court order BOP evaluators to provide advance notice of any cognitive or psychological testing instruments to be administered so the defense "may object to the use of any irrelevant or unreliable testing instruments during his evaluation."  [Doc. # 102 at 4-5].

Again, the defense cites no authority in support of this request, and the choice of what tests are to be used should be left up to the BOP evaluators the Court has

8

selected to conduct the evaluation given their experience and expertise.  Of course, in the competency hearing, the defense can attempt to argue that certain testing instruments are irrelevant or unreliable as appropriate under the applicable procedures.  But there is no legal basis for any sort of pre-administration challenge.

Indeed, allowing litigation before administration of the tests would interfere with the examination and could waste judicial resources.  In an analogous context, one district court described a defendant's desire to challenge tests before they were administered as "putting the cart before the horse[,]" because "even if tests of 'dubious validity' are performed, the time to challenge those tests is at the time, if ever, that [the defendant's] mental condition is actually put at issue."  *United States v. Johnson*, 362 F. Supp. 2d 1043, 1085 (N.D. Iowa 2005).  The court further noted "a dispute about tests could become moot if neither party ultimately attempted to admit the test results in question, making a pre-test *Daubert* analysis a potential waste of judicial resources."  *Id.*

Similarly here, the defense should not be permitted to interfere with the BOP evaluators' competency evaluation through premature litigation.  If an actual dispute about tests arises, the defense can litigate the issue then as appropriate.

Dated:  April 14, 2021

Respectfully submitted,

MATTHEW T. KIRSCH
Acting United States Attorney

By: s/ *Pegeen D. Rhyne*
Pegeen D. Rhyne
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax:  303-454-0406
E-mail:  Pegeen.Rhyne@usdoj.gov

By: s/ *Rajiv Mohan*
Rajiv Mohan
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax:  303-454-0406
E-mail:  Rajiv.Mohan@usdoj.gov

PAMELA S. KARLAN
Principal Deputy Assistant Attorney General
Civil Rights Division
U.S. Department of Justice

By: s/ *Mary J. Hahn*
Mary J. Hahn
Trial Attorney
Civil Rights Division, Criminal Section
4 Constitution Square
150 M Street, N.W./7.1108
Washington, D.C. 20002
Telephone: 202-305-0921
Fax:  202-514-6588
E-mail:  Mary.Hahn@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on April 14, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case:

| | |
|---|---|
| Natalie Stricklin | Natalie_Stricklin@fd.org |
| Veronica Rossman | Veronica_Rossman@fd.org |
| Virginia Grady | Virginia_Grady@fd.org |

By: s/ *Rajiv Mohan*
Rajiv Mohan
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax:  303-454-0406
E-mail:  Rajiv.Mohan@usdoj.gov