IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 19-cr-00506-REB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROBERT LEWIS DEAR, JR.,

    Defendant.

## REPLY IN SUPPORT OF SPEEDY TRIAL MOTION

The United States of America submits this reply in support of its speedy trial motion.  In that motion, the government requested a finding that the time taken for the intake and transport of defendant Robert Lewis Dear, Jr. for his competency examination at USMCFP-Springfield was reasonable under the Speedy Trial Act.  In response, the defense disputes when the clock started for purposes of the ten-day period specified in 18 U.S.C. § 3161(h)(1)(F).  The defense further contends that any delay in excess of ten days was unreasonable.  Neither argument has merit.  And the Court should therefore grant the government's motion.

**I.**    **The ten-day clock under § 3161(h)(1)(F) did not start until March 24, 2021.**

The Speedy Trial Act automatically excludes "delay resulting from transportation of any defendant … to and from places of examination."  18 U.S.C. § 3161(h)(1)(F).  But "any time consumed in excess of ten days" from the date of "an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be

1

unreasonable." *Id.*  The presumption can be rebutted.

In its motion, the government argued that no judicial order directed transportation, so the ten-day period started on March 24, 2021, when Mr. Dear "was authorized for transportation by the appropriate prison official." *United States v. Garrett*, 45 F.3d 1135, 1140 (7th Cir. 1995).  The defense contends that the ten-day period started a week earlier—on March 17, 2021—when the Court affirmed the magistrate judge's order committing Mr. Dear to the custody of the Attorney General for a competency examination at USMCFP-Springfield.

But that order contained no express directive that Mr. Dear be transported to USMCFP-Springfield.  The defense concedes as much when it argues that such a directive was "[o]bviously implicit"—which is another way of saying the order did not actually say anything of the sort.  [Doc. # 114 at 7].  The Court "affirmed" and gave "full force and effect" to the magistrate judge's order.  [Doc. # 100 at 7].  But the Court did not direct transport.  Neither did the magistrate judge in the order that was affirmed.  She merely ordered Mr. Dear "committed to the custody of the Attorney General" and that the evaluation "shall be conducted at USMCFP-Springfield."  [Doc. # 82 at 5].

The defense equates an order committing Mr. Dear to the custody of the Attorney General for the evaluation with an order directing transport.  But the two are not the same.  "This distinction is a distinction with a difference" under § 3161(h)(1)(F).  *United States v. Bashar*, 3 F. Supp. 3d 541, 544 (E.D. Va. 2014).  As the Sixth Circuit has explained, "the order directing examination need not direct transportation."  *United States v. Turner*, 602 F.3d 778, 785 (6th Cir. 2010).  For example, when an order

committed a defendant to "remain in the custody of the Attorney General[,]" but "did not include a mandate to the [USMS] that it transport" the defendant, it did not start the ten-day clock.  *Bashar*, 3 F. Supp. 3d at 544.  There are a number of other examples.  *See United States v. Cook*, 2010 WL 4284526, at *6 (S.D. Ohio Oct. 27, 2010) (commitment order did "not contain any language directing transportation" and the court did not "issue a second order of transportation"); *see also id.* ("designation" of facility was "irrelevant under § 3161(h)(1)(F)"); *United States v. Mann*, 2021 WL 1731626, at *3 (W.D. Mich. May 3, 2021) ("The Court first discussed transportation in its … Order of Commitment of Competency Evaluation[.]  There, the Court indicated it would issue a *separate order* directing the United States Marshals Service to transport Defendant[.]") (emphasis added); *United States v. Hicks*, 2016 WL 4376283, at *2 (S.D. Ohio Aug. 16, 2016) ("Here, the Court ordered that Defendant 'be committed to the custody of the Attorney General' … However, the Court did not address the issue of transport[.]").

All of these cases go to show that an order directing transport must, well, direct transport, and expressly so, which none of the judicial orders here do.  The defense responds with one case which it says treated an order of commitment as an order directing transport.  *United States v. Williams*, 917 F.3d 195, 201 (3d Cir. 2019).  But the order in that case also directed that the USMS—who are responsible for transport—"shall make arrangements as are necessary for the examination of defendant." [Doc. # 114-1 at 3].  That language arguably directs transport, and so the Court and the parties took the start date as granted.  917 F.3d at 203-04.  No comparable language exists in any of the orders here.  That is to say, nothing in the Third Circuit's opinion

treats commitment, or even the designation of a specific facility, as equivalent to an order directing transport.

It is perhaps not surprising that none of the orders here direct transport. The Sixth Circuit explained that, "[i]f the government fears that a defendant's placement could take some time, it is free to suggest that the court not issue an order directing transportation at that point[,]" that is, when the examination is ordered. *Turner*, 602 F.3d at 785. The government accordingly flagged in its briefing that the Court should not immediately direct transport if it were to determine that an examination was required and that the BOP should conduct it. [*See*, *e.g.*, Doc. # 66 at 17]. Consistent with that suggestion, the Court did not direct transport. The defense quotes this language from *Turner* as an example of "preemptive remedies the government could have taken to avoid Speedy Trial Act delays" but did not. [Doc. # 114 at 11]. Yet the government did exactly what *Turner* suggested. And the defense's assertion is demonstrably incorrect.

Ultimately, it is not enough to say that something in a judicial order is "[o]bviously implicit, if not explicit" or "the literal equivalent" or "plainly" so, without quoting any language from the order to support those heavy assertions. [Doc. # 114 at 7, 8]. Here, the defense quotes no language from the relevant orders to support its view that they direct transport. Since there was no judicial order directing transport, the earliest date the ten-day clock started was on "the date upon which the defendant was authorized for transportation by the appropriate prison official[.]" *Garrett*, 45 F.3d at 1140.

II. **The delay here was reasonable and therefore excludable.**

However measured, the delay here was reasonable, and the government has

4

rebutted the presumption to the contrary for the period beyond ten days. As the government has explained, May 3, 2021 was the first day that USMCFP-Springfield was able to accept Mr. Dear for his examination given available bedspace and resources. The delay until then was reasonable given the impracticality—indeed, futility—of transporting Mr. Dear sooner. And the remaining three days falls within the presumptively reasonable ten-day period.

  The defense responds that "institutionalized delay" is insufficient to overcome the presumption. [Doc. # 114 at 9]. But delays owing to lack of bed space are not the sort of "institutionalized delay" with which the presumption is concerned. As the government has noted, the ten-day transportation rule was "aimed at marshals and the actual process of transportation[.]" *United States v. Gross*, 2011 WL 5348237, at *3 (E.D. Cal. Sept. 15, 2011) (citation omitted). That is, "Congress enacted the ten-day transportation rule with the 'intent not to permit additional delays to accommodate the *marshals*' in their transportation of prisoners." *Bashar*, 3 F. Supp. 3d at 544 (emphasis in original; citation omitted); *see also United States v. Taylor*, 821 F.3d 1377, 1384 (9th Cir, 1987), *rev'd on other grounds*, 487 U.S. 326. Thus, "[t]he ten-day transportation rule does not restrict accommodation of medical facilities hampered by limited bed space." *Bashar*, 3 F. Supp. 3d at 544; *see also Gross*, 2011 WL 5348237, at *4.

  The defense relies on *United States v. Castle*, 906 F.2d 134 (5th Cir. 1990), and says that the court there rejected a "similar argument" to the one here. [Doc. # 114 at 9]. Yet *Castle* is distinguishable for the same reason it was distinguishable in *Gross*: which is to say, "[t]here is no evidence that the Marshalls [sic] intentionally delayed

5

transportation for budgetary purposes as was the case in *Castle*; instead the delay was a mere result of impracticality—that is, lack of bed space." *Gross*, 2011 WL 5348237, at *4.  If anything, *Castle* confirms that the sort of institutional delays insufficient to rebut the presumption are ones to do with *transportation*.  *See* 906 F.2d at 138 ("[A]nything over ten days *in transport* is presumptively unreasonable, and in enacting this law Congress took into account that there would be institutional delays.") (emphasis added).

The defense also suggests that any justification to rebut the presumption must be "extraordinary."  [Doc. # 114 at 10].  Although there is language to that effect in *Castle*, any suggestion by the defense that the justification must be "extraordinary" in the sense that it is unique or applies only to a single case cannot be reconciled with the structure or language of statute itself, which requires the government to show that the delay is reasonable.  A justification can be reasonable but still apply to multiple cases.  As the Sixth Circuit has put it, "[i]f legitimate problems arise in transporting a defendant, the government legitimately may rebut the presumption." *Taylor*, 602 F.3d at 785.

The defense also evidently complains that, even if lack of bed space is a legitimate reason to rebut the presumption as a general matter, the government has not "come forward with actual evidence" to support such a finding here.  [Doc. # 114 at 12].  But the government explained in its motion, based on discussions with BOP, that USMCFP-Springfield determined that May 3, 2021 was the first date when there was available bed space for Mr. Dear.  Not only that, the government provided BOP's communications with the USMS and the BOP's own records, which make clear that a bed was only available on May 3, 2021.  [Doc. ## 106-1, 107].  Courts routinely rely on

the representations of counsel in excluding time under the Speedy Trial Act without holding an evidentiary hearing.  And the defense does not actually dispute that lack of bed space was the reason for the delay.  No more evidence is required.

Dated:  June 14, 2021

Respectfully submitted,

MATTHEW T. KIRSCH
Acting United States Attorney

By:  s/ *Pegeen D. Rhyne*
Pegeen D. Rhyne
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax:  303-454-0406
E-mail:  Pegeen.Rhyne@usdoj.gov

By:  s/ *Rajiv Mohan*
Rajiv Mohan
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax:  303-454-0406
E-mail:  Rajiv.Mohan@usdoj.gov

PAMELA S. KARLAN
Principal Deputy Assistant Attorney General
Civil Rights Division
U.S. Department of Justice

By:  s/ *Mary J. Hahn*
Mary J. Hahn
Trial Attorney
Civil Rights Division, Criminal Section
4 Constitution Square
150 M Street, N.W./7.1108
Washington, D.C. 20002
Telephone: 202-305-0921
Fax:  202-514-6588
E-mail:  Mary.Hahn@usdoj.gov

## CERTIFICATE OF SERVICE

  I hereby certify that on June 14, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case:

| | |
|---|---|
| Natalie Stricklin | Natalie_Stricklin@fd.org |
| Veronica Rossman | Veronica_Rossman@fd.org |

By: s/ *Rajiv Mohan*
Rajiv Mohan
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax: 303-454-0406
E-mail: Rajiv.Mohan@usdoj.gov