IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 19-cr-00506-REB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.  ROBERT LEWIS DEAR, JR.,

    Defendant.

---

## MOTION FOR *SELL* HEARING

---

The United States of America hereby moves this Court to hold a hearing regarding the involuntary administration of antipsychotic medication pursuant to *Sell v. United States*, 539 U.S. 166 (2003).  Additionally, for the reasons stated below, the United States respectfully requests that this Court (1) set a status conference for the purpose of scheduling a hearing pursuant to *Sell v. United States*; (2) order the defense to disclose any medical records or other evidence upon which the defense intends to rely to support an argument that treatment with antipsychotic medication might negatively impact Dear's health; (3) set a deadline for the disclosure of any expert reports related to any expert testimony that either party intends to present at the *Sell* hearing; (4) order the Bureau of Prisons (BOP) to produce to both parties the transcripts of the under-seal *Sell* hearings held in Pueblo County Court; and (5) order BOP to provide a copy of Dear's proposed treatment plan to the parties in this matter.

1

On December 6, 2021, the government asked the defense for its position on the instant motion. The defense, through AFPD Natalie Stricklin, stated it would provide a written response to the motion.

## Procedural History

Defendant Dear has been in state or federal custody since November 27, 2015, in connection with his five-hour attack on the Planned Parenthood Clinic in Colorado Springs, Colorado as well as the clinic's employees and patients, others present, and the police and other first responders who responded to the attack. During the attack where Dear fired nearly 200 rounds, he killed three people, wounded eight people, and terrorized everyone present as well as the surrounding community. Dear was taken into state custody on the day of the attack and was charged by the State of Colorado in December 2015. On May 11, 2016, Dear was found incompetent to proceed in the state case and was committed to the Colorado Mental Health Institute at Pueblo (CMHIP) to restore him to competency. During that time, re-evaluations were attempted every 90-days, but Dear was largely uncooperative. During each re-evaluation, evaluators opined that Dear remained incompetent.

On August 3, 2017, an under-seal hearing regarding involuntary medication was held in Pueblo County Court pursuant to *Sell v. United States*, 539 U.S. 166 (2003). On August 17, 2017, an order was issued authorizing the involuntary administration of medication. [See Ex. A (Pueblo County Court Order dated August 17, 2017)]. This order provided that it would expire in six months. [Ex. A at 6]. Dear appealed this decision. While the Colorado Court of Appeals upheld the order authorizing the

involuntary administration of medication, the appellate process took longer than six months, and the initial order expired.

On December 22, 2018, and February 5, 2019, additional under-seal hearings regarding involuntary medication were held in Pueblo County Court pursuant to *Sell v. United States*, 539 U.S. 166 (2003). On February 21, 2019, an order was issued denying the involuntary administration of medication. [See Ex. B (Pueblo County Court Order dated February 21, 2019)]. In this order, the court stated that Dear's medical situation had changed since the initial court order in that he "suffered a possible heart attack, acute cardiac strain, or myocardial infarction on January 30, 2018," and that Dear had a "bout of dangerously high blood pressure while appearing in court."[1] [Ex. B at 2]. Based on these concerns, the Court stated that it could "no longer find by clear and convincing evidence that the forcible administration of the requested medications was in [Dear's] best medical interests." [Ex. B at 4].

On December 5, 2019, a federal grand jury returned an indictment against Dear alleging three counts of violating the Freedom of Access to Clinic Entrances ("FACE") Act, resulting in the deaths of two civilians and one law enforcement officer (18 U.S.C. § 248(a)(1), (b)); eight counts of violating the FACE Act, resulting in bodily injury to four civilians and four law enforcement officers (18 U.S.C. § 248(a)(1), (b)); 53 counts of violating the FACE Act involving the intimidation and attempt to injure and intimidate the

---

[1] While transcripts of these under-seal *Sell* hearings were provided to BOP for its evaluation of Dear, copies have not been provided to the government at this time. Thus, the government does not have specific information about the nature of the medical evidence that was presented during the hearings. However, the government was informed that this information was primarily supported by Dear's own testimony.

civilians and law enforcement officers (18 U.S.C. § 248(a)(1), (b)); one count of violating the FACE Act for intentionally damaging and destroying a reproductive health services facility, resulting in bodily injury (18 U.S.C. § 248(a)(3), (b)); and three counts of knowingly using and discharging a firearm during and in relation to a crime of violence, resulting in death (18 U.S.C. § 924(c), (j)).  [Doc. #1].

On December 9, 2019, Dear appeared in federal court for his initial appearance and asserted that he wanted to represent himself.  [Doc. # 8].  On December 11, 2019, the government filed the Government's Motion for a Competency Evaluation pursuant to 18 U.S.C. § 4241(a).  [Doc. # 13].

On March 17, 2021, this Court affirmed the Magistrate Judge's prior order that Dear be evaluated for competency at the United States Medical Center for Federal Prisoners at Springfield.  [Doc. # 100 at 7].

After receiving a Forensic Psychological Report from Dr. Lea Ann Preston Baecht and holding an uncontested competency hearing, the Court entered an order finding Dear incompetent to proceed and committing Dear to the custody of the Attorney General for hospitalization and treatment to determine whether there is a substantial probability that in the foreseeable future Dear will attain competency to proceed.  [Doc. # 121 at 2-3].

On November 17, 2021, BOP completed its evaluation pursuant to the Court's order.  [Doc. # 125].  In this written report, Dr. Preston Baecht concluded that Dear is "incompetent to proceed and is substantially unlikely to be restored to competency in the foreseeable future in the absence of antipsychotic medication." [*Id.* at 23].

4

In this report, Dr. Preston Baecht states that the government may seek "to pursue the involuntary administration of medication in order to render [Dear] competent" pursuant to *Sell v. U.S.* [*Id.*]. Dr. Preston Baecht's report discusses "how Mr. Dear may meet the current criteria" under *Sell*. First, Dr. Preston Baecht notes that (1) "Dear suffers from a psychotic disorder"; (2) Dear's "symptoms are chronic and have not remitted spontaneously or with non-medication interventions"; and (3) "[t]hese symptoms currently interfere with his competence to stand trial." [*Id.* at 24]. Dr. Preston Baecht assessed that "[t]reatment with antipsychotic medication, which would need to be administered involuntarily, would likely reduce the intensity of Mr. Dear's psychotic symptoms and improve his mental status to the level where he would be considered competent to stand trial." [*Id.*]. She also concluded that "the proposed treatment would be substantially unlikely to have side effects that would interfere significantly with his ability to assist counsel in conducting a defense." [*Id.*]. Additionally, Dr. Preston Baecht opined that "involuntary medication is necessary to restore [Dear's] competency to stand trial and alternative, less intrusive treatments (e.g., psychotherapy, education, etc.) are unlikely to achieve substantially the same results." [*Id.*]. Dr. Preston Baecht has further opined that treatment of antipsychotic medication is medically appropriate and that should the Court authorize treatment with antipsychotic medication then there is a substantial probability that Dear will be restored to competency within the foreseeable future. [*Id.*]. Dear has repeatedly refused to voluntarily accept medication. [*Id.* at 19-21 & 23-24].

Finally, Dr. Preston Baecht notes that "[s]hould such treatment be authorized, Robert Sarrazin, M.D., Chief of Psychiatry, would be the prescribing psychiatrist and can provide the Court with a proposed treatment plan if requested." [*Id.* at 23]. The United States respectfully requests that this Court order the Bureau of Prisons to provide Dear's proposed treatment plan to the parties in this matter.

Request for a *Sell* Hearing

The government requests that the Court set a hearing regarding the involuntary administration of antipsychotic medication pursuant to *Sell v. United States*, 539 U.S. 166 (2003).

At that hearing, before considering the four-part *Sell* inquiry set forth below, this Court must first consider whether involuntary medication is *instead* appropriate because the defendant "is dangerous to himself or others and the treatment is in the inmate's medical interest." *United States v. Morrison*, 415 F.3d 1180, 1181 (10th Cir. 2005). This inquiry, set forth in *Washington v. Harper*, 494 U.S. 210, 227 (1990), must precede an analysis of the *Sell* factors because "the inquiry into whether medication is permissible, say, to render an individual nondangerous is usually more 'objective and manageable' than the inquiry into whether medication is permissible to render a defendant competent." *Morrison*, 415 F.3d at 1185-86 (remanding for *Harper* inquiry) (quoting *Sell*, 539 U.S. at 182). In this case, the government does not expect to present evidence that would justify involuntary medication under *Harper*; the government

expects its witnesses to testify that Dear is not dangerous to himself or others. [Doc. # 125 at 24].[2]

Should this Court conclude that involuntary medication is not appropriate under *Harper*, the government will ask that the Court undertake an evaluation of the *Sell* factors. *Sell* sets forth a four-part test defining the circumstances in which the government may involuntarily "administer antipsychotic drugs to a mentally ill criminal defendant in order to render that defendant competent to stand trial." *Id.* at 179. The district court must find each *Sell* factor by clear and convincing evidence. *United States v. Chavez*, 734 F.3d 1247, 1250 (10th Cir. 2013).

Under *Sell*'s first factor, the Court must "find that *important* governmental interests are at stake." *Sell* at 180. As an initial matter, it is well-established that "[t]he Government's interest in bringing to trial an individual accused of a serious crime is important." *Id.* In evaluating this factor, courts "must consider the facts of the individual case," such as the alternative possibility of "lengthy confinement in an institution for the mentally ill" and the length of time the defendant has already spent in custody. *Id.*; *see also United States v. Morrison*, 415 F.3d at 1181.

---

[2] In *United States v. Valenzuela-Puentes*, 479 F.3d 1220, 1224 (10th Cir. 2007), the Tenth Circuit made clear that a *Harper* inquiry may not be necessary at all if there "is no evidence that [the defendant] might present a danger to himself or others." The Court in *Valenzuela-Puentes* noted that in *Morrison*, the defendant was charged with "a crime fundamentally violent in nature, namely, the transmission of communications threatening to kill or injure other people," making a *Harper* inquiry necessary, and distinguishing *Morrison* from the defendant in *Valenzuela-Puentes*. In the instant case, the defendant, like the defendant in *Morrison*, is charged with crimes "fundamentally violent in nature," so the government respectfully requests that the Court conduct a *Harper* inquiry prior to evaluating the *Sell* factors.

Second, the Court "must conclude that involuntary medication will *significantly further* those concomitant state interests." *Sell*, at 181.  This requires the court to find that the administration of the drugs is both "substantially likely to render the defendant competent to stand trial" and "substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." *Id.* at 181; *Morrison*, at 1181.

Third, the Court must conclude that involuntary medication is *necessary* to further those interests.  *Sell*, 539 U.S. at 181.  Specifically, the court "must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results," and "must consider less intrusive means for administering the drugs." *Id*.  One such alternative is "a court order directing the defendant to take the medication." *Morrison*, 415 F.3d at 1181.  While the Court might wish to inquire about whether Dear would comply with such an order, the government does not believe this is a viable option in light of Dear's entrenched opposition to taking antipsychotic medication, as documented in his medical records.

Fourth, the Court must determine that "administration of the drugs is *medically appropriate*, *i.e.*, in the patient's best medical interest in light of his medical condition." *Sell*, 539 U.S. at 181.  "The specific kinds of drugs at issue may matter here" since "[d]ifferent kinds of antipsychotic drugs may produce different side effects and enjoy different levels of success." *Id.*  Any *Sell* order must be based on an individualized treatment plan, though it is permissible for a range of medications to be specified. *Chavez*, 734 F.3d at 1253-54.

Turning to the first *Sell* factor, there is no doubt that Dear is accused of "serious crime[s]." When considering whether a specific crime is a "serious crime," this Court should consider "the possible penalty the defendant faces if convicted, as well as the nature or effect of the underlying conduct for which he was charged." *Valenzuela-Puentes*, 479 F.3d at 1226; *see also United States v. Chatmon*, 718 F.3d 369, 374 (4th Cir. 2013) (noting that "the central consideration when determining whether a particular crime is serious enough to satisfy this factor is the maximum penalty authorized by statute").

First, the significant penalties that Dear is facing in the 68-count indictment demonstrate that he is accused of "serious crime[s]." [Doc. # 1]. Dear faces life in prison for the three "death resulting" violations of 18 U.S.C. 248(a)(1), (b). [Doc. # 1 at Counts 1-3]. This easily surpasses the threshold of "serious charge" for purposes of *Sell*. *See, e.g.*, *Valenzuela-Puentes*, 479 F.3d at 1226-27 (finding illegal reentry carrying maximum possible penalty of 20 years is "serious charge").

Next, the nature and effect of the underlying conduct for which Dear was charged demonstrate that he is accused of "serious crime[s]." As alleged in the indictment, on the date of the attack, "Dear, intend[ed] to wage 'war' on Planned Parenthood because it offered abortion services." [Doc. # 1 at ¶ 2]. Dear "traveled to the Planned Parenthood Clinic with four SKS rifles, five handguns, two additional rifles, a shotgun, more than 500 rounds of ammunition, and propane tanks." [Doc. # 1 at ¶ 2]. Upon arriving at the Planned Parenthood Clinic, Dear opened fire on a car with three occupants parked next to his truck "and repeatedly shot at them, killing one and

seriously injuring the other two." [Doc. # 1 at ¶ 3]. Before Dear entered the Planned Parenthood Clinic, he "repeatedly shot at three additional people who were in various locations in front of the Planned Parenthood Clinic, killing one and injuring another." [Doc. # 1 at ¶ 4]. Dear "forced his way into the Planned Parenthood Clinic by shooting through a door to the side of the main entrance." [Doc. # 1 at ¶ 5]. At the time Dear gained entry, "approximately twenty-seven healthcare providers, employees, patients, and companions were in the Planned Parenthood Clinic and hid in various rooms in the clinic and remained sheltered-in-place until they were rescued by law enforcement." [Doc. # 1 at ¶ 5]. Dear shot one of these civilians when a bullet he fired went through the wall and into the room where the individual was hiding. [Doc. # 1 at ¶ 5]. Dear then "engaged in an approximately five-hour standoff" with multiple law enforcement agencies. [Doc. # 1 at ¶ 6]. During the course of this attack, Dear "fired approximately 198 bullets." [Doc. # 1 at ¶ 7]. Dear "also positioned a propane tank in the parking lot. When a law enforcement tactical vehicle was near the propane tank, [Dear] shot the tank in an attempt to create an explosion." [Doc. # 1 at ¶ 7]. Based on the allegations in the indictment, there is no doubt that the nature and effect of the underlying conduct for which Dear was charged are, at a minimum, "serious." His unrelenting violence terrorized the victims—both outside and inside the Planned Parenthood Clinic—law enforcement, and the surrounding community.

Further, the Tenth Circuit has noted that "it is well-settled law that the Government's interest in bringing a criminal defendant to trial [is] fundamental in nature." *Valenzuela-Puentes*, 479 F.3d at 1227 (internal citations omitted). And

because the government cannot proceed to a criminal trial against an incompetent defendant, "the government has an important interest in prosecuting defendants for serious crimes with which they are charged and in ensuring their mental competence for the duration of their prosecutions." *Id.*  Additionally, the government has an interest in ensuring that any prosecution proceeds in the most timely fashion possible because "it may be difficult or impossible to try a defendant who regains competence after years of commitment during which memories may fade and evidence may be lost." *Sell*, 539 U.S. at 181.

The United States has taken steps to protect its important interests in (1) prosecuting Dear for the serious crimes with which he is charged and (2) ensuring Dear's mental competence for the duration of the proceedings throughout this case. Further, the government has done so in the most timely fashion possible.  On December 11, 2019, two days after Dear's initial appearance, the government filed a motion for a competency evaluation.  [Doc. # 13].  The government files this motion in its ongoing effort to protect those interests.  The principals regarding important government interests set forth in *Sell* still hold notwithstanding the fact that Dear has already been in custody for six years because the government still has access to sufficient evidence to take this case to trial.  It cannot be assumed the same will be true years from now, which is why a *Sell* hearing is appropriate now.

With respect to the second, third, and fourth *Sell* factors, the government intends to call Dr. Preston Baecht to testify about the conclusions in her November 17, 2021, report establishing (1) that involuntary medication is substantially likely to render Dear

11

competent to stand trial and unlikely to have side effects that will impede this endeavor; (2) that there are no less intrusive treatments likely to achieve substantially the same result as involuntary medication; and (3) that the administration of the drugs is medically appropriate for Dear.  The government also intends to call Dr. Robert Sarrazin to testify as to the fourth *Sell* factor and address the treatment plan that will be employed by the BOP medical staff in an effort to restore Dear to competency, as well as the steps that will be taken to monitor Dear for any side effects, should the Court grant the government's request for involuntary medication.

## **Request for Discovery**

As stated above, the government is aware that evidence was presented during Dear's state *Sell* hearing with respect to cardiac issues that he may have experienced during the pendency of the state matter.  [Ex. B at 2, 4].  Additionally, Dear's BOP medical records reflect that Dear has reported that he suffered a heart attack years ago when he was administered Zyprexa; however, BOP medical records do not corroborate Dear's assertion and do not reflect any current medical conditions of concern beyond hypertension.  Indeed, during his intake exam at Springfield in May 2021, Dear denied a history of "significant medical problems."  [Doc. # 125 at 5].

The government does not have access to medical documentation that reflects that Dear previously suffered a heart attack or other significant cardiac event, nor does the government have access to the transcript from Dear's state *Sell* hearings.  The defense has indicated that it intends to present evidence that Dear has a serious medical condition that would cause treatment with antipsychotic medications to be

against Dear's best medical interest. The government requests that the Court direct the defense to produce any medical records or other evidence upon which the defense intends to rely to support an argument that treatment with antipsychotic medication might negatively impact Dear's health. Likewise, the government requests that the Court direct BOP to produce to both parties the transcripts of the under-seal *Sell* hearings that were held in Pueblo County Court.

The government also requests that the Court set a deadline for the disclosure of any expert reports related to any expert testimony that either party intends to present at the *Sell* hearing.

## **Conclusion**

WHEREFORE, the government respectfully requests that the Court: (1) set a status conference for the purpose of scheduling a hearing pursuant to *Sell v. United States*; (2) order the defense to disclose any medical records or other evidence upon which the defense intends to rely to support an argument that treatment with antipsychotic medication might negatively impact Dear's health; (3) set a deadline for the disclosure of any expert reports related to any expert testimony that either party intends to present at the *Sell* hearing; (4) order BOP to produce to both parties the transcripts of the under-seal *Sell* hearings held in Pueblo County Court; and (5) order the Bureau of Prisons to provide a copy of Dear's proposed treatment plan to the parties in this matter.

Respectfully submitted,

COLE FINEGAN
United States Attorney

*By: s/ Pegeen D. Rhyne*
Pegeen D. Rhyne
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax:  303-454-0406
E-mail:  Pegeen.Rhyne@usdoj.gov

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division
U.S. Department of Justice

*By:  s/ Maura Deady White*
Maura White
Trial Attorney
Civil Rights Division, Criminal Section
950 Pennsylvania Avenue, 4CON
Washington, D.C. 20530
Telephone: 202-616-5103
Fax:  202-514-6588
E-mail:  Maura.White@usdoj.gov

14

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of December, 2021, I electronically filed the foregoing **MOTION FOR SELL HEARING** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this case.

s/ *Amy McDaniel*
Amy McDaniel
Legal Assistant
U.S. Attorney's Office