IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 19-cr-00506-REB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. ROBERT LEWIS DEAR, JR.,

    Defendant.

---

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO CLOSE COURTROOM DURING
THE *SELL* HEARING [DOC. #145]**

---

The United States of America (the "Government"), by and through undersigned counsel, files this Response in Opposition to the Defendant's Motion to Close Courtroom During the *Sell* Hearing [Doc. #145] and requests that the Court deny the motion.

    **I.**    **Procedural History & Background**

Defendant Robert Dear faces a 68-count indictment, including three counts of violating the Freedom of Access to Clinic Entrances ("FACE") Act, resulting in the deaths of two civilians and one law enforcement officer (18 U.S.C. § 248(a)(1), (b)); eight counts of violating the FACE Act, resulting in bodily injury to four civilians and four law enforcement officers (18 U.S.C. § 248(a)(1), (b)); 53 counts of violating the FACE Act involving the intimidation and attempt to injure and intimidate the civilians and law

1

enforcement officers (18 U.S.C. § 248(a)(1), (b)); one count of violating the FACE Act for intentionally damaging and destroying a reproductive health services facility, resulting in bodily injury (18 U.S.C. § 248(a)(3), (b)); and three counts of knowingly using and discharging a firearm during and in relation to a crime of violence, resulting in death (18 U.S.C. § 924(c), (j)). [Doc. #1].

On December 11, 2019, the Government filed its Motion for a Competency Evaluation pursuant to 18 U.S.C. § 4241(a). [Doc. #13]. This Court affirmed the Magistrate Judge's order that Dear be evaluated for competency at the United States Medical Center for Federal Prisoners at Springfield. [Doc. #100 at 7]. After receiving a Forensic Psychological Report[1] from the Bureau of Prisons' ("BOP") Psychologist Dr. Lea Ann Preston Baecht and holding an uncontested competency hearing, the Court entered an order finding Dear incompetent to proceed and committing him to the custody of the Attorney General for hospitalization and treatment to determine whether there is a substantial probability that in the foreseeable future Dear will attain competency to proceed. [Doc. #121 at 2-3].

On November 17, 2021, BOP completed its evaluation and Dr. Preston Baecht concluded that Dear is "incompetent to proceed and is substantially unlikely to be restored to competency in the foreseeable future in the absence of antipsychotic medication." [Doc. #131 at 23]. In December 2021, the Government filed its Motion for a *Sell* Hearing. [Doc. #128]. Pursuant to this Court's order [Doc. #139], BOP Psychiatrist

---

[1] To date, the forensic reports related to Dear's competency have been filed under restriction.

Dr. Robert G. Sarrazin submitted his proposed treatment plan for Dear. [Doc. #143]. The Court scheduled a *Sell* hearing to begin on August 30, 2022. [Doc. #144]. On July 6, 2022, Dear filed the instant motion to close the courtroom during the *Sell* hearing. [Doc. #145].

## II.      Argument

Supreme Court and Tenth Circuit precedent support holding a *Sell* hearing in this case that is open to the public. Dear nonetheless requests the hearing be closed. [Doc. #145]. In his motion, Dear acknowledges well-established precedent that there is "a likely presumption in favor of public access" to his *Sell* hearing. [*Id.* at 2]. However, Dear asserts that: (1) his "privacy interests weigh in favor of closing the courtroom to the press and general public during the *Sell* hearing" [i*d.*]; (2) the *Sell* hearing should be closed to protect his privacy interest "[g]iven the unique social stigma that attaches to mental illness," [*id.* at 4]; (3) closing the courtroom is the least restrictive means available to protect his privacy interests [*id.* at 5]; and (4) the *Sell* hearing may "cause pre-trial publicity prejudicial to both parties' interests because it generates ire against or sympathy for Mr. Dear" [*id.* at 4].

The Court should deny Dear's motion because: (1) the public's First Amendment right of access to criminal court proceedings supports holding an open *Sell* hearing; (2) Dear's privacy rights do not outweigh the public's right to an open hearing; (3) there are less-restrictive measures to protect Dear's privacy interests; (4) Dear is unable to show that an open *Sell* hearing will cause prejudicial pretrial publicity; and (5) the goals of the Crime Victim's Rights Act support holding a public hearing.

3

### A. Dear's *Sell* Hearing Should Be Open to the Public Based on the First of Amendment Right of Access to Criminal Court Proceedings.

As Dear concedes [*id.* at 3], it is well-established that "[t]he First Amendment guarantees the right of the press and the public to attend criminal trials and certain preliminary proceedings in criminal cases." *United States v. Gonzales*, 150 F.3d 1246, 1255 (10th Cir. 1998); s*ee also Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 13, (1986) ("*Press—Enterprise II* "); *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 603–06 (1982); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 575–81(1980) (plurality opinion). The Supreme Court has explained that "[p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Press—Enterprise II*, 478 U.S. at 13 (quoting *Richmond Newspapers*, 448 U.S. at 572). In considering claims of a right to access to criminal proceedings based on the First Amendment, courts should examine whether the proceeding meets the "experience" and "logic" tests that have been established. *Id.* at 8-10. As Dear concedes, his *Sell* hearing meets both tests.

First, the experience test examines "whether the place and process have historically been open to the press and general public." *Press-Enterprise II*, 478 U.S. at 8. This test "does not look to the particular practice of any one jurisdiction, but instead to the experience in that *type* or *kind* of hearing throughout the United States." *United States v. Guerrero*, 693 F.3d 990, 1000 (9th Cir. 2012) (quoting *El Vocero de P.R. v. Puerto Rico,* 508 U.S. 147, 150 (1993)) (per curiam). Next, the logic test requires courts to consider "whether public access plays a significant positive role in the functioning of

4

the particular process in question." *Press—Enterprise II*, 478 U.S. at 8; *see also Globe Newspaper*, 475 U.S. at 606.

While the Tenth Circuit has not squarely addressed this issue in connection with competency proceedings, multiple courts have held that competency hearings, transcripts of those hearings, and related documents meet the experience and logic tests and should be open to the public. *See Guerrero*, 693 F.3d at 1001-02 (holding that because the experience and logic tests were met, "the district court did not clearly err in finding a qualified First Amendment right of access to mental competency hearings"); *United States v. Kight*, No. 16-cr-99-WSD, 2018 WL 1138310, at *4 (N.D. Ga. Mar. 2, 2018) (explaining that even where the hearing was open, the public also had an interest in several exhibits used during the competency hearing—"especially how [the exhibit] underpins this Court's competency determination"); *United States v. Burke*, No. 06-cr-00113-EFS-1, 2017 WL 1193055, at *1 (E.D. Wash. Mar. 29, 2017) ("as a matter of public policy, competency hearings and court materials are usually made publicly available"). The available case law demonstrates that the *Sell* hearing meets the experience and logic tests set forth in *Press—Enterprise II,* and Dear's hearing should be open to the public.

### B. Even if Dear's Privacy Right is Compelling, It Does Not Outweigh the Public's Right of Access

Even if the Court finds Dear's privacy right in his medical and mental health information compelling, that right does not outweigh the public's right of access. The public's right of access is qualified and can be overcome "where closure is essential to serve a higher interest and where closure is narrowly tailored." *United States v.*

*McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997); see also *Press–Enterprise II*, 478 U.S. at 7–9. The Ninth Circuit has held that "[c]losing a hearing requires that: (1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Guerrero*, 693 F.3d at 1002 (quoting *Oregonian Pub. Co. v. U.S. Dist. Court for Dist. Of Oregon*, 920 F.2d 1462, 1466 (9th Cir. 1990)).

While "the Supreme Court has not definitively answered the question of whether there is a constitutional right to privacy of one's personal medical information," see *In re Motion to Unseal Court Records*, No. 19-00282HG-WRP, 2019 WL 5191818, at * 4 (D. Haw., Oct. 15, 2019), the Government acknowledges that courts frequently seal medical information based on privacy rights. However, medical information in the context of a competency hearing should be treated differently. *See In re Motion to Unseal Court Records*, 2019 WL 5191818, at * 5. The district court in *In re Motion to Unseal Court Records* acknowledged that "maintaining the privacy of medical information is an important individual right… in criminal cases as a whole[,]" but it reasoned that "[p]rivate medical information presented in competency proceedings has a more complicated analysis given that the medical information provides the basis for the Court's competency determination." *Id.* The court ruled that the medical information relevant to the court's competency ruling would be disclosed because the "public interest in such information overrides [the defendant's] general objection to the unsealing of medical information." *Id.* To protect the defendant's privacy rights, however, the court allowed

6

medical information that was irrelevant to the competency determination to be redacted. *Id.* at *5-6.

Likewise, the Ninth Circuit has held that a defendant's privacy right in medical information does not outweigh the public's right of access to competency hearings. *Guerrero*, 693 F.3d at 1002-03; *United States v. Kaczynski*, 154 F.3d 930, 932 (9th Cir. 1998). In *Guerrero*, the court examined the right of public access to criminal competency proceedings based on the First Amendment as a matter of first impression and found that the defendant "had not shown a substantial probability of irreparable harm" if the competency proceedings were open or that there were no "viable alternatives" to closure. *Guerrero*, 693 F.3d at 1002. The court further stated: "[E]ven if the privacy rights of Guerrero and others named in the competency documents constitute a compelling interest, there are alternatives to full closure of the competency proceedings that can protect these interests." *Id.* at 1003.

Similarly, in *Kaczynski*, the Ninth Circuit had previously held that even under the media's common-law right of access, which is less protected than its First Amendment right of access, the defendant's privacy right in his psychiatric information was not sufficient to override the public's and the media's right to access his psychiatric report because it was used in the court's competency determination. *Kaczynski*, 154 F.3d at 931-32. The court found "the media made the necessary threshold showing… that disclosure of [the defendant's] psychiatric report would serve the ends of justice by informing the public about the court's competency determination and [the defendant's] motivation for committing the Unabomber crimes." *Id.* at 932. Prior to disclosure, the

7

district court redacted the portions of the psychiatric report regarding third parties and information that had "little or no relationship to" competency. *Id.* The *Kaczynski* court held that this approach "properly balanced the public's legitimate interest in access to the report, that is, its interest in obtaining information bearing on the workings of the criminal justice system, with the countervailing privacy interests asserted" by the defendant. *Id.*

Dear has made no attempt to distinguish the holdings in *Guerrero* or *Kaczynski*, but instead asks the Court to rely on an unpublished district court decision out of the District of Arizona that closed a competency hearing in part because of the "stigma" associated with mental illness. [Doc. # 145 at 4]; *United States v. Curran*, No. 06-cr-227-PHX-EHC, 2006 WL 1159855, at *5 (D. Ariz. May 2, 2006) ("[M]edical and psychological records are entitled to greater protections than other information … due to the stigma attached to mental illness.").

The *Curran* decision is unpersuasive. First, despite being in the Ninth Circuit, it failed to reference the *Kaczynski* opinion or acknowledge that the Ninth Circuit had previously approved of the public disclosure of a psychiatric report relevant to competency proceedings. And, as at least one other court has found, it failed to consider that in the context of competency proceedings, the stigmatizing fact of mental illness has already been raised and made public. *See United States v. Wilson*, No. 16-cr-20460-MAG-RSW, at * 10 (E.D. Mich. Oct. 27, 2021) (*Wilson I)* (the "minimal risk" that an open competency hearing would result in materially greater stigmatization did not outweigh the "'unbroken' and 'uncontradicted history' of the presumption of

8

openness in criminal proceedings.") (internal citations omitted). [A copy of this opinion is attached as Exhibit 1].

As in *Guerrero* and *Kaczynski*, the Court should find that Dear's right to privacy in his medical and psychiatric information does not outweigh the public's right to access information that will serve as the basis for the Court's determination about whether Dear will be involuntarily medicated under *Sell.* The Court's decision is critical to whether the criminal prosecution in this case can move forward. A decision of such magnitude, to the victims in this case and to the public, cannot occur behind closed doors if the victims and the public are to accept the outcome. *See Press—Enterprise II*, 478 U.S. at 13. The Court should deny Dear's motion to close the *Sell* hearing.

### C. There are Less-Restrictive Measures to Protect Dear's Privacy Right.

Although the Government opposes any closure of the *Sell* hearing, Dear's argument for complete closure ignores well-established alternatives that are available. In balancing a defendant's privacy right against the right of public access, courts have found alternatives to full closure of competency hearings that can protect the defendant's right.[2] For example, courts "may issue protective orders, redact names from reports, and restrict the use of other people's names during the hearing." *See Guerrero*,

---

[2] Similarly, courts have found alternatives to full closure of a competency hearing can protect privileged attorney-client information. *See United States v. Wilson,* No. 16-cr-20460 MAG-RSW, 2022 WL 779768, at *4 (E.D. Mich. Mar. 14, 2022) (*Wilson II*) ("The best workable compromise is for the defense…to reveal Wilson's incompetence without compromising privileged information… by eliciting testimony that is confined to 'things [that] are observable by anyone who talked with the client,' such as the client's 'demeanor' or 'bearing,' which are not protected by the attorney-client privilege.") (internal citations omitted).

693 F.3d at 1003; see also *In re Motion to Unseal Court Records*, 2019 WL 1495248, at *4 ("redactions, rather than a complete bar to access, were proper alternatives" when needed to balance privacy rights with the First Amendment right to public access). Full closure of Dear's Sell hearing is simply not warranted.

### D. An Open *Sell* Hearing will not cause Prejudicial Pretrial Publicity.

There is no support for Dear's speculative assertion that evidence from the *Sell* hearing may "cause pre-trial publicity prejudicial to both parties' interests because it generates ire against or sympathy for Mr. Dear." [Doc. #145 at 4]. A defendant's Sixth Amendment right to a fair trial can justify the closure of a hearing only if there is a "substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent, and… reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights.'" *Guerrero*, 693 F.3d at 1002 (citing *Press-Enterprise II*, 478 U.S. at 13-14).

In *Guerrero*, the defendant argued that an open competency proceeding would violate his right to a fair trial and pointed out that his case had already received substantial publicity. *Guerrero*, 693 F.3d at 1002. The *Guerrero* court rejected this argument, finding that the defendant had "not shown an open competency proceeding [wa]s likely to generate significant additional publicity" or that any such publicity would generate "'deep and bitter prejudice' throughout the 'entire community.'" *Id.* (internal citations omitted); *see also* Ex. 1 at 9 *(Wilson I)* (the defendant's "right to a fair trial and impartial jury does not justify closing his competency hearing" where he has failed "to

10

provide a specific factual basis to support his position that publicity will prejudice the community").

Here, Dear provides no support for his speculative assertion that an open *Sell* hearing will create prejudicial pretrial publicity.  Dear also ignores the fact that the media's attention to this case has waned substantially over the past six and a half years. Even more so than the defendants in *Guerrero* and *Wilson I*, Dear cannot establish that any publicity generated by his *Sell* hearing would impact his right to a fair trial.

### E. The Goals of the Crime Victims' Rights Act Support Holding a Public *Sell* Hearing.

The Crime Victims' Rights Act ("CVRA") highlights the importance of allowing victims to be present during court proceedings, which supports holding a public *Sell* hearing. Under the CVRA, a crime victim has "[t]he right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding." 18 U.S.C. § 3771(a)(3). The CVRA further provides: "[T]he court shall make every effort to permit the fullest attendance possible by the victim and shall consider reasonable alternatives to the exclusion of the victim from the criminal proceeding." 18 U.S.C. 3371(b)(1).  While these provisions do not bear directly on whether a hearing should be public in the first place, they underscore the importance of allowing victims to observe proceedings in criminal cases.

11

Allowing the victims to attend Dear's *Sell* hearing upholds the goals of the CVRA. There are 65 victims[3] directly implicated in the counts charged in the Indictment. All of them experienced Dear's violent attack at the Planned Parenthood Clinic and should be afforded the right to attend the *Sell* hearing. R.S., the wife of one of the victims killed by Dear, wrote a letter to the Court requesting that she be allowed to attend the *Sell* hearing. [This letter is attached as Exhibit 2]. Her letter makes clear how important it is to allow victims to observe the process of justice.

While the CVRA is vital in all criminal cases, it is particularly important in this case because of the number of victims and the violent nature of the crime. As alleged in the Indictment, in November 2015, Dear "traveled to the Planned Parenthood Clinic with four SKS rifles, five handguns, two additional rifles, a shotgun, more than 500 rounds of ammunition, and propane tanks." [Doc. #1 at ¶ 2]. Upon arriving at the Planned Parenthood Clinic, Dear opened fire on a car with three occupants parked next to his truck "and repeatedly shot at them, killing one and seriously injuring the other two." [Doc. #1 at ¶ 3]. Dear "repeatedly shot at three additional people who were in various locations in front of the Planned Parenthood Clinic, killing one and injuring another." [Doc. #1 at ¶ 4]. Dear "forced his way into the Planned Parenthood Clinic by shooting through a door to the side of the main entrance." [Doc. #1 at ¶ 5]. At the time Dear gained entry, "approximately twenty-seven healthcare providers, employees, patients, and companions were in the Planned Parenthood Clinic and hid in various rooms in the

---

[3] Three of the victims in this case died as a result of Dear's attack. Their family members are victims under the CVRA. *See* 18 U.S.C. § 3771(e)(2)(B).

12

clinic and remained sheltered-in-place until they were rescued by law enforcement." [Doc. #1 at ¶ 5]. Dear shot one of these civilians when a bullet he fired went through the wall and into the room where the victim was hiding. [Doc. #1 at ¶ 5]. Dear then "engaged in an approximately five-hour standoff" with multiple law enforcement agencies. [Doc. #1 at ¶ 6]. During the course of this attack, Dear "fired approximately 198 bullets." [Doc. #1 at ¶ 7]. Given the central role the *Sell* hearing will play in whether the criminal prosecution in this case can move forward, it is crucial that the victims of Dear's crimes be allowed to attend.[4]

### III. Conclusion

For the reasons stated above, the Court should deny Dear's Motion to Close the Courtroom During the *Sell* Hearing.

Respectfully submitted,

COLE FINEGAN
United States Attorney

By: s/Pegeen D. Rhyne
Pegeen D. Rhyne
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax:  303-454-0406
E-mail:  Pegeen.Rhyne@usdoj.gov

---

[4] While the Government opposes any closing of the *Sell* Hearing, it notes that another court in this District considered the CVRA when ordering a partial closure of a courtroom due to the COVID-19 pandemic. *See United States v. Holder*, No. 18-cr-00381-CMA-GPG-01, 2021 WL 4427254, at *10, n. 8 (D. Colo. Sept. 27, 2021) (the court's "partial closure of the courtroom was narrowly tailored" and "did permit family members of the victim" to be present) (citing 18 U.S.C. § 3771(a)(3)).

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division
U.S. Department of Justice

*By:  s/Maura Deady White*
Maura White
Trial Attorney
Civil Rights Division, Criminal Section
950 Pennsylvania Avenue, 4CON
Washington, D.C. 20530
Telephone: 202-616-5103
Fax:  202-514-6588
E-mail:  Maura.White@usdoj.gov