# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-2 CARLO WILSON,

    Defendant.
_____/

Case No. 16-cr-20460

HON. MARK A. GOLDSMITH

**OPINION & ORDER**
**(1) GRANTING IN PART DEFENDANT CARLO WILSON'S MOTION FOR COURT ORDER SEALING COMPETENCY REPORT (Dkt. 1178); (2) DENYING WILSON'S MOTION FOR CERTAIN PROCEDURES AT COMPETENCY HEARING (Dkt. 1190); (3) GRANTING WILSON'S MOTION FOR ORDER DIRECTING THAT THE GOVERNMENT BEARS THE BURDEN OF PROOF (Dkt. 1212); (4) GRANTING IN PART AND DENYING IN PART WILSON'S MOTION FOR COMPETENCY PROCEDURES (Dkt. 1246); AND (5) GRANTING IN PART AND DENYING IN PART WILSON'S MOTION TO EXPEDITE (Dkt. 1491)**

This criminal case currently involves two defendants, both of whom have been charged with violating the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq.[1] The Government seeks the death penalty against both defendants. Defendant Carlo Wilson filed a motion for a hearing to determine his mental competency (Dkt. 965), which the Court granted (Dkt. 976). Wilson has been evaluated at the Metropolitan Correctional Center-Chicago (MCC-Chicago), and his competency hearing is currently set for December 6, 2021.

---

[1] The Court has previously described the factual and procedural background of this case in detail in other opinions. See, e.g., United States v. Mills, 378 F. Supp. 3d 563 (E.D. Mich. 2019) (denying motions to dismiss); United States v. Mills, No. 16-cr-20460, 2019 WL 1915762 (E.D. Mich. Apr. 30, 2019) (denying motions for bills of particulars); United States v. Mills, 367 F. Supp. 3d 664 (E.D. Mich. 2019) (granting in part and denying in part motion to preclude rap lyrics and videos). Accordingly, the Court need not set forth the background again for purposes of the present motions.

1

Wilson has filed several motions related to the upcoming competency proceeding, including: a motion to seal the competency report (Dkt. 1178), a motion for certain procedures at the competency hearing (Dkt. 1190), a motion for an order directing that the Government bears the burden of proof with respect to Wilson's competency to stand trial (Dkt. 1212), and another motion for competency procedures (Dkt. 1246).[2]  For the reasons stated below, the Court grants Wilson some of the relief he requests.[3]

## I. ANALYSIS

In his four motions related to the competency hearing, Wilson argues that the Court should (i) seal the MCC-Chicago competency report; (ii) allow experts to remain in the courtroom throughout the hearing; (iii) postpone the deadline for findings of fact and conclusions of law to a post-hearing date; (iv) direct that the Government bears the burden to prove Wilson's competency to stand trial by a preponderance of the evidence; (v) close the competency hearing to the public; (vi) permit members of the defense team to testify as to their inability to confer with him at a sealed, ex parte, in camera proceeding; and (vii) hold that the Confrontation Clause applies to the competency hearing and requires all witnesses to appear in person.  The Court evaluates each issue in turn.

---

[2] Wilson filed a motion to expedite the Court's resolution of these four motions and the pending issue of the appropriate remedy for the Government's violation of Local Rule 17 (Dkt. 1491).  The Court now resolves the four motions related to competency.  However, the Court declines to presently determine the appropriate remedy for the Government's misconduct because the Court is currently waiting for the Government to file additional information and materials necessary to determine the appropriate remedy.  See 10/19/21 Order Directing Gov't to File 2d Supp. Memo and Training Materials (Dkt. 1509).  Thus, Wilson's motion to expedite (Dkt. 1491) is granted in part and denied in part.

[3] Wilson's motions have been fully briefed.  Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing.  See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).

### A. Wilson's Request to Seal the MCC-Chicago Competency Report

Wilson asks the Court to seal the MCC-Chicago competency report in the event that it is filed on the docket. Def. Mot. to Seal Competency Report at 2 (Dkt. 1178). However, the Government states that it has no intention of filing the MCC-Chicago competency report. Gov't Resp. to Mot. to Seal Competency Report at 2 (Dkt. 1179). Accordingly, this issue is moot. If the Government's position changes, the Government must notify the Court prior to filing the report on the docket. Wilson may renew his motion at that time.

Wilson's motion to seal the competency report is, therefore, denied without prejudice as to his request to seal the MCC-Chicago report.

### B. Wilson's Request for Experts to Remain in the Courtroom

Wilson requests that experts be allowed to remain in the courtroom throughout the hearing. Def. Mot. for Competency Procedures at 8 (Dkt. 1246). The Government does not object, on the condition that its expert witnesses are granted the same permission. Gov't Resp. to Mot. for Competency Procedures at 2 (Dkt. 1261). The Court will allow both parties' proffered expert witnesses to be present for the competency proceeding.

Accordingly, Wilson's motion for competency procedures is granted as to his request to permit experts to remain in the courtroom throughout the hearing.

### C. Wilson's Request to Postpone the Deadline for Findings of Fact and Conclusions of Law

Wilson asks the Court to postpone the deadline for findings of fact and conclusions of law to a post-hearing date. Def. Mot. for Competency Procedures at 16. The Court has already addressed this issue, setting a deadline for both pre- and post-hearing proposed findings of fact and conclusions of law. 8/9/21 Order at 3 (Dkt. 1462), as modified by 10/25/21 Order (Dkt. 1511).

Thus, Wilson's motion for competency procedures is denied as to his request to postpone the deadline for findings of fact and conclusions of law.

### D. Wilson's Request to Direct that the Government Bears the Burden of Proving Wilson's Competency to Stand Trial

Wilson asks the Court to issue an order directing that the Government bears the burden of proving his competency to stand trial by a preponderance of the evidence. Def. Mot. re Burden of Proof (Dkt. 1212). The Government "takes no position" as to which party bears the burden of proof but notes that "[t]here is an absence of clarity concerning whether the [United States Court of Appeals for the] Sixth Circuit places the burden on the government to prove competency, the defendant to prove incompetency, or the moving party to bear the burden of proof." Gov't Resp. to Mot. re Burden of Proof at 3–4 (Dkt. 1219).

The standard governing the burden of proof is set forth 18 U.S.C. § 4241(d), which states:

> If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General.

Although the statute does not explicitly state who has the burden of proof on the issue of the defendant's competency to stand trial, the Sixth Circuit has held, in an unpublished decision, that the Government bears the burden of proof. See United States v. Chapple, No. 94-5048, 1995 WL 6147, at *2 (6th Cir. Jan. 6, 1995) (holding in a case where the defendant filed a competency motion that the Government had the burden of proving the defendant's competence) (citing 18 U.S.C. § 4241(d)). Four other circuits have reached the same conclusion. See United States v. Teague, 956 F.2d 1427, 1431 n.10 (7th Cir. 1992); United States v. Frank, 956 F.2d 872, 875 (9th Cir. 1991); United States v. Velasquez, 885 F.2d 1076, 1089 (3rd Cir. 1989); Lowenfield v. Phelps, 817 F.2d 285, 294 (5th Cir. 1987). By contrast, three circuit courts have placed the burden on the

4

defendant.  See United States v. Whittington, 586 F.3d 613, 618 (8th Cir. 2009); United States v. Robinson, 404 F.3d 850, 856 (4th Cir. 2005); United States v. Smith, 521 F.2d 374, 377 (10th Cir. 1975).  And one circuit court has placed the burden on the movant.  See United States v. Izquierdo, 448 F.3d 1269, 1276–1277 (11th Cir. 2006).

The cases placing the burden on the Government are more persuasive.  As the Third Circuit has explained:

> [Placing the burden on the defendant] might well encourage defense counsel to delay raising the issue of competency . . . .  We are mindful, as well, of the [United States Supreme] Court's admonition in Pate v. Robinson, supra, 383 U.S. at 384 that "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial."  It is equally contradictory to argue that a defendant who may be incompetent should be presumed to possess sufficient intelligence that he will be able to adduce evidence of his incompetency which might otherwise be within his grasp.  As the Court said in Dusky v. United States, 362 U.S. 402 (1960) (per curiam) and reiterated in Drope v. Missouri, 420 U.S. 162 (1975), the due process rule against trying an incompetent protects a defendant who cannot effectively consult with counsel and cannot comprehend the nature of the proceedings against him.

United States v. DiGilio, 538 F.2d 972, 988 (3d Cir. 1976).  The Court also finds instructive the fact that in the analogous context of insanity, the Government bears the burden of proving that the defendant was sane at the time that the criminal acts were committed if a defendant raises the sanity issue.  United States v. Jackson, 587 F.2d 852, 854 (6th Cir. 1978).  Accordingly, the Court agrees with Wilson that the Government bears the burden of proving his competency to stand trial by a preponderance of the evidence.  The Court, therefore, grants Wilson's motion to direct that the Government bears the burden of proving Wilson's competency to stand trial.[4]

---

[4] The Court notes, however, that the issue of proper burden allocation will be material only if this is one of the "narrow class of cases where the evidence is in equipoise; that is, where the evidence that a defendant is competent is just as strong as the evidence that he is incompetent." Medina v. California, 505 U.S. 437, 449 (1992).

5

### E.  Wilson's Request to Close the Competency Hearing to the Public

Wilson requests that the entirety of the competency hearing be closed to the public to protect his right to a fair trial and impartial jury as well as his privacy interest in his medical and psychiatric information.  Def. Mot. to Seal Competency Report at 5.  Wilson does not clearly explain how keeping the hearing open will harm either right or interest.  Relying on a magistrate judge's decision, United States v. Curran, No. CR-06-227-PHX-EHC, 2006 WL 1159855 (D. Ariz. May 2, 2006), Wilson appears to be arguing that keeping the hearing open will lead to publicity concerning his mental status that will (i) prejudice his potential jury pool, resulting in an unfair trial, and (ii) stigmatize or embarrass Wilson.  And "should the Court determine that the entirety of the competency hearing should not be sealed," Wilson "requests that the Court first hold the hearing under seal and then later permit the Defense to submit redactions of the hearing transcript."  Def. Reply in Support of Mot. to Seal Competency Report at 7.  The Government opposes closing the hearing.  Gov't Resp. to Mot. to Seal Competency Report at 1–2, 10–11.  As explained below, the Court declines to close the competency hearing.

The Supreme Court has recognized that the public has a qualified First Amendment right to attend criminal proceedings, Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 580 (1980), which extends to proceedings beyond simply the trial phase, Press-Enterprise Co. v. Superior Court of Cal., Riverside Cnty., 464 U.S. 501, 510–513 (1984) ("Press-Enterprise I").  "Underlying the First Amendment right of access to criminal [proceedings] . . . is the common understanding that a major purpose of that Amendment was to protect the free discussion of governmental affairs."  Globe Newspaper Co. v. Superior Court for Norfolk Cnty., 457 U.S. 596, 604 (1982) (punctuation modified). The First Amendment right of access to criminal trials "ensure[s] that this

6

constitutionally protected discussion of governmental affairs is an informed one." Id. at 605 (punctuation modified).

Because of the public's qualified First Amendment right to attend criminal proceedings, pretrial hearings have historically been open. See Oregonian Pub. Co. v. U.S. Dist. Court of Or., 920 F.2d 1462, 1465 (9th Cir. 1990). Openness at all levels of a criminal matter, including pretrial proceedings, "enhances both the basic fairness of the criminal [proceeding] and the appearance of fairness so essential to public confidence in the system." Press-Enterprise I, 464 U.S. at 508. "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." Richmond Newspapers, 448 U.S. at 572.

In Press-Enterprise Co. v. Superior Court for Riverside Cnty., 478 U.S. 1 (1986) ("Press-Enterprise II"), the Supreme Court explained that a criminal proceeding to which the First Amendment right of access attaches should remain open unless the defendant's asserted interest in closure "overrides" the public's First Amendment right of access. Press-Enterprise II, 478 U.S. at 9–10. Wilson concedes that a First Amendment right of access applies to competency hearings. Def. Mot. to Seal Competency Report at 5 (citing Press-Enterprise II, 478 U.S. at 10; Curran, 2006 WL 1159855, at *5).

Where the interest asserted is the right of the accused to a fair trial (the first interest that Wilson asserts), the hearing shall be closed only if "specific findings are made demonstrating that . . . there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent . . . ." Press-Enterprise II, 478 U.S. at 14. As noted above, Wilson relies on Curran in arguing for closure. Curran, however, is not persuasive. Its conclusion—that "[j]udging by the amount of publicity this case has generated in the local media

7

and press, there is a substantial probability that Defendant's right to a fair trial will be prejudiced by the publicity regarding his mental health that closure of the competency hearing could prevent"—is entirely conclusory and not supported by any "specific findings." 2006 WL 1159855, at *5. Although Curran reasoned that "[p]rematurely disclosing information regarding Defendant's current mental health to the public at large could taint potential jurors who could form an opinion regarding Defendant and whether he should be held responsible for the allegations against him," this was mere speculation unsupported by any factual findings set forth in the decision. Id.

United States v. Guerrero, 693 F.3d 990 (9th Cir. 2012), cited by the Government, provides much more helpful guidance as to how the Court should analyze whether there is a substantial probability that Wilson's right to a fair trial and impartial jury will be prejudiced by publicity that closure would prevent. There, the court explained that "pervasive publicity, without more, does not automatically result in an unfair trial." Id. at 1002 (punctuation modified). Rather, in assessing prejudicial effect, a court must look to the publicity's "capacity to inflame and prejudice the entire community." Id. (punctuation modified). "The publicity must create a pattern of deep and bitter prejudice throughout the community." Id. (punctuation modified). Applying this standard, the Guerrero court affirmed the district court's decision holding that the defendant's right to a fair trial did not override the public's First Amendment right of access:

> The district court observed that while there has been some pretrial publicity, it was not so extensive or current that juror screening and possible relocation could not provide a fair trial. The vast majority of articles submitted by Guerrero are from only two media outlets, which are located near the penitentiary where the crime occurred. Guerrero has made no showing that any publicity from the disclosures at the competency hearing would generate deep and bitter prejudice through the entire community. Moreover, he has not shown an open competency proceeding is likely to generate significant additional publicity. To the extent that alternatives to closure of the competency hearing are necessary, juror screening and relocation of the trial are available.

Id. at 1002–1003 (punctuation modified, citations omitted).[5]

Here, Wilson has failed to produce any evidence whatsoever indicating (i) the amount of pretrial publicity that this matter has generated or (ii) that an open competency proceeding is likely to generate a significant amount of publicity at all, much less that it would be adverse to him.  Nor has Wilson made any showing that publicity from the disclosures at the competency hearing would generate "deep and bitter prejudice" through the "entire community."  Id. at 1002.  Rather, he has only suggested, through citation to Curran's speculative conclusion, that publicity from the competency hearing could taint potential jurors.  Due to Wilson's failure to provide a specific factual basis to support his position that publicity will prejudice the community, the Court cannot make "specific findings . . . demonstrating that . . . there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent . . . ."  Press-Enterprise II, 478 U.S. at 14.  Moreover, as the Guerrero court suggested, even if some potential jurors are prejudiced by publicity from the competency hearing, this can be addressed by alternatives to closure, such as careful questioning of potential jurors during voir dire.  As a result, Wilson's right to a fair trial and impartial jury does not justify closing his competency hearing.

---

[5] Like the Guerrero court, this Court has previously expressed doubt that mere publicity in the community from which the jury is drawn should be sufficient to override the public's strong interest in open court proceedings and materials filed on the record.  In its order denying Wilson's motion for leave to file under seal expert reports related to his motion for relief under Atkins v. Virginia, 536 U.S. 304 (2002), see 5/23/19 Order (Dkt. 927), the Court explained that the Sixth Circuit's decision in Shane Group, Inc. v. Blue Cross Blue Shield of Mich., 825 F.3d 299 (6th Cir. 2016) is instructive on this issue.  Under Shane, there is a strong presumption in favor of openness when it comes to materials that the parties have chosen to place in the court record at the adjudicative stage.  825 F.3d at 305.  The Court concluded that Wilson's reason for sealing expert reports—the potential inhibition of lay witnesses based on the public disclosure of sensitive information—was "unsubstantiated and hardly compelling."  5/23/19 Order at 3.

The Court turns to Wilson's asserted privacy interest in his medical and psychiatric information. Wilson again relies on Curran, where the court concluded that the defendant's privacy interest in such information warranted closure of a competency hearing in light of "the stigma attached to mental illness." 2006 WL 1159855, at *5. Curran's reasoning—that disclosure of information revealing a defendant's incompetence may be stigmatizing or embarrassing—does not provide a persuasive basis to close the competency hearing here, given the specific circumstances. Wilson, through his counsel, has already publicly disclosed the potentially stigmatizing conclusion that he is incompetent and has provided some supporting documentation. E.g., Woods Report (Dkt. 965-1) (stating defense expert's opinion that Wilson is not presently competent to stand trial); Def. Mot. to Seal Competency Report at 3 (noting the defense's position is that Wilson is incompetent); Def. Mot. for Certain Procedures at 2 (stating that in addition to presenting experts, Wilson intends to present evidence from his defense team members that "shed[s] light on his present [in]ability to consult with the team with a reasonable degree of rational understanding") (punctuation modified) (Dkt. 1190). That more specific facts about Wilson's mental status may be revealed from psychiatric and medical information at the competency hearing does not mean that his privacy interests will be invaded in an appreciably more significant way.

There is a minimal risk that keeping Wilson's competency hearing open will result in materially greater stigmatization. This minimal risk simply does not outweigh the "unbroken" and "uncontradicted history" of the presumption of openness in criminal proceedings. See Richmond Newspapers, 448 U.S. at 573. The presumption of openness not only protects individual criminal defendants by fostering public oversight of the defendant's prosecution but also promotes public confidence in the rule of law. "A result considered untoward may undermine public confidence, and where the [proceeding] has been concealed from public view an unexpected outcome can

cause a reaction that the system at best has failed and at worst has been corrupted." Id. at 571. For the administration of justice to work effectively, the public must be allowed to observe and scrutinize the criminal process as it unfolds. Id. at 571–572. To ensure adherence to the rule of law, "the administration of justice cannot function in the dark." Id. at 571. Wilson's privacy interest in his medical and psychiatric information does not justify closing his competency hearing.

Wilson's motion to seal the competency report is denied as to his request to close the competency hearing.

**F.  Sealed, Ex Parte, In Camera Presentation**

Wilson seeks to demonstrate his incompetence through testimony from his defense team members—including two attorneys and four non-attorneys—regarding his alleged inability to properly assist and rationally communicate with his defense team. Def. Mot. for Competency Procedures at 8. However, Wilson does not want his defense team to testify at the competency hearing in the presence of Government attorneys; instead, he asks the Court to permit a sealed, ex parte, in camera hearing to take testimony from the defense team members. Id. He contends that such a hearing is necessary to preserve his "Fifth, Sixth, and Eighth Amendment rights" against self-incrimination, to effective assistance of counsel, and to a reliable sentencing determination, as well as to limit his waiver of the attorney-client privilege. Def. Mot. for Certain Procedures at 1.

Wilson fails to cite any caselaw to support his contention that his Fifth, Sixth, or Eighth Amendment rights would be infringed by his defense team's testimony in the presence of the Government or the public at the competency hearing. Nor is the Court aware of any such caselaw. Thus, the Court will not further consider Wilson's unsupported argument that his rights under these constitutional amendments are implicated. Glidepath Holding v. Spherion Corp., 590 F. Supp. 2d

11

435, 459 n.9 (S.D.N.Y. 2007) ("[T]he Court has no obligation to consider an argument for which a party has cited no legal authority.").

Unlike the other rights raised by Wilson, the attorney-client privilege stems from the common law rather than the federal constitution. Upjohn Co. v. United States, 449 U.S. 383 (1981). Accordingly, the Court considers whether a sealed, ex parte, in camera hearing is required to prevent the disclosure of privileged information.[6]

Wilson fails to cite any caselaw proving that such a hearing is necessary to prevent the disclosure of privileged information. First, Wilson relies on dicta from Medina v. California, 505 U.S. 437, 450 (1992) for the proposition that counsel may be the "best-informed" source of information regarding a defendant's competency. Medina, however, does not address the issue of the appropriate setting in which to take defense team members' testimony. Second, Wilson cites an unpublished, out-of-circuit district court order, United States v. Green, No. 98-337(A) (C.D. Cal. Nov. 10. 2005). See Green Order (Dkt. 1204-1). Wilson appears to rely on Green due to its one fleeting reference to an in camera proceeding: "[t]he Court heard, in camera, from members of the defense team." Id. at 8. However, Green contains no reference to an ex parte proceeding, and an in camera proceeding is not the same as an ex parte proceeding.[7] Green likewise does not indicate that the in camera proceeding was sealed. Even if the in camera hearing in Green was also sealed and ex parte, there is no indication that the Government objected to a closed, ex parte

---

[6] Wilson concedes that it is inevitable that some privileged information will be revealed during the competency hearing. Def. Mot. for Certain Procedures at 1. He thus seeks to "limit[]" the extent to which this privileged information is shared. Id.

[7] An in camera proceeding is one before the judge in his or her chambers or one where all spectators are excluded from the courtroom. See Black's Law Dictionary (11th ed. 2019). By contrast, an ex parte proceeding is one from which an opposing party is excluded or given no opportunity to join. See id. Because "in camera" is not coterminous with "ex parte," there is no reason to conclude that the in camera hearing in Green was also ex parte.

12

contact between defense counsel and the court. By contrast, the Government objects to such contact here. As a result, Green is far from persuasive precedent that a court may properly, over the Government's objection, hear ex parte testimony from a defendant's lawyers about their contact and exchanges with him.

The Court thus turns to the question of whether a sealed, ex parte, in camera proceeding—although not required by any cases cited by Wilson—would nevertheless be necessary to prevent the disclosure of privileged information. The Government contends that it is not necessary. Specifically, the Government argues that the defense team members can testify as to their observations about Wilson's competency without disclosing confidential communications subject to attorney-client privilege. Gov't Resp. to Mot. for Certain Procedures at 8–10 (Dkt. 1205). The basis of the Government's argument is that the attorney-client privilege protects only the "substance" of confidential attorney-client communications, not "things [that] are observable by anyone who talked with the client," such as the client's "demeanor" or "bearing." See United States v. Kendrick, 331 F.2d 110, 113–114 (4th Cir. 1964). As a result, waiver concerns are not implicated when, in a competency hearing, a defendant calls his counsel to testify regarding their perceptions of the defendant's competency, not the substance of their confidential communications with the defendant.

To determine whether the Government is correct that the defense team members can limit their testimony to their observations regarding Wilson's competency, the Court examined the defense team members' sealed declarations setting forth the facts to which they plan to testify. See Jacqueline Walsh Decl. (Dkt. 1287-2); Ashwin Cattamanchi Decl. (Dkt. 1287-3); David Freedman Decl. (Dkt. 1287-4); Felicia Sullivan Decl. (Dkt. 1287-5); Mary Pisula-Stewart Decl. (Dkt. 1287-6); Colin Byrne Decl. (Dkt. 1287-7). Based on these declarations, the Court is satisfied that the

13

defense team members could adequately describe Wilson's communication and comprehension difficulties without divulging specific details of their conversations. For instance, the defense team members can testify about Wilson's inability to understand the vulnerabilities in his case despite repeated efforts by his attorneys to explain them, without specifying the vulnerabilities.[8]

Accordingly, the Court denies Wilson's motion for competency procedures and his motion for certain procedures as to his request for a sealed, ex parte, in camera hearing to present his defense team's testimony. Defense team members may testify at the competency hearing regarding their observations of Wilson (without disclosing the substance of privileged communications), subject to cross-examination by the Government.

### G. Witness Appearance by Video Conference

Because the Government raised the possibility of calling one of its witnesses by videoconference, Wilson filed a motion arguing that the Confrontation Clause of the Sixth Amendment applies to the competency hearing and requires all witnesses to appear in person. Def. Mot. for Competency Procedures at 3–7. However, this issue appears to be moot, given that the Government now represents that it anticipates that all of its witnesses will testify in person. Gov't Resp. to Mot. for Competency Procedures at 1. Accordingly, at this time, the Court need not render any decision concerning witnesses who wish to testify by video conference.[9] The Court,

---

[8] To the extent that the defense attorneys fear that their in-court testimony will risk disrupting the attorney-client relationship, this risk is inherent in any competency motion. Anytime that an attorney argues that his or her client is incompetent, there is some risk that the attorney-client relationship may be strained, as the client may feel degraded, disrespected, or embarrassed as a result of the attorney's statements.

[9] The Court reminds the parties of its prior order that "[w]itnesses must be informed immediately by counsel that their in-person attendance will be required on the dates on which they will testify. This applies to all of the hearing and trial dates addressed in this order." 4/24/20 Order at 6 (Dkt. 1281).

therefore, denies Wilson's motion for competency procedures as to his request to prohibit any witnesses from appearing at the hearing by video.

### III. CONCLUSION

For the reasons stated above, the Court grants in part Wilson's motion for a court order sealing the competency report (Dkt. 1178), denies Wilson's motion for certain procedures at the competency hearing (Dkt. 1190), grants Wilson's motion to direct that the Government bears the burden to prove Wilson's competency to stand trial (Dkt. 1212), grants in part and denies in part Wilson's motion for competency procedures (Dkt. 1246), and grants in part and denies in part Wilson's motion to expedite (Dkt. 1491).

SO ORDERED.

Dated: October 27, 2021　　　　　　　　　　　　　s/Mark A. Goldsmith
　　　　　Detroit, Michigan　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge