IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 19-cr-00506-REB

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ROBERT LEWIS DEAR, JR.,

        Defendant.

**EMERGENCY MOTION TO STAY EXECUTION OF
INVOLUNTARY MEDICATION ORDER PENDING APPEAL**

The defendant, Robert Lewis Dear, Jr. ("Mr. Dear"), by and through undersigned counsel, hereby moves to stay the execution of this Court's September 19, 2022 Order at Doc. No. 159 (hereinafter "the Order") granting the government's request to involuntarily medicate Mr. Dear, pending appeal. The government, through Assistant United States Attorney Pegeen Rhyne, opposes this motion.

**I.    Procedural History**

This Court committed Mr. Dear for competency restoration under 18 U.S.C § 4241(d) on September 16, 2021. Doc. No. 121. On November 17, 2021, Dr. Lea Ann Preston Baecht with the Federal Bureau of Prisons submitted a Forensic Psychological Report opining Mr. Dear was not restorable to competency absent the administration of antipsychotic medication. Doc. No. 131. On December 8, 2021, the government moved for a hearing under *Sell v. United States*, 539 U.S. 166 (2003), requesting that Mr. Dear be involuntarily and forcibly medicated. Doc. No 128. On March 18, 2022, the Bureau of

Prisons submitted its Proposed Treatment Plan, authored by Dr. Robert G. Sarrazin, BOP Chief of Psychiatry. Doc. No. 143. This Court held a hearing on the government's motion for involuntary medication from August 30 through September 1, 2022. Doc. Nos. 156-158. At the conclusion of the hearing, the Court took the matter under advisement. Doc. No. 158. On September 19, 2022, the Court issued a written Order granting the government's motion to involuntarily medicate Mr. Dear to restore him to competency. Doc. No. 159. On September 21, 2022, Mr. Dear filed a notice of appeal of the September 19, 2022 Order. Doc. No. 160.

## II.     Jurisdiction

The Tenth Circuit will have jurisdiction over the appeal under the collateral-order doctrine. *Sell v. United States*, 539 U.S. 166, 176–77 (2003). However, this Court retains jurisdiction over a motion to stay, even though a notice of appeal has been filed, and in fact Mr. Dear is required to file a motion to stay pending appeal in the district court in the first instance. *See* Fed. R. App. P. 8.

## III.     Legal Standard

Under the traditional four-factor standard to obtain a stay pending appeal:

> a court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."

*Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770 (1987)).

The Tenth Circuit also allows for an alternative test to be used when a party requests a stay pending appeal: "when the moving party demonstrates that the second,

third, and fourth factors tip strongly in its favor," a stay is appropriate so long as "questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Verlo v. Martinez*, 820 F.3d 1113, 1128 n.5 (10th Cir. 2016) (internal quotation marks omitted).

### IV.     Argument

Courts routinely grant stays of orders to forcibly medicate criminal defendants. *See, e.g.*, *United States v. Seaton*, 773 Fed. App'x. 1013 (10th Cir. 2019); *United States v. Osborn*, 921 F.3d 975 (10th Cir. 2019); *United States v. Morrison*, 415 F.3d 1180 (10th Cir. 2005); *United States v. Chavez*, 734 F.3d 1247 (10th Cir. 2013).[1] That they do so is unsurprising—*Sell* orders present serious and complex questions of law and fact that implicate both a defendant's fundamental liberty and the public interest, and a defendant's right to appeal has meaning *only if* that order is stayed and he is not involuntarily medicated while that appeal is pending. Here, a stay for the short amount of time this interlocutory appeal will take is appropriate under both the traditional and alternative frameworks employed by the Tenth Circuit.

---

[1] This is equally true of courts outside the Tenth Circuit as well. *See, e.g.*, *United States v. Gomes*, 387 F.3d 157 (2d Cir. 2004); *United States v. Grape*, 549 F.3d 591 (3d Cir. 2008); *United States v. White*, 620 F.3d 401 (4th Cir. 2010); *United States v. James*, 959 F.3d 660 (5th Cir. 2020); *United States v. Grigsby*, 712 F.3d 964 (6th Cir. 2013); *United States v. Debenedetto*, 757 F.3d 547 (7th Cir. 2014); *United States v. Curtis*, 749 F.3d 732 (8th Cir. 2014); *United States v. Onuoha*, 820 F.3d 1049 (9th Cir. 2016); *United States v. Loughner*, 672 F.3d 731 (9th Cir. 2012); *United States v. Diaz*, 630 F.3d 1314 (11th Cir. 2011).

### A. Mr. Dear has a strong likelihood of success on the merits.

As to the first traditional stay factor, a stay is warranted because Mr. Dear is likely to succeed on the merits. This is so for at least two reasons.

First, the Court's order exceeds the bounds of what *Sell* permits. Not only does the order permit the forcible administration of antipsychotic medication, but it also goes *far* beyond that specific therapeutic intervention. (Doc. 159 at 18-20.) Specifically, the order mandates extensive monitoring—including by force—of, for example, cardiovascular condition, electrolytes, renal function, blood pressure, weight, blood glucose, cholesterol, lipids, serum potassium and magnesium. It also allows "[t]hat any medication, test, monitoring, procedure, or assessment required or prescribed by the treatment plan or this order" can be forcibly administered. This nearly boundless grant of involuntary medical treatment is miles away from what *Sell* itself contemplates.

As far as counsel has been able to tell, the scope of those non-psychotherapeutic interventions that are permissible under *Sell* presents a question of first impression in the Tenth Circuit. But *Sell* itself is clear: a defendant's constitutional institutional liberty interest in "avoiding the unwanted administration of antipsychotic drugs," can be overcome by the government meeting a demanding standard that permits "involuntary administration of drugs solely for trial competence purposes in certain [rare] instances." 539 U.S. at 178, 180. Mr. Dear, therefore, has a substantial likelihood of success in challenging the scope of the *Sell* order here. And because these additional requirements appear to have been, in the Court's view, necessary predicates for the safe implementation of the proposed forcible medication plan—without them, the plan fails and *Sell*'s fourth prong is unsatisfied. Indeed, when, as here, the government

proffers an inadequate treatment plan to meet *Sell*'s "demanding standard," *See Watson*, 793 F.3d at 420, the Court cannot simply re-write it until it passes muster; rather, the proper disposition is to deny the request to forcibly medicate a criminal defendant. *See generally Chavez*, 734 F.3d at 1254 (finding insufficient evidence to forcibly medicate defendant where government failed to present an adequate treatment plan specifying drugs that may be administered and their maximum dosages).

Second, as the Court recognized, in light of "the vital constitutional liberty at stake" in avoiding forcible medication, it must find all facts by clear and convincing evidence. *United States v. Bradley*, 417 F.3d 1197, 1114 (10th Cir. 2005). This is a heavy burden, and one which the government meets "only if the evidence places in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable." *United States v. Valenzuela–Puentes*, 479 F.3d 1220, 1228-29 (10th Cir. 2007) (alteration and quotations omitted). That standard was not satisfied here because two critical factual findings were clearly erroneous, undermining the ultimate conclusion the Court reached with respect to the second *Sell* factor.

For one thing, the Court opted to credit the two Bureau of Prisons doctors over Mr. Dear's experts in a single paragraph. One of the Court's reasons for distinguishing Dr. Preston Baecht and Dr. Sarrazin from Dr. Woods and Dr. Martinez was the former doctors' "personal observations of and interactions with Mr. Dear." (Doc. 159 at 9-10.) But Dr. Martinez also personally evaluated Mr. Dear, rendering that distinction between the groups of experts erroneous, and eliminating a principal basis the Court provided for declining to credit Mr. Dear's expert opinion that the treatment plan was not substantially likely to restore Mr. Dear to competence.

For another, the Court's order noted that some scientific studies on competency restoration reflect restoration rates in the range of 70 to 75 percent of cases, while other studies reflect lower rates. Doc. No. 159 at 9. The Court then observed that "[t]he results of some published studies are less persuasive because some studies involved fairly small sample sizes, medication trials of less than three months, and/or indications that patients in the study failed to fully comply with the medication regime being studied." *Id.* The Court, however, never indicated which of those studies were "less persuasive" – *i.e.*, those reporting high restoration rates, those reporting low restoration rates, or those from both groups. That lack of clarity leaves the literature in limbo as a factor; although the Court clearly relied on it, as did the Bureau of Prisons' doctors, the order does not indicate how the court factored it into the analysis. That uncertainty renders it impossible for a reviewing court to evaluate the second *Sell* factor, and such ambiguity certainly cannot be said to support a finding of clear and convincing evidence.

While additional appellate issues of course may become apparent after counsel reviews the competency restoration record in full, at this stage the two issues identified here at minimum independently establish a basis for reversal sufficient to satisfy the first prong for granting a stay.

### B.  Mr. Dear will be irreparably injured absent a stay.

If this stay is denied, Mr. Dear will be injured by the Order's interference with his significant liberty interest in refusing medication, and that injury cannot be reversed. "The forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty." *Washington v. Harper*, 494 U.S. 210, 229 (1990).  "It is well settled that an individual has a significant constitutionally

6

protected liberty interest in avoiding the unwanted administration of antipsychotic drugs." *Sell v. United* States, 539 U.S. 166 at 178 (2003). If this stay is denied, the Court's Order will be carried out forthwith, and Mr. Dear will be medicated against his will. It will render the Court's order unreviewable as the interference with Mr. Dear's liberty interest will have already happened. *Cf. Sell*, 539 U.S. at 176 (explaining that a *Sell* order can be appealed under the collateral order doctrine, lest it be "effectively unreviewable").

That is to say, Mr. Dear will be given drugs that are designed and intended to alter the chemical balance in his brain, bring about changes to his cognitive process, and potentially result in very serious side effects that could adversely impact his health and well-being. (Indeed, it is undisputed that Mr. Dear suffers from hypertension, hyperlipidemia, and stage three A chronic kidney disease, Doc. No. 159, ¶¶8-10, and that antipsychotic medication can have concerning and severe side effects that worsen these very conditions, *id.* at ¶¶31-37.) Thus, the injuries that Mr. Dear is seeking to avoid by refusing medication – and which the law recognizes that he has a significant liberty interest in seeking to avoid – will have already happened if no stay is granted, and will be irreparable.

### C. The stay will not substantially injure any interested party.

No interested party will be injured by the granting of a stay. Undoubtedly, Mr. Dear will remain incarcerated during the pendency of the stay. If Mr. Dear were to become dangerous in custody (and there is no reason to believe that would happen), then a new process for involuntary medication under *Harper* would become available. Additionally, the resolution of the appeal will not unduly prolong the proceedings in this

matter. The last interlocutory *Sell* appeal to the Tenth Circuit was expedited and the matter was resolved in three short months from the filing of the Notice of Appeal to the issuance of the Judgment. *See United States v. Seaton*, 773 Fed. App'x. 1013 (2019); *United States v. Seaton*, D. Colo. 18-cr-00027-RBJ (notice of appeal filed on March 12, 2019 and circuit's judgment issued on June 10, 2019. Further, the underlying order is "completely separate from the merits of the action," *Sell*, 539 U.S. at 176, and thus the government's position on appeal will not be impacted by the granting of the stay.

### D.  The public interest lies in the granting of a stay.

The issue of forcible medication is important enough that *Sell* orders are reviewable under the collateral order doctrine. *See Sell*, 539 U.S. at 176. "Forcible medication under *Sell* is a tool that must not be casually deployed, and courts must be vigilant to ensure that such orders, which carry an unsavory pedigree, do not become routine." *United States v. Watson*, 793 F.3d 416, 419 (4th Cir. 2015); *see also United States v. Valenzuela-Puentes*, 479 F.3d 1220, TK (10th Cir. 2007) (reaffirming the Supreme Court's holding that "instances of involuntary medication of a non-dangerous defendant solely to render him competent to stand trial should be 'rare' and occur only in 'limited circumstances.'") (quoting *Sell,* 539 U.S. at 169) (internal quotation marks, alterations, and citation omitted). The public interest lies in allowing the Tenth Circuit to review the Court's collateral order, which can only happen if the order has not already been carried out. *See United States v. Clark*, 334 Fed. App'x. 884 (10th Cir. 2009) (appellate court accepted interlocutory appeal but dismissed appeal as moot when no stay was also filed and the defendant had already been involuntarily medicated).

8

### E.  A stay is also appropriate under the Tenth Circuit's alternative test.

As described above, Mr. Dear has demonstrated that the "second, third, and fourth factors tip strongly in its favor." *Verlo*, 820 F.3d at 1128 n.5 (internal quotation marks omitted). And when that is true, the Tenth Circuit has indicated that a stay is appropriate so long as "questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Verlo v. Martinez*, 820 F.3d 1113, 1128 n.5 (10th Cir. 2016) (internal quotation marks omitted). That is the case here.

The issues presented here are undoubtedly complex—the Court heard testimony from six experts over three days, and whether clear and convincing evidence established that forced medication was substantially likely to render Mr. Dear competent to stand trial without extremely adverse side effects was fiercely contested. The issues presented in any *Sell* case are serious, as *Sell* itself recognized. *See* 539 U.S. at 178-79. Moreover, as discussed above, it is far from certain that the circuit will view the government's case in the same way—*Sell* orders are reviewed, in part, under a d*e novo* standard of review and courts of appeal do not function as mere rubber stamps. Indeed, indicative of the difficult questions presented in these cases, some such orders are reversed. *See e.g.*, *Chavez*, 734 F.3d at 1254 (10th Cir. 2013) (on interlocutory appeal, the Tenth Circuit found insufficient evidence to forcibly medicate defendant); *United States v. Grigsby*, 712 F.3d 964 (6th Cir. 2013) (on interlocutory appeal, the Sixth Circuit held that the government failed to establish the *Sell* factors); *United States v. Onuoha*, 820 F.3d 1049 (9th Cir. 2016) (on interlocutory appeal, the Ninth Circuit held that the treatment plan—jumping too quickly to a large dose of long-acting haloperidol—

9

was not in the defendant's best medical interest); *United States v. Ruiz-Gaxiola*, 623 F.3d 684 (9th Cir. 2010) (on interlocutory appeal, the Ninth Circuit found the issues with the Herbel study—the same study and issues here—were cause to deny government's motion); *United States v. Watson*, 793 F.3d 416 (4th Cir. 2015) (on interlocutory appeal Circuit found government failed to prove that medication would restore defendant); *United States v. White*, 620 F.3d 401 (4th Cir. 2010) (on interlocutory appeal special circumstances undermined government's interest in pursuing the case, so forcible medication was inappropriate).

## V.   CONCLUSION

The Supreme Court made clear in *Sell* that the government bears a heavy burden when it wants to forcibly medicate a criminal defendant to restore him to competency to stand trial. *See United States v. Valenzuela-Puentes*, 479 F.3d 1220, 1223 (10th Cir. 2007). Such orders, the Court explained, should be "rare," and issued only in "limited circumstances." *Sell*, 539 U.S. 169, 180. Mr. Dear's only opportunity now to establish that his is *not* one of those "rare" cases justifying forcible medication is to take the interlocutory appeal of this Court's order that *Sell* makes clear is his right. *Id.* at 177. That right, however, will be mooted and made meaningless here if a stay is not granted, and accordingly, for the reasons stated herein, Mr. Dear asks this Court to stay its September 19, 2022 Order during the pendency of the interlocutory appeal.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


s/ Natalie G. Stricklin
NATALIE G. STRICKLIN
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO 80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Email: Natalie_Stricklin@fd.org
Attorney for Defendant


s/ Jennifer Beck
JENNIFER BECK
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO 80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Email: Jennifer_Beck@fd.org
Attorney for Defendant

11

CERTIFICATE OF SERVICE

     I certify that on September 21, 2022, I filed the foregoing ***Emergency Motion To Stay Execution of Involuntary Medication Order Pending Appeal*** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Pegeen Rhyne, Assistant United States Attorney
Email: pegeen.rhyne@usdoj.gov

Maura Deady White, Assistant United States Attorney
Email: maura.white@usdoj.gov

     I certify that I have mailed or served the document or paper to the following participant in the manner (mail, hand-delivery, etc.) indicated next to the participant's name:

Robert Lewis Dear, Jr. (via U.S. mail)

                                     *s/ Natalie G. Stricklin*
                                     NATALIE G. STRICKLIN
                                     Assistant Federal Public Defender
                                     633 17th Street, Suite 1000
                                     Denver, CO 80202
                                     Telephone: (303) 294-7002
                                     FAX: (303) 294-1192
                                     Email: Natalie_Stricklin@fd.org
                                     Attorney for Defendant