APPEAL

# U.S. District Court – District of Colorado
## District of Colorado (Denver)
## CRIMINAL DOCKET FOR CASE #: <u>1:19–cr–00506–REB</u>–1

Case title: USA v. Dear                                        Date Filed: 12/05/2019

Assigned to: Judge Robert E.
Blackburn

Appeals court case number:
22–1303 USCA

**<u>Defendant (1)</u>**

**Robert Lewis Dear, Jr.**                represented by   **Andrea Lee Luem**
Andrea L. Luem, Esq., Law Offices of
400 South Fourth Street
Suite 500
Las Vegas, NV 89101
702–575–0481
Email: andrea@luemlaw.com
*TERMINATED: 03/17/2021*
*Designation: CJA Appointment*

**David Andrew Kraut**
Federal Public Defender's Office
Districts of Colorado and Wyoming
633 17th Street
Suite 1000
Denver, CO 80202
303–294–7002
Fax: 303–294–1192
Email: david_kraut@fd.org
*TERMINATED: 12/17/2019*
*Designation: Public Defender or Community
Defender Appointment*

**Jacob R. Rasch–Chabot**
Federal Public Defender's Office
Districts of Colorado and Wyoming
633 17th Street
Suite 1000
Denver, CO 80202
303–294–7002
Fax: 303–294–1192
Email: jacob_rasch–chabot@fd.org
*ATTORNEY TO BE NOTICED*
*Designation: 10th Circuit Special Designation*

1

**Jennifer Lynn Beck**
Federal Public Defender's Office
Districts of Colorado and Wyoming
633 17th Street
Suite 1000
Denver, CO 80202
303–294–7002
Fax: 303–294–1192
Email: jennifer_beck@fd.org
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community*
*Defender Appointment*

**Mark Francis Fleming**
Mark Fleming, Law Office of
1470 Encinitas Boulvard
Suite 133
Encinitas, CA 92024
619–300–6202
Email: mark@markfleminglaw.com
*TERMINATED: 03/17/2021*
*Designation: CJA Appointment*

**Natalie Girard Stricklin**
Federal Public Defender's Office
Districts of Colorado and Wyoming
633 17th Street
Suite 1000
Denver, CO 80202
303–294–7002
Fax: 303–294–1192
Email: natalie_stricklin@fd.org
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community*
*Defender Appointment*

**Veronica S. Rossman**
Federal Public Defender's Office
Districts of Colorado and Wyoming
633 17th Street
Suite 1000
Denver, CO 80202
Email: veronica_rossman@fd.org
*TERMINATED: 09/23/2021*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community*
*Defender Appointment*

**Warren Richard Williamson**
Office of the Federal Public Defender
633 Seventeenth Street
Suite 1000

Denver, CO 80202
303–294–7002
Fax: 303–294–1192
Email: Rick_Williamson@fd.org
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community*
*Defender Appointment*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18 U.S.C. § 248(a)(1) and (b) Freedom of access to clinic entrances (1–64) | |
| 18 U.S.C. § 248(a)(3) and (b) Freedom of access to clinic entrances (65) | |
| 18 U.S.C. § 924(c)(1)(A) and 924(j)(1) Use of a firearm during a crime of violence resulting in death where the killing is a murder (66–68) | |

**Highest Offense Level**
**(Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level**
**(Terminated)**

None

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

---

**Plaintiff**

| **USA** | represented by | **Pegeen Denise Rhyne** |
| --- | --- | --- |
| | | U.S. Attorney's Office |
| | | District of Colorado |
| | | 1801 California Street |
| | | Suite 1600 |

Denver, CO 80202
303–454–0323
Fax: 303-454–0409
Email: pegeen.rhyne@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

**Rajiv Mohan**
U.S. Attorney's Office
District of Colorado
1801 California Street
Suite 1600
Denver, CO 80202
303–454–0220
Email: Rajiv.Mohan@usdoj.gov
*TERMINATED: 02/22/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

**Mary J. Hahn**
U.S. Department of Justice
Civil Rights Division
4 Constitution Square
150 M Street NW
Suite 7.1108
Washington, DC 20002
202–305–0921
Email: mary.hahn@usdoj.gov
*TERMINATED: 08/23/2022*
*Designation: Federal Agency Attorney*

**Maura Deady White**
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
202–532–3827
Email: maura.white@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 12/05/2019 | 1 | | INDICTMENT as to Robert Lewis Dear, Jr (1) count(s) 1–64, 65, 66–68. (Attachments: # 1 Penalty Sheet) (athom, ) (Entered: 12/06/2019) |
| 09/16/2021 | 121 | | ORDER DETERMINING COMPETENCY AND COMMITTING DEFENDANT as to Robert Lewis Dear, Jr. By Judge Robert E. Blackburn on 09/16/2021. (athom, ) (Entered: 09/16/2021) |
| 12/15/2021 | 133 | | RESPONSE to Motion by Robert Lewis Dear, Jr re 128 MOTION for Hearing *(Preliminary Response)* (Stricklin, Natalie) (Entered: 12/15/2021) |

| 03/02/2022 | 138 | | COURTROOM MINUTES for Status Conference as to Robert Lewis Dear, Jr. held before Judge Robert E. Blackburn on 3/2/2022. Court Reporter: Kevin Carlin. (lrobe) (Entered: 03/02/2022) |
|---|---|---|---|
| 08/30/2022 | 156 | | COURTROOM MINUTES for Motion Hearing as to Robert Lewis Dear, Jr held before Judge Robert E. Blackburn on 8/30/2022. Evidence entered and testimony given. Hearing continued. Defendant remanded. Court Reporter: Janet Coppock. (lrobe) (Main Document 156 replaced to correct hearing date only on 8/31/2022) (lrobe) (Entered: 08/30/2022) |
| 08/31/2022 | 157 | | COURTROOM MINUTES for Motion Hearing, Day Two as to Robert Lewis Dear, Jr held before Judge Robert E. Blackburn on 8/31/2022. ORDERED: This matter is continued to 9/1/2022 at 8:45 AM in Courtroom A1001 before Judge Robert E. Blackburn, at which time the defendant shall appear without further notice or order from the Court; provided further that the United States Marshal for the District of Colorado shall assist the Court in securing the appearance of the defendant for the hearing. Defendant remanded. Court Reporter: Janet Coppock. (lrobe) (Entered: 08/31/2022) |
| 09/01/2022 | 158 | | COURTROOM MINUTES for Motion Hearing, Day 3 held before Judge Robert E. Blackburn on 9/1/2022. ORDERED: 128 Motion is taken under advisement. The Court's written ruling will issue as soon as practicable. Defendant remanded. Court Reporter: Janet Coppock. (lrobe) (Entered: 09/01/2022) |
| 09/19/2022 | 159 | | ORDER RE: INVOLUNTARY MEDICATION as to Robert Lewis Dear Jr. The **Motion For** *Sell* **Hearing** [# 128 ], which is quintessentially a motion for the administration – involuntarily and forcibly if necessary – of antipsychotic and other related medications, is granted on the terms stated in this order. The treatment plan [# 143 – under restriction] is approved and ordered implemented, together with the addition of the other specific augmentative requirements stated in this order. Status Report due by 1/19/2023. By Judge Robert E. Blackburn on 09/19/2022. (athom, ) (Entered: 09/19/2022) |
| 09/21/2022 | 160 | | NOTICE OF APPEAL as to 159 Order on Motion for Hearing,, by Robert Lewis Dear, Jr. (Stricklin, Natalie) (Entered: 09/21/2022) |
| 09/26/2022 | 166 | | ORDER as to Robert Lewis Dear Jr. (1): The defendant has filed an appeal of the court's Order Re: Involuntary Medication [# 159 ]. In his Emergency Motion To Stay Execution of Involuntary Medication Order Pending Appeal 161 , the defendant moves for a stay of the court's Order Re: Involuntary Medication [# 159 ] pending resolution of the appeal. The government filed a response [# 165 ] to the motion for stay and states that it is not opposed to a stay pending appeal. The Emergency Motion To Stay Execution of Involuntary Medication Order Pending Appeal 161 is granted. The court's Order Re: Involuntary Medication [# 159 ] is stayed pending resolution of the appeal of that order by the defendant. By Judge Robert E. Blackburn on 9/26/2022. Text Only Entry (rebsec) (Entered: 09/26/2022) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No.    19-cr-00506-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.  ROBERT LEWIS DEAR, JR.,

      Defendant.

---

### INDICTMENT

---

The Grand Jury charges:

### GENERAL ALLEGATIONS

1.      On or about November 27, 2015, the Planned Parenthood clinic located in Colorado Springs, Colorado ("the Planned Parenthood Clinic"), was open and was providing a variety of reproductive health services to its patients.  Patients, their companions, and staff and employees of the Planned Parenthood Clinic were in the clinic and in the parking lot.

2.      On or about November 27, 2015, the defendant ROBERT LEWIS DEAR, JR., intending to wage "war" on Planned Parenthood because it offered abortion services, traveled to the Planned Parenthood Clinic with four SKS rifles, five handguns, two additional rifles, a shotgun, more than 500 rounds of ammunition, and propane tanks.

3.      Shortly before noon, defendant DEAR pulled into the parking lot of the

Planned Parenthood Clinic.  A car with three occupants parked next to defendant DEAR's truck.  Defendant DEAR said to these individuals words to the effect of "you shouldn't have come here today."  Defendant DEAR repeatedly shot at them, killing one and seriously injuring the other two.

4.      Prior to entering the Planned Parenthood Clinic, defendant DEAR repeatedly shot at three additional people who were in various locations in front of the Planned Parenthood Clinic, killing one and injuring another.

5.      Defendant DEAR forced his way into the Planned Parenthood Clinic by shooting through a door to the side of the main entrance.  At this time, approximately twenty-seven healthcare providers, employees, patients, and companions were in the Planned Parenthood Clinic and hid in various rooms in the clinic and remained sheltered-in-place until they were rescued by law enforcement.  During his attack, defendant DEAR shot one of these civilians when a bullet he fired went through the wall and into the room where the individual was hiding.

6.      After forcing his way into the Planned Parenthood Clinic, defendant DEAR engaged in an approximately five-hour standoff with officials from several law enforcement and public safety agencies, including the Colorado Springs Police Department ("CSPD"), El Paso County Sheriff's Office ("EPSO"), University of Colorado Colorado Springs Campus Police ("UCCS"), and the Colorado Springs Fire Department ("CSFD").  Defendant DEAR repeatedly shot at the firefighters and law enforcement officers, killing one officer and injuring four more.

7.      During this attack on the Planned Parenthood Clinic, its staff, its patients,

others present, and responding law enforcement officers, defendant DEAR fired approximately 198 bullets. Defendant DEAR also positioned a propane tank in the parking lot. When a law enforcement tactical vehicle was near the propane tank, defendant DEAR shot the tank in an attempt to create an explosion.

8.      Paragraphs 1-7 of these General Allegations are hereby reincorporated as to all Counts charged below.

## COUNT 1

9.      On or about November 27, 2015, in the State and District of Colorado, the defendant, ROBERT LEWIS DEAR, JR., by force and threat of force, intentionally injured UCCS Officer G.S. in order to intimidate another person and class of persons from obtaining and providing reproductive health services, resulting in the death of UCCS Officer G.S.

All in violation of Title 18, United States Code, Section 248(a)(1) and (b).

## COUNT 2

10.      On or about November 27, 2015, in the State and District of Colorado, the defendant, ROBERT LEWIS DEAR, JR., by force and threat of force, intentionally injured J.M. because she was and had been, and in order to intimidate her and another person and class of persons from, obtaining and providing reproductive health services, resulting in the death of J.M.

All in violation of Title 18, United States Code, Section 248(a)(1) and (b).

## COUNT 3

11.      On or about November 27, 2015, in the State and District of Colorado,

the defendant, ROBERT LEWIS DEAR, JR., by force and threat of force, intentionally injured K.S. in order to intimidate another person and class of persons from obtaining and providing reproductive health services, resulting in the death of K.S.

All in violation of Title 18, United States Code, Section 248(a)(1) and (b).

## COUNT 4

12.     On or about November 27, 2015, in the State and District of Colorado, the defendant, ROBERT LEWIS DEAR, JR., by force and threat of force, intentionally injured, and attempted to injure, S.W. because she was and had been, and in order to intimidate her and another person and class of persons from, obtaining and providing reproductive health services, resulting in the bodily injury of S.W.

All in violation of Title 18, United States Code, Section 248(a)(1) and (b).

## COUNTS 5-11

13.     On or about November 27, 2015, in the State and District of Colorado, the defendant, ROBERT LEWIS DEAR, JR., by force and threat of force, intentionally injured, and attempted to injure, the below-listed victim in order to intimidate another person and class of persons from obtaining and providing reproductive health services, resulting in bodily injury to the below-listed victim.

| COUNT | VICTIM |
|-------|--------|
| 5 | W.F. |
| 6 | Am.L. |
| 7 | H.L. |
| 8 | CSPD Officer M.Z. |

4

| 9 | EPSO Sergeant J.H. |
| 10 | CSPD Officer J.F. |
| 11 | CSPD Officer D.C. |

All in violation of Title 18, United States Code, Section 248(a)(1) and (b).

## COUNTS 12-37

14.     On or about November 27, 2015, in the State and District of Colorado, the defendant, ROBERT LEWIS DEAR, JR., by force and threat of force, intentionally intimidated and interfered with, and attempted to injure, intimidate, and interfere with the below-listed victim because the below-listed victim was and had been, and in order to intimidate the below-listed victim and another person and class of persons from, obtaining and providing reproductive health services.

| COUNT | VICTIM |
| --- | --- |
| 12 | S.S. |
| 13 | K.C. |
| 14 | B.T. |
| 15 | M.G. |
| 16 | J.M.C. |
| 17 | E.S. |
| 18 | M.R.H. |
| 19 | A.C.L. |
| 20 | An.L. |

5

| 21 | A.D. |
|----|------|
| 22 | L.R. |
| 23 | L.B. |
| 24 | T.S. |
| 25 | D.D.H. |
| 26 | J.B.S. |
| 27 | S.G. |
| 28 | A.Z. |
| 29 | M.H. |
| 30 | C.J. |
| 31 | K.G. |
| 32 | A.B. |
| 33 | K.T. |
| 34 | A.R. |
| 35 | A.W. |
| 36 | E.V.V. |
| 37 | J.B. |

All in violation of Title 18, United States Code, Section 248(a)(1) and (b).

**COUNTS 38-64**

15.     On or about November 27, 2015, in the State and District of Colorado, the defendant, ROBERT LEWIS DEAR, JR., by force and threat of force, intentionally intimidated and attempted to injure and intimidate the below-listed victim in order to

6

intimidate another person and class of persons from obtaining and providing

reproductive health services.

| COUNT | VICTIM |
|-------|--------|
| 38 | R.S. |
| 39 | CSPD Officer J.S. |
| 40 | CSPD Officer A.N. |
| 41 | CSPD Officer T.B. |
| 42 | CSPD Officer J.C. |
| 43 | CSPD Officer T.T. |
| 44 | CSPD Officer K.V. |
| 45 | CSPD Officer W.W. |
| 46 | CSPD Officer A.L. |
| 47 | EPSO Deputy M.M. |
| 48 | CSPD Officer M.W. |
| 49 | CSPD Officer J.S. |
| 50 | CSPD Sergeant B.C. |
| 51 | EPSO Deputy T.F. |
| 52 | CSPD Officer M.J. |
| 53 | CSPD Officer G.T. |
| 54 | CSPD Officer A.G. |
| 55 | CSFD Fireman E.L. |
| 56 | CSFD Fireman A.L. |
| 57 | CSPD Officer M.P. |

| 58 | CSPD Officer T.J. |
| 59 | CSPD Officer B.C. |
| 60 | CSPD Officer R.C-R. |
| 61 | CSPD Officer S.A. |
| 62 | CSPD Sergeant L.L. |
| 63 | CSPD Officer R.H. |
| 64 | CSPD Officer M.A. |

All in violation of Title 18, United States Code, Section 248(a)(1) and (b).

**COUNT 65**

16.     On or about November 27, 2015, in the State and District of Colorado, the defendant, ROBERT LEWIS DEAR, JR., intentionally damaged and destroyed the property of a facility, namely, the Planned Parenthood clinic located on Centennial Boulevard in Colorado Springs, Colorado, and attempted to do so, because such facility provided reproductive health services, resulting in bodily injury.

All in violation of Title 18, United States Code, Section 248(a)(3) and (b).

**COUNTS 66-68**

17.     The allegations set forth in paragraphs 1 through 11 of this Indictment are incorporated herein by reference as though fully set forth and re-alleged.

18.     On or about November 27, 2015, in the State and District of Colorado, the defendant, ROBERT LEWIS DEAR, JR., knowingly used and discharged a firearm during and in relation to a crime of violence for which he may be prosecuted in a court

of the United States, namely, a violation of 18 U.S.C. § 248(a)(1) and (b) as charged in Counts 1 through 3, that resulted in the death of the below-listed victim through the use of the firearm in such a manner as to constitute murder as defined in 18 U.S.C. § 1111, in that defendant DEAR, with malice aforethought, did unlawfully kill each victim with a firearm:

| COUNT | VICTIM |
|-------|--------|
| 66 | UCCS Officer G.S. |
| 67 | J.M. |
| 68 | K.S. |

All in violation of Title 18, United States Code, Section 924(c)(1)(A) and (j)(1).

## NOTICE OF SPECIAL FINDINGS PURSUANT TO TITLE 18, UNITED STATES CODE, SECTIONS 3591 AND 3592

19.     The allegations set forth in paragraphs 1 through 11 and 18 of this Indictment are incorporated herein by reference as though fully set forth and re-alleged. As to Counts 1 through 3 and 66 through 68, the defendant, ROBERT LEWIS DEAR, JR.:

(a)     was 18 years of age or older at the time of the offense;

(b)     intentionally killed UCCS Officer G.S., J.M., and K.S. (18 U.S.C. § 3591(a)(2)(A));

(c)     intentionally inflicted serious bodily injury that resulted in the deaths of UCCS Officer G.S., J.M., and K.S. (18 U.S.C. § 3591(a)(2)(B));

(d)     intentionally participated in an act contemplating that the life of a person

9

would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and UCCS Officer G.S., J.M., and K.S. died as a result of such act (18 U.S.C. § 3591(a)(2)(C));

(e)   intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life, and UCCS Officer G.S., J.M., and K.S. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

(f)   in committing the offenses in Counts 1 through 3 and 66 through 68, knowingly created a grave risk of death to one or more persons in addition to the victims of these offenses (18 U.S.C. § 3592(c)(5));

(g)   committed the offenses in Counts 1 through 3 and 66 through 68 after substantial planning and premeditation to cause the death of one or more persons; and

(h)   in committing the offenses in Counts 1 through 3 and 66 through 68, intentionally killed and attempted to kill more than one person in a single criminal episode (18 U.S.C. § 3592(c)(16)).

## **FORFEITURE ALLEGATION**

20.   The allegations contained in Counts 66 through 68 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 924(d) and Title 28,

United States Code, Section 2461(c).

21.     Upon conviction of the violations alleged in Counts 66 through 68 of this Indictment, involving violations of Title 18, United States Code, Section 924(c)(1)(A) and (j)(1), the defendant, ROBERT LEWIS DEAR, JR., shall forfeit to the United States pursuant to Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c), all firearms and ammunition involved in the commission of the offenses, including but not limited to the following:  (1) NORINCO SKS rifle with serial number 18032335P; (2) NORINCO SKS rifle with serial number 1813159N; (3) Heckler and Koch P7M13 9mm pistol with serial number 17-80790; (4) NORINCO SKS rifle with serial number 18017577N; (5) NORINCO SKS rifle with serial number 1800217N; (6) Ruger 10/22 rifle with serial number 247-86377; (7) Ruger 10/22 rifle with serial number 242-65868; (8) Remington Arms Mohawk 12-gauge shotgun with serial number 5265193; (9) Rossi M511 .22 revolver with serial number L002476; (10) Colt Detective Special .38 revolver with serial number H34428; (11) Sig Sauer P226 9mm pistol with serial number U366226; (12) Beretta 21A .22 pistol with serial number BBS33749U; and (13) the recovered ammunition.

22.     If any of the property described in paragraph 21 above, as a result of any act or omission of the defendant:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the Court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be subdivided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section

853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek

forfeiture of any other property of said defendant up to the value of the forfeitable

property.

TRUE BILL:


Ink signature on file in Clerk's Office
FOREPERSON


JASON R. DUNN
United States Attorney

By: *s/Pegeen D. Rhyne*
PEGEEN D. RHYNE
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California St., Ste. 1600
Denver, CO 80202
Telephone: 303-454-0200
Fax:  303-454-0406
E-mail:  Pegeen.Rhyne@usdoj.gov
Attorney for Government

By:  *s/Rajiv Mohan*
RAJIV MOHAN
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California St., Ste. 1600
Denver, CO 80202
Telephone: 303-454-0200
Fax:  303-454-0406
E-mail:  Rajiv.Mohan@usdoj.gov
Attorney for Government

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division
U.S. Department of Justice

By: *s/ Mary J. Hahn*
MARY J. HAHN
Trial Attorney
Civil Rights Division, Criminal Section
4 Constitution Square
150 M Street, N.E./7.1108
Washington, D.C. 20002
Telephone: (202) 305-0921
Fax: (202) 514-6588
E-mail: Mary.Hahn@usdoj.gov
Attorney for Government

DEFENDANT:           ROBERT LEWIS DEAR, JR.

AGE/YOB:             1958

COMPLAINT            _____ Yes     ___X___ No
FILED?
                     If Yes, MAGISTRATE CASE NUMBER_____

HAS DEFENDANT BEEN ARRESTED ON COMPLAINT?    __ Yes    _X_ No
     If No, a new warrant is required.

OFFENSE(S):          **COUNTS 1-64:** 18 U.S.C. § 248(a)(1) and (b) (freedom of access
                     to clinic entrances)
                     **COUNT 65:** 18 U.S.C. § 248(a)(3) and (b) (freedom of access to
                     clinic entrances)
                     **COUNTS 66-68:** 18 U.S.C. § 924(c)(1)(A) and 924(j)(1) (use of a
                     firearm during a crime of violence resulting in death where the killing
                     is a murder)

LOCATION OF          El Paso County, Colorado
OFFENSE:

PENALTY:             **COUNTS 1-3:** 18 U.S.C. § 248(a)(1) and (b) (resulting in death):
                     NMT life imprisonment, NMT $250,000 fine, or both, NMT 5 years
                     supervised release, and a $100 special assessment.
                     **COUNTS 4-11:** 18 U.S.C. § 248(a)(1) and (b) (resulting in bodily
                     injury): NMT 10 years imprisonment, NMT $250,000 fine, or both,
                     NMT 3 years supervised release, and a $100 special assessment.
                     **COUNTS 12-64:** 18 U.S.C. § 248(a)(1) and (b): NMT 1 year
                     imprisonment, NMT $250,000 fine, or both, NMT 1 year supervised
                     release, and a $100 special assessment.
                     **COUNT 65:** 18 U.S.C. § 248(a)(3) and (b) (bodily injury): NMT 10
                     years imprisonment, NMT $250,000 fine, or both, NMT 3 years
                     supervised release, and a $100 special assessment.
                     **COUNTS 66-68:** 18 U.S.C. § 924(c)(1)(A) and 924(j)(1) (use of a
                     firearm during a crime of violence resulting in death where the killing
                     is a murder): NMT death; in the absence of the death penalty, NLT
                     10 years imprisonment and NMT life imprisonment, NMT $250,000
                     fine, or both, NMT 5 years of supervised release, and a $100
                     special assessment.

AGENT:               Special Agent Jonathan Grusing, FBI

AUTHORIZED           Assistant U.S. Attorneys Pegeen D. Rhyne and Rajiv Mohan
BY:                  Trial Attorney Mary Hahn, Civil Rights Division


ESTIMATED TIME OF TRIAL:

__ five days or less; __X__ over five days

THE GOVERNMENT

  X   will seek detention in this case based on 18 U.S.C. § 3142(f)(1)

The statutory presumption of detention is applicable to this defendant.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Robert E. Blackburn**

Criminal Case No. 19-cr-00506-REB

UNITED STATES OF AMERICA,

     Plaintiff,

v.

ROBERT LEWIS DEAR, JR.,

     Defendant.

---

### ORDER DETERMINING COMPETENCY AND COMMITTING DEFENDANT

**Blackburn, J.**

     On September 16, 2021, this matter came before me for a competency hearing under 18 U.S.C. §§ 4241 and 4247(d), for determination of the defendant's competency, *vel non*.[1] The determination of the mental competency of a defendant in a criminal case is governed by 18 U.S.C. § 4241, as codified and construed. The parties stipulated that I may consider and rely on the **Forensic Psychological Report** of Lea Ann Preston Baecht, Ph.D., ABPP, [#117] filed under restriction on July 16, 2021.

     Having judicially noticed all relevant adjudicative facts in the file and record *pro tanto*; having considered the stipulations of the parties; having considered the evidence adduced during the hearing, including and especially the competency evaluation of Dr. Baecht [#117] filed July 16, 2021, I enter the following findings of fact,[2] conclusions of

---

[1]  The competency proceedings were triggered by the **Government's Motion For a Competency Evaluation Pursuant to 18 U.S.C. § 4241(a)** [#13] filed December 11, 2019, in which the government specifically requested, *inter alia*, a determination whether the defendant, who was then seeking to represent himself pro se, was competent to voluntarily and knowingly waive his right to counsel and proceed pro se.

[2]  My findings of fact are supported by a preponderance of the evidence as required, in part, by 18 U.S.C. § 4241(d).

law, and orders to confirm and supplement those entered from the bench in open court.

**FINDINGS AND CONCLUSIONS:**

1. Pursuant to the extant order for competency examination and 18 U.S.C. § 4247(b), Lea Ann Preston Baecht, Ph.D., ABPP, a board certified forensic psychologist, conducted a psychological competency examination of the defendant. Her competency evaluation [#117] includes the information, diagnoses, and opinions required pursuant to the provisions of 18 U.S.C. § 4247(c)(1)-(4). With the express approbation of the parties, I approve, adopt, and incorporate the findings, diagnoses, and opinions of Dr. Baecht.

2. Within the meaning of 18 U.S.C. § 4241(a), the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. Thus, logically and legally, the defendant is also unable to voluntarily and knowingly waive his right to counsel and exercise his right to proceed pro se. Therefore, the defendant is not presently competent to proceed.

3. Pursuant to the provisions of 18 U.S.C. § 4241(d)(1), the defendant must be committed to the custody of the Attorney General for hospitalization and treatment in a suitable facility[3] to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward.

4. Pursuant to 18 U.S.C. § 3161(h)(1)(A) and (4), the period of delay resulting from these ongoing competency proceedings should be excluded in computing the time within which the trial must commence under 18 U.S.C. § 3161(c).

---

[3] "Suitable facility" is a term defined by 18 U.S.C. § 4247(a)(2).

**THEREFORE, IT IS ORDERED** as follows:

1. That the defendant, Robert Lewis Dear, Jr., is declared incompetent to proceed;

2. That pursuant to and subject to the provisions of 18 U.S.C. § 4241(d)(1), the defendant is committed to the custody of the Attorney General for hospitalization and treatment in a suitable facility for such a reasonable period, not to exceed four months, to determine whether there is a substantial probability that in the foreseeable future the defendant will attain the capacity to permit the proceedings to go forward; and

3. That pursuant to 18 U.S.C. § 3161(h)(1)(A) and (4), the period of delay resulting from these competency proceedings shall be excluded in computing the time within which  trial must commence under 18 U.S.C. § 3161(c).

Dated September 16, 2021, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 19-cr-00506-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ROBERT LEWIS DEAR, JR.,

      Defendant.

---

## PRELIMINARY RESPONSE TO GOVERNMENT'S MOTION FOR *SELL* HEARING

---

The defendant, Robert Lewis Dear, Jr. ("Mr. Dear"), by and through undersigned counsel, hereby responds to the Government's Motion for a *Sell* hearing.  Doc. 128. The prosecution filed a motion captioned "Motion for *Sell* Hearing".  Doc. 128.  In addition to requesting this Court set a status conference to schedule a hearing pursuant to *Sell v. United States*, the government also seeks to set disclosure deadlines for various materials.

The government's request to schedule a *Sell* hearing is premature. Although the government recognizes the need to produce expert reports before a hearing can occur, it also acknowledges that this production has not yet occurred. Specifically, the government indicates that it intends to call Dr. Robert Sarrazin to testify about the fourth *Sell* factor and address his proposed treatment plan to forcibly medicate Mr. Dear. But Dr. Sarrazin has not provided that plan to the parties. Additionally, Mr. Dear's experts require time to review the reports of Dr. Preston Baecht and Dr. Sarrazin to prepare their opinions regarding the proposed course of forcible medication. Mr. Dear will, of

course, make the requisite disclosures related to any experts on which he anticipates relying.

Mr. Dear does agree with the government about one thing – that this Court should set a status conference to schedule anticipated disclosure deadlines. At that time, Mr. Dear also requests that the Court enter a briefing schedule for the parties (or the defense) to address the *Sell* factors in full.

For these reasons, Mr. Dear requests that the Court take no action on the government's Motion for *Sell* Hearing at this time and, instead, schedule a status conference to set disclosure deadlines and a briefing schedule.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


*s/ Natalie G. Stricklin*
NATALIE G. STRICKLIN
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO 80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Email: Natalie_Stricklin@fd.org
Attorney for Defendant


*s/ Jennifer Beck*
JENNIFER BECK
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO 80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Email: Jennifer_Beck@fd.org
Attorney for Defendant

2

<u>CERTIFICATE OF SERVICE</u>

I certify that on December 15, 2021, I filed the foregoing **Preliminary Response To Government's Motion For** *Sell* **Hearing** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Pegeen Rhyne, Assistant United States Attorney
Email: pegeen.rhyne@usdoj.gov

Rajiv Mohan, Assistant United States Attorney
Email: Rajiv.Mohan@usdoj.gov

Maura Deady White, Assistant United States Attorney
Email: maura.white@usdoj.gov

Mary J. Hahn, Assistant United States Attorney
Email: mary.hahn@usdoj.gov

I certify that I have mailed or served the document or paper to the following participant in the manner (mail, hand-delivery, etc.) indicated next to the participant's name:

Robert Lewis Dear, Jr. (via U.S. mail)

> *s/ Natalie G. Stricklin*
> NATALIE G. STRICKLIN
> Assistant Federal Public Defender
> 633 17th Street, Suite 1000
> Denver, CO 80202
> Telephone: (303) 294-7002
> FAX: (303) 294-1192
> Email: Natalie_Stricklin@fd.org
> Attorney for Defendant

3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Robert E. Blackburn**

Date:            March 2, 2022
Deputy Clerk:    Leigh Roberson
Court Reporter:  Kevin Carlin

---

Criminal Case No. 19-cr-506-REB              Counsel:

UNITED STATES OF AMERICA,                    Pegeen Rhyne
                                             Maura White
        Plaintiff,

v.

ROBERT LEWIS DEAR,                           Natalie Stricklin
                                             Jennifer Beck
        Defendant.

---

**COURTROOM MINUTES**

---

**Telephonic Status Conference**

**1:31 p.m.      Court in session.**

Discussion held regarding scheduling based on the Before the Court is the government's Motion for *Sell* Hearing (Doc. No. 128), filed December 8, 2021.

The Court will enter a scheduling order for relevant deadlines and hearing on Doc. No. 128.

**2:03 p.m.      Court in recess.**      Hearing concluded.
Total time in court: 32 minutes

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Robert E. Blackburn**

Date:                August 30, 2022
Deputy Clerk:        Leigh Roberson
Court Reporter:      Janet Coppock

---

Criminal Case No. 19-cr-506-REB                    Counsel:

UNITED STATES OF AMERICA,                          Pegeen Rhyne
                                                   Maura White
        Plaintiff,

v.

ROBERT LEWIS DEAR, JR,                             Natalie Stricklin
                                                   Jennifer Beck
        Defendant.

---

**COURTROOM MINUTES**

---

**Motion Hearing**

**9:51 a.m.       Court in session.**

Appearances of counsel. Also present at government's counsel table is Special Agent Ken Harris, FBI.

Before the Court is the government's Motion for *Sell* Hearing (ECF No. 128).

The Court dispenses with opening statements.

Government begins.

Government's witness, Lea Ann Preston Baecht, PhD, called and sworn.

        Direct examination of Dr. Preston Baecht by Ms. Rhyne.

        Exhibits admitted: Government's Exhibits 1, 2, 4, 3, 5

**11:01 a.m.      Court in recess.**
**11:20 a.m.      Court in session.**

Continued direct examination of Dr. Preston Baecht by Ms. Rhyne.

Exhibits admitted: Government's Exhibit 6

**12:00 p.m.   Court in recess.**
**1:04 p.m.   Court in session.**

Continued direct examination of Dr. Preston Baecht by Ms. Rhyne.

Cross-examination of Dr. Preston Baecht by Ms. Beck.

Redirect examination of Dr. Preston Baecht by Ms. Rhyne.

Government's witness, Lea Ann Preston Baecht, PhD, excused and released from subpoena.

Government's witness Robert Sarrazin, M.D., called and sworn.

Direct examination of Dr. Sarrazin by Ms. Rhyne.

**2:30 p.m.   Court in recess.**
**2:48 p.m.   Court in session.**

Continued direct examination of Dr. Sarrazin by Ms. Rhyne.

Cross-examination of Dr. Sarrazin by Ms. Stricklin.

**4:00 p.m.   Court in recess**
**4:14 p.m.   Court in session.**

Continued cross-examination of Dr. Sarrazin by Ms. Stricklin.

Exhibits admitted:   Defendant's exhibits 13, 14, 15, 16, 17, 18, 19, 20, 21, 12

Redirect examination of Dr. Sarrazin by Ms. Rhyne.

Government's witness Robert Sarrazin, M.D., excused and released from subpoena.

**4:55 p.m.   Court in recess.**   Hearing continued. Defendant remanded.

Total time in court: 5 hours 9 minutes

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Robert E. Blackburn**

Date:              August 31, 2022
Deputy Clerk:      Leigh Roberson
Court Reporter:    Janet Coppock

---

Criminal Case No. 19-cr-506-REB                    Counsel:

UNITED STATES OF AMERICA,                          Pegeen Rhyne
                                                   Maura White
          Plaintiff,

v.

ROBERT LEWIS DEAR,                                 Natalie Stricklin
                                                   Jennifer Beck
          Defendant.

---

### COURTROOM MINUTES

---

**Motion Hearing, Day Two**

**8:50 a.m.      Court in session.**

Appearances as previously noted.

Court's instructions to defendant regarding courtroom decorum.

Government's witness Matthew Holland, M.D., called and sworn.

    Direct examination of Dr. Holland by Ms. White.

        Exhibits admitted:   Government's Exhibit 7. Government's Exhibit 12
                       used as demonstrative.

    Cross-examination of Dr. Holland by Ms. Stricklin.

**10:21 a.m.     Court in recess.**
**10:37 a.m.     Court in session.**

    Continued cross-examination of Dr. Holland by Ms. Stricklin.

Redirect examination of Dr. Holland by Ms. White.

Examination of Dr. Holland by the Court.

**Government rests. Defendant begins.**

Defendant's witness George W. Woods, Jr., M.D., called and sworn.

Direct examination of Dr. Woods by Ms. Beck.

Exhibits admitted: Defendant's Exhibits 3, 4

| | |
|---|---|
| **12:00 p.m.** | **Court in recess.** |
| **1:05 p.m.** | **Court in session.** |

Continued direct examination of Dr. Woods by Ms. Beck.

Cross-examination of Dr. Woods by Ms. White.

Exhibits admitted: Government's Exhibit 9

Redirect examination of Dr. Woods by Ms. Beck.

Government's witness George W. Woods, Jr., M.D., excused and released from subpoena.

Defendant's witness William Morton, Pharm.D., called and sworn.

Direct examination of Dr. Morton by Ms. Stricklin.

Exhibits admitted: Defendant's Exhibit 2

| | |
|---|---|
| **2:34 p.m.** | **Court in recess.** |
| **2:55 p.m.** | **Court in session.** |

Continued direct examination of Dr. Morton by Ms. Stricklin.

Cross-examination of Dr. Morton by Ms. White.

Defendant's witness William Morton, Pharm.D., excused and released from subpoena.

Defendant's witness, Richard Martinez, M.D., called and sworn.

Direct examination of Dr. Martinez by Ms. Beck.

Exhibits admitted: Defendant's Exhibit 2

**ORDERED:** This matter is continued to 8:45 a.m. on Thursday, September 1, 2022, at which time the defendant shall appear without further notice or order from the Court; provided further that the United States Marshal for the District of Colorado shall assist the Court in securing the appearance of the defendant for the hearing.

**4:50 p.m.**      **Court in recess.**      Hearing continued. Defendant remanded.

Total time in court:  6 hours 18 minutes

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Robert E. Blackburn**

Date:                September 1, 2022
Deputy Clerk:        Leigh Roberson
Court Reporter:      Janet Coppock

---

Criminal Case No. 19-cr-506-REB                    Counsel:

UNITED STATES OF AMERICA,                          Pegeen Rhyne
                                                   Maura White
          Plaintiff,

v.

ROBERT LEWIS DEAR, JR,                             Natalie Stricklin
                                                   Jennifer Beck
          Defendant.

---

**COURTROOM MINUTES**

---

**Motion Hearing, Day Three**

**8:45 a.m.      Court in session.**

Appearances as previously noted.

          Continued direct examination of Dr. Martinez by Ms. Beck.

**9:35 a.m.      Court in recess.**
**11:01 a.m.     Court in session.**

          Continued direct examination of Dr. Martinez by Ms. Beck.

          Cross-examination of Dr. Martinez by Ms. Rhyne.

**p.m.   Court in recess.**
**1:03 p.m.      Court in session.**

          Continued cross-examination of Dr. Martinez by Ms. Rhyne.

          Redirect examination of Dr. Martinez by Ms. Beck.

Defendant's witness, Richard Martinez, M.D., excused and released from subpoena.

**Defendant rests.**

Closing arguments.

**ORDERED:**   The government's Motion for *Sell* Hearing (ECF No. 128) is taken under advisement. The Court will issue its written ruling as soon as practicable.

**2:53 p.m.**   **Court in recess.**   Defendant remanded.

Total time in court:  3 hours 38 minutes

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Robert E. Blackburn**

Case No. 19-cr-00506-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ROBERT LEWIS DEAR, JR.,

      Defendant.

## ORDER RE: INVOLUNTARY MEDICATION

**Blackburn, J.**

      The matter before me is the **Motion For *Sell* Hearing** [#128][1] filed December 8, 2021, which is quintessentially a motion for the administration – involuntarily and forcibly if necessary – of antipsychotic and other related medications. The defendant filed a preliminary response [#133]. From August 31 to September 1, 2022, I held a hearing on the motion and took the matter under advisement.

      Having judicially noticed all relevant adjudicative facts in the file and record *pro tanto*; having considered the testimony of six expert witnesses presented at the hearing; having considered the other evidence presented at the hearing, including reports prepared by some of the expert witnesses; having considered, but not necessarily accepted, the reasons stated, arguments advanced, and authorities cited by the parties

---

     [1]  "[#128]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

in their papers and during the hearing; and having considered and applied the four *Sell*[2]

factors to the existing, relevant evidence, I enter the following findings of fact,

conclusions of law, and orders. Ultimately, I grant the relief requested in the motion.

## I. BACKGROUND

Mr. Dear faces a 68-count indictment which includes possible sentences of life in

prison on each of three counts which allege violation of 18 U.S.C. § 248(a)(1) and (b).

Those three counts allege, *inter alia*, that Mr. Dear used force in an effort to intimidate a

person and class of persons and that use of force by Mr. Dear resulted in the deaths of

three people.  No doubt, these three counts constitute extremely serious crimes.

The other counts in the indictment also involve serious alleged crimes.  These

counts are based on the general allegation that Mr. Dear shot at several people outside

of a Planned Parenthood Clinic.  Excluding the two people allegedly killed outside of the

clinic, Mr. Dear allegedly seriously injured three other people by shooting them.  Then,

Mr. Dear allegedly forced his way into the Planned Parenthood Clinic by shooting

through a door.  Once inside, he allegedly engaged in an approximately five hour

standoff with officials from several public safety agencies.  Allegedly, Mr. Dear shot and

killed one police officer during the standoff.  Some 27 other people in the clinic allegedly

were forced to shelter in place inside the clinic as a result of Mr. Dear's actions.

The court ordered the defendant, Robert Dear, to be committed to the custody of

the Attorney General, through the United States Bureau of Prisons, for a competency

evaluation to be administered at the United States Medical Center for Federal Prisoners

at Springfield, Missouri (Springfield). *Order* [#82], p. 5 & *Order* [#100], p.7.  Ultimately, I

declared Mr. Dear incompetent to proceed to trial.  *Order* [#121].  In addition, I ordered

---

[2] A reference to *Sell v. United States*, 539 U.S. 166, 179-81 (2003).

hospitalization and treatment to determine if there is a substantial probability that in the foreseeable future Mr. Dear will attain the capacity to permit proceedings to go forward. *Id*.

Based on subsequent evaluations of Mr. Dear at Springfield, a psychologist and a psychiatrist at Springfield determined that Mr. Dear is unlikely to be restored to competency in the foreseeable future in the absence of the administration of antipsychotic medication. Mr. Dear refuses voluntarily to take antipsychotic medication. As a result, the government filed its **Motion For *Sell* Hearing** [#128] to determine if Mr. Dear should be medicated involuntarily in an effort to restore him to competency. Mr. Dear opposes the motion and the imposition of involuntary medication.

## II.  STANDARD OF REVIEW

It is well-settled law that Mr. Dear "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment."  ***U.S. v. Valenzuela-Puentes***, 479 F.3d 1220, 1223 (10th Cir. 2007) (quoting ***Washington v. Harper***, 494 U.S. 210, 221-22 (1990)).  In ***Harper***, the Supreme Court of the United States held that "the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest."  ***Washington v. Harper***, 494 U.S. at 227.

Prior to the opinion of the Supreme Court in ***Sell v. United States***, 539 U.S. 166 (2003), the government could request an order of involuntary medication for a criminal detainee only on a showing that the defendant was dangerous to himself or others. ***Valenzuela-Puentes***, 479 F.3d at 1223.  In ***Sell***, the Supreme Court established a

3

quadripartite test to determine whether or not it is proper to order involuntarily administered medications to attempt to render a defendant competent to stand trial when the defendant is not a danger to himself or others. Under *Sell*, the court may order the government to involuntarily administer drugs to a mentally ill, non-dangerous defendant in order to render him competent to stand trial only if the government establishes four things:

> (1) "*important* governmental interests are at stake;" (2) the "involuntary medication will *significantly further*" those interests; (3) the "involuntary medication is *necessary* to further those interests," e.g., less intrusive alternative treatments are unlikely to be effective; and (4) the administration of the medication is "*medically appropriate* " and in the defendant's best medical interests.

*United States v. Chavez*, 734 F.3d 1247, 1249 (10th Cir. 2013) (quoting *Sell*, 539 U.S. at 180-181) (emphasis in *Sell*).

Addressing the second *Sell* requirement, whether involuntary medication will significantly further governmental interests, a court may find that the second requirement has been satisfied only if it makes two specific subsidiary findings:

> (A) that involuntary medication "is substantially likely to render the
>
> defendant competent to stand trial"; and
>
> (B) "that administration of the drugs is substantially unlikely to have side
>
> effects that will interfere significantly with the defendant's ability to assist
>
> counsel in conducting a trial defense . . . ."

*Sell*, 539 U.S. at 181.

"(I)nstances of involuntary medication of a non-dangerous defendant solely to render him competent to stand trial should be 'rare' and occur only in 'limited circumstances.' " *United States v. Valenzuela–Puentes*, 479 F.3d 1220, 1223 (10th Cir. 2007) (quoting *Sell*, 539 U.S. at 169, 180). Before undertaking an analysis under

*Sell*, a court first must "consider the applicability of *Harper* . . . ." *Valenzuela–Puentes*, 479 F.3d at 1224; see also *Sell*, 539 U.S. 181 - 182 ("There are often strong reasons for a court to determine whether forced administration of drugs can be justified on . . . alternative grounds before turning to the trial competence question.").

To issue an order for involuntary medication under *Sell*, the "district court must find all necessary underlying facts by clear and convincing evidence." *U.S. v. Chavez*, 734 F.3d 1247, 1250 (10th Cir. 2013); see also *U.S. v. Bradley*, 417 F.3d 1107, 1114 (10th Cir. 2005) (in *Sell* hearing, "factual findings . . . ought to be proved by the government by clear and convincing evidence.") Evidence is clear and convincing when the evidence gives the fact-finder "an abiding conviction that the truth of [the] factual contentions [is] 'highly probable.'" *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (citing C. McCormick, Law of Evidence § 320, p. 679 (1954)); *Valenzuela–Puentes*, 479 F.3d at 1228–29 (10th Cir.2007).

### III.  FINDINGS OF FACT

1.  My findings of fact[3] are based on and supported by clear and convincing evidence.  Based on the evidence in the record, each finding of fact is, at minimum, highly probable.

2.  Mr. Dear is 64 years old.  However, his age is not an impediment to the restoration of competency through the administration of antipsychotic medications and is not likely to exacerbate any of his underlying medical conditions or any of the possible side effects.

3.  Mr. Dear suffers from a mental disease or defect rendering him mentally

---

[3]    Any finding of fact more properly deemed a conclusion of law, or any conclusion of law more properly deemed a finding of fact, shall be as more properly characterized.

incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. Thus, logically and legally, Mr. Dear is also unable to voluntarily and knowingly waive his right to counsel and exercise his right to proceed pro se. Therefore, Mr. Dear is not presently competent to proceed. *Order* [#121].

4.  Mr. Dear suffers from Delusional Disorder, Persecutory Type.  This finding is based primarily on the credible and cogent hearing testimony and reports of Lea Ann Preston Baecht, Ph.D., ABPP, a board certified forensic psychologist who has had frequent and fairly recent contact with Mr. Dear in a clinical setting at Springfield.  Dr. Preston Baecht evaluated Mr. Dear at Springfield in conjunction with Dr. Robert Sarrazin, Chief of Psychiatry at Springfield.  Other experts, including those for the defense, credibly have given Mr. Dear the same or a similar diagnosis.

5.  Delusional Disorder is a psychotic disorder recognized by the American Psychiatric Association in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, Text Revision (DSM-5 TR, March 18, 2022).

6.  All relevant evidence indicates that the symptoms of Mr. Dear's Delusional Disorder are chronic.  There is no evidence that those symptoms have abated or decreased spontaneously at any time since at least 2016.

7.  Prior to the initiation of proceedings in this case, Mr. Dear was housed at the Colorado Mental Health Institute at Pueblo (CMHI).  At CMHI  Mr. Dear was treated briefly with olanzapine administered orally and may have received an injection of Haloperidol.  On these occasions, Mr. Dear was not treated with therapeutic dosages for a significant period of time.  Otherwise, from 2016 to the present, no antipsychotic medication has been administered to Mr. Dear.

8.  Mr. Dear suffers from high blood pressure or hypertension.  Consistently, he has refused medical treatment for this condition.

9.  Mr. Dear suffers from high cholesterol or hyperlipidemia.

10.  Mr. Dear suffers from stage three A chronic kidney disease.

11.  Mr. Dear claims he suffered a heart attack as the result of a medication administered to him at the CMHI.  The medical record, as well as the assessment and opinion of Dr. Matthew Holland, a cardiologist, demonstrate that Mr. Dear has not suffered a heart attack.  In addition, there is no competent evidence that Mr. Dear currently suffers from significant cardiovascular disease.

Generally, the QT interval measured by any electrocardiogram (EKG) administered to Mr. Dear was within normal limits. Any aberration involving a prolonged QT interval is attributable to the stress of a serious illness, e.g., pancreatitis, affecting Mr. Dear at the time of the EKG.

12.  Mr. Dear does not suffer from an intellectual disability or a neurocognitive disorder, such as dementia.

13.  From 2016 to the present, Mr. Dear has assiduously refused to accept medical treatment, including antipsychotic medication, for the symptoms of his Delusional Disorder.

14.  Based on the evidence presented in support of and opposition to the motion, it is not known precisely when Mr. Dear began to suffer from Delusional Disorder.  More likely than not, Mr. Dear has suffered from Delusional Disorder for at least 10 years and possibly for as many as 30 years.  All of the evidence in the record shows Mr. Dear has suffered from Delusional Disorder at least since late 2015.  That conclusion is based primarily on the assessments of Mr. Dear at the CMHI and at Springfield, which

7

assessments began in 2016.

15.  On a date not specified in the record, a hearing concerning Mr. Dear and applying the involuntary medication standards of **Washington v. Harper**, 494 U.S. 210, 221-22 (1990), was conducted at Springfield.  The hearing officer concluded that Mr. Dear has a mental illness, but does not present a danger to himself or others in a correctional environment.  Given those findings, the hearing officer concluded Mr. Dear is not subject to involuntary medication under the **Harper** criteria.

16.  When he is in custody in a tightly regulated and highly structured prison-like environment, Mr. Dear does not present a danger to himself or others.

<u>Competency Restoration</u>

17.  A competency restoration evaluation of Mr. Dear was conducted at Springfield by Dr. Preston Baecht and Dr. Sarrazin.  Dr. Preston Baecht was a staff psychologist at Springfield for 21 years.  Dr. Sarrazin has been a psychiatrist at Springfield for 20 years and the Chief of Psychiatry for 18 years.  He has worked with competency restorations for 18 of those years.

18.  Often, Delusional Disorder can be treated successfully with antipsychotic medication.  When successful, such medications minimize but do not eliminate the presence of delusions in the patient's mind.  When delusions are sufficiently controlled by antipsychotic medication, a person suffering from Delusional Disorder can be restored to competence.

19.  Dr. Sarrazin prepared a Proposed Treatment Plan [#143 - under restriction] for Mr. Dear.  The treatment plan includes administration – involuntarily, i.e., forcibly, if necessary – of four different antipsychotic medications.  Generally, only one primary medication would be administered at a time.  If that medication was well tolerated, did

not cause substantial and unmanageable side effects, and was deemed efficacious, other medications would not be tried. However, if a primary medication was not tolerated well, caused substantial and unmanageable side effects, and/or was deemed ineffective, administration of that medication would be terminated and another antipsychotic medication would be administered.

20. In the experience of Dr. Preston Baecht and Dr. Sarrazin working with psychotic patients at Springfield, antipsychotic medication restores a psychotic patient to competence in at least 70 to 75 percent of the cases in which antipsychotic medication is used.

21. Some published studies reflect a competency restoration rate for psychotic patients treated with antipsychotic medication in the same range experienced by Dr. Preston Baecht and Dr. Sarrazin. However, some published studies reflect a lower competency restoration rate. The results of some published studies are less persuasive because some studies involved fairly small sample sizes, medication trials of less than three months, and/or indications that patients in the study failed to fully comply with the medication regime being studied.

22. In view of their assessments of Mr. Dear at Springfield and their long experience with competency restorations at Springfield, Dr. Preston Baecht and Dr. Sarrazin both conclude that administration of antipsychotic medication to Mr. Dear is substantially likely to restore Mr. Dear to competence. They both estimate credibly that there is at least a 70 percent chance that Mr. Dear would be restored to competency with the use of antipsychotic medication.

23. Dr. George Woods, a neuropsychiatrist, and Dr. Richard Martinez, a professor of forensic psychiatry, each testified at the hearing. They both disagree with

9

the conclusion that the treatment plan is substantially likely to restore Mr. Dear to competence.  I have considered carefully the testimony of Dr. Wood and Dr. Martinez on this point.  Given the long experience of Dr. Preston Baecht and Dr. Sarrazin in competence restoration and their personal observations of and interactions with Mr. Dear, I find that their opinions on this issue have a substantially stronger factual and clinical foundation, and, thus, are entitled to greater weight than those opposed to them when assessing Mr. Dear and the likelihood that the treatment plan is substantially likely to restore Mr. Dear to competence.

24.  Psychotherapy alone is not likely to be an effective treatment for Delusional Disorder.

25.  Antipsychotic medication is not substantially more effective or less effective when administered involuntarily versus voluntarily.

26.  The proposed antipsychotic medications paliperidone, aripiprazole, haloperidol, and olanzapine have been shown to be effective treatments for Delusional Disorder.

27.  In his Proposed Treatment Plan [#143 - under restriction], Dr. Sarrazin proposes administration of paliperidone, aripiprazole, haloperidol, and/or olanzapine to treat Mr. Dear's Delusional Disorder.  Olanzapine is not proposed as a primary medication.  Rather, it is proposed as a possible adjunct medication at a low dose.  Dr. Sarrazin testified that, in some cases, a low dose of Olanzapine is an effective addition to treatment.

28.  In his testimony at the hearing, Dr. Sarrazin proposed to treat Mr. Dear initially with a low dose of an antipsychotic medication with careful monitoring of Mr. Dear's tolerance of the medication, response to the medication, and possible side

effects.  Throughout the proposed course of treatment, Mr. Dear would be monitored routinely to assess Mr. Dear's tolerance of the medication, response to the medication, and possible side effects.

29.  Based on the evidence in the record concerning the efficacy of these antipsychotic medications, I find that the closely monitored treatment of Mr. Dear with paliperidone, aripiprazole, or haloperidol as the primary medication is substantially likely to render Mr. Dear competent to stand trial.  Olanzapine as an adjunct medication at a low dose may aid in this treatment.  Most likely, treatment with these medications must continue for at least four months

30.  Clear and convincing evidence in the record shows it is substantially likely that the proposed treatment plan will render Mr. Dear competent to stand trial whether Mr. Dear voluntarily complies with the treatment plan or must be medicated involuntarily.

Side Effects of Antipsychotic Medications

31.  The more common side effects of antipsychotic medications are restlessness, sedation, drowsiness, apathy, inability to focus, or lack of motivation.  At Springfield, when any of these side effects presents in a patient, it is addressed by adjusting the dosage of the antipsychotic medication, changing the time of administration, splitting the dose from once per day to one-half dose twice per day, changing the antipsychotic medication, and/or using a secondary medication to treat the side effects.

32.  In some cases, restlessness and sedation can be of sufficient severity that they impact competency.  Often, these side effects can be treated, as described above, to ameliorate these side effects.

11

33.  Less common side effects of antipsychotic medication include elevated blood glucose levels, weight gain, elevated cholesterol levels, tremors, shakiness, or stiffness.  When necessary, these less common side effects are ameliorated in the same general fashion as the more common side effects.

34.  Haloperidol, one of the medications specified in the treatment plan, is a so-called first generation antipsychotic medication.  When compared to second generation antipsychotic medications, first generation antipsychotic medications are more likely to cause side effects such as shakiness, unintentional muscle contractions (acute dystonias), and stiffness.  However, these side effects respond very quickly and positively to medications known as benzodiazepines.

35.  Tardive dyskinesia is a possible, but not a probable, side effect. Tardive dyskinesia manifests as involuntary movements of the jaw, lips, and/or tongue.  This is a potential, and possibly permanent, side effect usually is associated with high doses of first generation antipsychotic medications administered over a period of years.  This side effect appears in only about five percent of cases using first generation antipsychotics and in about two percent of cases using second generation antipsychotics.

36.  Neuroleptic malignant syndrome is a very rare side effect of antipsychotic medication, primarily first generation antipsychotic medication.  This side effect appears in less than one percent of cases.  Symptoms of neuroleptic malignant syndrome include a high temperature, severe stiffness, muscle break down, and possible kidney damage.  Generally, this side effect appears with the first dosages of a new antipsychotic medication or an increased dosage.  If this side effect appears, the medication is stopped, and the patient is hospitalized, if necessary.

37.  Sudden cardiac death is an extremely rare side effect of antipsychotic medication. This side effect appears in less than one percent of cases.  Underlying cardiovascular disease is a contributing factor in sudden cardiac death in people taking antipsychotic medication.

38.  None of the foregoing possible side effects – whether described as common, less common, or rare – vitiate the need or efficacy of treatment by antipsychotic medication.

39.  If Mr. Dear is given antipsychotic medication at a Bureau of Prisons medical facility, he will be closely monitored in an acute psychiatric care hospital setting.

40.  If Mr. Dear is given antipsychotic medication at a Bureau of Prisons medical facility, his blood pressure, blood glucose level, cholesterol level, and weight gain or loss will be routinely and closely monitored.  EKGs would be used to assess and monitor the electrical activity of his heart.  The creatinine level of Mr. Dear would be monitored to assess his kidney function.  In addition, Mr. Dear would be observed routinely and closely to see if he is exhibiting any of the side effects of antipsychotic medication.

<u>Effect of Antipsychotic Medication On Other Medical Conditions</u>

41.  There is no reliable evidence that Mr. Dear suffers from significant cardiovascular disease.  There is no evidence that administration of antipsychotic medications will have an adverse effect on the cardiovascular health of Mr. Dear, even at his age.  Such medications are not contraindicated in even patients who, unlike Mr. Dear, have documented and significant underlying heart disease.

42.   Mr. Dear suffers from hypertension.  The antipsychotic medications in the proposed treatment plan were selected by Dr. Sarrazin with a goal of eliminating or

13

minimizing any negative effects on the hypertension of Mr. Dear.  Under the proposed treatment plan, the blood pressure of Mr. Dear would be monitored routinely during the course of treatment.

43.  Mr. Dear suffers from high cholesterol.  Under the proposed treatment plan, the blood cholesterol level of Mr. Dear would be monitored routinely during the course of treatment.

44.  Mr. Dear suffers from stage three A chronic kidney disease.  The antipsychotic medications specified in the treatment plan are not contraindicated in patients with chronic kidney disease.  Under the proposed treatment plan, the renal function of Mr. Dear would be monitored routinely during the course of treatment.

45.  If the administration of antipsychotic medication has any significant adverse effect on any of the health conditions listed above, that effect could be effectively extenuated, if not eliminated altogether, by adjusting the dosage of the antipsychotic medication, changing the dosage time, changing the antipsychotic medication, and/or using a secondary medication to treat the adverse effect.

46.  Based on the evidence in the record concerning the side effects of the antipsychotic medications at issue, I find that administration of these antipsychotic medications is substantially unlikely to cause side effects that will interfere significantly with Mr. Dear's ability to assist counsel in conducting a trial defense.

47.  The proposed treatment plan, including the involuntary administration of the recommended antipsychotic medications, is substantially likely to render Mr. Dear competent to stand trial.

### IV.  CONCLUSIONS OF LAW

1.  I found all necessary underlying facts by clear and convincing evidence.  ***U.S.***

14

*v. Chavez*, 734 F.3d 1247, 1250 (10th Cir. 2013); see also *U.S. v. Bradley*, 417 F.3d 1107, 1114 (10th Cir. 2005) (in *Sell* hearing, "factual findings . . . ought to be proved by the government by clear and convincing evidence.").

   2.  Because Mr. Dear does not present a danger to himself or others in a correctional setting, he is not subject to involuntary medication based on the standards stated in *Washington v. Harper*, 494 U.S. 210, 221-22 (1990).

   3.  Considering the first *Sell* factor, I conclude based on clear and convincing evidence that important governmental interests are at stake in this case. The interest of the government in bringing to trial an individual accused of a serious crime satisfies the first *Sell* factor. *Sell*, 539 U.S. at 180. When considering whether a specific crime is a "serious crime," I have considered, inter alia, "the possible penalty the defendant faces if convicted, as well as the nature or effect of the underlying conduct for which he was charged." *Valenzuela-Puentes*, 479 F.3d at 1226.

   Mr. Dear faces a 68-count indictment. Each count charges a serious crime. Three counts include possible sentences of life in prison for violation of 18 U.S.C. § 248(a)(1) and (b).

   All of the crimes in the indictment involve substantial penalties as well as alleged conduct of a particularly violent and heinous nature with pernicious effects.  The government has an important interest in bringing a competent Mr. Dear to trial on each of these charges.  Additionally, the government has an important interest in seeking to conduct a trial as soon as reasonably practicable to preserve the existence and integrity of all relevant and admissible  evidence.

   4.  Considering the second *Sell* factor, I conclude based on clear and convincing evidence that involuntary medication of Mr. Dear under the proposed treatment plan will

significantly further the important governmental interests in bringing this case to trial.  As detailed above, and based on clear and convincing evidence, administration of antipsychotic medications to Mr. Dear under the proposed treatment plan is substantially likely to render Mr. Dear competent to stand trial.  In addition, and again based on clear and convincing evidence, administration of these medications under the proposed treatment plan is substantially unlikely to have side effects that will interfere significantly with the ability of Mr. Dear to assist counsel in conducting a trial defense when Mr. Dear is competent to stand trial.

5.  Considering the third *Sell* factor, I conclude based on clear and convincing evidence that involuntary medication of Mr. Dear under the proposed treatment plan is necessary to further the important governmental interests at stake here.  There are no alternative, less intrusive treatments which have any real chance of achieving a restoration of competency.  For years, Mr. Dear has tendentiously refused medication to treat his Delusional Disorder.  Given that history, and based on clear and convincing evidence, involuntary medication of Mr. Dear is the only realistic means by which he is substantially likely to be restored to competence, so he and the government can participate in a fair and lawful criminal trial of the serious charges in this case.

6.  Considering the fourth *Sell* factor, I conclude based on clear and convincing evidence that involuntary medication of Mr. Dear under the proposed treatment plan is medically appropriate.  Such treatment is in the best medical interest of Mr. Dear in light of his psychiatric and medical condition.

Under the proposed treatment plan, and again based on clear and convincing evidence, involuntary medication of Mr. Dear is not substantially likely to engender dangerous and unmanageable side effects.  Medication of Mr. Dear is not substantially

16

likely to exacerbate any of the existing medical conditions of Mr. Dear, including high blood pressure, high cholesterol, and stage three A chronic kidney disease.

Mr. Dear suffers from Delusional Disorder, Persecutory Type, which is a psychotic disorder. In Mr. Dear, the symptoms of this disorder are chronic and likely to persist unless they are treated. The primary symptom of this disorder in Mr. Dear is persistent delusional thoughts that various people and government agencies are constantly persecuting Mr. Dear. Importantly, clear and convincing evidence establishes that involuntary medication of Mr. Dear is substantially likely to mitigate and control this primary symptom. Elimination of delusional thoughts is neither likely nor anticipated. However, quieting or substantially limiting the strength and frequency of his delusional thought is substantially likely. It is in the best medical interest of Mr. Dear to attempt a treatment of this disorder which is substantially likely to ameliorate the primary symptom of the disorder.

The implementation of the reticulated, sequenced, ingravescent treatment regimen using the antipsychotic and other medications and treatment modalities recommended in the proposed treatment plan is medically appropriate, i.e., in Mr. Demetrian's best medical interest in light of his psychiatric condition.

7. In light of the efficacy, the side effects, the possible alternatives, and the medical appropriateness of the proposed course of antipsychotic medication treatment, the government has demonstrated by clear and convincing evidence a need for that treatment sufficiently important to surmount Mr. Dear's protected interest in refusing such treatment.

8. On this evidentiary record, and based on the foregoing findings of fact, which have been established by clear and convincing evidence, the government has satisfied

17

the quadripartite requirements of *Sell* and is entitled to the entry of an order facilitating the involuntary administration of antipsychotic medications to Mr. Dear.

## V.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That the **Motion For *Sell* Hearing**  [#128],which is quintessentially a motion for the administration – involuntarily and forcibly if necessary – of antipsychotic and other related medications., is granted on the terms stated in this order;

2.  That the treatment plan [#143 - under restriction] is approved and ordered implemented, together with the addition of the other specific augmentative requirements stated in this order;

3.  That any medication, test, monitoring, procedure, or assessment required or prescribed by the treatment plan or this order may be administered involuntarily and forcibly if necessary, using the force reasonably necessary in the circumstances;

4.  That as soon as practicable, Mr. Dear shall be returned to the United States Medical Center for Federal Prisoners at Springfield, Missouri (Springfield), or another suitable facility (as defined by18 U.S.C. § 4247(a)(2)), for implementation of the treatment plan;

5.  That prior to the initiation of the treatment plan, the treatment staff of the BOP shall obtain baseline data on Mr. Dear by EKG, blood test, or other medically appropriate testing for cardiovascular function, electrolytes (including magnesium), renal function, blood pressure, body weight, blood glucose, cholesterol, and lipids;

6.  That under the treatment plan, Mr. Dear shall be treated initially with a low dose of one of the three primary antipsychotic medications included in the treatment plan;

18

7.  That throughout the implementation and use of the treatment plan, Mr. Dear shall be monitored carefully to assess his tolerance of any antipsychotic medication administered, his response to the medication, and the possible side effects of the medication;

8.  That throughout the implementation and use of the treatment plan, Mr. Dear shall be monitored carefully to acquire and assess data about his cardiovascular condition, electrolytes (including magnesium), and renal function;

9.   That throughout the implementation and use  of the treatment plan, Mr. Dear shall be monitored carefully to acquire and assess data on his blood pressure, weight gain or loss, blood glucose, cholesterol, and lipids;

10.  That an EKG shall be conducted on Mr. Dear within a reasonable time after any increase of the dose of an antipsychotic medication, addition of a new or different antipsychotic medication, or any other significant medical/clinical change in the condition of Mr. Dear which implicates cardiovascular function;

11.  That during implementation and execution of the treatment plan, treatment staff of the BOP shall not administer medications known to prolong the QT interval, other than medications specified in the treatment plan;

12.  That during implementation and execution of the treatment plan, the serum potassium and magnesium levels of Mr. Dear shall be maintained to the extent medically practicable in the normal range for patients of the same or similar age as Mr. Dear;

13.  That during the implementation and execution of the treatment plan, treatment staff of the BOP may, if necessary, involuntarily perform any physical and laboratory assessments and monitoring which are required by this order or are clinically

indicated to monitor for side effects from the administration of any medication used to implement and administer the treatment plan;

14. That pursuant to and subject to the provisions of 18 U.S.C. § 4241(d)(2)(A), Mr. Dear shall remain in the custody of the Attorney General for continued hospitalization and treatment in a suitable facility for such a reasonable period, not to exceed four months, to determine whether there is a substantial probability that in the foreseeable future the defendant will attain the capacity to permit the proceedings to go forward;

15. That by January 19, 2023, counsel for the government shall file a status report to inform the court of the status of Mr. Dear, including a summary of the implementation and execution of the treatment plan;

16. That unless ordered otherwise, implementation and use of the treatment plan shall continue throughout the course of these criminal proceedings; and

17. That under 18 U.S.C. § 3161(h)(1)(A) and (4), the period of delay resulting from these ongoing competency proceedings shall be excluded in computing the time within which trial must commence under 18 U.S.C. § 3161(c).

Dated September 19, 2022, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 19-cr-00506-REB

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ROBERT LEWIS DEAR, JR.,

        Defendant.

---

## DEFENDANT'S NOTICE OF APPEAL

---

The defendant, Robert Lewis Dear, Jr., by and through undersigned counsel, hereby files this notice of his interlocutory appeal of this Court's Order re: Involuntary Medication, Doc. No. 159, issued on September 19, 2022, to the Tenth Circuit Court of Appeals pursuant to Rule 4(b) of the Federal Rules of Appellate Procedure. The Tenth Circuit will have jurisdiction over the appeal under the collateral-order doctrine. *Sell v. United States*, 539 U.S. 166, 176–77 (2003).

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


*s/ Natalie G. Stricklin*
NATALIE G. STRICKLIN
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO 80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Email: Natalie_Stricklin@fd.org
Attorney for Defendant

s/ Jennifer Beck
JENNIFER BECK
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO 80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Email: Jennifer_Beck@fd.org
Attorney for Defendant

## CERTIFICATE OF SERVICE

I certify that on September 21, 2022, I filed the foregoing **Defendant's Notice of Appeal** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Pegeen Rhyne, Assistant United States Attorney
Email: pegeen.rhyne@usdoj.gov

Maura Deady White, Assistant United States Attorney
Email: maura.white@usdoj.gov

I certify that I have mailed or served the document or paper to the following participant in the manner (mail, hand-delivery, etc.) indicated next to the participant's name:

Robert Lewis Dear, Jr. (via U.S. mail)

s/ Natalie G. Stricklin
NATALIE G. STRICKLIN
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO 80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Email: Natalie_Stricklin@fd.org
Attorney for Defendant

2

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Rajiv Mohan (caseview.ecf@usdoj.gov, ian.mccandless@usdoj.gov,
maureen.carle@usdoj.gov, rajiv.mohan@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Pegeen
Denise Rhyne (amy.mcdaniel@usdoj.gov, caseview.ecf@usdoj.gov, pegeen.rhyne@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Natalie Girard Stricklin (co.ecf@fd.org, mary_unrein@fd.org,
natalie_stricklin@fd.org), Jennifer Lynn Beck (co.ecf@fd.org, jennifer_beck@fd.org,
maggy_duran@fd.org, savanna_rice@fd.org), Warren Richard Williamson
(cecilia_hernandez@fd.org, co.ecf@fd.org, rick_williamson@fd.org), Veronica S. Rossman
(co.ecf@fd.org, veronica_knights@fd.org, veronica_rossman@fd.org), Maura Deady White
(maura.white@usdoj.gov), Judge Robert E. Blackburn (blackburn_chambers@cod.uscourts.gov,
hazel_porter@cod.uscourts.gov, jeff_kelson@cod.uscourts.gov,
robert_e_blackburn@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), lansa
(laura_ansart@cod.uscourts.gov), jcolw (jeffrey_p_colwell@cod.uscourts.gov), Financial
Litigation Unit-US Atty (usaco.ecfflu@usdoj.gov)
--No Notice Sent:

Message-Id:8812126@cod.uscourts.gov
Subject:Activity in Case 1:19-cr-00506-REB USA v. Dear Order on Motion for Stay
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 9/26/2022 at 1:40 PM MDT and filed on 9/26/2022

| | |
|---|---|
| **Case Name:** | USA v. Dear |
| **Case Number:** | 1:19–cr–00506–REB |
| **Filer:** | |
| **Document Number:** | 166(No document attached) |

**Docket Text:**
 ORDER as to Robert Lewis Dear Jr. (1): The defendant has filed an appeal of the court's Order Re: Involuntary Medication [#159]]. In his Emergency Motion To Stay Execution of Involuntary Medication Order Pending Appeal [161], the defendant moves for a stay of the court's Order Re: Involuntary Medication [#159]] pending resolution of the appeal. The government filed a response [#165]] to the motion for stay and states that it is not opposed to a stay pending appeal. The Emergency Motion To Stay Execution of Involuntary Medication Order Pending Appeal [161] is granted. The court's Order Re: Involuntary Medication [#159]] is stayed pending resolution of the appeal of that order by the defendant. By Judge Robert E. Blackburn on 9/26/2022. Text Only Entry (rebsec)

**1:19–cr–00506–REB–1 Notice has been electronically mailed to:**

Warren Richard Williamson     Rick_Williamson@fd.org, cecilia_hernandez@fd.org, co.ecf@fd.org

Veronica S. Rossman (Terminated)     veronica_rossman@fd.org, co.ecf@fd.org, veronica_Knights@fd.org

57

Pegeen Denise Rhyne     pegeen.rhyne@usdoj.gov, CaseView.ECF@usdoj.gov,
USACO.ECFCriminal@usdoj.gov, amy.mcdaniel@usdoj.gov

Natalie Girard Stricklin     natalie_stricklin@fd.org, co.ecf@fd.org, mary_unrein@fd.org

Jennifer Lynn Beck     jennifer_beck@fd.org, co.ecf@fd.org, maggy_duran@fd.org, savanna_rice@fd.org

Rajiv Mohan (Terminated)     Rajiv.Mohan@usdoj.gov, CaseView.ECF@usdoj.gov,
Ian.Mccandless@usdoj.gov, USACO.ECFCriminal@usdoj.gov

Maura Deady White     maura.white@usdoj.gov

**1:19–cr–00506–REB–1 Notice has been mailed by the filer to:**